## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jose A. Cruz-Kerkado, Phoenix Military Institute, Corp., and Centro de Adiestramientos Tácticos de Puerto Rico Corp., Unknown Plaintiff B and Unknown Plaintiff C<br>*Plaintiffs*<br>v.<br>Commonwealth of Puerto Rico (by way of the Puerto Rico Department of Justice a/k/a *Departamento de Justicia)*, Puerto Rico Police Department a/k/a *Policia de Puerto Rico*, Puerto Rico Department of Leisure and Sports a/k/a *Depatamento de Recreación y Deporte*, and the Puerto Rico Shooting Association a/k/a *Federación de Tiro de Armas Cortas y Rifles de Puerto Rico*<br>*Defendants* | CIVIL ACTION<br>Case No 3:16-cv-2748<br><br>Constitutional Rights:<br>2ⁿᵈ. Amendment<br>**-Invasion of Privacy**<br>**-Freedom of Association**<br>**-Tax on Second Amendment**<br>**-Interstate Commerce/Travel** |

## <u>COMPLAINT</u>

**COMES NOW**, plaintiffs *Jose A. Cruz-Kerkado, Phoenix Military Institute, Corp*., and *Centro de Adiestramientos Tacticos de Puerto Rico, Corp.*, unknown *Plaintiff B* and *C* to be identified later, (collectively "Phoenix"), by and trough their undersigned counsel and respectfully seeks from this Court a Declaratory and Injunctive Relief to protect plaintiffs fundamental right to *privacy*, *freedom of association*, prevent *unlawful tax* on the Second Amendment, and the unreasonable interference with *interstate commerce/travel,* from Puerto Rico's Commonwealth *encroachment*. The plaintiffs seek protection against Commonwealth's overreaching regulation of *lawful* firearm possession that for over a decade has placed a *substantial burden* on *law abiding citizens*. Plaintiffs will demonstrate that Commonwealth rationale has little empirical support and **specific** sections of its regulation were motivated by a desire to restrict availability of firearms for law abiding citizens. Plaintiffs will demonstrate compliance with a few specific sections of existing regulation have and does impose a *substantial burden* on a person's fundamental right to **privacy**, **association**, **non-taxation of constitutional rights** and his/her lawful **interstate commerce/travel**.[1]

---

[1] *"If the fundamental right of self-defense does not protect Caetano, then the safety of all Americans is left to the mercy of state authorities who may be more concerned about disarming the people than about keeping them safe."* - Supreme Court Justice Alito on *Caetano v Massachusetts* (2016).

Plaintiffs will demonstrate Commonwealth government has at its disposal least restrictive means to achieve the governmental interest it seeks to protect. **Phoenix is not asking for this Court to deviate from *Danny Williams, et als. v. Commonwealth of Puerto Rico*, et als. 12-1218 (FAB), but rather only asks here to take a closer look at, not the weapons *license* itself, but the constitutionality of just a few *very specific* requirements that has and does *interfere* with the people's *other* fundamental rights. A question not posed to the Court on *Danny,* and here are issues of privacy rights, freedom of association, unlawful taxation and travel restrictions.**

## I.    INTRODUCTION

1.      With this civil action the plaintiffs do not question the *need* for a Commonwealth of Puerto Rico process to regulate the lawful possession of firearms, but rather, *only* question the Constitutionality of a *few* burdensome requirements, that *severely* restrict the lawful exercise of the constitutionally guaranteed right of the people to keep and bear arms.[2] Requirements that also **encumber the exercise of *other* constitutionally guaranteed rights** of law abiding citizens who lawfully choose to exercise *their* Second Amendment in the Commonwealth of Puerto Rico.[3] **To begin, we must point out that the *Second Amendment* as originally drafted and enacted by the *Founding Fathers* was *not* intended to be monopolized by a privileged few for *sports* or recreational purposes, as some in the Commonwealth may have the people believe, but in fact, intended to guarantee and secure the people's basic right to *self-defense*.**

---

[2] "*Good people do not need laws to tell them to act responsibly, while bad people will find a way around the laws*." **Plato** (c. 427 B.C. – 347 B.C.); "*Where you find the laws most numerous, there you will find also the greatest injustices*." **Aroesilaus** (c. 316 B.C. – c. 241 B.C.); "*The more laws and order are made prominent, the more thieves and robbers there will be*." **Lao-Tzu** (c. 604 B.C. – c. 531 B.C.); and *"It will be found an unjust and unwise jealousy to deprive a man of his natural liberty upon the supposition he may abuse it."* **George Washington.** We should point out that before the Commonwealth of Puerto Rico Constitution was conceived notable Puerto Rico Scholars such as *Ramón Emeterio Betances y Alacán* had proposed in 1867 a manifest of *individual liberties* that includes the abolition of slavery, freedom of the press, the right to assembly, and the people's right to possess weapons. See "Los 10 mandamientos del Hombre Libre". Said manifest was inspired in France's Declaration of the rights of Man and of the Citizen (1789) which defined in Article II the "natural and imprescriptible rights of man" defines as "liberty, property, security and resistance to oppression."

[3] In Danny Williams, et als. v. Commonwealth of Puerto Rico, et als. 12-1218 (FAB), the Court found the Puerto Rico Weapons Act's licensing process to be constitutional and applied an intimidate scrutiny. **However, said case did not questions the extent of the Act's infringement or burden on the people's *other* fundamental rights.**

2.      Self-defense requires *proficiency*. Situational awareness, conflict avoidance, de-escalation, self-preservation thru weapon handling/*firearms training*, hand-to-hand combat, move-for-cover, disarming, and decision making under stress, are all skills necessary for *survival* in a world where the threat of terrorism, urban violence, active mall/workplace shooters, and home invasions are a *real* possibility.  But none of these survival skills are necessarily taught behind a comfortable gun-range booth, with Olympic style shooting at stationary targets, by gunslinger instructors who may have never seen active combat.  Most gun-shop owners on the Island will agree, that folks in the Commonwealth are looking for *protection* and not to win an Olympic medal.

3.      The Commonwealth, however, does a poor job at affording law abiding citizens, including women, elderly, business-owners, security guards, off-duty law enforcement officers and off-duty military personnel, the opportunity to further training for these real-life situations. While on the other hand, affords a few unrestricted control of the gun-industry, only to funnel the people's money into the government's own sponsored "Olympic" clan and its *agenda*, of what the people should or shouldn't learn.  In fact, prospective gun-range owner on the Island are asked to take an "oath" of loyalty to a *private* organization, which in fact, every single weapon license holder with a target practice *permit* funds, in one way or another.  If you disagree, you do not get a target practice permit, nor get approval for your private gun-range. **This mandatory affiliation requirement with its financial commitment *does* place a substantial burden on the citizens.**

4.      Phoenix is a veteran-owned educational not-for-profit institution with specialized teaching on all aspects of tactical self-defense and non-sport related firearms defensive training. For approximately fifteen years, Phoenix has taught municipal and state police officers, security guards, business owners and law-abiding civilians, the skills necessary and the handling of tools to be able to properly defend themselves, prevent and try to survive dangerous situations.  Because of unfounded phobia, but mostly self-preservation, the exclusive Commonwealth Federation has demonized the "tactical" approach to self-defense given by Phoenix.  The Federation didn't care

*before*, as long as Phoenix was forced to use local gun-ranges that profited from the organization's activities thru facility rental and the sale of ammunition. But *now* that Phoenix has proposed to create its own combat shooting and tactics training facility, one of a kind on the Island, the Federation has set out on a warpath by unlawfully rejecting Phoenix application, and gone a head with a *public* smear campaign to blackball Phoenix.  Pure arrogance at the brink of the abysm.

5.      Phoenix recognizes the Commonwealth's regulation serves a *substantial interest* in promoting public safety and keeping firearms from reaching the hands of criminals.[4]  In the process, *however*, some regulation fails to be sufficiently narrowly tailored to use least restrictive means to further its objectives, without having the substantial effect of violating law-abiding citizens' *other* basic fundamental rights: Such as their *right to* **privacy** and **freedom of association.** It imposes a **tax** on a conceal carry permit[5] and a substantial burden on **interstate commerce/travel**.

6.      As indicated, sections of the regulation had the effect, for over a decade, to severely restrict the number of law abiding individuals exercising this constitutionally protected right.  **The Commonwealth of Puerto Rico requires a *license* to purchase, own and conceal carry a firearm for self-defense, but approximately less than five (5%) percent of Commonwealth population have lawfully obtained a weapons license to exercise this fundamental right.** All the while, the unlawful possession of firearms by the Island's criminals *continue* to proliferate.

7.      Honorable Chief Judge Aida M. Delgado-Colon informed the Puerto Rico District Court's criminal workload continues to increase while criminal filing (2014 to 2015) decreased nationwide.  **The District of Puerto Rico ranks first nationwide in weapons related filings**.

