## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF PUERTO RICO

<table>
<tr><td>

UNITED STATES OF AMERICA,

                Plaintiff,

v.

COMMONWEALTH OF PUERTO RICO and
PUERTO RICO POLICE DEPARTMENT,

                Defendants.

</td><td>

No. 3:12-CV-2039_____

**COMPLAINT**

</td></tr>
</table>

## INTRODUCTION

1.      The Puerto Rico Police Department ("PRPD") has engaged and continues to engage in unconstitutional and unlawful activity that is the product of pervasive and longstanding institutional failures. These unlawful practices include: (1) a pattern or practice of using excessive force during routine police activities; (2) a pattern or practice of relying on unreasonable force in response to public demonstrations; (3) a pattern or practice of conducting unlawful searches and seizures; and (4) a pattern or practice of engaging in discriminatory police practices. As a result of these acts, hundreds of residents of Puerto Rico suffer serious or fatal injuries, are subjected to traumatic and unjustified searches and seizures of their persons, homes, and automobiles, and are discouraged from engaging in free speech acts protected by the Constitution and federal law.

2.      The pattern or practice of illegal activity alleged in this Complaint is the product of an ongoing failure by the Commonwealth of Puerto Rico and PRPD to provide PRPD officers with the necessary guidance, training, and tools to engage in constitutional and effective law

enforcement.  These failures were documented in a 2011 report, attached hereto as Exhibit A, that was issued by the United States Department of Justice.

3.      PRPD officers currently operate without adequate and effective policy guidance and are stymied by a deficit of supervision.  They also lack sufficient pre-service and in-service training, external oversight, and effective risk management and disciplinary systems.  PRPD officers are unable to effectively and lawfully carry out their law enforcement priorities because of these institutional failures.

4.      The extensive harms caused by PRPD's deficiencies are clear.  According to PRPD, residents of Puerto Rico filed over 1,500 complaints against PRPD officers for unjustified or excessive force and assault between 2004 and 2008.  Furthermore, from January 2005 to November 2010, there were more than 1,709 arrests of PRPD officers on allegations of theft, simple assault, rape, drug trafficking, and murder.  This conduct is ongoing.

5.      As the United States Court of Appeals for the First Circuit observed recently in upholding the convictions of four PRPD officers who planted fabricated evidence to falsely arrest Puerto Ricans for years, officers who violate civil rights disregard the "honorable integrity of their guardian role" and deal civil liberties a "tragic blow" in the process.  While not all PRPD officers have engaged in unlawful behavior, they currently operate in an institution that fails to effectively prevent or correct illegal behavior.

6.      Despite clear evidence of the need for action, Puerto Rico and PRPD have failed to implement meaningful reforms to address the institutional deficiencies that have resulted in violations of the United States Constitution and federal law.  The failure to act has plunged

2

PRPD into a crisis of legitimacy and denied the people of Puerto Rico the full and equal protection of the law.

7.     This action is brought to enforce the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141.

8.     The United States seeks declaratory and injunctive relief to remedy Puerto Rico and PRPD's violations of the law and to ensure that PRPD implements sustainable reforms establishing constitutional and effective policing practices.

9.     The United States alleges the following:

## I.     DEFENDANTS

10.     Defendant Commonwealth of Puerto Rico is the government of Puerto Rico.  Puerto Rico has approximately 3,726,000 residents and is an unincorporated territory of the United States.

11.     Defendant PRPD is a law enforcement agency and agent of the Commonwealth of Puerto Rico.  PRPD provides general policing and law enforcement throughout Puerto Rico, including specialized security and protective services.  PRPD employs approximately 17,000 sworn officers, making it the second largest law enforcement agency in the country.

## II.     JURISDICTION AND VENUE

12.     This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1345.

13.     The United States is authorized to initiate this suit under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("§ 14141").

