**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JOSÉ A. CRUZ-KERKADO, PHOENIX MILITARY INSTITUTE, CORP., CENTRO DE ADIESTRAMIENTOS TACTICOS DE PUERTO RICO, CORP. | |
| Plaintiffs | |
| v. | CIVIL NO. 16-2748 (ADC) |
| COMMONWEALTH OF PUERTO RICO (BY WAY OF THE PUERTO RICO DEPARTMENT OF JUSTICE a/k/a DEPARTAMENTO DE JUSTICIA, PUERTO RICO POLICE DEPARTMENT a/k/a POLICIA DE PUERTO RICO, PUERTO RICO DEPARTMENT OF LEISURE AND SPORTS a/k/a DEPARTAMENTO DE RECREACIÓN Y DEPORTE, PUERTO RICO SHOOTING ASSOCIATION a/k/a FEDERACIÓN DE TIRO DE ARMAS CORTAS Y RIFLES DE PUERTO RICO | |
| Defendants | |

**DEFENDANT PRSA'S MOTION TO DISMISS**

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

STANDARD OF REVIEW ........................................................................................................ 4

ARGUMENT .............................................................................................................................. 5

I.  The challenged provisions of the Weapons Act are not preempted by federal law ................. 5

II.  Plaintiffs fail to state a claim under §1983 against the PRSA ................................................ 6

   A.  Plaintiffs fail to allege conduct by the PRSA that is "attributable to the state" ............... 6

      1.  According to First Circuit precedent, sports organizations like the PRSA
         do not perform a traditionally public function .......................................................... 7

      2.  The PRSA does not operate in conjunction with the State ......................................... 8

      3.  The PRSA's conduct was not motivated or induced by the State ............................ 8

III.  Plaintiffs fail to state a claim under the Second Amendment ......................................... 9

   A.  In *Williams*, this Court held that the requirements challenged by Plaintiffs are
      constitutionally valid ........................................................................................................ 9

   B.  Plaintiffs' facial challenge under the Second Amendment fails ...................................... 11

IV.  The requirements of the Weapons Act do not infringe the remaining constitutional rights
     asserted by Plaintiffs ........................................................................................................... 12

   A.  Plaintiffs fail to state a plausible claim under the right of privacy ................................. 12

      1.  Plaintiffs facial attack under the right of privacy fails ............................................. 13

      2.  Plaintiffs do not have a legitimate expectation of privacy regarding
         the information required in the Weapons Act ........................................................... 13

      3.  The Commonwealth's strong and compelling interest
         in public safety outweighs any alleged privacy interest .......................................... 15

   B.  Plaintiffs fail to state a plausible claim under the freedom of association ...................... 17

   C.  Plaintiffs fail to state a claim under the Dormant Commerce Clause .............................. 20

      1.  Plaintiffs lack standing to bring a claim under
         the Dormant Commerce Clause ................................................................................ 21

      2.  The Weapons Act is justified by a compelling state interest
         in public safety, unrelated to economic protectionism ............................................ 22

V.  Plaintiffs' supplemental law claims should be dismissed .................................................. 23

   A.  Because no federal claims remain, the Court should dismiss the remaining
      claims under Puerto Rico law .......................................................................................... 23

   B.  Plaintiffs fail to state a plausible claim under Article 1802 ............................................ 24

CONCLUSION .......................................................................................................................... 25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ A. CRUZ-KERKADO, *ET AL*<br><br>Plaintiffs<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO, *ET AL*<br><br>Defendants | CIVIL NO. 16-2748 (ADC) |

### PRSA'S MOTION TO DISMISS UNDER RULE 12(B)(1) and 12(B)(6)

**TO THE HONORABLE COURT:**

Defendant the Puerto Rico Shooting Association ("PRSA") a/k/a Federación de Tiro de Armas Cortas y Rifles de Puerto Rico , by counsel, and without submitting to this Court's jurisdiction, respectfully requests that this Court dismiss Plaintiffs' claims against PRSA under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

### INTRODUCTION

Plaintiffs' complaint is plagued with pleading defects and ultimately fails to make out a plausible constitutional claim against PRSA.  Plaintiffs filed this suit under §1983 alleging that several provisions of Puerto Rico's Weapons Act are facially unconstitutional. Plaintiffs also allege that the PRSA violated their constitutional rights by denying their request to affiliate with the PRSA, which Plaintiffs needed to legally operate a shooting range in Puerto Rico.

Right out of the gate, Plaintiffs' §1983 claims against the PRSA lack a basic and essential element under constitutional law: the alleged conduct of the defendant must be attributable to the state. The PRSA, *however*, is a private organization that operates with independence from the government, meaning that Plaintiffs' §1983 claims against PRSA are doomed.

But the insurmountable deficiencies in Plaintiffs' complaint do not end there. The Court need only separate the wheat from the chaff to find that the Weapons Act's provisions challenged by Plaintiffs were previously held to be constitutional by this court in *Williams v. Commonwealth of Puerto Rico*, 910 F. Supp. 2d 386 (D.P.R. 2012). In an attempt to sidestep *Williams*, Plaintiffs rely on conclusory allegations to argue that these, and other, provisions violate "other fundamental rights." These remaining claims, however, are facially meritless and cannot withstand scrutiny.

