IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ A. CRUZ KERKADO; PHOENIX MILITARY INSTITUTE, CORP.; and CENTRO DE ADIESTRAMIENTO TÁCTICOS DE PUERTO RICO, CORP.; UNKNOWN PLAINTIFF B and UNKNOWN PLAINTIFF C<br><br>*Plaintiffs*<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO (by way of the Puerto Rico Department of Justice a/k/a Departamento de Justicia; PUERTO RICO POLICE DEPARTMENT a/k/a Policia de Puerto Rico; PUERTO RICO DEPARTMENT OF LEISURE AND SPORTS a/k/a Departamento de Recreación y Deporte; and the PUERTO RICO SHOOTING ASSOCIATION a/k/a Federación de Tiro de Armas Cortas y Rifles de Puerto Rico<br><br>*Defendants* | CIVIL NO.: 16-2748 (ADC)<br><br>Constitutional Rights:<br>2nd Amendment<br>-Invasion of Privacy<br>-Freedom of Association<br>-Tax on 2nd Amendment<br>-Interstate Commerce/Travel |

MOTION FOR JOINDER TO DOCKET NO. 17
MOTION TO DISMISS PURSUANT TO F.R.Civ.P. 8(a) and 12(b)(6)

TO THE HONORABLE COURT:

COMES NOW, Co-Defendants, the Commonwealth of Puerto Rico, the Puerto Rico Police Department and the Puerto Rico Department of Leisure and Sports, without submitting to this Honorable Court's jurisdiction or waiving any affirmative defense, including those that may not be specifically mentioned below, through the undersigned Attorneys, and respectfully STATE, AVER and PRAY as follows:

## I.     Introduction

On September 29, 2016, Plaintiffs brought before this Honorable Court the instant complaint, in which they raise the same claims as the plaintiffs in <u>Williams v. Puerto Rico</u>, 910 F.Supp.2d 386 (D.P.R. 2012) raised in their complaint, as well as other claims.

From a brief reading of the Complaint, this Honorable Court can note that the instant Complaint is not actually a claim arising under the Second Amendment, but a state-matter claim originated from the denial of a business permit for a corporation. From that point forward, Plaintiffs have devised and raised various '*colorable legal claims*'[1] that misinterpret recent jurisprudence from the Supreme Court, regarding the right to bear arms and to form a state-militia arising from the Second Amendment.

In response, Co-Plaintiff, Puerto Rico Shooting Association (henceforth, "PRSA")filed its "PRSA'S Motion to Dismiss Under Rule 12(B)(1) and 12(B)(6)" arguing and stating several affirmative defenses that demonstrate and prove that Plaintiffs have failed to state a claim upon which relief can be granted and without subject-matter jurisdiction, upon which Plaintiffs do not even have standing. (Dkt No. 17).

That said, the appearing Co-Defendants hereby join and adopt as if set in full and as their own the factual and legal arguments stated in the aforementioned "Motion to Dismiss[...]", and further expands the argument as to why this Honorable Court should DISMISS with prejudice the case at hand.

---

[1] As this Honorable Court has previously noted in Dkt Order No. 5.

## II.      Standard of Review

Under the Federal Rules of Civil Procedure a defendant may, in response to an instant pleading, submit a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6). The Court must accept as true any well-pleaded allegations in the complaint and draw all reasonable inferences therefrom in plaintiff's favor. Correa Martínez v. Arrillaga Beléndez, 903 F. 2d 49, 51 (1st Cir. 1990). However, the Court need not accept conclusory allegations as truthful. Holden v. Hagopian, 978 F.2d 1115 (9th Cir. 1992).

The primary purpose of a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) is to challenge the legal theory, not the sufficiency of any evidence that might be adduced.  Advanced Cardiovascular v. Scimed Life, 988 F.2d 1157 (1993). To survive a motion to dismiss, a complaint must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory. See Berner v. Delahanty, 129 F. 3d 20 (1st Cir. 1997); Gooley v. Mobil Oil Corp., 851 F. 2d 513 (1st Cir. 1998). As stated before by this Honorable Court, in Escabi v. Puerto Rico, Civ. No. 02-1627 (PG), "Plaintiff, however, may not rest merely on unsupported conclusions or interpretations of law. Subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts will not defeat a motion to dismiss" (quoting Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993) and Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992)).

