IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ A. CRUZ-KERKADO, *ET AL*<br><br>Plaintiffs<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO (BY WAY OF THE PUERTO RICO DEPARTMENT OF JUSTICE a/k/a DEPARTAMENTO DE JUSTICIA, *ET AL*<br><br>Defendants | CIVIL NO. 16-2748 (ADC) |

**DEFENDANT PRSA'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS**

**TO THE HONORABLE COURT:**

Defendant Puerto Rico Shooting Association ("PRSA") a/k/a Federación de Tiro de Armas Cortas y Rifles de Puerto Rico, by counsel, respectfully submits this Reply in support of its Motion to Dismiss under Fed. R. Civ. P. 12.

I. **Introduction**

In their opposition to PRSA's motion to dismiss, Plaintiffs fail to offer any meaningful response to the various grounds for dismissal raised by PRSA. Instead, Plaintiffs seem to recognize that the facts in the complaint show that the State *is not* responsible for PRSA's conduct and attempt to salvage their claims against PRSA by raising new allegations. Plaintiffs even present exhibits not included in the complaint. Plaintiffs then argue that "this

1

case meets all three tests for determining whether private action can be deemed state action".[1] This is plainly wrong. Plaintiffs' arguments completely ignore the relevant case law and lack any discussion regarding the precedent cited by PRSA. S*ee Ponce v. Basketball Feder. of Com. of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985). (finding that there was not a symbiotic relationship between the Puerto Rico Basketball Federation and the State despite the fact that the State provided office space, payment for utilities, maintenance, and equipment, indirect support from the Olympic Committee, and beneficial contracts allowing free or below-market rate use of government stadiums). To avoid repetition, we will concentrate on Plaintiffs' new allegations, which nevertheless fail to cure the blatant deficiencies in the complaint. The end result is the same: Plaintiffs' § 1983 claim against PRSA cannot survive.

**II.     Argument**

**A.  <u>Plaintiffs cannot raise new facts in their opposition brief</u>**

As a threshold issue, Plaintiffs raise new allegations for the first time in the opposition brief, such as the inspection of the premises by the PRSA. This Court has previously stated that "plaintiffs cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss." *Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 366 (D.P.R. 2015); *see also Kolker v. Hurwitz*, No. CIV. 09-1895 JP, 2011 WL 292264, at *3 (D.P.R. Jan. 31, 2011) ("The Court notes that, in its opposition, Plaintiff attempts to indirectly amend the complaint by raising new facts which were not alleged in the complaint. No request was

---

[1] Docket No. 20, p. 6.

made by Plaintiff to amend the complaint. As such, the Court will not consider any facts not found in the complaint."). These allegations should thus be disregarded by the Court. But even if they weren't, the complaint should still be dismissed, as Plaintiffs' allegations still fail to show that the PRSA acted under color of state law.

### B. *Plaintiffs fail to establish that the PRSA's actions can be attributed to the State*

1. *Plaintiffs' allegation regarding an inspection in which representatives of the PRSA and the Puerto Rico Department of Leisure and Sports were present is simply insufficient to show a symbiotic relationship between the State and the PRSA*

It is only in rare circumstances that a private entity can be deemed a state actor for purposes of section 1983. *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). Plaintiffs, nonetheless, argue that the nexus/joint action test is satisfied based solely on an inspection in which representatives of both the PRSA and the Puerto Rico Department of Leisure and Sports ("DLS") were present. Plaintiffs make much ado about nothing. Even if the Court considers this new allegation, the argument fails, as a mere inspection is not enough to deem the PRSA a state actor.

First Circuit precedent states that the nexus/joint action test is satisfied when the "totality of the circumstances reveals that the state has *so far insinuated itself into a position of interdependence with the private party* that it was a joint participant in the challenged activity". *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2005)(our emphasis). To pass this test, Plaintiffs must show that the PRSA's actions are "attributable to the State through a symbiotic relationship between the two." *Santiago v. Puerto Rico*, 655 F.3d 61, 71

(1st Cir. 2011). The Supreme Court has established that that the symbiotic relationship must involve the challenged conduct, *i.e.*, PRSA's decision to deny Plaintiff's affiliation request. *Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982) (stating that that the purpose of the nexus/joint action requirement is to "assure that constitutional standards are invoked only when it can be said that the *State is responsible for the specific conduct of which the plaintiff complains*.") (our emphasis).