---

[4] Puerto Rico Weapons Act No. 404, as amended, was originally approved on September 11, 2000.  In order for a law abiding citizen to obtain a *concealed carry permit* in accordance with Article 2.05, he or she must first obtain a *weapons license* issued by the Puerto Rico Police Department in accordance with Article 2.02.  The process to additionally obtain a *target practice* permit is also regulated by Article 3.04 of the above referenced law.

[5] Article 2.05 of the Puerto Rico Weapons Act requires that the Commonwealth Police Department be paid $250.00 by way of an Internal Revenue Voucher and the citizen presents evidence of said payment, to the Puerto Rico Court as prerequisite to apply and obtain a conceal carry permit for their weapons license.  This in addition to the filing fee that is paid by the citizen by way of another Internal Revenue Voucher, upon filing said petition.  The Puerto Rico Police Department has no participation whatsoever in the *ex-parte* judicial process for the petition filed by the citizen.

During 2015, firearms cases constituted 32.5% of the Court's criminal workload, far exceeding the national average of only 10%. Our District Court has the *third* highest criminal workload in the nation. From the Bar, *Federal Bar Association*, Summer 2016, Issue 57, pag. 3-5.

8.      Simply put, **Commonwealth restrictions on the lawful possession of firearms have *failed* to deter crime and illegal firearm related crimes, and thus, has also failed to stop unauthorized influx of unlawful firearms into Commonwealth's black-market.** In fact, the media has reported the very strict gun-control structure in place that makes the cost of obtaining a weapon license expensive, has *allowed* unscrupulous individuals to device lucrative *schemes* to take advantage of the process and profit from its complexity of requirements and multitude of fees. Some were prosecuted in this District Court. See *USA v. Peluzzo-Perotin*, et al., 3:14-cr-00017 FAB (3:14-mj-1524) It seems impassioned motives fostered a storm cloud of confused thinking and misrepresentations that has made inane hoops for people who want to become responsibly armed citizens and lawfully exercise this Constitutional right.[6] **In essence, with over a decade of enforcement, the Weapons Act has *failed* to reduce gun related crimes, while placing a substantial burden on Puerto Rico's law abiding citizen.**[7] To demonstrate ineffectiveness of Act No. 404 one only needs to review its extensive patchwork of over ***twenty (20) amendments***. Evidence of the government's failed *guesswork* on how to solve Puerto Rico's illegal gun problem. In fact, the Police enacted Administrative Regulation back on March 3, 2008, to amend Regulation 7311, in response to an FBI and Police investigation into what appeared to be the unlawful practice by third parties ("gestores") who procure and often pushed or delay Weapons Licenses. Said

---

[6] In at least one occasion the Puerto Rico Appellate Court ruled that one of Puerto Rico Police Regulation related to weapon license requirements, Regulation 7472, was *unconstitutional* given the fact that the Commonwealth failed to show the said regulation advanced a reasonable, specific or important public interest, to justify encroachment on the fundamental individual right to keep and bear arms. Asociación de Dueños de Armerías de Puerto Rico v. Policía de Puerto Rico, K PE2008-0340. Puerto Rico Appeals Court, June 28, 2012.

[7] In Asociacion de Dueños de Armerías de Puerto Rico, Inc. V. Policia de Puerto Rico, K PE2008-0340, Puerto Rico Court of Appeals found Police Regulation 7472 to be unconstitutional, because it restricted the lawful exercise of the Second Amendment, when the Police sought to create *additional* license requirements, above those of Act No. 404.

Regulation amended Article 8, Section (A)(2) of Regulation 7311 to requires that every applicant for a license must file his/her petition *in person*. Thus, the Police recognized the existing problem.

9. Over the years, Puerto Rico Supreme Court has rectified Judge's *ultra vires* conduct because of an attempt to fabricate *additional* restrictions that *exceeded* Puerto Rico Weapons Act. See Ex-Parte José R. Cancio González, 2004 TSPR 45, 161 DPR __ (2004).[8] Puerto Rico Court of Appeals has ratified on at least one occasion, that the Second Amendment guarantees a right to keep and bear arms *outside* a home, in Ex parte Roque César Nido Lanaussee, Court of Appeals of Puerto Rico, Guayama Judicial Region, Case KLAN201000562 (Jan 31, 2011).

10. The Second Amendment of the United States Constitution provides:

"*[a] well regulated Militia, being necessary to the security of a free State,*

*the right of the people to keep and bear Arms, shall not be infringed.*"[9] (emphasis)

**No other constitutional right given by the founding fathers poses such a precise *limit* on government interference with the exercise of that right**. Precisely, because this is "the people" last stand against anarchy and tyranny, two well established threats to liberty that *predates* our U.S. Constitution.[10] The people could be called upon by the King or fellow patriotic countryman to protect land against foreign invading forces, when the peoples own sustained militia could not suffice. **Leisure target practice for Olympic competition, as the Federation seeks to impose on all target practice permit holder, was not conceivably in founder's mind, but *self-defense* was**.

---

[8] In Pueblo v. Vega Pabón, 144 D.P.R. 416 (1997), the Puerto Rico Supreme Court ruled that an *unlicensed* individual that bears a firearm within the boundaries of his home, commits both unlawful possession and unlawful conceal carry. In Pueblo v. Rodriguez Gonzalez, 99 D.P.R. 904 (1971) Puerto Rico Supreme Court incorrectly ruled that bearing a firearm on public property (ex. Public Street) was essential requirement of unlawful conceal carry. However, in Pueblo v. Vazquez Cintrón, 122 D.P.R. 625 (1988) the Court ruled that an individual with a weapons license could commits unlawful carry without a permit, when he takes a firearm outside the licensee's authorized property.
Note: These were interpretation of a *previous* Weapons Act that preceded the existing law, enacted in the year 2000.
[9] As emphasized, this is a right of "the people" (individuals) and precisely limits government intervention so as not to substantially "infringe" on said Constitutional Right.
[10] **"Arms in the Hands of citizens (may) be used at individual discretion…in private self-defense…" John Adams**, 1788 (A Defense of the Constitution of the Government of the USA, p. 471). The strongest reason for the people to retain the right to keep and bear arms is, as a last resort, to protect themselves against tranny in a government. Thomas Jefferson on a Draft Constitution of Virginia, June 1776.

11.     The Second Amendment guarantees an ***individual's right*** to possess a firearm unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such as ***self-defense*** within the home.  <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008).  The Second Amendment right to keep and bear arms for ***self-defense*** in one's home is also fully applicable to the States through the Fourteen Amendment.  <u>McDonald v. City of Chicago</u>, 561 U.S. 742 (2010). **We point out that Puerto Rico's Weapons Act, *predates* said constitutional interpretations because it was Enacted on September 11, 2000, as Commonwealth Act No. 404**.  Although, it has been enforced for the past *sixteen (16) years*, it has *failed* to substantially reduce crime or gun-related violence. However, it does places enormous restrictions on law-abiding citizens and gun-industry businesses, by requiring a gun-ammunition sale *registry*, *limit* the number of firearms a weapon license holder can possess, without a supplemental target practice *permit* on his license, and authorized the Puerto Rico Police to ***maintain*** an electronic registry/database on *persons authorized*.  This includes photo, fingerprint card and a record of the person's purchases (requiring a pin code) of guns and ammunition.  <u>These are law-abiding citizens who have *not* been convicted of a felony by a Court of law, yet a "carpeta" of sort is kept for exercising this fundamental right.</u> **None of these travesties have significantly reduced gun-related crimes or gun-violence on the Island.  Criminals cannot *purchase* weapons from lawful gun owners/stores.**  We should point out that the Commonwealth's interest in public safety is *already* served by the *National Instant Criminal Background Check System* which the *Federal Bureau of Investigation* operates. Authorized gun-store on the Island are **required** to submit every buyer's **NICS** *application*. This already protects national security and public safety by providing a determination to the gun-store, as to the buyer's eligibility to possess firearms in accordance with federal law. A reliable system.

*12.*     To further aggravate Puerto Rico's citizens fear of crime, the U.S. Department of Justice released detailed Investigative Findings on Puerto Rico Police, the agency *responsible* for processing weapon licenses and maintaining a registry on *authorized* gun owners.  Based on the

investigation, which began in 2008, the U.S. Department of Justice "*found reasonable cause to believe that a pattern and practice of unconstitutional conduct and/or violation of federal law occurred in several areas*". A number of systemic deficiencies were also found to have contributed to some of the agency's rouge unlawful conduct. JUSTICE NEWS, Department of Justice, Office of Public Affairs, Press Release, Thursday, September 8, 2011. See also *U.S. v. Commonwealth of Puerto Rico*, 3:12-cv-2039. Crime prevention strategies seem to have failed, and often, citizens have to find the means to defend their lives, home or business. Because criminals are aware of the strict process to obtain a weapon license, crime proliferates because the likelihood of an armed confrontation with a lawful concealed carry individual is almost nonexistent. We should point out that reports on the gun-down of a prosecutor on her drive-way, and off-duty police officers have contributed to the people's real sense of lack of security, with crime targeting hardworking people.