14.     Declaratory and injunctive relief is sought as authorized by 42 U.S.C. § 14141(b).

15.     Venue is proper in the District of Puerto Rico, pursuant to 28 U.S.C. § 1391. Defendants reside in Puerto Rico, and a substantial part of the events or omissions giving rise to this claim occurred in Puerto Rico.

### III.     FACTUAL ALLEGATIONS

16.     From at least 2007 to the present, PRPD officers have engaged in a pattern or practice of unconstitutional and illegal acts, including the use of excessive force during routine police activities, the use of excessive force in response to individuals engaged in protected speech acts, unlawful searches and seizures, and discriminatory policing.

17.     The unlawful acts by PRPD officers constitute a pattern or practice of unconstitutional conduct that deprives the residents of Puerto Rico of the rights, privileges, and immunities secured and protected by the Constitution and federal laws.

18.     Defendants have failed to correct the immediate causes and contributing factors of unlawful activity by PRPD officers. Defendants do not currently provide PRPD officers with sufficient or appropriate policy guidance or training as it relates to the use of force, crowd control, searches and seizures, and bias-free policing. As such, PRPD's unlawful activity is not isolated to a particular unit or rank of PRPD officers. PRPD supervisors are often enablers or direct participants in the unconstitutional acts described throughout this Complaint.

19.     Defendants have also failed to create a system to adequately determine whether PRPD officers are engaged in improper and unlawful misconduct. Defendants routinely fail to investigate allegations of unlawful conduct by PRPD officers in an effective or timely manner, fail to hold officers accountable for uses of excessive force or unlawful searches and seizures, and fail to hold supervisors accountable for inadequate supervision or deficient investigations.

Defendants' failures have contributed to PRPD's inability to ensure that the constitutional and federal rights of Puerto Rico residents are protected.

### A. PRPD Is Engaged in a Pattern or Practice of Excessive Force in Violation of the Constitution and Federal Law.

20.     PRPD officers routinely use force when no force or lesser force is appropriate.  The use of excessive force occurs during routine policing activities, specialized operations, and in response to public demonstrations.  As a result of the use of excessive force, PRPD officers have seriously injured or killed individuals without justification.

21.     The use of excessive force by PRPD officers includes both lethal and less lethal force, which takes various forms, including:  discharging firearms, striking and jabbing with batons, deploying chemical agents, discharging electronic control weapons ("ECWs"), and employing dangerous neck restraints.

22.     Defendants have failed to institute policies, training, and procedures to prevent the use of excessive force by PRPD officers.  Defendants have also failed to adequately supervise and, when necessary, discipline PRPD officers who have engaged in the excessive use of force.

### 1.     PRPD Officers Use Excessive Force During Routine Police Activities in Violation of the Fourth Amendment.

23.     PRPD officers frequently use excessive force during routine police actions, including traffic enforcement, home searches, and interactions with community members.  PRPD also uses excessive force during the arrest or detention of passive individuals and in response to perceived insults.

24.     PRPD officers have used lethal force in instances where no force was justified.  For example, a PRPD officer was found guilty of first degree murder on April 15, 2008, after shooting an unarmed man during the course of an arrest in August of 2007.  At the time of the

incident, the victim was directing traffic during a birthday celebration in Humacao, Puerto Rico. PRPD officers drove by the victim and stopped after they heard what they believed to be an insult. A PRPD officer then exited the vehicle and approached the victim, leading to a verbal exchange. The officer then told the victim he was under arrest.

25.     As the officer attempted to subdue and handcuff the individual, the officer discharged his holstered firearm and shot himself in the leg. The officer then unholstered his firearm and shot the man multiple times at close range in the head and body.

26.     After the shooting of the victim, PRPD officers left the scene, abandoning the victim and shepherding their injured colleague to a nearby hospital. The officers did not notify PRPD central command that anyone other than the police officer had been shot. When other PRPD officers arrived on the scene, they found the victim bloodied and gasping for air. Shortly after, he was pronounced dead.