## FACTUAL BACKGROUND

Plaintiff José Kerkado ("Kerkado") is the owner of three different types of firearm permits governed by Puerto Rico's Weapons ("Weapons Act"), Law No. 404 of September 11, 2000, 25 L.P.R.A., §§ 455-460k: a weapons license under §456a; a conceal carry permit under §456d, which authorizes him to carry a weapon in public in a concealed manner; and a target shooting permit under §457c, which authorizes him to own more than two weapons and to use the target shooting ranges in the Commonwealth.

Among the requirements for owning a target shooting permit is that a person must maintain membership in a gun club duly recognized by the PRSA. 25 L.P.R.A. §457c. A

similar requirement applies to owners of a shooting club: to obtain a license to operate a shooting range, a club must be affiliated to the PRSA. 25 L.P.R.A. §457a.

The PRSA is a private organization dedicated to developing the sport of target shooting in Puerto Rico. As part of its duties, the PRSA establishes the requisites and safety standards of the target shooting clubs in the Commonwealth. *See PRSA's Affiliation Regulation*, Docket No. 1-10, p. 7. The PRSA also trains and instructs citizens on the use of firearms. *See Constitution of the PRSA*, Document No. 1-9, p. 5.

Plaintiffs Centro de Adiestramiento Tácticos de Puerto Rico Corp. ("CAT") and Phoenix Military Institute Corp. ("Phoenix") are Puerto Rico corporations, for which Kerkado serves as resident agent. These corporations offer military tactical training to its clients. Kerkado alleges that he filed a request to affiliate CAT with the PRSA for the purpose of opening a shooting range in Puerto Rico where CAT could provide its training.

On August 18, 2016, the PRSA sent a letter to Kerkado denying his request. *See* Docket No. 1-7. The PRSA explained that the request and submitted documentation did not meet the requisites for affiliation. *Id.*

On September 29, 2016, Plaintiffs filed a complaint under §1983 against the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Police Department ("PRPD"), the Puerto Rico Department of Leisure and Sports ("PRLS"), and the PRSA alleging that several provisions of Puerto Rico's Weapons Act are facially unconstitutional

under the: (1) Second Amendment; (2) Fourteenth Amendment (Right to Privacy); (4) First Amendment (Freedom of Association); and (4) Dormant Commerce Clause.[1]

Plaintiff Kerkado argues that several requirements he complied with to obtain his weapons license, conceal carry permit and target shooting permit violated his constitutional rights. Kerkado further argues that that the PRSA also deprived him of his constitutional rights by refusing to grant affiliation to CAT, which legally prevents him from operating a shooting range in Puerto Rico.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 56 U.S. 662 (209). A complaint that presents "naked assertions devoid of further factual enhancement" or "a formulaic recitation of the elements of a cause of action" will not withstand dismissal. *Iqbal*, 56 U.S. at 678.

The First Circuit has established a two-pronged test to examine whether a complaint meets the plausibility requirement. First, the Court should separate a complaint's factual allegations from its legal conclusions. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 10 (1st Cir. 2011). The legal conclusions, unlike the factual allegations, "are not entitled to a presumption of truth" and should be disregarded. *Id*. The Court must treat as true the

---

[1] Plaintiffs also challenge all of the PRPD regulations enforcing the requirements established in the Weapons Act. For purposes of simplicity, this motion focuses on the provisions of the Act attacked by Plaintiffs. However, the legal arguments regarding these provisions equally apply to the PRPD regulations.

remaining factual allegations and "evaluate whether, taken as a whole, they state a facially plausible claim." *Id*.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider documents attached to or fairly incorporated into the complaint. *Schatz v. Republican State Leadership Comm*., 669 F.3d 50, 55 (1st Cir. 2012).

## ARGUMENT

### I.   The challenged provisions of the Weapons Act are not preempted by federal law

Plaintiffs vaguely argue throughout the complaint that the Commonwealth's regulation of firearms "is subject to Federal Preemption in some aspects, by the extensive number [of] Federal firearm laws in place." *Complaint*, Docket No. 1, ¶¶43, 68. Plaintiffs suggest, absent any meaningful legal argument, that the mere existence of federal laws regarding firearms means that preemption is in effect. This is plainly wrong.

There are three ways federal preemption occurs: express preemption, field preemption and conflict preemption. *Weaver's Cove Energy, LLC v. Rhode Island Coastal Res. Mgmt. Council*, 589 F.3d 458, 472 (1st Cir. 2009). None of these applies here and none is even discussed by Plaintiffs. The Supreme Court has recognized that "state and local governments have ample room to enact firearm regulations." *Kole v. Vill. of Norridge*, 941 F. Supp. 2d 933, 948–49 (N.D. Ill. 2013) (citing *McDonald c. City of Chicago*, 561 U.S. 742, 796 (2010)). Moreover, "Congress has nowhere used express language to preempt state and local gun control laws." *Richmond Boro Gun Club, Inc. v. City of New York*, 896 F. Supp. 276, 285 (E.D.N.Y. 1995), aff'd,

97 F.3d 681 (2d Cir. 1996). "Neither has it established a scheme of regulation so comprehensive as to displace state and local law." *Id.* Therefore, "Congress clearly has not occupied the field of regulating firearm sales". *Id.*; *see also Kole,* 941 F. Supp. 2d at 949 (declaring "frivolous" plaintiffs' arguments that "Congress intended to occupy the field of regulation firearm sales by putting in place a comprehensive scheme to regulate the movement of firearms in commerce"). Plaintiffs' preemption argument is a nonstarter.