While the Court must comply with the standard of making all inferences in favor of Plaintiffs, it is not obligated to "swallow the plaintiff's invective hook, line and sinker, bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996); <u>Doyle v. Hasbro, Inc.</u>, 103 F. 3d 186 (1st Cir. 1996); <u>Mass. School of Law at Andover v. American Bar</u>, 142 F. 3d 26 (1st Cir. 1998). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all well-pleaded allegations in the complaint are true, even if doubtful in fact. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955 (2007). "In general, it is improper for a court to consider hearsay statements when ruling on a motion to dismiss." <u>Beydoun v. Wataniya Rests. Holding, Q.S.C.</u>, 768 F.3d 499 (6th Cir. 2014).

Dismissal for failure to state a claim is warranted if it clearly appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S.Ct. 99 (1957).

Thus, Plaintiffs must, and are required to, present allegations that nudge their claims across the line from conceivable to plausible in order to comply with the requirements of Rule 8(a). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

On the other hand, it is well established that an affirmative defense may properly be raised in a motion to dismiss. <u>Blackstone Realty, LLC v. F.D.I.C.</u>, 244 F. 3d 193 (1st Cir. 2001).

As previously stated by Co-Defendant, PRSA (Dkt No. 17), Plaintiffs' Complaint states a prolixity of conclusory verbiage and misinterpretations of law that fails to properly state a claim upon which relief can be granted. As if that is not enough, Plaintiffs have not even adequately

stated any actual personal involvement by the appearing Co-Defendants as to the alleged

damages. Thus, this Honorable Court should DISMISS with prejudice the Complaint.

As a matter of fact, the Complaint lacks, in its totality, any factual allegations respecting

any material element necessary to sustain recovery under some actionable legal theory as to the

improperly substituted Co-Plaintiffs, "Damas de la Segunda Enmienda, Corp." and "Gun Rights

and Safety Association of Puerto Rico, Inc." Not even once, does the Complaint mentions

anything regarding the new Co-Plaintiffs, nor does the motion at Dkt No. 6 provides any light as

to their claims or alleged damages. For that reason, this Honorable Court should also DISMISS

with prejudice any and all claims regarding Co-Plaintiffs, "Damas de la Segunda Enmienda, Corp."

and "Gun Rights and Safety Association of Puerto Rico, Inc." in the case at hand.

### III.        'Well Pleaded Complaint' Rule; Rule 8(a)

Moreover, the Federal Rules of Civil Procedure were designed to interdict precisely the

type of pleading now before this Honorable Court. There, Rule 8(a)(2) states that a complaint

must contain "a **short and plain** statement of the claim showing that the pleader is entitled to

relief". (emphasis ours). In accordance, Rule 8(d)(1) of the same group of norms requires that

each allegation within the complaint "must be **simple, concise, and direct**". (emphasis added).

The "short" element in Rule 8(a)(2) exists to prevent the defendant and the Court from

being saddled with the task of culling through needlessly long-winded pleadings. Miranda v.

United States, 105 F. App'x 280, 281 (1st Cir. 2004) (quoting 5 Charles Alan Wright & Arthur R.

Miller, Federal Practice & Procedure §1281, at 522 (2d ed. 1990), "Unnecessary prolixity in a

pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.").

On the other hand, the "plain" element in Rule 8(a)(2) exists to ensure that the defendant has fair notice of the claims asserted so that he can adequately respond and prepare for trial. Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1171 (1st Cir. 1995). "The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim." Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

With this in mind, the First Circuit, in Miranda, supra, (citing Salahuddin, supra) has recognized that "[d]ismissal for noncompliance with Rule 8 is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised", just as it occurs with Plaintiffs' Complaint. (internal quotations omitted). See also, Sayied v. White, 89 Fed. Appx. 284 (1st Cir. 2004) ("The complaint in this case unquestionably falls into that category and is so prolix, redundant and unintelligible that it would have been unreasonable to expect defendants to frame a response to it. Accordingly, we discern no abuse of discretion in the district court's determination nor in its choice of sanction").

Consistently, this Honorable Court has routinely dismissed complaints before that fail to conform to the pleading requirements in Rule 8. See, Cintron- Luna v. Roman-Bultron, 08-1997 (PG, 2009) (holding that the complaint "simply does not comply with the Federal Rules of Civil Procedure 8(a)'s short and plain statement requirement" when it consists of "fifty-six (56) pages of poorly numbered and disorganized paragraphs containing repetitive factual allegations and

conclusory statements"); and <u>James Peter Conlan v. The Mid-Atlantic Region Comm'n on Higher Ed.; et al</u>, 15-2841 (CCC, 2016) ("A short and plain statement of the claim showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2), is about as clear as any federal rule can be") (internal quotations omitted).