The relevant question is thus, not whether the DLS participated in an inspection, but whether there was a relationship of interdependence between the State and the PRSA in the PRSA's decision to deny affiliation. And nothing in the complaint shows that such a relationship exists. Plaintiffs basically disregard the case law and conveniently attempt to shift the focus from the challenged conduct at issue to an inspection. In any case, there is a reason for a DLS inspection, unrelated to the action challenged by Plaintiffs in the complaint. The DLS conducts *its own inspection* because the DLS has a separate role in the application process for a shooting range license. The Secretary of the DLS has the duty to certify to the Superintendent of the Puerto Rico Police Department that the club applying for a license to operate a shooting range is a bona fide target shooting club—a *sine qua non* for obtaining the license. 25 L.P.R.A. § 457. To do so, the DLS visits the premises of the applicant.

The PRSA, on the other hand, does not have the power to certify a gun club to the Superintendent, nor to grant a shooting range license, all of which is done by the State. The PRSA only grants PRSA affiliation to the gun clubs based on the criteria established in its

own regulations. *See, e.g.*, *Pacheco v. Federacion Ecuestre De P.R.*, 34 F. Supp. 2d 101, 104 (D.P.R. 1999) ("The Centro Ecuestre and Federación Ecuestre are private entities, and their decisions with regard to allowing individuals to participate in their official events or facilities is a matter that in no reasonable manner can be characterized as coerced, encouraged by, or for the profit of, the Commonwealth of Puerto Rico.").

In other words, the PRSA and DLS serve different purposes. The fact that both coincided at the inspection does not support Plaintiffs' conclusory allegation that the State should be responsible for PRSA's decision to deny affiliation to the Plaintiff, since each actor´s role is different. Being that both the DLS and PRSA are concerned with safety in the recreational use of lethal armament, it stands to reason that both could look into the same issues. What is more, *even if* the State had approved or acquiesced in the PRSA's decision to deny affiliation—which is *not* alleged in the complaint—the nexus test would still not be satisfied. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 355 (1974) (finding that if the State merely approves or acquiesces in the action of the private party the nexus/joint action test is not met).

The First Circuit has held that the most relevant factor in the nexus/joint action analysis (which Plaintiffs also ignore) is whether the private entity is independent in the conduct of its day-to-day affairs. *Santiago*, 655 F.3d at 71. Plaintiffs, in their brief, fail to point to any allegations that plausibly show that the PRSA is dependent on the State in its daily

affairs. [2] S*ee Ponce v. Basketball Feder. of Com. of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985). (finding that there was no symbiotic relationship between the Puerto Rico Basketball Federation and the State, despite the fact that the State provided office space, payment for utilities, maintenance, and equipment, indirect support from the Olympic Committee, and beneficial contracts allowing free or below-market rate use of government stadiums). Indeed, the opposite is true, by Plaintiffs' own admission: the State *delegates* the decision-making authority (regarding PRSA affiliation) to PRSA.

Even the letter sent by the PRSA to Plaintiffs regarding the inspection (signed solely by PRSA)[3] explains that Plaintiffs cannot be granted affiliation due to its failure to meet basic safety requirements (established in PRSA's affiliation regulation). *See* Docket No. 20-2.[4] Simply put, it is based on the regulations of a private entity—*and not on some government directive*—that the PRSA made the decision to deny the affiliation request. *See Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1316 (11th Cir.2000) (finding that the nexus/joint action test was not met because nothing showed that the state had anything to do with the private entity's

---

[2] The mere presence of representatives from both the PRSA and the DLS at an inspection is insufficient to show a relationship of interdependence between the PRSA and the State. Courts have held much more compelling factors, *e.g.*, **receipt of public funds by the private party and that the private party acted under a state statute**, to be insufficient. *See Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994) ("[G]overnment regulation, even extensive regulation, and the receipt of [public] funds ... are insufficient to [satisfy the nexus/joint action test]."); *Spencer v. Lee*, 864 F.2d 1376, 1381 (7th Cir.1989) (finding that a private party is not transformed into a state actor merely because the private party acted pursuant to a state statute).

[3] Notably, both the letter regarding the inspection, Docket No. 20-2, and the letter denying the affiliation request (motivating this suit), are signed solely by the PRSA, not the DLS.

[4] As a sidenote, Plaintiffs did not file a certified English translation of this letter (Exhibit II, Opposition to Motion to Dismiss), as required by Local Rule 5(g).

decision to deny the plaintiff's application, rather it was an agreement that gave sole authority regarding such decision to the private entity). Plaintiffs fail to show that the nexus/joint action test is met.

   2. *Plaintiffs fail to show that the PRSA performs functions exclusively reserved for the State*

Plaintiffs fare no better under the public function test. They fail to even discuss *Ponce*, which is controlling here and forecloses Plaintiffs' contention. *See Ponce v. Basketball Feder. of Com. of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985) (finding that regulation of amateur sports is not traditionally an exclusive function of the State). Nonetheless, we address their argument.