*13.* Puerto Rico Criminal law *recognized* the people's right to *self-defense* by way of Article 25 titled "*Legitima Defensa*" which states as follows:  "*No criminal liability will burden a person who engages in the defense of his life, his home, his property or rights, or the life, home, property or rights of another, under circumstances that leads to a reasonable conclusion of an imminent risk of harm, so long as the method used for defense is reasonable to stop or repel the harm, and the person using that force did engage in any provocation…*"  "*…When a legitimate defense claim is made to justify the killing of a human being, it will be required to show that the individual had reasonable cause to believe that when killing the aggressor, the victim was in imminent risk of potential severe physical harm or risk of death…*" Puerto Rico Penal Code, Act No. 146, approved on July 30, 2012, as amended. 33 L.P.R.A. §3095 **But to lawfully acquire "the means" to do so, requires infringement of people's other rights and payment of a "tax".**

*14.* Plaintiffs will demonstrate that *specific* requirements such as: (1) **third-party affidavits to attest to the applicant's character**, (2) **mandatory affiliation of licensees and gun-clubs/gun-range owners to a <u>private</u> Federation**, (3) **tax on conceal carry permit** and/or

the **license application** itself and (4) **unjustified burden on interstate commerce/travel**, fail to be substantially related to a governmental interest. *Said requirements are unsubstantiated or fail to further a governmental interest in the least restrict way, without violation of* **other** *rights of law abiding people.* The violation of the applicant's fundamental rights has no substantiated basis nor directly advance governments compelling interests, and only serve to deterrent lawful exercise, by law abiding citizens. ***Criminals don't care for the law and aren't deterred by strict requirements***.

15.     The plaintiffs ask this Court to find Defendants in violation of Federal Law and award the relief requested below, including a declaratory and injunctive relief to protect plaintiffs fundamental right to *privacy*, *freedom of association*, prevent *unlawful tax* on second amendment, and the unreasonable interference with *interstate commerce/travel.*

## II.     JURISDICTION

16.     The case only calls upon this Honorable Court to determine whether a few ***specific sections*** referenced herein, of the Commonwealth of Puerto Rico's Weapons Act and its related regulation, does violate plaintiff's fundamental rights of *privacy*, *freedom of association*, Second Amendment of the United States Constitution, insofar as it imposes disclosure to thirds parties, mandatory affiliation with economic support of a *private* exclusive Federation, an unjustified tax on the conceal carry permit process, unlawful tax on the purchase of firearms and ammunition, and unlawfully interferes with interstate commerce/travel. **The Court should be able to find, at the very least, that Puerto Rico's requirement of third-party affidavits, mandatory affiliation to a *private* Federation, and a $250.00 Tax Stamp to obtain a conceal carry permit thru State Court System, among other sections, are insufficiently tailored to the State's interest in public *safety* and crime *prevention*.** The Act impermissibly infringes the right to keep and bear arms, guaranteed by the Second Amendment, while encroaching upon other law-abiding citizen's fundamental rights. The "good and substantial reason" requirement here is not reasonably adapted

to a substantial government interest, and the Court should find specific sections of the Puerto Rico Weapons Act referenced herein to be *unconstitutional*.

17.     The Court has original jurisdiction over Plaintiff's claims set forth in this complaint pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C §1343, and 42 U.S.C. §1983.

18.     This Honorable Court has personal jurisdiction over defendants because they acted under Commonwealth of Puerto Rico law and within geographic confines of the Commonwealth.

19.     Venue properly lies before this Court under 28 U.S.C. §1391(b). Plaintiff and Defendants are resident of the Commonwealth of Puerto Rico and the acts and/or omissions giving rise to Plaintiff's claim have occurred in this district, under 29 U.S.C. §1391 (b) (2), venue lies in this judicial district. The Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 (a) because those arise from the same nucleus of operative facts as Plaintiff's federal claims.

### III.     PARTIES

20.     Plaintiff Jose A. Cruz Kerkado is a citizen of Bayamon, Puerto Rico.  He is a retired *Army Veteran*, with mailing address Calle 4 K1 Sierra Linda, Bayamon, PR 00957. He is a citizen of the United States of America and resides in the judicial District of Puerto Rico.

21.     Plaintiff Phoenix Military Institute, Corp. is a non-stock corporation registered with the Commonwealth of Puerto Rico Department of State, Registration No. 44654, and at all relevant times its principal place of business is Bayamon, Puerto Rico.  Co-plaintiff Jose A. Cruz Kerkado is Phoenix's Registered Agent.  Its mailing address is Calle 4 K1 Sierra Linda, Bayamon, PR 00957.  Phoenix principal place of business is in the judicial District of Puerto Rico.

22.     Plaintiff Centro de Adiestramientos Tacticos de Puerto Rico Corp. a/k/a CAT is non-stock corporation registered with the Commonwealth of Puerto Rico Department of State, Registration No. 353218, and at all relevant times its principal place of business is Bayamon, Puerto Rico.  Co-plaintiff Jose A. Cruz Kerkado is Phoenix's Registered Agent.  Its mailing

address is Calle 4 K1 Sierra Linda, Bayamon, PR 00957.  CAT's principal place of business is in the judicial District of Puerto Rico.

23.     Unknown *Plaintiff B* and unknown *Plaintiff C* are plaintiffs to this case, that could be identified at a later day, and included by amending the pleadings.  Both Plaintiff B and Plaintiff C are individuals, corporation and/or organizations who are similarly situated and whose interests fall within the zone of interests and the rights this Complaint also seeks to protects

24.     Defendant Puerto Rico Police Department a/k/a Policia de Puerto Rico ("Police") is responsible for approving and issuing Puerto Rico Weapon License and Gun-range *license* pursuant to Puerto Rico's Weapons Act, and its administrative regulation.  The Police department is responsible for the administration and enforcement of weapons related laws and regulation.

25.     Defendant Commonwealth of Puerto Rico is sued by way of its Justice Department a/k/a Departamento de Justicia, as this civil action challenges the constitutionality of various specific requirements of its laws and related administrative regulation.  The Puerto Rico Justice department administers Commonwealth laws and provides legal representation to Commonwealth.

26.     Defendant Puerto Rico Department of Leisure and Sports a/k/a Departamento de Recreacion y Deportes ("Sports") is responsible for *certification* of gun-range facilities on the Island. It issues certification to facilities, pursuant to Puerto Rico's Weapons Act, and its regulation.  The Department shares responsibility with the Police, for regulation enforcement.

27.     Defendant *Puerto Rico Shooting Association* a/k/a *Federacion de Tiro de Armas Cortas y Rifles de Puerto Rico,* herein after *"Federation"*, is a **private** entity that currently holds a *de facto* government sponsored *monopoly* on approval process for gun-range facilities on the Island.  Its members are comprised of *existing* gun-range/gun-club owners. Membership *into* and *oath* of loyalty into said Federation is prerequisite for Sports and Police approval of a license to operate a gun-range, the Federation also obtains funding from mandatory fees weapon licensees are required to pay, in order to maintain the *active* status of their weapon license, through the

lifetime of the target practice permit. Unfortunately, **the Federation *excluded* Phoenix because it deviates from the Federation's "athletics" training approach to target-practice**. **Phoenix asserts that gun-range facilities on the Island are already regulated by the Police and Sports, *de facto* and *de jure* government agencies best suited to pursue compliance with government's interest. *Federation has no enabling statute nor legal power to issue rules or regulation governing the lawful possession and the training of firearms*. To require <u>mandatory</u> affiliation to the Federation for gun-range owners and financial support by weapon license holders, constitutes a serious violation of the people's right to freely associates for any lawful purpose.**

28.     Defendants are employees, agents, and/or supervisory personnel and were, at all times material to this complaint, acting in the course and scope of their employment. Defendants participated in and/or directed the unlawful violations alleged herein, or knew of the violations and failed to act or prevent them. At all times relevant to this complaint, Defendants all acted under color of federal and/or state law and acted in the course and scope of their employment. All individual Defendants are jointly liable for any damages alleged herein.