27.     PRPD officers involved in the shooting initially claimed they acted in self-defense. Their immediate supervisors echoed this version of events, and the preliminary report on the incident consisted only of statements from the officers and an alleged eyewitness who corroborated the officers' version of the events. However, a video recording taken by a civilian that surfaced shortly after the incident showed the officer firing his weapon at the unarmed man multiple times without cause as onlookers pleaded with the officer to stop.

28.     At the time of the shooting, the officer was the subject of seven civilian and internal complaints. An internal affairs report issued four days after the shooting found that the officer had a "bad attitude," exhibited "strange behavior," and demonstrated a "tendency for being an aggressive person."

29.     Federal courts have found that many other PRPD officers engage in excessive force during routine policing activities. For example:

   a.   On March 25, 2010, a federal jury found two officers liable for the use of excessive force during a home search in June of 2007. During the search, a group of twelve PRPD officers hit an occupant of the home in the head and told him that if a weapon was discovered he would be killed. Following his arrest, the man was restrained and beaten.

   b.   On March 13, 2009, a PRPD officer pled guilty to aggravated assault and aggravated restraint of liberty following the March 2007 arrest of an individual. The PRPD officer took the individual to the back of a shopping center and beat him until he lost consciousness. Instead of taking him to a police station for booking, the PRPD officer abandoned him behind the shopping mall with injuries to his face and body. A passerby found the individual the next day and transported him to the hospital.

   c.   On November 10, 2009, a federal jury found a PRPD officer liable for violation of the Fourth Amendment following a confrontation with a civilian in a store parking lot in January of 2007. The victim was surrounded by a group of plainclothes officers who pulled him out of his car, threatened to kill him, dropped him on the ground, and then proceeded to hit his mouth, grab his leg, and drag him face down on the pavement. The victim received $100,000 in damages.

30.     Despite these and other incidents, Defendants have failed to appropriately address the use of excessive force by PRPD officers and have allowed the pattern or practice of excessive force to continue. According to the most recent data provided by the Defendants, between 2004

and 2008, civilians filed over 1,500 complaints against officers for unjustified or excessive force and assault. From January 2009 to August 2010, an additional 268 complaints based on similar allegations were reported.

2.      <u>PRPD Officers Use Excessive Force During Public Demonstrations, in Violation of the Fourth Amendment and the First Amendment.</u>

31.      PRPD officers employ excessive force indiscriminately during public demonstrations. During these demonstrations, officers frequently use physical force against individuals who are perceived as critics of the policies and actions of PRPD and the Commonwealth, including those who pose little or no threat to officers, others, or themselves. Such tactics violate the Fourth Amendment's bar on the excessive use of force and result in pain, injury, and the suppression of free speech acts protected by the First Amendment.

32.      During public demonstrations, PRPD frequently deploys Tactical Operations Units ("TOUs") and other heavily-armed units to engage with crowds and protesters. Such units are not adequately trained to engage in crowd control or the appropriate use of force when dealing with public demonstrations.

33.      As a result, PRPD officers routinely fail to use non-force tactics, issue effective dispersal orders, or employ alternatives to force. Even when operating under previously prepared operational plans, PRPD officers rely on force in indiscriminate and purposeless ways when engaging with large crowds and cause physical injury and intimidate individuals.

34.      PRPD supervisors who are at the scene of large public demonstrations routinely fail to maintain discipline of subordinate officers, and in some instances, also engage in misconduct themselves. PRPD officers routinely obscure their badge numbers so that they cannot be identified in misconduct complaints.

35.     Following such incidents, PRPD command staff fails to adequately assess uses of force.  Officers' reports routinely fail to account for specific uses of force and widespread injuries suffered by demonstrators and bystanders.  As a result, officers are not held accountable for inflicting unnecessary harm and injury.