II.    **Plaintiffs fail to state a claim under §1983 against the PRSA**

Section 1983 "creates a remedy for violations of federal rights committed by persons acting under color of state law." *Sánchez v. Pereira-Castillo*, 590 F.3d 31, 40 (1st Cir. 2009). To state a claim under §1983, plaintiffs must plausibly plead that: (1) they were deprived of a constitutional right; (2) that a causal connection exists between defendants' conduct and the constitutional deprivation; and (3) that the challenged conduct was attributable to the state. *Id.*

A.    **Plaintiffs fail to allege conduct by the PRSA that is "attributable to the state"**

Plaintiffs claim that the PRSA violated their constitutional rights under §1983 by denying Plaintiff CAT's request for affiliation, without which Plaintiffs are legally unable to acquire a license to operate a shooting range. However, it is blackletter law that section §1983 does not reach private actions. *Ponce v. Basketball Feder. of Com. of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985). And the PRSA is, as Plaintiffs admit, a private organization. *Complaint*, ¶2. Thus, in order to state a valid cause of action under 42 U.S.C. §1983 against the PRSA, plaintiffs must allege a deprivation of a right by the PRSA "which may be fairly attributable

to the State." *Id.* A private actor's conduct can be attributed to the State if the circumstances of the case meet one of three tests: the public function test, the state compulsion test, or the joint action/nexus test. *Alberto San, Inc. v. Consejo de Titulares del Condominio San Alberto*, 522 F.3d 1, 4 (1st Cir. 2008). Plaintiffs' allegations fail to plausibly satisfy any of these tests.

1. **According to First Circuit precedent, sports organizations like the PRSA do not perform a traditionally public function**

The public function test applies when the private actor performs a public function that has been "traditionally the exclusive prerogative of the state." *Alberto*, 552 F.3d at 4. This is not the case for the PRSA, a private sports organization. The First Circuit's decision in *Ponce* is illustrative. 760 F.2d at 377. There, plaintiffs brought a §1983 claim against the Basketball Federation of Puerto Rico, arguing, among other things, that the Basketball Federation's actions were attributable to the state because the Federation assumed a responsibility traditionally reserved for the state. *Ponce*, 760 F.2d at 377. The First Circuit rejected the argument and found that "regulation of amateur sports is not an exclusive function of the state." *Id.*; *see also*, *Perkins v. Londonberry Basketball Club*, 196 F.3d 13, 19 (1st Cir. 1999) ("the administration of an amateur sports program lacks the element of exclusivity and therefore is not a traditional public function").  The same goes here. The fact that the PRSA promotes the development of the sport of target shooting does not mean its actions are attributable to state.

### 2.   The PRSA does not operate in conjunction with the State

The joint action/nexus test applies when the private actor participates in joint activity with the State or its agents. *Id*. This test is also not satisfied.   There are simply no facts supporting the inference that the PRSA operates in conjunction with the Commonwealth. What is more, there is nothing suggesting that the Commonwealth exercised its powers to deny Plaintiff CAT's application for affiliation—indeed, the opposite is true. The PRSA is a private organization that operates with independence from the Commonwealth and that acted alone in its denial of Plaintiff's request. Moreover, the fact that the PRSA *might* have acted under a state statute is an insufficient nexus under this test.   *See, e.g., Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1, 9 (1st Cir. 2015) (finding that it is "insufficient simply to point to a state statute authorizing the actions of the private entity").

### 3.   The PRSA's conduct was not motivated or induced by the State

The state compulsion test applies when the "state has coercive power or has provided such significant encouragement, either overt or covert, that the challenged conduct must in law be deemed to be that of the State." *Id*.   To establish state action under that test, a plaintiff must demonstrate a particularly close tie between the state and the private party's conduct, such that the conduct may be fairly regarded as state action. *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011).  Even the rights-depriving conduct of an extensively regulated private party does not amount to action under color of state law, unless the conduct itself is compelled (or, at least, heavily influenced) by a state regulation. *Id*. Here, the complaint is bereft of any allegations showing that the Commonwealth has control over the PRSA (or its

officers) or that the decision by the PRSA to deny Plaintiffs' request for affiliation was induced or motivated by the Commonwealth. This test thus fails under Plaintiffs' complaint.

In sum, because the PRSA's conduct cannot be attributable to the state, the §1983 claims against the PRSA cannot survive.