Here, the Complaint is a far cry from 'short and plain' and 'simple, concise and direct'. The Complaint as a whole is unduly complicated and lengthy, and consists of unfocused allegations that fail to include facts properly describing who did what to whom, when, where and why, which renders it insufficient to meet the pleading standard set forth in Rule 8(a). From a cursory reading of the instant Complaint, it can be established that it illustrates a loose and disorganized attempt to pin an erroneous general theory of law, while enclosing an overall incomprehensible narrative and convoluted allegations, filled with speculative and hearsay allegations of facts, without properly stating each material element necessary to sustain recovery under any actionable legal theory.

In fact, even though it is thirty-five (35) pages long, the Complaint is so confusing, ambiguous and vague that its true substance (a state matter claim originating from the denial of a business permit for a corporation with paramilitary objectives), is well disguised. It even impertinently cites philosophers dating back to 604 B.C.; it makes references to Commonwealth case law, without certifying it has adequate translation; and it contains *over* a thousand and sixty (1,060) pages of documents, as attachments.

Pursuant to the above and the arguments stated in Dkt No. 17 and the instant motion, regarding the well-pleaded-complaint rule, standard of review and other legal statements, this Honorable Court should DISMISS with prejudice the instant Complaint.

## IV.  Lack of Standing and Federal Question as to Corporate Co-Plaintiffs' Claims

On another subject, a party has standing to file suit if it can demonstrate: (1) an 'injury in fact' –harm that is concrete and actual or imminent, not merely conjectural or hypothetical; (2) causation –a fairly traceable connection between the plaintiff's injury and the defendant's alleged conduct; and (3) redressability – the likelihood that the requested relief will remedy the alleged injury. See Summers v. Earth Island Inst., 555 U.S. 488 (2009); Sprint Comms. Co. v. APCC Servs., 554 U.S. 269 (2008); Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

Conjointly, as per longstanding judicial interpretations of Article III of the U.S. Constitution and Federal Civil Procedure Rule 12(b)(1), the presence or absence of a federal question is governed by the "well-pleaded-complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's complaint. Rivet v. Regions Bank, 522 U.S. 470 (1998); Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987). See also, Franchise Tax Bd. V. Construction Laborers Vacation Trust, 463 U.S. 1 (1983) (holding that the well-pleaded-complaint rule confines the search for federal question jurisdiction to the face of the complaint). Federal Courts have jurisdiction over a federal question claim when an action arises under the U.S. Constitution, federal law, or treaties of the United States. U.S. Const. Art. III, §2; Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677 (2006).

However, federal Courts do not automatically possess authority to hear and determine every type of action conceivably authorized by the U.S. Constitution. Rather, Article III only specifies the outer limits of the subject matter jurisdiction. Nolan v. Boing Co., 919 F.2d 1058 (5th Cir. 1990). The complaint must identify facts, under the well-pleaded-complaint rule, supporting the allegation of jurisdiction and be proven when challenged. Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631 (Fed.Cir. 1991). Merely referring to a federal statute, as it occurs in the present case, does not establish jurisdiction if the dispute does not involve a substantial question of federal law. The Court cannot just accept plaintiff's word that federal jurisdiction exists. Ford v. Hamilton Invs., 29 F.3d 255 (6th Cir. 1994); La Salle National Trust v. ECM Motor Co., 76 F.3d 140 (7th Cir. 1996). (emphasis ours).

For most cases brought under federal question jurisdiction, the suit arises directly under a federal law that created such cause of action. Merrell Doe Pharms. V. Thompson, 478 U.S. 804 (1986). That is clearly not the case here.

Still, a federal question jurisdiction may be based on a civil action alleging a violation of the U.S. Constitution. Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). Because this is what Plaintiffs are alleging in the case at hand – supposedly, a Second Amendment violation-, appearing Co-Defendants proceeds to analyze this requisite of federal question claims.