Plaintiffs argue that the public function test is met because the PRSA uses the facilities of Albergue Olímpico and Casa Olímpica for its office board meetings and because the PRSA letterhead bears the logo of the Puerto Rico Olympic Committee.[5] (Docket No. 20, p. 7). Yet this has nothing to do with the public function test's requirements; the test is met when the private actor exercises powers "traditionally exclusively reserved to the State." *Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir. 2011). Such requirement is not met here.

---

[5] This argument actually hurts Plaintiffs' case, seeing as the Olympic Committee of Puerto Rico is also a private entity under Puerto Rico Law, 3 L.P.R.A. § 444p (Olympic Committee is an autonomous entity); s*ee Federación De Balonmano De Puerto Rico, Inc. v. Comité Olímpico De Puerto Rico, Inc*., No. KLAN201000634, 2010 WL 4628092, at *9 (P.R. Cir. Aug. 5, 2010)(stating that "the Olympic Committee of Puerto Rico is a private entity separate from the State, even when it receives some type of economic subsidy from the State")(our translation); *see also*, *San Francisco Art & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 542-547 (1987) (finding that the U.S. Olympic Committee is not a state actor).

7

At the outset, Plaintiffs' brief lacks any meaningful argument as to how PRSA's powers are exclusively reserved to the state. Rather, they conclude, *without citing any authority*, that "licensing inspection of gun-range facilities is, has and should be traditionally the exclusive prerogative of the Commonwealth." (Docket No. 20, p. 12).  This is not accurate and, again, plainly ignores the law.

According to First Circuit precedent, exclusivity is an important qualifier in this test, which "limits the range of eligible activities." *Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir. 2011). In fact, "that a private entity performs a function which serves the public does not make its acts state action." *Rendell–Baker v. Kohn*, 457 U.S. 830, 842 (1982). Here, contrary to Plaintiffs' allegation, PRSA does not conduct a "licensing inspection". Rather, PRSA grants affiliation to applying clubs (if the clubs comply with the safety and infrastructure requirements set forth in its regulation). The PRSA thus, as explained before, visits the premises of the shooting range for purposes of affiliation, not licensing—since it is the State that has the power (through the Superintendent of the PRPD) to grant a license to operate a shooting range. *See* 25 L.P.R.A. §457a.  Plaintiffs fail to show that the PRSA performs a function *exclusively* reserved for the State.

*3. Plaintiffs' argument regarding the state compulsion test is flatly wrong*

Plaintiffs allege that the state compulsion test is met "because of the involuntary affiliation process by law compels or encourages involuntary affiliation into PRSA." (Docket No. 20, p. 6). Plaintiffs miss the point and fail to apply the relevant case law. The question

under the state compulsion test is whether the State has used coercive power or encouraged the challenged conduct, that is, the denial of Plaintiffs' affiliation request by the PRSA. *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 12 (1st Cir. 2015), cert. denied, 136 S. Ct. 2020, 195 L. Ed. 2d 217 (2016). This did not occur here, and Plaintiffs simply present no facts that plausibly support such a conclusion. The PRSA is free to decide which applicants comply with its regulation.

Finally, Plaintiffs incorrectly argue that the PRSA's actions constitute "direct state action" because the PRSA constitutes "an arm of the Olympic Committee." (Docket No. 210, p. 10). This is, first of all, a conclusory allegation unsupported by the facts in the complaint. Secondly, it is also wrong. The Olympic Committee of Puerto Rico is also a private entity, which dooms Plaintiffs' argument. *See*, Footnote 5. Plaintiffs simply do not (and cannot) show that the PRSA's actions are attributable to the State.

### III.     Conclusion

**WHEREFORE,** Defendant PRSA respectfully requests that this Honorable Court dismiss *with prejudice* Plaintiffs' complaint against PRSA.

**RESPECTFULLY SUBMITTED**.

**CERTIFICATE OF SERVICE**

It is hereby certified that today I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

In San Juan, Puerto Rico, this 23rd day of December, 2016.

**MORELL, BAUZÁ,
CARTAGENA & DAPENA**
PO Box 13399
San Juan, PR 00908
Tel.  787-723-1233
Fax. 787-723-8763

*/s/ German J. Brau*
German J. Brau
USDC PR No. 202805
Email: german.brau@mbcdlaw.com

*/s/ Ramón E. Dapena*
Ramón E. Dapena
USDC PR No. 125005
Email: ramon.dapena@mbcdlaw.com

*/s/ Iván J. Lladó*
Iván J. Llado
USDC PR No. 302002
Email: ivan.llado@mbcdlaw.com

*Counsel for Defendant Puerto Rico Shooting
Association a/k/a Federación de Tiro de Armas
Cortas y Rifles de Puerto Rico*