## IV.     FACTUAL ALLEGATIONS

29.     Plaintiff Kerkado applied for and obtained a Puerto Rico Weapons License from the Puerto Rico Police Department. In order to obtain his license, Kerkado, was required to pay the Police a $100.00 application *tax* and supply, among other things, three (3) character witness affidavits, to attest to their consent to him owning firearms. Pursuant to the Puerto Rico Weapons Act, Kerkado was also required to obtain a "target-practice" permit for his license, by paying another tax to the Police, and produce a *Federation stamp*, this in order to be able to buy multiple weapons, ammunition and use existing private gun-ranges on the Island. Continuing membership affiliation to a registered gun club is mandated by law, in order to keep said permit from being cancelled by the Police. Further, Kerkado, in order to conceal-carry a firearm for self-defense, had to pay the Police a $250.00 *tax* stamp, this in *addition* to State Court process mandated by the law,

its related fees and having to produce *again* three (3) character witness affidavits and their presence in court, with State prosecutor's consent. **In order for Kerkado to keep and maintain his Puerto Rico Weapons License, he is required by law to periodically submit to a license renewal process, which includes affidavits and a renewal tax. The costs associated with keeping his license and associated permits over the course of his lifetime could well exceed $5,000.00.** An experienced security expert and tactical defense mentor, his license is necessary, but the process on the Island has turned this fundamental right into an expensive bureaucratic "privilege" for most.

30.    The license application process requires *disclosure* of intent to own firearms, and later on, intent to conceal carry for protection, to *third parties*. The Court process itself is open to the public and a record of said proceeding, disclosing the nature of the process is accessible thru State Court's website. Disclosure to third parties violates the applicants right to privacy, and disclosure to third parties at the application process for a conceal carry *permit* phase, once again, violates the license holder's right to *privacy*, and the public record online, not only permits others to peek into that person's privacy, but may put that person's life or property at risk. Which begs the question, why go thru such scrutiny, to finally be allowed to exercise a right of such paramount importance thru *concealment*…

31.    **Kerkado does not question the government's need to regulate gun ownership thru a license process of some sort. However, the Plaintiff does pose the following questions before this court: First, if the existing process violates both applicant and weapon license holder's *privacy*. The second question, if a "target-practice" permit holder *mandatory* affiliation to a gun-club and the Federation, violates his *freedom of association*, and third, if the conceal carry *tax* paid by permit applicant to the Police is *unconstitutional taxation of a right*. Finally, if the regulation scheme in place, severely restrict interstate commerce/travel by allowing for a provisional permit for gun-club participant's guests only (as opposed to any individual non-associated with a gun-club), placing sales tax on guns and ammunition**

*and* **unreasonably restricts mainland citizen's right to bring belongings (lawful firearms) into Puerto Rico.**  At the moment, the law requires a traveler to submit to certain scrutiny upon his/her travel *into* the Island. Scrutiny which unreasonably restricts the entry of his/her lawful firearms and has done very little, at preventing the unauthorized influx of firearms into the Island.

32.   CAT is Kerkado's designated training facility for Phoenix. **The Federation has denied CAT's endorsement, and without, CAT cannot obtain the Sport's certification and Police's license to operate.**  This unlawful act by the Federation has already *harmed* Phoenix.

33.   When Puerto Rico's Weapon Act was enacted over a decade ago, self-defense for civilian and tactical training by the private sector, were not contemplated, and unrestricted control was given to the Olympic Committee, which focused in one kind of training, that is *target practice* as a "recreation sport."  Thus, undermining modern realities and necessity for *self-defense* training.

34.   Plaintiffs assert the Commonwealth of Puerto Rico substantially *undermines* and unreasonably *encroaches* individual rights of law abiding citizens, including plaintiff Kerkado, who choose to exercise the fundamental constitutionally guaranteed *second amendment* right of the Constitution of the United States, by promoting strict regulation in the name of public safety, without factual basis. The fundamental right of ***freedom of association*** guarantees a person could be able to form and join any organization for any given lawful purpose, free from interference from the government. However, when it comes to the second amendment, the Commonwealth requires *mandatory* affiliation of "target practice" permit holders, such as Kerkado, to a gun club and the gun range owner's affiliation, in this case for plaintiff CAT, to the government 's own sponsored private Federation. Plaintiffs asserts that both requirements violate each plaintiff's constitutional rights to peacefully organize for any lawful purpose, without being required by law to take oath allegiance and/or provide financial support to a private organization, like a Federation.

35.   Plaintiffs further assert that mandatory affiliation unjustifiably impairs access to exercising fundamental rights, as the existing affiliation requirement which carries an economic

cost for target practice permit holders and gun-club/gun-range owners, is **not** the most narrowly tailored way of accomplishing government interest of *public safety*. The Commonwealth also has less restrictive means to accomplish its governmental interest, without requiring a "tax stamp" on the conceal carry application process. Plaintiffs further assert that a "sales tax" requirement for every firearm and/or ammunition purchase is unconstitutional, because it is essentially a tax on the "Arms" to exercise a legal *right*. Finally, plaintiffs also assert the Act interfere with **interstate commerce** by placing unreasonable restriction on mainland travelers who choose to carry lawful firearms into the Island for recreational or personal use, unassociated with any specific gun-club.

36.     Plaintiffs assert that individual's right to self-defense is a central component of the second amendment.  As such, said amendment was not intended to secure the right of a few to practices Olympic style target practice for leisure, but to allow citizens to have an individual right to possess and carry a weapon for any lawful purpose, this inclusive of *training for **self-defense***. The Commonwealth has recognized the *justifiable* use of force by citizens (right to self-defense) by way of affirmative defense ("*legítima defensa*") from prosecution for the use of deadly force. As such, the Commonwealth has an **obligation** to accommodate the exercise of recognized legal *rights* in the **least restrictive way** possible, without imposing unwarranted hardship on the exercise by *lawful* citizens. **An attempt to control *unlawful* use of firearms should not be tailored to impose a substantial burden on most of its citizens, who do abide by the law.**  No citizen should be unreasonably subjected to invasion of privacy for exercising constitutional rights, and by **making the people helpless you can't realistically expect to make criminals harmless.**

37.     Plaintiffs now comes before this Court to seek only what is deem to be fair and just.

## V.    CAUSES OF ACTIONS

### COUNT I: Invasion of Applicant/License Holder's Privacy

38.    Plaintiffs re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

39.    Plaintiffs asserts that the Puerto Rico Weapons Act violates their right to *privacy* against governmental intrusion by requiring public disclosure of personal information and their decision to exercise the Second Amendment right.  The *publicity to third parties* required by this governmental intrusion also subjects the individual to public scrutiny, and puts him/her at risk. This requires the individual to burden its costs, while the Commonwealth has *less intrusive* ways to accomplish its interest in public safety, by other reasonable and more appropriate ways.  Some specific requirements of the Puerto Rico Weapons Act violate plaintiffs **Fourth Amendment** right to be free of unwarranted search or seizure, the **First Amendment** right to free assembly, and the **Fourteenth Amendment** due process right, which also protects their general right to privacy.

40.     The **Fourth Amendment** of the United States Constitution (Amendment IV) prohibits unreasonable searches and requires a warrant to be judicially sanctions and supported by *probable cause*.  This amendment was held to apply to the states in Mapp v. Ohio, 367 U.S. 643 (1961), and prohibits unreasonable searches and seizures, as applied to the state through the **Fourteenth Amendment**, and excludes unconstitutionally obtained evidence from use in criminal prosecutions.  In Katz v. Unites States, 389 U.S. 347 (1967), the Unites States Supreme Court held that the protection of the Fourth Amendment also extends to the privacy of individuals and protects individuals with a reasonable expectation of privacy from unreasonable search and seizure. Privacy however, like the protection of his property and a person's life, was largely left to the laws of the individual States.

41.    With regards to individual privacy the **Constitution of the Commonwealth of Puerto Rico**'s **Bill of Rights** recognized that every individual has the right to the protection of the

law against abusive attacks on his honor, reputation and private or family life and the right of the people to be secure in their persons, houses, paper and effects against unreasonable searches and seizures shall not be violated. *Constitution of the Commonwealth of Puerto Rico*, Article II, section 8 and section 10.  Puerto Rico citizen's paramount right to privacy has a *Constitutional* hierarchy.

42.     Puerto Rico Police Regulation 7311 Article 9 A (1) requires mandatory inquiry of Puerto Rico Police records for each applicant for a weapons license, as well as mandatory background check with the *National Crime Information Center* (NCIC) and the *National Instant Criminal Background Check System* (NICBCS), among other available systems.  It also requires a check of applicant's *fingerprint card* against a computer fingerprint database.  Article 9 A (1) (a) Puerto Rico Police Superintendent also has discretionary authority to conduct field investigations of applicants *before* granting a weapons license. Article 9 A (1) (e) In addition, the Commonwealth Police Superintendent may have discretionary power to authorize investigations *after* granting a weapons license, as he sees fit.  Regulation 7311 Article 11 A.