36.     The use of unreasonable force by PRPD officers is evident in public demonstrations that took place in 2009, 2010, and 2011.  During these demonstrations, PRPD officers made use of excessive force to respond to large gatherings of demonstrators.  These incidents were frequently reported in the press and captured on video.

37.     On August, 21, 2009, officers from PRPD's tactical units were deployed to address an altercation between municipal police and community residents on University Avenue near the University of Puerto Rico.  Observers gathered as the conflict continued.

38.     To clear crowds, PRPD officers indiscriminately relied on chemical agents, baton strikes, and other physical force.  In the process, PRPD officers unjustifiably used force on protestors and bystanders who were not involved in the clash with the municipal police.

39.     Video recordings and statements from witnesses indicate that officers used their batons in a forceful, arbitrary, and unnecessary manner.  As a result, many of the protestors and bystanders attempted to leave the area of the action.  Despite their attempts to flee, PRPD officers continued to use batons to push and hit these individuals.

40.     Some hours later, students gathered at a University dormitory to protest the tactics of PRPD officers.  In response to perceived critical chants and verbal insults, PRPD officers fired gas canisters without warning into the dormitory where students were studying, sleeping, or engaging in other activities.  One canister hit a student in the thigh.  She sustained an open wound, was unable to walk, and fell to the ground.  As other students came to her aid, officers

fired a second and third gas canister. The canisters emitted noxious chemicals, affecting both demonstrators and uninvolved bystanders.

41. A special commission convened by the dean of the University of Puerto Rico found that officers' use of force was directed at students' speech, observing that "the use of tear gas is not acceptably justified as a response to an insult."

42. Despite the 2009 clash, Defendants failed to meaningfully address the causes of the unconstitutional activity by PRPD officers.

43. On May 20, 2010, approximately 200 individuals gathered at the Sheraton Hotel in San Juan to protest the Governor. PRPD deployed special tactical units and other officers after the crowd began making threats and using obscene language. Soon after, PRPD officers shifted position and the protesters then entered the hotel lobby, where some attempted to gain access to the hotel's escalators.

44. PRPD officers attempted to repel individuals from the hotel lobby and escalators through the use of unnecessary and unlawful excessive force, including baton strikes, ECW discharges, and the use of chemical agents.

45. For example, PRPD officers used excessive force to restrain and arrest a demonstrator after he entered the hotel lobby. Video footage shows that officers wrestled the demonstrator to the ground and at least two officers climbed on top of him. One officer pressed his weight on the back of the demonstrator's neck, forcing his face to the ground. While the demonstrator was subdued by the officers on top of him, an officer shocked the demonstrator with an ECW three separate times in the painful drive stun, or direct contact, mode. The officer applied the ECW at various points of the demonstrator's body while telling him to "cooperate," but not offering other specific commands. The demonstrator was not posing a safety threat or attempting to flee.

46.     The officer's ECW report falsely stated that he gave proper verbal commands and that the ECW was deployed because the demonstrator was aggressively fighting. Photographs also depict then-Associate Superintendent José Rosa Carrasquillo kicking the demonstrator in the groin area while the demonstrator was restrained on the ground.

47.     On June 30, 2010, various groups engaged in demonstrations at the Capitol building in San Juan. PRPD was aware of the planned demonstrations and prepared an operational plan. The demonstration led to a series of confrontations between protestors and PRPD officers. In response to a sit-in in the hallway of the building's lobby, and despite the existence of an operational plan, PRPD officers resorted to the indiscriminate use of batons, ECWs, chemical irritants, kicking, and pushing to expel demonstrators. Officers used similar methods to disperse a crowd outside of the Capitol building during the same protest. The officers used this force in response to the protestors' peaceful expression of their First Amendment rights. As such, it was excessive and unjustified.

48.     For example, PRPD officers repeatedly hit a student journalist as they expelled her from the Capitol building. When she sat in a hallway with other demonstrators as a sign of peaceful protest, a PRPD officer hit her across the back with his baton in an attempt to drive her toward the doorway. When she reached the door and had her back to the officer, the officer shoved her out on the concrete stairs using his baton, hitting her in the neck. PRPD did not arrest her or charge her with any crime.