### III.     Plaintiffs fail to state a claim under the Second Amendment

#### A.   In *Williams,* this Court held that the requirements challenged by Plaintiffs are constitutionally valid

Plaintiffs begin by saying that "they are *not* asking for this Court to deviate" from its decision in *Williams v. Puerto Rico*, 910 F. Supp. 2d 386 (D.P.R. 2012). *See Complaint*, p. 2. Yet Plaintiffs proceeds to do just that. The complaint attempts to challenge provisions of the Weapons Act that were precisely at issue in *Williams* and were held to be constitutional under the Second Amendment. The Court should thus dismiss Plaintiffs' claims under *Williams.*

The plaintiffs in *Williams* challenged several of the requirements for acquiring a weapons license under §456a: three affidavits from witnesses attesting to the applicant's good reputation in the community, that the applicant is not prone to violent acts, and stating that the witness does not object to the applicant owning a firearm; and the purchase of a $100 internal revenue stamp payable to the PRPD.

The plaintiffs also challenged several requirements for obtaining a conceal carry permit under §456d, which include the same application requirements contained in §456a, and the payment of a $250.00 internal revenue voucher payable to the Superintendent of the PRPD.

Applying intermediate scrutiny, this district court found that the above-cited requirements in §456a and §456d are substantially related to the government interest of "ensuring the safety of all of its citizens," and that they did not pose an unreasonable burden on the plaintiffs' Second Amendment rights. *Williams*, 910 F. Supp. 2d at 397. The Court thus concluded that sections 456a and 456d are not facially invalid and dismissed plaintiffs' claims.

Two cases have since been filed at the state level challenging these same provisions. In both, the Puerto Rico Court of Appeals reached the same conclusion as *Williams*. *See Rodríguez v. Estado Libre Asociado de Puerto Rico*, No. KLAN2015-01423, 2016 WL 1358376 (February 26, 2010) (stating, *inter alia*, that the requirement of providing 3 affidavits as to the persons moral character was facially valid, as it was substantially related to the interest of diminishing the risk of violent or irresponsible persons acquiring firearms); *see García Cabrera v. Caldero López*, 2016 WL 5887388, No. KLAN2016-00512 (August 31, 2016).

Plaintiffs here challenge the same requirements of the Weapons Act. For instance, Plaintiffs contend that the $100 and $250 payments established in sections 456a and 456d place undue burden on Plaintiffs' constitutional rights under the Second Amendment. *See Complaint*, Count III, "Unlawful Taxation of the individual's Second Amendment." But, as explained above, this matter was resolved by *Williams* and *Rodríguez*. *Williams* found these payments to be substantially related to the government's interest in public safety and determined that they did not excessively impinge Plaintiffs' Second Amendment rights. *Williams*, 910 F. Supp. 2d at 397. The Puerto Rico Court of Appeals in *Rodríguez* later agreed

10

and specifically stated that these payments are charged by the state to cover the costs of administrating its regulatory scheme. 2016 WL 1358376. Several circuits have also determined that licensing fees for firearms do not place an undue burden on Second Amendment rights. *See e.g., Kwong v. Bloomberg*, 723 F.3d 160 (2d Cir. 2013) (holding constitutional under the Second Amendment a $340 fee for a license to possess a handgun in one's home); *Heller v. D.C.*, 801 F.3d 264 (D.C. Cir. 2015) (finding that fees associated with the constitutional requirements of firearm registration and fingerprinting of registrant are constitutional under the Second Amendment).

*Williams*, *Rodríguez* and the overwhelming case law are controlling in this case: the challenge provisions do not excessively impinge on Plaintiffs' constitutional rights. So, the claims under the Second Amendment must be dismissed.

### B.  Plaintiffs' facial challenge under the Second Amendment fails

The Supreme Court has explained that "facial challenges are disfavored", *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). A facial attack is also "the most difficult challenge to mount successfully, since that challenger must establish that no set of circumstances exists under which the act would be valid" or that the statute lacks any "plainly legitimate sweep." *United States v. Stevens*. 559 U.S. 460, 472 (2010); *see also Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 736 n. 10 (A plaintiff making a facial claim faces an "uphill battle" because "it is difficult to demonstrate that mere enactment of a piece of legislation" violates the plaintiff's constitutional rights.).

In this case, Plaintiffs fail to show that the challenged requirements of the Weapons Act would be "invalid under all circumstances" under the Second Amendment. *See Williams*, 910 F. Supp. 2d at 393. And this court, as well as the Puerto Rico Court of Appeals, has held that the challenged provisions are not facially invalid. Plaintiffs' facial attack is thus meritless.

IV.    **The requirements of the Weapons Act do not infringe the remaining constitutional rights asserted by Plaintiffs**

A.    **Plaintiffs fail to state a plausible claim under the right of privacy**

Plaintiffs recognize that *Williams* and *Rodríguez* upheld the constitutionality of the challenged provisions. So, in an attempt to bypass these decisions, Plaintiffs bootstrap a First Amendment claim arguing that the following requirements of the Weapons Act violate their right to privacy:

1)    Three affidavits from witnesses attesting to the applicant's good reputation in the community, that the applicant is not prone to violent acts, and that the witness has no objection to the applicant owning a firearm, 25 L.P.R.A. §§456a;

2)    Appearance at a court proceeding, (if deemed necessary by the Court), and public record of the conceal carry permit process on the website of the Court of First Instance, 25 L.P.R.A. §456d (a); and

3)    A healthcare professional must inform the police when a gunshot wound is treated at a hospital or clinic, 25 L.P.R.A. §458m.