A case can yet arise under federal question jurisdiction if a well-pleaded-complaint establishes that plaintiff's right to relief necessarily depends on the resolution of a **substantial question of federal law**. McVeigh, supra; Singh v. Duane Morris LLP, 538 F.3d 334 (5th Cir. 2008) (emphasis ours). For this, the Court must consider the degree to which federal law is at the

forefront of the case, and determine it is not collateral, peripheral or remote. Merrell Dow Pharm.,

*supra*, Howery v. Allstate Ins., 243 F.3d 912 (5th Cir. 2001). In other words, if a federal law does

not provide a private cause of action, a state law cause of action based on its violation does not

raise a federal question, just as it occurs in the instant Complaint. Merrell Dow Pharm., *supra*;

Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148 (4th Cir. 1994). In fact, the mere presence

of a federal issue in a state law cause of action does not automatically confer federal question

jurisdiction. See Franchise Tax Bd., *supra* (also holding that no substantial federal question was at

hand when a federal issue was presented by a complaint for state declaratory judgment); and

Singh, *supra* (holding there was no federal question jurisdiction in state court malpractice suit

based on representation in previous trademark dispute because substantial question of law was

state malpractice law and federal trademark law was only tangentially relevant).

To determine whether there is a federal question jurisdiction over a cause of action

created by state law, the Court must decide: (1) if a federal right is an essential element of the

state law claim; (2) interpretation of the federal right is necessary to resolve the case; (3) the

question of federal law is substantial; and (4) the federal forum can entertain the case without

disturbing any congressionally approved balance of federal and state judicial responsibilities.

Grable & Sons Metal Prods. V. Darue Eng'g & Mfg., 545 U.S. 308 (2005). Here, Plaintiffs have

failed to demonstrate these elements in their Complaint; even more blatant when analyzed under

the well-pleaded-complaint rule requisites and the Supreme Court's interpretation of the Second

Amendment in District Court v. Heller, 554 U.S. 570, 128 S.Ct. 2783 (2008) and McDonald v. City

of Chicago, 561 U.S. 742, 130 S.Ct. 3020 (2010).

Co-Defendant, PRSA already demonstrated in their motion at Dkt No. 17 that <u>none</u> of the Plaintiffs have standing to represent third-parties not included in the Complaint –"*mainland citizens*", "*continental gun owners, out-of-state firearms training participants and continental gun-shows*"; argument that the appearing Co-Defendants incorporate by reference herein as if set in full.

Even more, the main focus of the allegation in the Complaint, from which stem all other claims therein, is the supposed violation of Plaintiffs protected rights under the Second Amendment. However, the Second Amendment is an **individual right**, not a collective or corporate right. See <u>Heller</u>, *supra* ("Nowhere else in the Constitution does a 'right' attributed to 'the people' refer to anything other than an *individual right*."); and <u>McDonald</u>, *supra* (In *Heller*, "this Court held that the Second amendment protects an *individual right* to keep and bear arms for purpose of self-defense, striking down a District of Columbia ordinance that banned the possession of handguns in the home."). (emphasis ours).

Thus, Corporate Co-Plaintiffs –Pheonix Military Institute, Corp.; Centro de Adiestramiento de Puerto Rico; and the improperly substituted Co-Plaintiffs, Damas de la Segunda Enmienda, Corp. and Gun Rights and Safety Association of Puerto Rico, Inc.- also lack standing for their own '*personal* damages alleged in the Complaint. In other words, the aforementioned Co-Plaintifs cannot demonstrate an injury in fact or causation, given that this is not a right attributable to corporations.

Even in the hypothesis that this Honorable Court understands otherwise, given the conclusory facts alleged in the Complaint said *injury* would still be a merely conjectural and

hypothetical harm. That said, the case at hand, thus, presents a state matter issue devoid of any substantial federal question, so self-evident that it is almost palpable.

In their complaint, Plaintiffs also claim that the Puerto Rico Weapons Act unjustifiably burdens on interstate commerce/travel. They further allege that "the regulation scheme in place severely

Restricts interstate commerce/travel by allowing for a provisional permit for a gun-club participant's guests only (as opposed to any individual non-associated with a gun club), placing sales tax on guns and ammunition and unreasonably restricts mainland citizen's right to bring belongings (lawful firearms) into Puerto Rico.[2] Plaintiffs also assert that "the Act interferes with interstate commerce by placing unreasonable restriction on mainland travelers who choose to carry lawful firearms into the Island for recreational or personal use, unassociated with any specific gun-club.[3] The appearing defendants respectfully content that plaintiffs have no standing to bring forth claims on behalf of third parties, in this case, for "mainland travelers who choose to carry lawful firearms into the Island for recreational or personal use." Therefore, this claim must be dismissed with prejudice.