43.     Plaintiff also asserts the Commonwealth regulation of firearms is subject to **Federal Preemption** in some aspects, by the extensive number Federal firearm laws in place:  *The National Firearms Act of 1934* (NFA), *The Gun Control Act of 1968*, the *Bureau of Alcohol, Tobacco and Firearms* (ATF) which enforces regulation concerning *Federal Firearms Licenses* (FFL)[11], the *Firearm Owners' Protection Act* (FOPA), and the *Brady Handgun Violence Prevention Act* which created a national background check system to prevent firearms sales to persons prohibited by law.[12]  We must point out that the *Firearm Owners Protection Act of 1986* specifically includes

---

[11] A Federal Firearm License (FFL) enables an individual or business to engage in the manufacture or importation of firearms and ammunition, or the interstate and intrastate sale of firearms.  The ATF issues licenses and conducts firearms license qualification and compliance inspections.  Persons who engage in *the business* of buying and/or selling firearms must be licensed by the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives of the U.S. Department of Justice.

[12] *National Firearms Act* ("NFA") (1934): Taxes the manufacture and transfer of, and mandates the registration of Title II weapons such as machine guns, short-barreled rifles and shotguns, heavy weapons, explosive ordnance, silencers, and disguised or improvised firearms.  *Omnibus Crime Control and Safe Streets Act of 1968* (1968): Prohibited interstate trade in handguns, increased the minimum age to 21 for buying handguns.  *Gun Control Act of*

the categories of individuals who may pose a threat to public safety and to whom the sale of firearms is prohibited by Federal law. Federal regulation requires licensed firearms importers, manufactures, and dealers to conduct a *NICS* background check (conducted by the Federal Bureau of Investigation (FBI)) *prior* to the transfer of any firearm to a non-licensed (non FFL) individual. 18 U.S.C. §922 (t); 27 CFR 478.102; 28 CFR 25.3

44.     Congress has regulated aspects of firearm sales and possession since the 1930's. See *United States v. Rybar*, 103 F.3d 273, 279-81 (3d Cir.1996) (reviewing the history of federal firearms legislation). The first major federal firearms legislation, the National Firearms Act of 1934, required all those engaged in the business of selling firearms to register with the federal government, and subjected firearms sales to a special tax. See Pub.L. No. 73-474, §§ 2-6, 48 Stat. 1236, 1237-38 (1934). Congress first restricted the transfer of weapons on the basis of age in 1968. See Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90-351, § 901(a)(6), 82 Stat. 197, 225-26 (1968) (finding that there "is a causal relationship between the easy availability of firearms other than a rifle or shotgun and juvenile and youthful criminal behavior, and that such firearms have been widely sold . . . to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior"); § 922(b)(1) (prohibiting the sale of firearms to individuals less than twenty-one years old); Gun Control Act of 1968, Pub.L. No. 90-618, 82 Stat. 1213, 1218 (1968) (prohibiting the sale of rifles and shotguns to individuals less than eighteen years old). Congress's

---

*1968* ("GCA") (1968): Focuses primarily on regulating interstate commerce in firearms by generally prohibiting interstate firearms transfers except among licensed manufacturers, dealers and importers. *Firearm Owners Protection Act* ("FOPA") (1986): Revised and partially repealed the Gun Control Act of 1968. Prohibited the sale to civilians of automatic firearms manufactured after the date of the law's passage. Required ATF approval of transfers of automatic firearms. *Undetectable Firearms Act* (1988): Effectively criminalizes, with a few exceptions, the manufacture, importation, sale, shipment, delivery, possession, transfer, or receipt of firearms with less than 3.7 oz. of metal content. *Gun-Free School Zones Act* (1990): Prohibits unauthorized individuals from knowingly possessing a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone. *Brady Handgun Violence Prevention Act* (1993): Requires background checks on most firearm purchasers, depending on seller and venue. *Federal Assault Weapons Ban* (1994–2004): Banned semiautomatic assault weapons and large capacity ammunition feeding devices. The law expired in 2004. *Protection of Lawful Commerce in Arms Act* (2005): Prevent firearms manufacturers and licensed dealers from being held liable for negligence when crimes have been committed with their products.

principal purpose in enacting these restrictions was "to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." S.Rep. No. 90-1097 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2113-14, quoted in *Huddleston v. United States*, 415 U.S. 814, 824, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974). See also *U.S. v. Rene E.* 583 F. 3d 8 (2009). As of January 2016, the federal agency entrusted to regulate imports, manufacture and the sale of firearms, the *Bureau of Alcohol, Tobacco and Firearms (*ATF), reported **sixty-three (63) Puerto Rico Federal Firearms Licensees (FFLs)** on the Island, all legitimate businesses authorized by Federal government to *sell* lawful firearms. None of these respectable businesses sell unlawful firearms nor supply the Island's thriving underground black-market.  In addition to Federal regulation, they have to comply with Island's matching regulation.

45.     Plaintiffs assert that the Puerto Rico Weapons Act has already been found to be subject to *abuse* by Commonwealth Officials because of unrestricted grant of investigative power vested on the Police Department. To prove a point, the Civil Case Number KPE2010-4965, *Federacion de Tiro de Armas Cortas y Rifles de Puerto Rico, et als. v. Policia de Puerto Rico, et als.*, the Commonwealth Court on its May 18, 2011 ruling, granted a request for a *preliminary injunction* to require the Police to *cease* and *desist* from engaging in the intrusive investigation of the homes of individuals lawfully authorized to possess weapons. **Thus, a finding was made that an individual's right to privacy was at risk with these kinds of investigation**.  To exacerbate the potential risks, Puerto Rico Police Department has undertaken a federally mandated reforms, as a result of a September 2011 Report by the U.S. Department of Justice that uncovered major problems that amount to crimes and corruption involving officers accused of killings, corruption charges and civil rights violations. This Court should be fully aware of *United State of America v. Commonwealth of Puerto Rico and Puerto Rico Police Department*, Civil Case No. 3:12-CV-2039.

46.     Plaintiffs assert Puerto Rico Weapons Act's Article 5.11 violates the individual right to **presumption of innocence** given that the Commonwealth law establishes an *inconsistent*

presumption that the mere possession of a weapon by an *unlicensed* individual will be considered *prima facie* **evidence** that the individual in possession had the **intent** to commit a crime. [13]   Said Article establishes the *inconsistent* presumption that conceal carry of a weapon by an individual *without* a conceal carry *permit*, will be considered *prima facie* **evidence** that said individual carried a weapon with **intent** to commit a crime.  **A law abiding citizen with lawfully obtained weapons license is "predisposed" by the law with an "intent" to commit a crime, this in violation of the right to a presumption of his or her innocence, because he/she failed to have a permit to conceal carry.**  *This in contravention of Article 5.04 mandate for mere administrative fines for individuals with weapon licenses that fail to carry a copy of their credentials on their person.* We should also point out that the simple act of the Police keeping an **Electronic Registry for every gun owner and the history of his transactions with gun-shops, the government is unlawfully keeping a Gestapo database of people who have not even yet broken any Puerto Rico laws. In essence Puerto Rico gun owners have and may be monitored more closely than criminals. Their exercise of the Second Amendment is not inherently suspicious nor warrant unjustified invasion of their privacy thru the ongoing monitoring for the duration of a weapons license.**

47.     Plaintiffs assert **Article 2.02 (12)** of the Puerto Rico Weapons Act, 25 L.P.R.A. §456 (a) is unconstitutional, in as much section (12) requires law abiding citizens to submit to law enforcement three (3) affidavits of witnesses as to his/her character and fitness to obtain a weapons license. Plaintiffs asserts this requirement violates citizen's right to privacy by *requiring disclosure* to *third parties*. Additionally, requiring a Court process to obtain a permit for conceal carry, while not unconstitutional, *does* violate that citizens right to privacy in the manner in which it is currently carried out by *requiring* three (3) affidavits of witnesses and their appearance at a court proceeding, with eventual full disclosure of the request for a conceal carry permit on the Commonwealth *Court*

---

[13] See <u>Coffin v. United States</u>, 156 U.S. 432 (1895).
Doctrine:  Every individual is to be presumed innocent until his or her guilt is proved beyond a reasonable doubt.

*website*, thereby defeating the "concealed" aspect of such a permit and placing a citizen in potential harm's way or discrimination. Art. 2.05 (A) 25 L.P.R.A. §456 (d). Said requirements unreasonably interfere with a law abiding citizens right to *privacy*, taking in to account, that the government's compelling interest is *already* served by other requirements, such as providing a fingerprint card, a Puerto Rico Police Department certificate of good standing, background check by Puerto Rico Police Department and *notice to State Attorney's office* upon filing a petition for a conceal carry permit with the Commonwealth of Puerto Rico Court system. Plaintiffs further assert that Police Department **Regulation 7311 Article 7 (l.)** and **Article 8 (1.) (c) (5.)** violates individual's right to privacy, by requiring *three (3)* individuals to provide sworn statements by way of notarized affidavits to having *no objection* to the weapon's license applicant possession of firearms.