49.     Despite the substantial use of force against hundreds of individuals, PRPD officers detained only four individuals during the June 30 incident. Two of these individuals were released without charges, and prosecutors declined to prosecute the other two arrestees. The

11

lack of charges or prosecutions against individuals engaged in the protest provides a further indication that the officers' use of force was excessive and unreasonable.

50.     The actions of PRPD officers during demonstrations were observed by participants and bystanders at the scene and were widely reported in the press.

51.     Defendants received reports that TOUs frequently use violent force without justification. In December 2007, a PRPD committee addressed numerous complaints against TOUs for abuse of authority. The committee interviewed TOU officers, one of whom observed that such officers "jump into action to resolve, not to dialogue." The committee observed that "[t]he indiscriminate use of batons in total disregard of existing regulation . . . has occasioned totally unjustified, multiple, and serious injuries to citizens." The committee emphasized that such actions resulted in a "nearly total lack of confidence" in PRPD.

52.     The propensity to use force during public demonstrations continues to this day and is condoned by PRPD officials. Following the June 2010 incident, former Superintendent Figueroa Sancha stated publicly that he was responsible for all decisions involving the treatment of individuals who participated in the demonstrations. He also publicly justified the officers' use of force. In 2010, a TOU officer reportedly exclaimed that "arrests are someone else's job" after he was questioned about the lack of arrests following a large demonstration.

53.     A PRPD committee also reviewed the actions of TOU officers during the June 30 demonstrations. The committee identified serious deficiencies that were known to PRPD for years, but were ignored. For instance, the committee found that:  there is no selection protocol for officers entering TOUs; five percent of TOU officers are unfit for tactical duty based on the number of civilian complaints lodged against them alone; and training is inadequate and the

TOU training curriculum does not comply with contemporary standards and constitutional protections against the use of excessive force.

54.     Defendants are also aware that the use of excessive force can suppress free speech. The Puerto Rico Civil Rights Commission ("Commission"), a Commonwealth advisory body, repeatedly warned Puerto Rico of the deleterious impact PRPD tactics during demonstrations have on Puerto Ricans' First Amendment rights.  In July of 2010, the Commission publicly expressed its disapproval of Defendants' intervention with participants and journalists during large demonstrations on May 20, 2010.  Shortly thereafter, the Commission called for an investigation into PRPD actions.  In February of 2011, the Commission raised concerns again, noting that PRPD was undermining free expression through "detentions, discrimination, threats, violence, harassment, persecution, [and] intimidat[ion], including against members of the press."

55.     Despite these public admonishments, PRPD failed to appropriately address concerns regarding its crowd control policies and tactics.  Defendants continued to deploy tactical officers to address large public demonstrations, which included students and other participants, in January and February of 2011.

56.     The routine use of unreasonable force and extreme displays of force by PRPD officers during public demonstrations can be reasonably expected to deter protestors, witnesses, and other observers from participating in future public demonstrations due to the fear that they will be subjected to physical harm.

**B. PRPD Is Engaged in a Pattern or Practice of Conduct That Results in Unjustified Searches and Seizures in Violation of the Constitution and Federal Law.**

57. PRPD officers detain and arrest individuals without reasonable suspicion or probable cause of criminal activity. They have repeatedly conducted unlawful searches of persons, automobiles, and homes without warrants, consent, or adequate and accurate justification.

58. PRPD officers also routinely execute search warrants even when knowing that pertinent information on the warrant, such as the address and identity of the individual, is incorrect. In the course of searches, PRPD officers have also planted evidence to justify false arrests.

59. Unconstitutional searches and seizures by PRPD officers are routine. According to PRPD, civilians filed 1,302 complaints against PRPD officers for unreasonable or illegal searches and seizures from 2004 to 2008.