*See Complaint*, ¶¶ 47-49. Specifically, Plaintiffs assert that the first two of these requirements force the disclosure to third parties that they are applying for a conceal carry permit, and that the third requirement requires the disclosure of personal health information, all in violation of the right to privacy. These claims have no merit.

1.  **Plaintiffs facial attack under the right of privacy fails**

As is required for a facial challenge, Plaintiffs do not show that there is no legitimate application of the challenge provisions. Indeed, they cannot prove that under "no set of circumstances" can the Commonwealth force them to disclose the information that they allege is private. Furthermore, and as the Court ruled in *Williams*, the predictive judgment of the legislature in enacting these provisions deserves deference. *See Kachalsky v. County of Westchester*, 701 F.3d at 97 (citing *Turner Broad Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994)) ("In the context of firearm regulation, the legislature is 'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks."). Plaintiffs thus fail to allege a plausible facial challenge.

2.  **Plaintiffs do not have a legitimate expectation of privacy regarding the information required in the Weapons Act**

The Supreme Court has held that the "right to privacy" is implicit in the Fourteenth Amendment. This right extends to the "individual interest in avoiding disclosure of personal matters" and to "the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). "In the context of government disclosure of personal matters, an individual's right to privacy is violated if: the person had a legitimate expectation of privacy; and (2) that privacy interest outweighs the public need for disclosure". *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996).

Plaintiffs' claim fails at the first step of the analysis. Plaintiffs have not—and, indeed, cannot—establish that they have a legitimate expectation of privacy as to the information required in applying for a weapons license and a conceal carry permit. The complaint cites no case law establishing that disclosure in this context implicates privacy rights.[2]

These type of requirements are part of longstanding regulations on firearms, which are "presumptively lawful." *Heller v. District of Columbia*, 670 F.3d 1244, 1254 (D.C. Cir. 2011) (finding that the "basic requirement to register a handgun is longstanding in American law" and that "the submission of certain information . . . does not impinge upon the right protected by the Second Amendment"). For example, §456d provides that the state is authorized to require, if it deems necessary, a public hearing for a conceal carry permit application, so that the applicant may prove that he fears for his safety—a *sine qua non* of obtaining the permit. Various courts have upheld similar regulations. *See e.g., Kachalsky v. Cacace,* 817 F. Supp. 2d 235, 270 (S.D.N.Y. 2011), aff'd sub nom. *Kachalsky v. Cty. of Westchester*, 701 F.3d 81 (2d Cir. 2012) (upholding licensing law requiring a showing of "articulable need for self-defense" to openly carry and completely prohibiting concealed carry); *Young v. Hawaii*, 911 F. Supp. 2d 972, 991 (D. Haw. 2012) (requiring applicant to provide sufficient showing of urgency or need or fear of injury to receive license to carry concealed firearm in public was not unconstitutional).

---

[2] The case law cited by Plaintiff discussing the expectation of privacy in the Fourth Amendment search and seizure context is wholly inapplicable to this case.

### 3.   The Commonwealth's strong and compelling interest in public safety outweighs any alleged privacy interest

Even if Plaintiffs had shown that they have a legitimate privacy interest, which they have not, they fail to satisfy the second element of the analysis. First Circuit precedent states that the right to privacy "must often give way to considerations of public interest." *Daury v. Smith*, 842 F.2d 9, 13 (1st Cir. 1988). The government thus "has the power to compel disclosure of otherwise private information when its interest in the information outweighs the individual's interest in non-disclosure." *Shoemaker v. Handel*, 619 F. Supp. 1089, 1106 (D.N.J. 1985), aff'd, 795 F.2d 1136 (3d Cir. 1986) (citing *Plante v. González*, 575 F.2d 1119, 1134 (5th Cir. 1978). This is precisely the case here.

Plaintiff's alleged interest—that is, to prevent the disclosure of the application process for a weapons license or a conceal carry permit—yields to the government's substantial interests in (1) ensuring that the applicant is of good moral character (through the three-affidavit requirement), *see Hightower v. City of Boston*, 693 F.3d 61, 76 (1st Cir. 2012) (holding that the statute requiring licensees be "suitable" in order to possess a firearm license did not violate the Second Amendment); (2) ensuring that the government is aware of who owns deadly weapons (through the registry of firearm owners); and (3) ensuring that the person applying complies with the legal requirements (through the public hearing). This court has recognized that the Commonwealth's interests are compelling.  *See Williams*, 910 F. Supp. 2d at 397 (The interests of the government in enacting the PR Weapons Act "fall under the substantial and significant government interest in ensuring the safety of all its citizens."). At

bottom, these interests in "ensuring the safety of all of its citizens", *Williams*, 910 F. Supp. 2d at 397, will easily outweigh Plaintiff's interest in nondisclosure.