Moreover, this case can be resolved without necessarily having to interpret federal rights, but by just applying local-state law. For this Honorable Court to entertain Plaintiffs allegations, it would have to infringe on the federalism and comity that has been long recognized and promoted between state and federal courts as a bulwark of the federal system. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1969) (Comity entails "a proper respect for state functions, a

---

[2] See, Complaint, ¶31, page 13-14.
[3] Id., ¶35, page 15.

recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."); and <u>Marcal Paper Mills, Inc. v. Ewing</u>, 790 F2.d 195 (1st Cir. 1986) (Comity counsels "respect for both enforcement of state laws and the ability of state courts to give proper attention to federal law defenses").

In conclusion, this is a case concerning a law that governs, among other things, the approval of permits for business that are related to firearms and want to operate within the Commonwealth's jurisdiction. Still, in the hypothesis that a federal question may exist, which the Defendant denies, it is remote, tangential, or peripheral to the actual substantial issue; that is, state law.

In conclusion, Corporate Co-Plaintiffs cannot satisfy the Article III justiceability requirements for lack of standing. (U.S. Const., Art. III). Hence, this Honorable court should DISMISS with prejudice the instant Complaint. Moreover, this Honorable Court should also DISMISS with prejudice the instant Complaint, as to the Corporate Co-Plaintiffs, pursuant to Federal Civil Procedure Rule 12(b)(1) for lack of subject-matter jurisdiction.

## V.  Longstanding Law

Even though they mention in their Complaint the Supreme Court's most recent interpretations of the Second Amendment, which are also an extensive historical analysis of said Amendment, in <u>Heller</u>, 554 U.S. 570, and <u>McDonald</u>, 561 U.S. 742, Plaintiffs omit to argue two of said jurisprudences main legal pillars. That is, both cases are adamant in stating that the Second

Amendment is not an unlimited right and that neither case law should be taken to cast doubt on longstanding laws imposing regulations, conditions and qualifications on the possession of firearms. McDonald ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, **or laws imposing conditions and qualifications on the commercial sale of arms**.' We repeat those assurances here.") (emphasis ours). See also United States v. Rene E., 583 F.3d 8 (2009).

Hence, long standing regulations are presumptively lawful. That is, they are presumed not to burden conduct within the scope of the Second Amendment. "This is a reasonable presumption because a regulation that is 'longstanding,' which necessarily means it has long been accepted by the public, is not likely to burden a constitutional right; concomitantly the activities covered by a longstanding regulation are presumptively not protected from regulation by the Second Amendment." Heller v. District of Columbia, 670 F.3d 1244 (2011). However, "[a] plaintiff may rebut this presumption by showing the regulation does have **more than a de minimis effect** upon his right." *Id*. (emphasis added).

Since 1951, the Commonwealth of Puerto Rico has had legal dispositions limiting and regulating firearms possession, distribution and importation. Before the enactment of the here challenged Act. No. 404[4], the Commonwealth of Puerto Rico regulated the possession, distribution and importation of firearms by means of its "Puerto Rico Weapons Act" Num. 17 of

---

[4] Local Weapons Act No. 404 of 2000, in force today, as amended.

January 19, 1951, as amended, and the "Puerto Rico target Practice Act" Num. 75 of June 13, 1953, as amended, precursors to the current Weapons Act. Both laws had similar dispositions as to the challenged sections of the current law. See <u>Williams v. Puerto Rico</u>, 910 F.Supp.2d 386 D.P.R. 2012), where this Honorable court took judicial knowledge of the longstanding history of the here challenged weapons Act.

That said, despite Plaintiffs' extensive mass of verbiage and erroneous general theory of law, the Complaint fails to argue the longstanding history of the challenged Puerto Rico Weapons Act. On the contrary, they try to challenge its constitutional validity, in a disorganized manner, by alleging the same circumstances solved before by this Honorable Court in <u>Williams</u>, *id,* which in the end are trifle matters, compared with its compelling interests and objectives. Please refer also to Co-Defendants, Dkt 17, p.11 to p.25. In conclusion, Plaintiffs have not adequately shown that the challenged law has more than a de minimis effect upon their right.

Pursuant to the above, this Honorable Court should DISMISS the instant Complaint with prejudice.