48.     Plaintiffs further assert Puerto Rico Weapons Act **Article 5.14** violates individual's right to privacy with respect to health related information, as the law requires health providers to *notify* immediately any gunshot related injury to the Puerto Rico Police Department.  Said medical records will be subjected to Police Superintendent's investigation for gun law related violations. It is almost inconceivable that a person could walk into a lawyer's office to confess a murder and said communication be privileged, but if he walks into a physician's office or medical facility, his right to privacy may be violated by the people required by law to protect him/her, and the treating physician. This may also violate his/her right to the privacy of medical records, and the confidential nature of communications with his/her physicians, without the patient's express consent.

49.     It makes no sense to require a law abiding person to "conceal" carry a firearm (assuming is concealed for "public safety") *after* that person had to disclosed this fact to three individuals with his/her weapons license application, subjected to field investigations, disclosure again to three individuals during the conceal carry permit application with the Court, be subjected to an open *public* Court Hearing and then have the Court's website *disclose* the approval of such permit.  Now *everyone* knows, including savvy assailants, he/she owns firearms at home and may

be potentially armed outside the home.  Thus, defeating the purpose of "public safety" when *only* law enforcement needs to know, while placing a person's home and his/her personal safety at risk.

### COUNT II: Violation of Applicant/Licensee Freedom of Association

50.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

51.     The **First Amendment** of the United States Constitution (Amendment I) protects the people's right to freedom of speech, among other fundamental rights.  This amendment was held to apply to the people's *freedom of association* in National Association for the Advancement of Colored People v. Alabama, 357 U.S. 449 (1958), where the Highest Court found that freedom to associate with *organizations dedicated to the advancement of beliefs and ideas* is an inseparable part to the due process clause of the **Fourteenth Amendment** and was also protected by the **First Amendment** because privacy of membership was an essential part of this freedom.  In Roberts v. United States Jaycees, 468 U.S. 609 (1984), the Supreme Court clarify that implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious and cultural ends.  With regards to freedom of association the **Constitution of the Commonwealth of Puerto Rico's Bill of Rights** recognized that government could not enforce laws that abridge the peoples' freedom of speech, and they were allowed to join with each other and organize freely for any lawful purpose. Constitution of the Commonwealth of Puerto Rico, Article II, section 4 and section 6. So a person could lawfully choose to belong to a specific group, many groups or no group at all.

52.     Plaintiffs assert Commonwealth regulation unreasonably interfere with the weapon licensee's fundamental right of ***freedom of association*** in two ways:  First, it unreasonably requires lawfully licensed firearm owners, such as Kerkado, to maintain gun-club and Federation affiliation in order to keep his target practice *permit*, and second, it requires prospective and licensed gun-range facilities to be *endorsed and affiliated* to a private organization, the Federation.  Both

membership dues and Federation stamp are *sine qua non* requirements in order to obtain the target practice permit from the Police, with said permit's validity contingent upon the licensee's *ongoing* membership to the club and Federation for the period covered by his weapons license.  Without said permit, the license holder faces unreasonable restrictions on the number of weapons he/she can have (maximum of two), the amount of ammunition he/she can purchase (50 rounds), and is *de facto* unable to use lawfully authorized private gun-ranges ascribed to the Federation, the only kind in existence on the Island.  **The mandatory affiliation to gun-clubs and the Federation are pre-requisites to obtain a permit from the governmental agency that enforces Act No. 404. This is state-induced oligopoly (gun-clubs)/monopoly (Federation), whereby the State has delegated the *ultimate* decision as to who gets to operate private gun-ranges on the Island.** This is the result of collusion among club owners which has significantly reduced competition and has led to higher prices for Puerto Rico consumers.  Both the Police and the Sports Departments *have* the expertise and authority to complete such process, *without* the need of a private third-party.

53.     Puerto Rico Weapons Act Article 1.02 (n) defines "Federación de Tiro" as any federation ascribed to the Puerto Rico *Olympic* Committee which represents the *Olympic* sport of target practice ("tiro al blanco").  25 L.P.R.A. §455.  Article 2.5 permits a single representative who has been certified by a federation to be named by the Sports Secretary as member of the Commonwealth's Interagency Committee to fight Illegal trafficking of Weapons. 25 L.P.R.A. §456n.  Act No. 404 Chapter 3 regulates "target practice permits", with Article 3.01(c) ascribing to the Sports Secretary the authority to ***certify*** that an entity, such as *bona fide* gun-club or target practice federation, in order for the Police Superintendent to ***issue*** their corresponding permit. We should point out that Subsection (c) of said Article also ascribes to the Police Superintendent an obligation to keep a registry with the names, age, and address of *every* person to whom a target practice permit has been issued, keeping information as well on the weapon's license number, and the Federation, including federation's seal number, to which the permit holder belongs, with the

obligation also, to notify the Sports Secretary which permits are cancelled for **failure to renew** Federation membership dues. 25 L.P.R.A. §45. **Article 3.02** regulates licenses for "target practice" clubs. **Section A Grants Sports Secretary the authority to approve the club's facility, amongst other requirements, subsection (7) requires the prospective gun-club/gun-range to certify its membership to the "Federacion de Tiro".** Act No. 404 **Article 3.04** regulates the process for the Police Superintendent to issue *individual* target practice permits to weapons license holders, with **section (A) requiring the prospective target practice permit applicant to show his/her Federation's stamp**, with an application fee. **Section (B) prohibits obtaining a target practice permit without proof of membership from a gun-club *and* "Federacion de Tiro". Section (D) requires the target practice permit holder to *keep and maintain* active membership to a gun-club ascribed to the Federation, and certified by the Sport Secretary, in order *retain* a valid target practice permit. Article 3.06 authorizes the Police Superintendent to cancel any target practice permit, for failure to renew and/or pay the Federation stamp/seal.** 25 L.P.R.A. §457e. Note that Article 1.02 of Act 404 *definitions* does not define what a "club de tiro" or gun-club is. Article 8, section 5 of Police Regulation No. 7311, also requires the individual target practice permit applicant to submit a copy of the Federation's stamp (subsection c) and a certificate of membership into a gun-club (subsection d).

54. *Federacion de Tiro de Armas Cortas y Rifles de Puerto Rico*'s Constitution own preamble indicates it represents a ***Sport*** "…*en representación del Deporte de Tiro al Blanco*…" and this *Puerto Rico Shooting Association* organized itself under the covenants of the Puerto Rico Olympic Committee. Said Constitution's Article 601 lists among its sources of income (A) the fees paid for by gun-clubs and target practice permit holders. Federacion's own Membership Regulation for Gun-Clubs (Gun-range) Article 301 (A) requires prospective applicants for endorsement to swear allegiance to the Federation, Article 304 requires each Club/Range to pay annual fee of $25.00 and each Target Practice permit holder to pay a fee of $12.00 every 3 years.

***On August 18, 2016, Federation sent a letter to Phoenix refusing to accept an affiliation request.***
Sport's Regulation 2068, titled "Target Shooting Rules of Puerto Rico", predates Puerto Rico Weapons Act No. 404, since it was enacted back in 1976.  As an objective Article II indicates it seeks to "…promote and encourage the development of the **sport** of target shooting…" (emphasis given) As a prerequisite for a gun-club/gun-range to obtain a target shooting license, Article V (I) (g) dictates that "A certificate of membership in the association or shooting federation." is required.
***Without Federation's endorsement and certificate of affiliation Phoenix can't obtain a license***.
A previous attempt by Phoenix to comply with this affiliation requirement, by registering its very own *Puerto Rico Tactical Shooting Association*, a non-for-profit corporation with Department of State Registration No. 315162, was initially "certified" as a bona fide organization by the Sports Department back in 2015, and several Phoenix instructors were even licensed by Sports, only to be later met with fierce resistance under pressure by the Federation, and at some point in 2016, their instructor's license were unlawfully denied by Sports.  In essence, Phoenix's association was arbitrarily "shut-down" because according to Sports officials, they made a mistake and should not have certified their association.  An instruction was given by Sports officials, to deny their license.
**Federation's refusal to grant affiliation to Phoenix and endorsement of facility, is a reprisal for Phoenix's attempt to start a "tactical" organization and their "self-defense" approach.**
Federacion will no doubt respond to this Complaint alleging its mandatory membership is a matter of "public safety", however, the *only* expert on public safety, the Puerto Rico Police has already *testified* under oath before Puerto Rico's legislature, that membership affiliation is a matter of the *sport*, more than an issue of public safety.  In fact, both the Puerto Rico Department of Justice and Puerto Rico Police have *testified* there is *no legal obstacle* to do away with mandatory affiliation.