60. Defendants have failed to address unlawful searches and seizures by PRPD officers. PRPD search and seizure policies are antiquated and impractical. PRPD policies currently fail to reflect changes in legal standards regarding searches and seizures, and also fail to identify potential disciplinary actions when PRPD officers engage in unlawful behavior. Many PRPD officers do not receive copies of existing policies or policy revisions.

61. PRPD training programs on searches and seizures are also deficient. In-service training is effectively non-existent, and involves little to no explanation or discussion of governing legal standards. As a result, many PRPD officers operate without an understanding of how to carry out constitutional investigations.

62. As a result of Defendants' acts and omissions, PRPD officers engage in a pattern or practice of unlawful searches and seizures. For example:

a.  On August 10, 2012, the United States Court of Appeals for the First Circuit
    upheld the convictions of four PRPD officers who were found guilty of planting
    evidence and conducting illegal searches and seizures in order to arrest innocent
    individuals from 2005 to 2007.  Five additional PRPD officers pled guilty on
    related charges prior to trial.

b.  On April 2, 2009, a PRPD officer pled guilty to conspiracy against the rights of
    civilians following allegations that he and two other officers planted 45 bags of
    cocaine in an individual's home during a failed drug sting operation in July of
    2007.  After illegally searching the home and seizing $2,200, the officers charged
    the individual with drug possession and agreed among themselves to provide false
    testimony during future court proceedings.  On October 28, 2010, a jury found
    two other PRPD officers guilty of the charges.

c.  On March 4, 2008, two PRPD officers entered guilty pleas to federal criminal
    charges of carjacking, deprivation of civil rights, conspiracy against the rights of
    citizens, and use of weapons during the commission of a felony.  The charges
    were related to the unlawful detention of an individual by four PRPD officers in
    June of 2007, during which they assaulted and threatened him.  The officers then
    took him to his home, where they conducted a search but found nothing.

63.  The pattern or practice of unlawful searches and seizures by Defendants affects both
civilian residents of Puerto Rico and PRPD officers themselves.  For example, on April 13,
2007, a group of PRPD officers detained another officer and allegedly found drugs in his
possession.  The detained officer was charged with drug offenses and summarily suspended
from PRPD.  An investigation later revealed that the search warrant used in a search of the

officer's home was predicated on a false statement by a PRPD officer. Two officers were ultimately suspended for fabricating the case.

64.     Defendants are aware of this pattern or practice of unlawful behavior and of its causes. In 2009, a consulting firm hired by Defendants released a report detailing a comprehensive assessment of its policies and practices. The report describes PRPD's policy and training deficiencies. To date, PRPD has failed to effectively address these problems.

> **C. PRPD Is Engaged in a Pattern or Practice of Conduct That Results in Discriminatory Policing Practices in Violation of the Fourteenth Amendment and Federal Law.**

65.     PRPD officers have engaged and continue to engage in a pattern or practice of discriminatory policing. This pattern or practice of discriminatory policing includes discriminatory treatment of individuals who are or appear to be of Dominican heritage.

66.     PRPD is aware of allegations of discrimination concerning the actions of individual officers. On March 27, 2010, PRPD settled a federal lawsuit predicated on allegations that, in December of 2006, a group of officers had attacked an individual and yelled derogatory comments concerning his Dominican origin.

67.     PRPD has also faced allegations concerning its general law enforcement practices. In 2003, a federal district court found that sufficient evidence existed to establish that PRPD acted in common and mutual concert to violate the Equal Protection Clause of the Fourteenth Amendment when it targeted individuals of Dominican heritage in the course of "zero tolerance" operations. PRPD ultimately settled the case and agreed to a settlement of $600,000 for the plaintiffs.

68.     Despite allegations of discriminatory conduct, PRPD does not adequately collect data related to interactions between PRPD officers and the residents of Puerto Rico. Specifically,

PRPD forms related to such encounters do not permit PRPD officers to note when a resident is of Dominican descent.