Plaintiffs argue that "the government's compelling interest is already served by other requirements, such as providing a fingerprint card, a Puerto Rico Police Department certificate of good standing, background check by the Puerto Rico Police Department and notice to the State Attorney's office upon filing a petition for a conceal carry permit." *Complaint*, ¶47.  This is untrue. The requirements listed by Plaintiffs merely show whether the applicant has been found guilty of committing a crime—but this is a long way from demonstrating that the person is responsible or of good moral character. The requirements at issue serve their own purpose and are substantially related to the government's interest in public safety.

Plaintiffs also claim that §458m of the Weapons Act, which requires health providers to notify the police of any gunshot related wounds, violates the privacy of the injured person. *See* 25 L.P.R.A. §458m. This argument is borderline absurd. It stands to reason that the government's interest in public safety, and in being aware of the possible commitment of a crime, weighs heavier than a person's interest to keep such an act private. *See, e.g.*, *Seaton v. Mayberg*, 610 F.3d 530, 540 (9th Cir. 2010) (stating that public health and safety requirements is one of the exceptions to the confidentiality of medical communications and that physicians are "required to disclose to the state, despite patient objections, various medical matters of public concern, such as . . . gunshot wounds"). Plaintiffs tellingly fail to provide any authority

supporting their claim that medical information in the context of a gunshot wound cannot be disclosed.

**B.   Plaintiffs fail to state a plausible claim under the freedom of association**

Plaintiffs argue that certain provisions of the Weapons Act violate their right to freedom of association because they (1) require membership in a PRSA-endorsed gun club as a condition for acquiring a target shooting permit, and (2) require affiliation to the PRSA by a gun club in order to obtain a shooting club license and lawfully operate a shooting range. 25 L.P.R.A. §§457c (d), 457a (a)(7).

Plaintiffs' facial attack under the First Amendment fails for the same reason as their right of privacy claim. Plaintiffs have not, and cannot, established that there are "no set of circumstances under which" the challenged provisions would be valid or that the statute lacks any "plainly legitimate sweep." *See United States v. Stevens,* 559 U.S. 460, 472 (2010). Nonetheless, we further analyze their contention to show it is meritless.

The freedom of association is protected by the First Amendment. *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). This right is correlative to an individual's right "to speak, to worship, and to petition the government for the redress of grievances." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). As a result, the Supreme Court has also acknowledged the right of non-association. *Woodley v. Maynard*, 430 U.S. 705, 714 (1977).

Plaintiffs allege that the requisites violate their First Amendment rights because they require membership with a gun club sanctioned by the PRSA or, in the case of gun club owners, affiliation to the PRSA. The complaint, however, does not show that these gun clubs,

or the PRSA, are political or permeated with beliefs which would be offensive to those wishing to obtain a target permit or a shooting club permit. In other words, Plaintiffs here are not forced to foster "religious, political or ideological causes" by affiliating. *Coal. of New Jersey Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 688 (D.N.J. 1999), aff'd, 263 F.3d 157 (3d Cir. 2001). To be clear, there are over 20 gun clubs to choose from all over the Commonwealth. And nothing in the complaint suggests that these clubs, as well as the PRSA, are not neutral in content. Plaintiffs' First Amendment rights are therefore not burdened by §457a and §457c. *See e.g.*, *Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198, 215–16 (1st Cir. 2002) (finding First Amendment claims were meritless because, *inter alia*, "plaintiffs are not being forced to join any association that espouses a political viewpoint"); *see Besig v. Dolphin Boating and Swimming Club*, 683 F.2d 1271 (9th Cir. 1982) (requirement of membership in groups of "apolitical nature" which "advocate no special view or philosophy that appellants have identified as offensive" in order to receive favorable access to public land not in violation of First Amendment).

Based on the above, the appropriate scrutiny is rational basis. *See Whitman*, 44 F. Supp. 2d at 690 (finding that rational basis review was warranted because no fundamental right was burdened by the government's mandatory membership in a gun club in order to possess assault rifles). As to §456a, membership in a gun club legally recognized by the PRSA as a requirement for using the shooting ranges of these gun clubs is rational. Among the PRSA's objectives is to train and instruct citizens on the use of a firearms. *See Constitution of the PRSA*, Document No. 1-9, p. 5. The same goes for §457c: affiliation to the PRSA, the organization in

charge of establishing the requisites and safety standards of the shooting ranges, as a requirement for obtaining a license to operate a shooting range in the Commonwealth is rational. These regulations ensure that the facilities of all of the gun clubs in Puerto Rico are up to standards, and are related to the government interest in public safety.