## VI.  The regulations established in the Weapons Act are constitutional

In <u>Williams</u>, the Honorable Court clearly stated:

> "The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." <u>U.S. Const. amend. II.</u> In <u>United States v. Heller</u>, the Supreme Court found for the first time that the Second Amendment secured an individual, not just a collective, right to bear arms. 554 U.S. 570, 576-95, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). It elevated "above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." <u>Id.</u> at 635. The Court also declared, however, that retraints exist on the Second Amendment right, which is not absolute:

> Like most rights, the right secured by the Second Amendment is not unlimited ... [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 626-27. The Supreme Court reiterated this reasoning in McDonald v. City of Chicago, 130 S.Ct. 3020, 3047, 177 L.Ed. 2d 894 (2010), stating, "We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures ... We repeat those assurances here... [I]ncorporation does not imperil every law regulating firearms."

...

> "The First Circuit Court of Appeals recently declined to reach the issue of the Second Amendment's scope as to carrying firearms outside the vicinity of the home, but it recognized the widespread disagreement between district courts regarding that matter. *See,* Hightower, 693 F.3d at 72, n. 8. It ultimately reasoned, however, that the interest 'in carrying concealed weapons outside the home is distinct from this core interest emphasized in Heller.' Id. at 72. Interpreting Heller's language that '[l]icensing of the carrying of concealed weapons is presumptively lawful,' the First Circuit Court of Appeals held that 'the government may regulate the carrying of concealed weapons outside of the home.' Hightower, 693 F.3d at 73." 910 F.Supp.2d at 394.

The Court in Williams also clarified that "[a]s cases like Heller, McDonald, Hightower, and Moore make clear, it is the complete ban of weapons-not the mere regulation by licensing or requiring permits-that is unconstitutional. Heller, 554 U.S. at 626-29; McDonald, 130 S.Ct. at 3046-47; Hightower, 693 F.3d at 73; Moore, 702 F.3d 933, 2012 U.S. App. LEXIS 25264 at *22-23." 910 F.Supp.2d at 395.

The Second Amendment can trigger different levels of scrutiny based on the context of the restrictive law and the restricted activity. Colón-Quiles, 859 F.Supp.2d at 235. In Williams, Plaintiffs' encouraged the Court to adopt a strict scrutiny standard of review, contending that

they were "dealing with a fundamental right contained in the U.S. Constitution applied to the Commonwealth of Puerto Rico," and thus strict scrutiny applied.

As the Court in <u>Williams</u> concluded when faced with Plaintiffs' Weapons Act requirements contentions, intermediate scrutiny is the appropriate standard under which to evaluate Plaintiffs' Second Amendment claims. The First Circuit has applied intermediate scrutiny in Second Amendment cases to statutes identified as presumably "lawful regulatory measures." *See, e.g.,* <u>United States v. Booker</u>, 644 F.3d 12, 25 (1st Cir. 2011). *See also,* <u>United States v. Masciandaro</u>, 638 F.3d 458, 470 (4th Cir. 2011)(A severe burden on the core Second Amendment right of armed self-defense should require strong justification. But less severe burdens on the right, laws that merely regulate rather than restrict, and laws that do not implicate the central self-defense concern of the Second Amendment, may be more easily justified.").

Plaintiffs' claims are a challenge constitutes a less severe burden on the right, since the Weapons Act merely regulates the manner in which a person may exercise a Second Amendment right and does not altogether prohibits the exercise of the right to bear arms. Therefore strict scrutiny does not apply, and intermediate scrutiny is the more appropriate standard of review. <u>Colon-Quiles</u>, 859 F.Supp.2d at 235.

Under an intermediate scrutiny analysis, the Court must determine the following: whether the assessed governmental purpose is significant, substantial, or important; whether the connection between the challenged regulation and that governmental purpose is reasonable; and whether the challenged regulation burdens the fundamental right at issue more than is reasonably necessary. <u>Id</u>.

In <u>Williams</u>, the Court, in its analysis of the intermediate scrutiny, stated:

"First, the Puerto Rico legislature enacted the Puerto Rico Weapons Act 'to achieve a more peaceful and reassuring environment with greater public safety for [Puerto Rico] citizens ... [and] to achieve an effective solution to the problem of controlling firearms in the hands of delinquents in Puerto Rico ....' Statement of Motives, Law No. 404, H.B. 3447 (Sept. 11, 2000). The Supreme Court has consistently recognized that the governmental interest in protecting public safety is important or even compelling. *See,* <u>Schenck v. Pro-Choice Network</u>, 519 U.S. 357, 376, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997); <u>United States v. Salerno</u>, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); <u>Schall v. Martin</u>, 467 U.S. 254, 264, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984); <u>Terry v. Ohio</u>, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The interests enumerated by the Puerto Rico legislature, therefore, fall under the substantial and significant government interest in ensuring the safety of all of its citizens.