55.    **Act No. 404 impermissible delegation of State's regulation to a *private* third party, which in turn, derives economic benefits from this unrestricted grant of authority, is unconstitutional**.  The delegation of authority exclusively to a group comprised of *existing* gun-

clubs/ranges representatives, who comprised membership of the *exclusive* Federation, violates citizens right to *freedom of association*.  Amongst Kerkado's opposed Federation conduct, is the possible unlawful payment of travel expenses for 43 individuals to the Olympic events in Brazil, including Puerto Rico Sports and Recreation public officials and employees, to witness a single contestant.  **The Federation has now sought to prohibit Phoenix from engaging in the tactical training of its students, by requesting all gun-range owners to refrain from allowing groups like Phoenix to use their facilities, and simultaneously, has denied Phoenix the opportunity to open its own training facility in Hatillo.**  By refusing *de facto* its facility's endorsement, the Federation has blackballed Phoenix, this in spite of the fact that several gun-range owners have allowed Phoenix to use their facilities for *years*, as long as it paid substantial rental fees.  In other words, as long as gun-range owners *profit* from Phoenix, they weren't quick to object, but now that Phoenix wants to open its own training facility, Phoenix, as far as the Federation is concern, has now outlived its usefulness.  This hypocrisy is a fraudulent way to induce Phoenix to conform to the Federation's own "Olympic" standards.  Attached is the Federation's letter, marked **Exhibit**.

56.     We should point out that Puerto Rico Supreme Court addressed similar concerns regarding mandatory affiliation and funding in *Rivera Schatz v. Estado Libre Asociado de Puerto Rico*, 2014 TSPR 122, 191 D.P.R. __ (2014).  With its ruling, Puerto Rico's highest Court clarified that a person (in that case attorneys) ought to be free to *choose whether to belong to one, to all, or no organization*, based on the person's free will to choose.  Said Court also manifest that it would have been irresponsible to abdicate its inherent power to regulate.  **In this case, is unconstitutional for the Commonwealth to delegate powers given to the Police and Sports Departments over licensees and gun-range facilities, to a private entity who chooses to impose its own agenda.**  The Federation has unreasonably become *de facto* the ultimate decision-maker as to who gets and what requirements must be met by private gun-range facilities.  **This in spite, of the fact that public safety concerns correspond to Puerto Rico Police Department and the Sports and**

**Recreation Department. The Federation will not allow Phoenix to have its facility authorized,**
**and now has prohibited from and has sought ways to hinder Phoenix's attempt to use private**
**properties for tactical self-defense training.**

57.    Phoenix asserts, that the lack of publicly funded or public facilities for citizens to
train with weapons for self-defense, and the strict licensing requirements for a private gun-range,
further creates a burden, as *membership* is required in order to use most, if not all, private gun-
ranges on the Island.  The mandatory Federation affiliation/support further puts a strain on the
Island's citizens already fragile economic situation.  That is why Phoenix, a non-profit, seeks to
open the first one-of-a-kind tactical target shooting range, a non-sports related facility, dedicated
to self-defense training courses under supervision of Phoenix's highly trained mentors.

58.    Plaintiffs assert financial support and/or membership into the Federation by target
practice permit holders should be strictly *voluntary*.  Plaintiffs further assert, gun-clubs/gun-range
membership into the Federation, as prerequisite for a State license to operate, should be *voluntary*.

59.    Plaintiff asks Police and Sports Departments be ordered to consider certification
and licensing of its training facility, without prerequisite affiliation and Federation endorsement.
Further, plaintiffs ask that target practice permit holders be exempted from *mandatory* Federation
affiliation/support, as prerequisite for a target practice permit application, and the permit's validity.

## COUNT III: Encroachment of a Constitutional Right:
## Unlawful taxation of the individual's Second Amendment

60.    Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and
allegations contained in the previous paragraphs as if fully set forth herein at length.

61.    Plaintiffs assert that Puerto Rico Police Department Regulation 7311 Article 9 (A)
(1.) (e) and Article 24 (D) unreasonably interfere with the lawful exercise of a constitutional right
by labeling the issuance of a weapons license a "*privilege*". Public service employees of the
Commonwealth of Puerto Rico have as *sine qua non* requirement to commence employment in the

public sector, to take oath or affirmation to the fact that they will comply with and respect Federal laws and the fundamental rights of United States Citizens in Puerto Rico. See <u>Asociación de Dueños de Armerías de Puerto Rico v. Policía de Puerto Rico</u>, K PE2008-0340. Puerto Rico Appeals Court, June 28, 2012. An unconstitutional act by defendant's officials would be at least, a violation of that official's oath to uphold the Constitution and our Federal Laws.

62.     The Constitution of the United States is the supreme law of the land. *Marbury v. Madison*, 5 U.S. 137. **No state may convert a secured liberty into a privilege, and issue a license and fee for it**. *Murdock v. Pennsylvania*, 319 U.S. 105. **If the state converts your right into a privilege and issues a license and charge a fee for it, that fee is *unconstitutional*.** *Shuttlesworth v. Birmingham, Alabama*, 373 U.S. 262. Back in *1982*, Puerto Rico Highest Court ruled that the right to own and carry firearms was a "privilege" to be regulated by the State. *Pueblo de Puerto Rico v. Hector Gerardino del Rio,* 113 D.P.R. 684 (1982). Direct contravention to the U.S. Constitution and subsequent U.S. Supreme Court decisions recognizing a *fundamental* right.

63.     The Puerto Rico Weapons Act, as amended, requires weapon licensee to pay a *tax* to the Puerto Rico Police Department, a fee completely *unrelated* to the cost associated with the Conceal Carry Permit petition process mandated by the law, thru Puerto Rico State Courts.

64.     Plaintiffs assert Puerto Rico Weapons Act encroaches upon a license holder's legal rights and places undue burden on his/her constitutional rights, in three ways: **Article 2.02 (11)** requires applicant to pay a ***$100.00 tax*** with his/her application for a weapons license, 25 L.P.R.A. §456a; **Article 2.05 (A)** requires the weapons licensee to pay a ***$250.00 tax*** before he/she submits his petition to State Court for a conceal carry permit, 25 L.P.R.A. §456(d); and the Commonwealth has also imposed Sales Tax on sale of "Arms", including firearms and ammunition, being firearms necessary in order to exercise the Second Amendment.

65.     Plaintiffs assert that Police Department Regulation 7311 Article 7 (k) and Article 8 (1) (c) unreasonably interfere with the lawful exercise of a constitutional right by placing a $100.00

*tax* on the weapons license application.  Plaintiffs assert Police Department Regulation 7311 Article 8 (5) (a) and Article 8 (5) (d) unreasonably interfere with lawful exercise of a constitutional right by also placing a $25.00 *tax* on the weapons license target practice *permit* as well as an additional $20.00 *tax* on the process to *change* the license category to include the target practice permit itself.  Plaintiffs further assert that Puerto Rico Police Department Regulation 7311 Article 8 (6) (a) also unreasonably interfere with the lawful exercise of a constitutional right by requiring an additional $20.00 tax on the process to *change* the license category to *include* conceal carry, this *after* a Commonwealth Court has already authorized said permit and order Police to include.

66.    Plaintiffs want to emphasize to the Court that the conceal carry permit application, does not involve any interaction with Police to justify a $250.00 tax as *prerequisite* for an applicant to file his/her Court petition for a concealed carry permit.  Plaintiffs assert **Article 2.05 (A)** of Act 404 unreasonably interferes with the lawful exercise of constitutional rights, in as much as it places a **$250.00 *tax*** on a citizen's right to "bear". 25 L.P.R.A. §456d. Act No. 404 requires a process thru **Commonwealth of Puerto Rico Court of First Instance**, which *requires its own filing fee* for the *ex-parte* petition process. (Currently approximately $90.00) The process, as the law dictates, also requires payment of a **$250.00 tax stamp to the Puerto Rico Police Department**, as *prerequisite* for the Court to accept and process said petition. This in spite of the fact that Puerto Rico Police does not engage and/or participate in the Judicial Review process for the permit. **There is no relationship between these taxes, which respond to a government agency's economic interest, and the Commonwealth's concern for gun related violence or public safety.**