69.     Without data concerning interactions between PRPD officers and residents of Dominican descent, PRPD is unable to maintain basic systems of accountability to ensure that all individuals are treated equally by PRPD officers, regardless of race, ethnicity, national origin, or sex.

70.     Defendants are aware of discriminatory behavior by PRPD officers. Community groups throughout Puerto Rico have lodged complaints with PRPD, the Commonwealth of Puerto Rico, and international groups concerning the unlawful practices that PRPD officers engage in when interacting with the diverse population of Puerto Rico.

### D. Defendants Have Failed To Correct the Causes and Contributing Factors of Unconstitutional Acts by PRPD Officers.

71.     The unlawful behavior of PRPD officers is the result of Defendants' failure to provide PRPD officers with the basic understanding and tools they need to safeguard the rights of the people they serve.

72.     Defendants have failed to create adequate accountability systems and disciplinary procedures to identify and address misconduct by PRPD officers. As a result, from January 2005 to November 2010, more than 1,700 PRPD officers were arrested for participating in criminal activity ranging from simple assault and theft to domestic violence, drug trafficking, and murder. These arrests are indicative of a breakdown of law and order within PRPD's ranks.

73.     The arrests of PRPD officers on allegations of corruption have resulted in numerous convictions that further evince a failure by PRPD and Puerto Rico to properly select, hire, train, supervise, investigate, and discipline PRPD officers. For example:

   a.  In December 2010, two PRPD officers were convicted of three counts each for drug and firearm-related charges for their participation in a July 2009 drug transaction in which they provided armed protection to a drug dealer during the sale of seven kilograms of cocaine.

   b.  On December 16, 2009, a PRPD officer pled guilty to charges involving aggravated illegal appropriation, fraud, witnesses tampering, preparation and presentation of false documents, and ethics violations. According to the indictment, beginning in January of 2009, several PRPD officers stole multiple items from an evidence storage room at PRPD Headquarters and tried to cover up the theft by falsifying documents and attempting to force witnesses to provide false statements.

   c.  On August 3, 2009, a PRPD Lieutenant then serving as the Director of the Special Arrest and Extradition Division pled guilty to conspiring to possess controlled substances with the intent to distribute when he and officers under his command transported cocaine in marked police vehicles and protected shipments of narcotics in October of 2008. The Lieutenant also conspired to extort money in exchange for illegally obtaining temporary prisoner release orders. He was sentenced to 168 months of imprisonment. Three other officers pled guilty to the conspiracy and other related charges.

74.   Widespread misconduct by PRPD officers continues. In October 2010, the Federal Bureau of Investigation conducted the largest police corruption operation in its history, leading to the arrest of 61 PRPD officers.

75.     In August of 2012, six PRPD officers were expelled after an investigation revealed that they were engaged in a systematic effort to misclassify serious crimes as low-level property crimes, which were ultimately not reflected in statistics concerning regional crime rates in Puerto Rico.  The tampering and falsification of such statistics frustrated efforts to effectively address serious crimes, and further eroded public confidence.

76.     Unlawful activity by PRPD officers results in significant harm to Puerto Rico's citizens.  From 2005 to 2010, PRPD received 1,459 civilian complaints alleging domestic violence by its officers.  At least 98 officers were arrested more than once on domestic violence charges between 2007 and 2010.

77.     Defendants have tolerated and facilitated the misconduct of individual officers, described in paragraphs 16-76 above, through their acts or omissions.  These acts or omissions include, but are not limited to:

      a.   failing to implement policies that appropriately guide the actions of individual officers;

      b.   failing to train PRPD officers adequately to prevent the occurrence of misconduct;

      c.   failing to supervise PRPD officers adequately to prevent the occurrence of misconduct;

      d.   failing to adequately monitor PRPD officers who engage in or who may be likely to engage in misconduct;

      e.   failing to establish a procedure whereby citizen complaints are adequately investigated;

      f.   failing to investigate adequately incidents in which a police officer uses lethal or less lethal force;

g.  failing to thoroughly and timely investigate or resolve civilian complaints;

h.  failing to discipline adequately PRPD officers who engage in misconduct; and

i.  failing to collect and analyze relevant data to ensure that PRPD officers treat all

    PRPD residents equally, without regard to race, color, sex, or national origin.