Plaintiffs allegedly oppose one act by the PRSA: the "possible unlawful payment of travel expenses for 43 individuals to the Olympics events in Brazil" including Puerto Rico Sports and Recreating public officials.[3] *See Complaint*, ¶55.  Even assuming that such is true, this is not conduct advancing political or ideological beliefs. Rather, it is conduct related to one of the legitimate purposes and goals of the PRSA: to promote the development of the sport of target shooting in Puerto Rico. *See Constitution of PRSA*, Docket No. 1-9, p. 4. *See e.g., Keller v. State Bar of California*, 496 U.S. 1, 9 (1990) (finding that a state bar may use mandatory membership dues to fund activities germane to goals of regulating legal profession, but not to ideological or political activities); *Southworth v. Grebe*, 157 F.3d 1124, 1129 (7th Cir. 1998) ("There is a crucial difference between a requirement to pay money to an organization that explicitly aims to subsidize one viewpoint to the exclusion of other viewpoints . . . and a requirement to pay a fee to a group that creates a viewpoint-neutral forum."). This conduct is therefore insufficient to plead a plausible First Amendment claim.

---

[3] Actually, Plaintiffs do not allege that funds given by them were used for this activity. Nor do they show how they were injured due to that activity. Plaintiffs thus lack "a concrete and particularized injury" and lack standing to bring forth such a claim. *See Pagan v. Calderón*, 448 F.3d 16, 27 (1st Cir. 2006).

### C.  **Plaintiffs fail to state a claim under the Dormant Commerce Clause**

Plaintiffs bring a cause of action under the Dormant Commerce Clause, arguing that the following provisions of the Weapons Act interfere with the interstate commerce of firearms:

- Section 458, which requires a weapons license for anyone to import, offer, purchase, or transfer any weapon into the Commonwealth, 25 L.P.R.A. §458;

- Section 458k, which requires carriers to withhold delivery of any firearm (as well as firearm accessories and ammunitions) until a weapons license or gun dealer permit is presented by the consignee, 25 L.P.R.A. §458k;

- Section 460d, which requires the Puerto Rico Port Authority to place a warning sign at entry points stating that "Every person bringing a firearm with him/her or in his/her luggage, must give notice to the Puerto Rico Police upon arrival", 25 L.P.R.A. §460d;

- Section 457, which allows the Superintendent of the PRPD to issue provisional permits to persons from other jurisdictions participating in target shooting games, at the request of the club or organization sponsoring the tournament, 25 L.P.R.A. §457(h); and

- Section 457d, which provides that people traveling to Puerto Rico to practice or compete in the sport of target shooting may be issued a provisional target shooting permit, 25 L.P.R.A. §457d.

The negative implication of the Commerce Clause, known as the "Dormant Commerce Clause", is that it "limits the power of local governments to enact laws affecting interstate commerce." *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 53 (2d Cir. 2007). If a state or local government "enacts a law that unduly favors in-state commercial interests over their out-of-state counterparts, that law 'routinely' will be defenestrated under the

Dormant Commerce Clause *unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism*." *Houlton Citizens' Coal. v. Town of Houlton*, 175 F.3d 178, 184 (1st Cir. 1999) (quoting *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 192-193 (1994) (internal quotation marks omitted) (our emphasis). Economic protectionism means "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. v. Limbach*, 486 U.S. 269, 273–74 (1988).

Plaintiffs' claims cannot survive because (1) they lack standing to bring a Dormant Commerce Clause claim and (2) the challenged provisions are completely unrelated to protecting the state's economic interests.

### 1. Plaintiffs lack standing to bring a claim under the Dormant Commerce Clause

To establish standing under Article III, Plaintiffs must prove that they have a "personal stake in the outcome" of the asserted cause of action. *Pagan v. Calderón*, 448 F.3d 16, 27 (1st Cir. 2006). To do so, they must show "(1) a concrete and particularized injury in fact, (2) a causal connection that permits tracing the claimed injury to defendants' actions, and (3) a likelihood that prevailing in the action will afford some redress for the injury." *Id.*

Determining whether a plaintiff has standing "is both plaintiff-specific and claim-specific", which means that the court must determine whether each plaintiff is entitled to have each particular claim adjudicate by the Court. *Pagan*, 448 F.3d at 26.

Plaintiffs fail at the first step, dealing with harm. Plaintiffs posit that the challenged provisions "erect significant procedural and substantive barriers for entry of lawful weapons

into the Commonwealth *by mainland citizens*" and discriminates against "continental gun owners, out-of-state firearms training participants and continental gun-shows". *Complaint*, pp. 31-32. Plaintiffs, nonetheless, do not fall into any of these categories.  According to the complaint, Jose Kerkado resides in Bayamon, Puerto Rico and the plaintiff corporations' principal place of business is also Bayamon, Puerto Rico—*none is a mainland or out-of-state citizen*. Also, Plaintiffs do not claim that they have suffered or will suffer any injury due to the challenged provisions. For example, they do not claim that they attempted to import a license into Puerto Rico and were unable to do so due to the challenged provisions—in fact, they do not even allege having the intention of doing so. Plaintiffs thus have not shown they have a "personal stake" in the outcome of this claim.

Plaintiffs also fail to meet the second element. First, because there is no injury and second, because there is no allegation establishing that defendants' actions are linked to an alleged harm. As to the final element, Plaintiffs cannot establish that prevailing in this claim will afford redress for the injury—since there is no injury alleged by Plaintiffs. Accordingly, Plaintiffs lack standing to bring a Dormant Commerce Claim against the PRSA.