Second, section 466a's licensing requirements and section 456d's permit qualifications are substantially related to that interest and do not pose an unreasonable burden. In making such a determination, 'substantial deference to the predictive judgments of [the legislature]' is warranted. <u>Turner Broad. Sys., Inc. v. FCC</u>, 520 U.S. 180, 195, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997); <u>McCullen v. Coakley</u>, 571 F.3d 167, 177 (1st Cir. 2009). The Court's role is therefore to determine whether the legislature 'has drawn reasonable inferences based on substantial evidence.' <u>Turner Broad.</u>, 512 U.S. at 666, 114 S.Ct. 2445, 129 L.Ed.2d 497, and it concludes in this case that the Puerto Rico legislature has done so. The P.R. Weapons Act is no political whim, because the Puerto Rico legislature has long appreciated the dangers inherent in the possession and carrying of firearms. Originally enacted in 1951, the P.R. Weapons Act has endured throughout the past half century 'as a means to control crime.' Statement of Motives, Law No. 404, H.B. 3447 (Sept. 11, 2000). Recognizing a statistical link between rising criminal activity in controlled substance trafficking and the proliferation of illegal firearm use, the Puerto Rico legislature acknowledged in 2000 that a major overhaul of the P.R. Weapons Act was needed. It then promulgated 'innovative provisions ... whose implementation will allow the law enforcement agencies to be more effective in the fight against crime ... [and] to promote greater safety and the public welfare of the People of Puerto Rico.' <u>Id.</u>

Based on decades of review, the Puerto Rico legislature made the reasonable inference that given the dangerous nature of firearms, requiring a petitioner to submit payment and documentation revealing his background, health, and character - like third party affidavits as to the good reputation and non-violent character of the petitioner, certification of petitioner's physical and mental abilities, confirmation of successful gun club course completion, and

verification of state tax and child support payments – serves the Commonwealth's interests in public safety. The Court reminds plaintiffs that in order to survive constitutional scrutiny, those provisions need only be substantially related to the Commonwealth's important public safety interest; a perfect fit between the means and the governmental objective is not required. Accordingly, the Court finds that sections 456a and 456d are not facially invalid as an unconstitutional burden because there is a reasonable fit between the licensing and permit regulations and the government's compelling interests in public safety." 910 F.Supp.2d at 396-398.

Pursuant to the Court's discussion in Williams, Plaintiffs have failed to state a claim as to the constitutionality of the requirements in the Weapons Act. The Court concluded that the requirements of the Weapons Act challenged, which appear to be the same challenged in the instant case, are substantially related to the Commonwealth's important public safety interest, and therefore are Constitutional. This is so, regardless the personal feelings of the plaintiffs' on the subject. Therefore, the instant complaint must be DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing authority, arguments and reasons, the Defendants respectfully pray that this Honorable Court DISMISS WITH PREJUDICE the Complaint, and grant any other and further relief as the Court deems just and proper.

**WHEREFORE**, Defendant respectfully requests from this Honorable Court the **DISMISSAL** of the instant Complaint, in its entirety, with prejudice, for failure to state a claim upon which relief can be granted.

**I HEREBY CERTIFY** that on this same date, I have electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all attorneys of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 1st day of December, 2016.


CÉSAR R. MIRANDA RODRÍGUEZ
Secretary of Justice

MARTA ELISA GONZÁLEZ YGLESIAS
Deputy Secretary
In Charge of Civil Matters

WANDYMAR BURGOS VARGAS
U.S.D.C.-P.R. Bar No. 223502
Director
Federal Litigation Division

*S/ Idza Díaz Rivera*
IDZA DÍAZ RIVERA
U.S.D.C. No.: 223404

S/IVÁN J. SOLARES NÚÑEZ
Iván José Solares Núñez
U.S.D.C. No.: 302210
Attorneys for Defendants
Department of Justice
Federal Litigation Division
P.O. Box 9020192
San Juan, P.R., 00902-0192
Tel. (787) 721-2900, ext. 2606,2647,2650,2624
Fax (787) 723-9188
idiaz@justicia.pr.gov
isolares@justicia.pr.gov