### COUNT IV: Unreasonable Interference with Interstate Commerce/Travel

67.    Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

68.    Plaintiffs assert that Puerto Rico Weapons Act Article 5.01 unreasonably interferes with lawful interstate commerce of firearms by requiring a Commonwealth's weapons license for

anyone to *import*, to *offer* and to *transfer* any weapon **into** the Commonwealth.  Plaintiffs further assert that Police Department Regulation 7311 Article 15 unreasonably interferes with interstate commerce by mandating said requirement.  Plaintiffs further assert that Puerto Rico Weapons Act Article 5.12 unreasonably interferes with interstate travel by requiring Airline Carriers, Sea Cruise Lines and Freight Carriers, to **withhold** delivery of any weapon it receives until a Commonwealth weapons license or gun dealer permit is shown.  Said regulation also requires Airline Carriers, Sea Cruise Lines and Freight Carriers to **notify** Puerto Rico Police with specifics concerning the weapons and the person(s) who received them.  The regulation mandate that Airline Carriers, Sea Cruise Lines and Freight Carriers **will not deliver** said weapons to any person without a license, until the Police Superintendent authorizes its delivery.  Failure to comply is a *felony* that carries both incarceration for a fix term of twelve (12) years and a hefty fine between $2,000.00 to $10,000.00 dollars.  Plaintiffs further assert that Police Department Regulation 7311 Article 20 unreasonably interferes with interstate commerce by mandating said requirement. Plaintiffs further assert that Puerto Rico Weapons Act Article 7.05 unreasonably interferes with interstate commerce (as well as individual right to privacy) by requiring Puerto Rico Port Authority to place warning signs on traveler's entry points of the *traveler's obligation* to notify Puerto Rico Police Department upon his or her arrival with a weapon into the Commonwealth. Plaintiffs assert that regulation of interstate Commercial transportation is subject to **Federal Preemption** by the *Federal Aviation Administration* (FAA), *Transportation Security Administration* (TSA), *United States Department of Agriculture* (USDA), *US Customs and Border Protection* (CBP) and the *United States Coast Guard* (USCG).  On the subject of interstate transportation of firearms Federal law mandates that *"[n]otwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitle to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place*

*where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle:  Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locket container other than the glove compartment or console.*"  18 U.S.C. §926A.  Puerto Rico Act No. 146 (2014) amended Article 5.12 of Act No. 404 to require Airline/Sea Carriers to **withhold** delivery of lawful firearms/ammunition until a Weapons License is shown, and require carriers to notify the gun-owner's information to Police.

69.     Plaintiffs assert that Puerto Rico Weapons Act **Article 3.01** and **3.05** unreasonably interferes with interstate travel with lawful firearms because it **allows for a provisional permit *exclusively* for gun-club participant's guests (as opposed to any individual non-associated with a local gun-club).  Article 3.01** requires Sports and Police to issue provisional permits to travelers with firearms, **as long as they are "deportistas" or sports related travel with the intent to engage in target practices events.**  In essence, a person who is not affiliated with any local gun-club, nor intents to engage in customary target practice, may not be lawfully allowed to bring his/her firearms for self-defense or any other non-sport related events. 25 L.P.R.A. §45 and §457d. At the moment, the law requires a traveler to submit to scrutiny upon his/her travel *into* the Island. Scrutiny which unreasonably restricts entry of his/her lawful firearms and has done very little, at preventing unauthorized influx of firearms. To require the use of local gun-stores for *transfer* costs.

70.     Plaintiffs maintains that Puerto Rico Weapons Act discriminates against interstate commerce/travel on its face and in practical effect, and therefore, is *per se* violative of the dormant Commerce Clause. Phoenix argues the Act erects significant procedural and substantive barriers for entry of lawful weapons into the Commonwealth by mainland citizens, for the express purpose of protecting local gun-stores from competition. It further contends that the practical effect of the application of the Act to lawful firearm entry has been discrimination against continental gun

31

owners, out-of-state firearms training participants and continental gun-shows. Even if application of the Act did not discriminate against mainland gun owners, the Act's erection of entry barriers imposes burdens on interstate travel that are not outweighed by local benefits, and therefore fails the balancing test. The above referenced sections of the Commonwealth law, are also preempted to some extent by the *Law Enforcement Officer's Safety Act* (LEOSA) which authorized *concealed carry* for qualified law enforcement officer in any jurisdiction, this also include Puerto Rico.

71.     Under the dormant Commerce Clause, if a state law has either the purpose or effect of significantly favoring in-state commercial interests over out-of-state interests, the law will "routinely" be invalidated "unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178, 184 (1st Cir.1999) (quoting West Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 192-93, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994)). If the state law regulates in-state and out-of-state interests evenhandedly, the statute will be upheld "unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). This case is distinguishable because, as we have explained, the Act favors the largely local group of established gun-shop owners, by requiring travelers to ship lawful firearms thru them, instead of using their luggage, and then a local license. This strongly suggest that the Act helps perpetuate local dominance of Puerto Rico's gun industry.

### **COUNT V: Intentional Infliction of Emotional Distress/Torts**

72.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

73.     Defendant Federacion, is a private entity that intentionally inflicted emotional and financial distress on the Plaintiffs. Defendant's conduct, as alleged herein, make them liable under Article 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and §5142.

74.     Defendant's actions and omissions were tortious and caused all Plaintiffs severe distress, anguish, humiliation, and shame, which should be compensated.  Defendant's conduct and omissions are the proximate cause of all damages complained of herein, in this Supplemental State Law Claim under Puerto Rico's Tort Statute.

75.     Plaintiffs assert Second Amendment is *not* a hobby or sport, but an *individual* right. *Arms in the hands of citizens may be used at individual discretion in private self defense.* J. Adams

76.     If it pleases the Court, plaintiffs hereby request a *Hearing* for Oral Argumentation.

77.     Attached to this Complaint the Court will find the following supporting documents:

    a.   **Exhibit IA** Federation's Letter Rejecting Phoenix Application

    b.   **Exhibit IB** Federation's Letter with Smear/Blackball Campaign against Phoenix.

    c.   **Exhibit IIA** Federation's Constitution.

    d.   **Exhibit IIB** Federation's Regulation.

    e.   **Exhibit IIC** Federations' Annual Statement for 2014 filed with Commonwealth.

    f.   **Exhibit IID** Federation's filed Financial Disclosure Statement for 2014.

    g.   **Exhibit III** Sports Regulation for Target Practice/Shooting.

    h.   **Exhibit IV** January 2016 ATF's Puerto Rico Firearms Licensees List (FFLs).

    i.   **Exhibit V** ATF's Firearm Related State Laws (Includes P.R. pag. 430 (p. 412)).

    j.   **Exhibit VI** 2014 NICS Operations Report by FBI.

    k.   **Exhibit VII** Puerto Rico's Act 404 as recently published by PR's OGP.

    l.   **Exhibit VIII** Sample Federal Firearms purchase forms.

    m.   **Exhibit IX** ACLU 2012 Report on Puerto Rico.

    n.   **Exhibit X** Investigation Report by US Department of Justice (On Puerto Rico).

    o.   **Exhibit XI** Investigative Findings by US Department of Justice.

    p.   **Exhibit XII** US v. PR Complaint

    q.   **Exhibit XIII** From the Bar issue 57 Summer 2016.

r. **Exhibit XIV** Claim to Sports by Phoenix for license refusal to instructors.

s. **Exhibit XV** Act No. 146 (2014) with Travel Restrictions into Puerto Rico**.**

t. **Exhibit XVI** Federation's website dedicated to a "sport".

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays for the following relief:

A.  That this Court issues a Declaratory Judgment declaring that Puerto Rico Weapons Act sections and administrative regulation, that violate ***privacy*** are unconstitutional;

B.  That this Court issues a Declaratory Judgment declaring that Puerto Rico Weapons Act sections and administrative regulation, that violate the ***right to freedom of association*** are unconstitutional;

C.  That this Court issues a Declaratory Judgment declaring that Puerto Rico Weapons Act, and administrative regulation, that imposes an ***unlawful tax*** on the Second Amendment are unconstitutional;

D.  An ***Injunction*** permanently restraining Defendants and their officers, agents, employees and all person who receive notice of the Injunction, from enforcing the unconstitutional provisions of the Puerto Rico Weapons Act and Administrative Regulation so as to restrict and/or deny required license and associated permits on the ground that the applicant has failed to comply with the unconstitutional provisions of the Puerto Rico Weapons Act;

E.  An Order requiring Puerto Rico Police Department, with funds received thus far by Weapons License/Permit Applications, to conduct Public Service Announcements regarding lawful responsible gun ownership, explaining licensing requirements;

F.  That this Honorable Court award compensatory and general damages in the amount of **$5,000,000.00** against Defendant **Federation**, for all Plaintiffs, or an amount to be determined according to proof during the trial, as remedy for Federacion's willful, wanton, and malicious acts with conscious disregard and deliberate indifference to Plaintiff's rights, including financial, mental and emotional distress and discomfort, as provided by law and statutes of the United States and Commonwealth of Puerto Rico.

G.  That this Court awards Plaintiffs with any other relief, including injunctive relief, against all Defendants, as the Court sees necessary to secure effectiveness of the Court's rulings;

H.  Award plaintiff's attorney fees and costs; and

I.  Any other relief this Court deems equitable, just and appropriate.

In San Juan, Puerto Rico, on this 29ˢᵗ. day of September of 2016.

Respectfully submitted,

/S/ Humberto Cobo-Estrella, Esq.
**USDC-PR230108**

Humberto Cobo-Estrella, Esq.
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 200-2715
Email: _hcobo@hcounsel.com_

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2016, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whim counsel has entered an operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

/S/ Humberto Cobo-Estrella, Esq.
_Attorney for the Plaintiffs_