78.  The institutional failures described above serve as the foundation for the

unconstitutional and unlawful behavior described throughout this Complaint.

## IV.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### DEFENDANTS' CONDUCT VIOLATES
### THE FOURTH AMENDMENT AND § 14141

79.  Plaintiff re-alleges and incorporates by reference the allegations set forth in

paragraphs 1-78 above.

80.  Defendants and their agents, including PRPD officers, engage in law enforcement

practices that result in the unlawful use of excessive force against persons in Puerto Rico.

81.  Defendants, their agents, and persons acting on their behalf, including PRPD officers,

engage in law enforcement practices that result in unlawful stops, searches, and seizures of

persons in Puerto Rico without adequate justification.

82.  Defendants' actions constitute a pattern or practice of conduct by law enforcement

officers that deprives persons of their rights under the Fourth Amendment, in violation of

§ 14141.

### SECOND CLAIM FOR RELIEF:
### DEFENDANTS' CONDUCT VIOLATES
### THE FIRST AMENDMENT AND § 14141

83.  Plaintiff re-alleges and incorporates by reference the allegations set forth in

paragraphs 1-78 above.

84. Defendants and their agents, including PRPD officers, have retaliated against persons in Puerto Rico on the basis of protected speech and thereby chilled future speech.

85. Defendants' actions constitute a pattern or practice of conduct by law enforcement officers that deprives persons of their rights under the First Amendment, in violation of § 14141.

### THIRD CLAIM FOR RELIEF:
### DEFENDANTS' CONDUCT VIOLATES
### THE FOURTEENTH AMENDMENT AND § 14141

86. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-78 above.

87. Defendants and their agents, including PRPD officers, engage in law enforcement practices with the intent to discriminate against persons in Puerto Rico on the basis of their race, color, sex, or national origin.

88. Defendants' actions constitute a pattern or practice of conduct by law enforcement officers that deprives persons of their rights under the Fourteenth Amendment, in violation of § 14141.

### V.    PRAYER FOR RELIEF

89. The United States is authorized under § 14141 to seek declaratory and equitable relief to eliminate a pattern or practice of law enforcement officer conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

WHEREFORE, the United States prays that the Court:

a.  Declare that Defendants have engaged in a pattern or practice of conduct by PRPD officers that deprives persons of rights, privileges, or immunities secured

or protected by the Constitution and laws of the United States, in violation of § 14141;

b. Order Defendants, their officers, agents, and employees to refrain from engaging in any of the predicate acts forming the basis of the pattern or practice of conduct described herein;

c. Order Defendants, their officers, agents, and employees to adopt and implement policies and procedures in the areas of recruitment, hiring, promotions, policies, training, supervision, investigations, discipline, and oversight to remedy the pattern or practice of conduct described herein, and to prevent PRPD officers from depriving persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States;

d. Order such other appropriate relief as the interests of justice may require.

Respectfully submitted this 21st day of December, 2012,

THOMAS E. PEREZ
Assistant Attorney General

ROY L. AUSTIN, JR.
Deputy Assistant Attorney General
Civil Rights Division

JONATHAN M. SMITH
Chief

*s/Luis E. Saucedo*
LUIS E. SAUCEDO
Acting Deputy Chief
SAMANTHA K. TREPEL
SERGIO PEREZ
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Telephone:  202-598-0482
Fax:  202-514-4883
Email:  luis.e.saucedo@usdoj.gov

Attorneys for the United States