### 2. The Weapons Act is justified by a compelling state interest in public safety, unrelated to economic protectionism

The factual allegations in the complaint do not show how the provisions at issue benefit state-interests and affect out-of-state competitors. Rather, they offer conclusory allegations that the provisions "interfere with interstate commerce" and "expressly protect local gun-stores from Puerto Rico". But this is simply not true. The Weapons Act *explicitly*

states that many of the firearms used to commit crimes in the Commonwealth are imported illegally. *See* Statement of Motives, Law No. 404, H.B. 3447 (Sept. 11, 2000). The above-cited provisions are aimed precisely at tackling this problem and they ensure, among other things, that every person who brings a license to Puerto Rico is legally authorized to do so under Puerto Rico's firearms regulatory scheme.

Even if, assuming *arguendo*, the provisions here favor in-state commercial interests, these clearly fall within the exception recognized in *Houlton*—that is, they are completely unrelated to economic protectionism. As this Court emphasized in *Williams*, the Weapons Act was enacted "to achieve a more peaceful and reassuring environment with greater public safety for Puerto Rico citizens and to achieve an effective solution to the problem of controlling firearms in the hands of delinquents." *Williams*, 910 F. Supp. 2d at 397. These interest, as expressed by the legislature, "fall under substantial and significant government interests in ensuring the safety of all its citizens" *Id.* Applying *Houlton*, even if these provisions affect interstate commerce (which Plaintiffs fail to allege), they would still be valid under the Dormant Commerce Clause, for they are justified by a compelling need for public safety—not economic interests. Plaintiffs' claims under the Commerce Clause cannot survive.

## V.   Plaintiffs' supplemental law claims should be dismissed

### A.   Because no federal claims remain, the Court should dismiss the remaining claims under Puerto Rico law

Plaintiffs also bring a cause of action under Article 1802 and 1803 of the Puerto Rico Civil Code. 31 L.P.R.A. §§5141, 5142. Nevertheless, because Plaintiffs fail to state a §1983

claim against the PRSA (and no federal claims remain), the remaining claims under Puerto Rico law should be dismissed. *See Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir. 1998) (holding that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation").

**B. Plaintiffs fail to state a plausible claim under Article 1802**

To prevail under Article 1802, Plaintiffs must show: (1) negligent conduct by the defendant; (2) that Plaintiffs suffered damages; and (3) a causal link between the negligent actions of the defendant and Plaintiffs' damages. 31 L.P.R.A. §§5141. In determining whether an act is negligent, Courts examine whether a defendant has breached his duty of care in a particular situation. The duty of care "may be defined as an obligation to anticipate and take measures against a danger that is reasonably foreseeable." *Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.*, 951 F. Supp. 1028, 1036 (D.P.R. 1996), aff'd, 124 F.3d 47 (1st Cir. 1997).

Here, the PRSA's duty of care, pursuant to the PRSA Constitution, was to ensure that the CAT's application satisfied the requirements established in the PRSA regulation. *See PRSA Affiliation Regulation*, Docket No. 1-10. The PRSA's letter shows that CAT was not granted affiliation to the PRSA because its application did not comply with the affiliation specifications. Plaintiffs do not allege that Plaintiffs' application was correctly submitted or that it satisfied all of the PRSA's requirements. The complaint fails to show that PRSA breached its duty of care in the process of reviewing Plaintiffs' application for affiliation.

Plaintiffs' allegation that PRSA intervened with gun club owners so that they would not allow Plaintiffs to use their facilities is also insufficient. The Weapons Act provides that only those who own a target shooting permit may use the shooting range facilities of the gun clubs. 25 L.P.R.A. §457c. Plaintiffs here do not allege who attempted to use these facilities, but was not allowed (allegedly due to the PRSA's intervention); nor do they allege that the people attempting to use these facilities had a target shooting permit and were thus legally authorized to use these facilities. Even taking as true Plaintiffs' allegation, the alleged conduct by the PRSA would not demonstrate that they breached their duty of care.  Plaintiffs do not present a plausible tort claim under Article 1802.

## CONCLUSION

**WHEREFORE,** Defendant PRSA respectfully requests that this Honorable Court dismiss *with prejudice* Plaintiffs' complaint against PRSA.

**RESPECTFULLY SUBMITTED**.

## CERTIFICATE OF SERVICE

It is hereby certified that today I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

In San Juan, Puerto Rico, this 23rd day of November, 2016.

**MORELL, BAUZÁ,**
**CARTAGENA & DAPENA**
PO Box 13399
San Juan, PR 00908
Tel. 787-723-1233
Fax. 787-723-8763

**/s/ *German J. Brau***
German J. Brau
USDC PR No. 202805
Email: german.brau@mbcdlaw.com

**/s/ *Ramón E. Dapena***
Ramón E. Dapena
USDC PR No. 125005
Email: ramon.dapena@mbcdlaw.com

**/s/ *Iván J. Lladó***
Iván J. Llado
USDC PR No. 302002
Email: ivan.llado@mbcdlaw.com

*Counsel for Defendant Federación de Tiro de*
*Armas Cortas y Rifles de Puerto Rico a/k/a the*
*Puerto Rico Shooting Association*