## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jose A. Cruz-Kerkado, Phoenix Military Institute, Corp., and Centro de Adiestramientos Tácticos de Puerto Rico Corp., Damas de la Segunda Enmienda, Corp. a/k/a Ladies of the Second Amendment and Gun Rights and Safety Association of Puerto Rico, Inc. a/k/a Puerto Rico NRA State Association<br>*Plaintiffs*<br>*v.*<br>Commonwealth of Puerto Rico (by way of the Puerto Rico Department of Justice a/k/a Departamento de Justicia), Puerto Rico Police Department a/k/a Policia de Puerto Rico, Puerto Rico Department of Leisure and Sports a/k/a Depatamento de Recreación y Deporte, and the Puerto Rico Shooting Association a/k/a Federación de Tiro de Armas Cortas y Rifles de Puerto Rico<br>*Defendants* | CIVIL ACTION<br><br>Case No **3:16-cv-2748**<br><br>**Declaratory And Injunctive Relief**<br><br>Constitutional Rights |

### AMENDED COMPLAINT

Plaintiffs, Cruz-Kerkado, Phoenix Military Institute, Corp., Centro de Adiestramientos Tacticos de Puerto Rico, Corp., Damas de la Segunda Enmienda, Corp. a/k/a Ladies of the Second Amendment and Gun Rights and Safety Association of Puerto Rico, Inc. a/k/a Puerto Rico NRA State Association, (collectively referred herein as "Plaintiffs"), by and trough their undersigned counsel, hereby file this Amended Complaint for Declaratory and Injunctive Relief against defendants the Commonwealth of Puerto Rico, the Puerto Rico Police Department, the Puerto Rico Department of Leisure and Sports and the Puerto Rico Shooting Association (collectively referred herein as "Defendants") and assert the following:

### PARTIES

1. Plaintiff Jose A. Cruz Kerkado is a citizen of Bayamon, Puerto Rico. He is a retired U.S. Army Veteran with 21 years of service. His mailing address is Calle 4 K1 Sierra Linda, Bayamon, PR 00957. He is a citizen of the United States of America and resides in the judicial District of Puerto Rico. Cruz-Kerkado possess a Puerto Rico Weapon's License and teaches firearm safety and self-defense. Cruz-Kerkado does not want to associate, financially support or affiliate with a paid membership to Puerto Rico Shooting Association's affiliated gun-clubs and

1

the federation, as required by the Puerto Rico Weapon's Act target-shooting permitting scheme. Jose Cruz-Kerkado makes a plausible constitutional claim for violation of his Second Amendment right and his fundamental right to freely associate: In this case not to with PRSA affiliated gun-clubs (only kind allowed by law) and pay PRSA Federation Stamp as part of his weapon license's renewal process. Kerkado's students are low-income and can't afford a Conceal Carry Stamp Tax.

2. Plaintiff Phoenix Military Institute, Corp. is a non-stock corporation registered with the Commonwealth of Puerto Rico Department of State, Registration No. 44654, and at all relevant times its principal place of business is Bayamon, Puerto Rico. Co-plaintiff Jose A. Cruz Kerkado is Phoenix's Registered Agent. Its mailing address is Calle 4 K1 Sierra Linda, Bayamon, PR 00957. Phoenix principal place of business is in the judicial District of Puerto Rico. Phoenix conducts tactical self-defense education and firearm safety training that does not conform with Puerto Rico Shooting Association athletic standards. It does not conform to any "sports" standard.

3. Plaintiff Centro de Adiestramientos Tacticos de Puerto Rico Corp. a/k/a CAT is non-stock corporation registered with the Commonwealth of Puerto Rico Department of State, Registration No. 353218, and at all relevant times its principal place of business is Bayamon, Puerto Rico. Co-plaintiff Jose A. Cruz Kerkado is CAT's Registered Agent. Its mailing address is Calle 4 K1 Sierra Linda, Bayamon, PR 00957. CAT's principal place of business is in the judicial District of Puerto Rico. CAT's proposed training facility was rejected by the Puerto Rico Shooting Association. Without its endorsement, CAT can't obtain a permit from the Commonwealth, nor operate on the Island, exclusively for firearm self-defense training unrelated to any athletic sport.

4. "Damas de la Segunda Enmienda, Corp." a/k/a Ladies of the Second Amendment and Gun Rights and Safety Association of Puerto Rico, Inc. a/k/a Puerto Rico NRA State Association, are organizations whose members are similarly situated to Cruz-Kerkado and whose interests fall within the zone of interests and the rights this Amended Complaint seeks to protect.

2

5. Defendant Commonwealth of Puerto Rico is sued by way of its Justice Department a/k/a Departamento de Justicia, as this civil action challenges the constitutionality of requirements of its laws and related administrative regulation. The Puerto Rico Justice department administers the Commonwealth laws and provides legal representation to the Commonwealth of Puerto Rico.

6. Defendant Puerto Rico Police Department a/k/a Policia de Puerto Rico ("Police") is responsible for approving and issuing Puerto Rico Weapon Licenses and Gun-range license pursuant to Puerto Rico's Weapons Act, and its administrative regulation. The Police department is responsible for the enforcement of Puerto Rico's weapons related laws and its regulation. The Police receives the $250.00 Internal Revenue Stamp Tax paid by Conceal Carry permit applicants.

7. Defendant Puerto Rico Department of Leisure and Sports a/k/a Departamento de Recreacion y Deportes ("Sports") is responsible for certification of gun-range facilities on the Island. It issues certification to facilities, pursuant to Puerto Rico's Weapons Act, and its regulation. The Department shares responsibility with the Police, for regulation enforcement. Sports refused to renew Phoenix instructor's Sports certifications, at the behest of PRSA officials.

8. Defendant Puerto Rico Shooting Association a/k/a Federacion de Tiro de Armas Cortas y Rifles de Puerto Rico, (herein after "Federation"), requires affiliation for the approval of proposed gun-range facilities. Membership and oath of loyalty into said federation by gun-clubs is prerequisite for Sports and the Police approval for anyone who wants to operate a gun-range. The federation generates funds from mandatory fees imposed on individual weapon licensees with target-shooting permits. The federation excluded Phoenix and CAT because they deviate from federation's athletics target-practice standards. Plaintiffs assert gun-range facilities are regulated by the Police and Sports, and Police regulates individual weapon licensing. Both Police and Sports are government agencies best suited to pursue compliance with government's interest. Plaintiffs assert that mandatory membership into federation's affiliated sport gun-clubs violates their rights.

## JURISDICTION

9. The Court has subject matter jurisdiction because the plaintiffs seek declaratory and injunctive relief to redress the deprivation and/or infringement, under color of law, of the Right to Keep and Bear Arms secured by the Second Amendment of the Constitution of the United States.

10. The Court has original jurisdiction over Plaintiffs' claims set forth in this complaint pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C §1343 and 42 U.S.C. §1983.

11. The Court has personal jurisdiction over all defendants because they acted under the Commonwealth of Puerto Rico laws and within the geographic confines of the Commonwealth.

12. Venue properly lies before this Court under 28 U.S.C. §1391(b). Plaintiff and Defendants are resident of the Commonwealth of Puerto Rico and the acts and/or omissions giving rise to Plaintiff's claim have occurred in this district, under 29 U.S.C. §1391 (b) (2), venue lies in this judicial district.

13. Plaintiffs organizations have standing to sue on behalf of their members because each would otherwise have standing to sue in their own right, the interests sought to protect are germane to the organization's purpose and neither the claim asserted, nor the relief requested, requires the participation of each individual member. See *Hunt v. Washington State Apple Advertising Comm*. 432 U.S. 333, 343 (1977); *Warth v. Seldin*, 422 U.S. 490 (1975), pg. 342-343.

## BACKGROUND

14. Cruz-Kerkado is an Armed Forces veteran that teaches self-defense and firearm safety to civilians and conducts advanced tactical self-defense courses for local law enforcement. Cruz-Kerkado and his students at Phoenix, are lawfully licensed to possess firearms by the Puerto Rico Police in accordance with the Puerto Rico Weapons Act. Damas de la Segunda Enmienda, Corp. and the Gun Rights and Safety Association of Puerto Rico, Inc. members, like Cruz-Kerkado and Phoenix students, are also lawfully licensed to possess firearms by the Puerto Rico Police.

Plaintiffs, but for the regulation discussed below, would fully exercise their Second Amendment right to teach, train and practice firearm safety and self-defense unassociated with athletic sports.

15. Phoenix is a veteran-owned educational not-for-profit institution with specialized teaching on all aspects of tactical self-defense and non-sport related firearms defensive training. For approximately fifteen years, Phoenix has taught municipal and state police officers, security guards, business owners and law-abiding civilians, the skills necessary and the handling of tools to be able to properly defend themselves, prevent and try to survive dangerous situations.

16. Self-defense education taught by Kerkado at Phoenix may include situational awareness, conflict avoidance, de-escalation, self-preservation thru weapon handling/firearms training, hand-to-hand combat, move-for-cover, disarming, and decision making under stress, all skills necessary for survival in a world where the threat of terrorism, urban violence, active mall/workplace shooters, and home invasions are a very real possibility.  But none of these survival skills are necessarily taught behind a gun-range booth, with Olympic style shooting practice at stationary targets, by instructors who may have never seen combat.  The Commonwealth does a poor job at affording its law-abiding citizens the opportunity to prepare for real-life situations. Instead, a gun-range owner is asked to take an "oath" of loyalty to a sports organization, which in fact, every single weapon license holder with a target practice permit, in one way or another, has to financially support with the purchase of a Federation Stamp and affiliated gun-club membership. The mandatory affiliation with a financial commitment does place a substantial burden on citizens.

17. On August 18, 2016, the federation sent a letter to Phoenix refusing to accept its affiliation request. Without the federation's endorsement and certificate of affiliation Phoenix's proposed training facility can't be used for firearm education.  A previous attempt by Phoenix to comply with affiliation requirement, by registering a Puerto Rico Tactical Shooting Association, was initially "certified" as a bona fide organization by the Sports Department in 2015, and Phoenix instructors were licensed by Sports, only to be later met with fierce resistance under pressure by

the federation, and in 2016, their instructor's license were unlawfully denied by Sports, at behest of the federation. Per Sports officials, they made a mistake and should not have certified Phoenix's shooting association. Federation's refusal to grant affiliation to Phoenix and endorsement of its facility, is a reprisal for Phoenix's attempt to start a comparable "tactical" association with a non-sport "self-defense" approach. The federation also sought to prohibit Phoenix from engaging in training of its students, by requesting in writing that all gun-clubs refrain from allowing Phoenix to use their facilities, and simultaneously, has denied Phoenix the opportunity to open its own training facility in Hatillo. This hypocrisy is a fraudulent way to induce Phoenix to conform to federation's "Olympic" athletic standards.

18. Defendant Puerto Rico Shooting Association's Constitution preamble mandates that it represents a Sport and is organized under covenants of the Puerto Rico Olympic Committee. Said Constitution's Article 601 lists among its sources of income (A) fees paid for by gun-clubs and target practice permit holders. The federation's membership regulation for gun-clubs Article 301 (A) requires prospective applicants for its endorsement to swear allegiance to the federation. Article 304 requires each club to pay an annual fee of $25.00 and each individual target-shooting permit holder to pay a fee of $12.00 every 3 years. The regulation discussed below, requires this sport federation affiliation by gun-clubs and individual target-shooting permit holder. Sport's Regulation 2068, titled "Target Shooting Rules of Puerto Rico", Article II indicates it seeks to "…promote and encourage the development of the sport of target shooting…" As a prerequisite for gun-clubs, such as CAT, to exist, Article V (I) (g) mandates that "A certificate of membership in the association or shooting federation." is required. Membership is also compelled by Sports.

19. But for the regulation concerning mandatory federation's gun-club affiliation, paid Federation Stamp and club memberships, the plaintiffs would fully exercise their right to practice firearm safety and self-defense unconnected with athletic target-shooting standards. Damas de la Segunda Enmienda, Corp. and the Gun Rights and Safety Association of Puerto Rico, Inc. are

6

organizations that also promote the interest of lawful gun-owners in the Commonwealth. Firearm safety and self-defense are paramount for gun owners that voluntarily affiliate to each association. Neither plaintiff Ladies of the Second Amendment nor plaintiff Gun Rights and Safety Association of Puerto Rico is ascribed to Puerto Rico's Olympic Committee, however, either one could also potentially certify voluntary affiliation by individuals and gun-clubs, to comply with membership.

20. Defendant's regulation restricts purchase of firearms and ammunition unconnected with athletic events and standards of the Puerto Rico Shooting Association, and prohibit existence of non-federation (unaffiliated) gun-clubs, restricting plaintiff's Second Amendment right. The mandatory gun-club membership dues and the federation Stamp purchase also restricts their right.

21. Individual membership into federation's affiliated gun-clubs and the gun-club affiliation itself into Puerto Rico Shooting Association is not only mandated by Puerto Rico Weapons Act, but Puerto Rico Shooting Association, in the case of Phoenix, has also engaged in a joint inspection of plaintiff CAT's facility with Sports government officials. Federation officials took over said inspection to impose its own requirements upon CAT's facility, with Sport official consent. The federation has also received public funds in the past from the Commonwealth, and it has also sponsored Puerto Rico's Official Olympic target-shooting contestants. Meanwhile, the federation has attempted to lobbied the legislature for exclusions of its own athletes from weapon license's target practice permit requirement. As part of the permit scheme, each weapon license holder must keep active membership into a Federation gun-club, to avoid permit's cancellation. Al the while, both the Justice Department and the Puerto Rico Police Department have testified by written memorandums that there is no legal impediment to do away with mandatory affiliation requirements. In fact, the Police has testified that such affiliation has nothing to do with safety, but is simply a matter of the sport. National organizations which advocate firearm safety and certify instructors, such as the National Rifle Association, have voluntary membership not required by

law. Puerto Rico's other sport federations, which are also ascribed to an Olympic Committee, do not charge mandatory fees nor impose membership affiliation requirements by law to non-athletes.

22.     The mandatory Internal Revenue Stamp Tax ($250.00) paid to Puerto Rico Police by everyone, including plaintiffs' students and members, to proceed with the State Court Conceal Carry application process, serve to restrict individual's Second Amendment right. The Conceal Carry Tax serves only Police economic interests, has no effect on crime, and is meant to discourage already economically challenged Commonwealth citizens from carrying a firearm for self-defense. The $250.00 Internal Revenue Stamp Tax is received by Police and not the State Court which is by law, the ultimate decision maker for approval of a Conceal Carry permit in the Commonwealth.

## APPLICABLE LAW

23.     This action arises under the Second Amendment of the Constitution of the United States of America and requests from the Court, a determination of the constitutional cogency of specific sections of the Puerto Rico Weapons Act, which the plaintiffs assert encroach upon and infringe plaintiffs' rights guaranteed by the Second Amendment. Sections not narrowly tailored that continue to cause undue burden upon law abiding citizens, such as the plaintiffs, who choose to fully exercise their individual Second Amendment right for self-defense on the Island. Although the right to keep and bear arms is not explicit in the Commonwealth of Puerto Rico Constitution, the Constitution of the United States' territorial clause gave Congress the power to "…make all needful Rules and Regulations respecting the Territory or Property belonging to the United States…." U.S. Const. Art. IV, sec. 3(2).  The Puerto Rico Federal Relations Act mandates that "…statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States, except the internal-revenue laws…" P. Law 600, Sec. 9.  In *Downes v. Bidwell* the Supreme Court recognized that federally guaranteed fundamental rights placed limitations on local government. 182 U.S. 244 (1901) and in 1985 the Circuit Court of Appeals in *U.S. v. Quiñones*,

made clear that local law could not prevent the applicability of federal laws by virtue of the Supremacy Clause. 758 F. 2d. 40.

24. Plaintiffs move the Court to enter a declaratory judgment in favor of the plaintiffs, because this involves an issue of law. Plaintiffs are law-abiding responsible citizens whose training activities are within the scope of the Second Amendment. Their right to practice with firearms for self-defense and safety are ancillary to the core of the Second Amendment. The Commonwealth of Puerto Rico, however, enforces a ban on non-sport gun clubs and non-sports target practice by weapon license holders. The Commonwealth does not just regulate such practice, but also prohibits any lawful attempt to engage in firearm education and self-defense practice unrelated to any sport.

25. The Second Amendment of the United States Constitution provides that:

"[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amndt. II.

The Second Amendment guarantees an individual's right to possess a firearm unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such as self-defense within the home. *District of Columbia v. Heller*, 554 U.S. 570 (2008). The Second Amendment right to keep and bear arms for self-defense in one's home is also fully applicable to the States through the Fourteen Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). We point out that Puerto Rico's Weapons Act, predates said constitutional interpretations because it was enacted on September 11, 2000, as Commonwealth Act No. 404. Although, it has been enforced for the past sixteen (16) years, it has failed to substantially reduce crime and gun-related violence.

26. The First Amendment of the United States Constitution protects the right to freedom of speech, among other fundamental rights. The amendment applies to people's freedom of association. See *National Association for the Advancement of Colored People v. Alabama*, 357 U.S. 449 (1958). The Highest Court found that freedom to associate with organizations dedicated to the advancement of beliefs and ideas is an inseparable part to due process clause of the

9

Fourteenth Amendment and was also protected by the First Amendment because privacy of membership was an essential part of this freedom. In *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), the Supreme Court clarified that implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious and cultural ends. Topics like gun-control laws and gun-violence permeate headlines, national presidential debates and have fostered a wide range of conflicting opinions. Second Amendment organizations members advocate beliefs.

27. With respect to freedom of association the Commonwealth of Puerto Rico's own Constitution Bill of Rights recognized that its citizens were allowed to join with each other and organize freely for any lawful purpose. *Constitution of the Commonwealth of Puerto* Rico, Article II, section 4 and section 6. Puerto Rico Supreme Court has addressed concerns regarding mandatory affiliation and funding in *Rivera Schatz v. Estado Libre Asociado de Puerto Rico*, 2014 TSPR 122, 191 D.P.R. __ (2014). With its ruling, Puerto Rico's highest Court ratified that a person ought to be free to choose whether to belong to one, to all, or no organization, based on free will.

28. The Constitution of the United States is the supreme law of the land. *Marbury v. Madison*, 5 U.S. 137. No state may convert a secured liberty into a privilege, and issue a license and fee for it. *Murdock v. Pennsylvania*, 319 U.S. 105. If the state converts your right into a privilege and issues a license and charge a fee for it, that fee is unconstitutional. *Shuttlesworth v. Birmingham, Alabama*, 373 U.S. 262. Back in 1982, Puerto Rico Highest Court ruled that the right to own and carry firearms was a "privilege" to be regulated by the State. *Pueblo de Puerto Rico v. Hector Gerardino del Rio*, 113 D.P.R. 684 (1982). As indicated above subsequent U.S. Supreme Court decisions have now recognize this to be each individual's fundamental right.

29. The Court may distinguish the case from *Williams v. Commonwealth of Puerto Rico*, 910 F. Supp. 2d 386 (D.P.R. 2012) 12-1218 (FAB), where plaintiffs argued Commonwealth could not license a fundamental right and Superior Court had uncontrolled discretion to issue or

refuse to grant a permit to carry. *Williams*, Civil No. 12-1218 (Opinion and Order, pg. 2-3; pg. 15-16.) Here other requirements are challenged and there are issues not asserted in *Williams*. Plaintiff challenges section 457 of the Weapons Act which requires a weapon license holder with a target shooting permit to maintain membership to the PRSA, and shooting-clubs themselves are required to be PRSA affiliated to obtain a license. 25 L.P.R.A. §457. The only common issue is a challenge of the $250 Tax Stamp, but plaintiffs present a challenge on different grounds absent in *Williams*.

30.     Where it can be shown activities of a private party were compelled or influenced by government regulation, private action can be attributed to the State. *Rendell-Baker v. Kohn*, 457 U.S. at 841, 2771; *Gerena v. Puerto Rico Legal Services, Inc.* 697 F.2d at 450. PRSA actions were both influenced and compelled by Commonwealth of Puerto Rico firearm regulation.

## UNLAWFUL REGULATION AT ISSUE[1]

31.     Sections 1.02(m), 3.01(c), 3.02 (A), 3.03 (7), 3.04 (B), 3.04 (D), 3.06, 2.02 (D), 6.02, and 2.05 (A), of the Puerto Rico Weapons Act, as well as its corresponding Police and Sports regulation, infringe the Second Amendment.

> Section 1.02 (m) of the Puerto Rico Weapons Act restricts shooting associations to those exclusively ascribed to the sport of Olympic target shooting. Section 1.02 of Act No. 404 does not define in any way what a "club de tiro" or a gun-club is.
>
> Section 3.01(c) ascribed to the Sports Secretary authority to certify that a bona fide gun-club or target practice federation, in order for the Police Superintendent to issue the corresponding permit. Subsection (c) ascribes to the Police Superintendent an obligation to keep a registry with the names, age, and address of every person to whom a target practice permit has been issued, keeping information as well on the

---

[1] Plaintiffs incorporates here by reference and title both the Second and Third Causes of Action of the Original Complaint (Docket No. 1) as "Unlawful Regulation at Issue" for purposes of pleading in this Amended Complaint.

weapon's license number, and the Federation, including federation's seal number, to which the permit holder belongs, with the obligation to notify Sports which permits are cancelled for failure to renew Federation membership. 25 L.P.R.A. §45.

Section 3.02 regulates licenses for "target practice" clubs. Section 3.02 (A) bans non-sport gun-clubs by excluding self-defense practice unrelated to any sports, allowing gun-club licenses exclusively to target shooting sports clubs. Section A Grants Sports Secretary authority to approve the club's facility, amongst other requirements, subsection (7) requires the prospective gun-club/gun-range to certify its membership to the "Federacion de Tiro" a/k/a PRSA.

Section 3.03 (7) dictates that each gun-club must have a certificate of affiliation to the sports target shooting federation.

Section 3.04 regulates the process by which Police Superintendent issues individual target practice permits to weapons license holders. Section 3.04 (B) and 3.04 (D) restrict shooting activates to sports that are unrelated to individual self-defense. Section (B) requires individual membership to both a sport shooting and the sport federation, and Section (D) requires said membership to keep the post-license target-shooting permit issued by Puerto Rico Police. Without said permit, law-abiding citizens including plaintiffs face restrictions on firearm purchase and ammunition, which restrict ability to train on firearm safety. Section (A) requires the prospective target practice permit applicant to show his/her Federation's stamp, with an application fee. Section (B) prohibits obtaining a target practice permit without proof of membership from a gun-club and "Federacion de Tiro" and section (D) requires target practice permit holder to keep and maintain active membership

to a gun-club ascribed to the Federation, and certified by the Sport Secretary, in order retain a valid target practice permit.

Article 3.06 authorizes the Police Superintendent to cancel any target practice permit, for failure to renew and/or pay the Federation stamp/seal. 25 L.P.R.A. §457e. Article 8, section 5 of Police Regulation No. 7311, also requires the individual target practice permit applicant to submit copy of the Federation's stamp (subsection c) and a certificate of membership into a gun-club (subsection d).

Section 2.02 (D) restricts the number of firearms the licensee can purchase to two (2) without a post-license target shooting permit, and Section 6.02 restricts the number of rounds of ammunition that an individual can purchased, to 50 per weapon for each year.

Such bizarre restrictions of the Puerto Rico Weapons Act unreasonably infringe upon each individual's Second Amendment right and encroaches individual's right to Freely Associate, because it requires a post-license "target-shooting permit" with mandatory membership into the Puerto Rico Shooting Association (PRSA) and its affiliated gun-clubs. Each individual weapon license holder is also required to pay a PRSA Stamp fee to keep said permit. Each must pay gun-club membership dues for the life of said permit and the PRSA stamp for its renewal. Unfortunately, mandatory affiliation for the individual and gun-clubs to an organization that promotes a sport, is a prerequisite for the permit or license, which constitutes infringement of the right to freely associate for lawful non-sport related training.

Section 2.05 of the Puerto Rico Weapons Act also infringe the Second Amendment:

13

    Section 2.05's requirement number two (2) of the Puerto Rico Weapons Act requires each applicant for a Conceal Carry Permit to purchase a $250.00 Internal Revenue Stamp Tax which is to be given to the Police. The Police takes no part in the Conceal Carry permit ex-parte judicial process at the State Court. The required Stamp Tax infringes and unjustly burdens plaintiffs and its members Constitutional right to Keep and Bear arms. Said unjustified charge has a chilling effect and only serves to discourage the exercise of a constitutional right. The Puerto Rico Weapons Act, as amended, requires weapon licensee to pay a tax completely unrelated to the cost associated with the Conceal Carry Permit petition process mandated by law, thru Puerto Rico State Courts. Section 2.05 (A) requires the weapons licensee to pay a $250.00 tax before he/she submits his petition to State Court for a conceal carry permit, 25 L.P.R.A. §456(d). Section 2.05 (A) unreasonably interferes with lawful exercise of plaintiff members' constitutional rights, in as much as it places a "*tax*" on each citizen's right to "bear" arms for self-defense. 25 L.P.R.A. §456d.

As indicated, Section 3.04 of the Puerto Rico Weapons Act requires each target shooting permit holder with a weapons license to affiliate to a sport shooting federation, in this case the Puerto Rico Shooting Association. If a permit holder does not affiliate to the federation, the individual cannot lawfully engage in target practice or belong to unaffiliated gun-clubs, which the law does not contemplate. Further, without membership affiliation to the Federation, the individual cannot lawfully purchase and possess more than two firearms and 50 rounds of ammunition per year for each one. The above referenced Puerto Rico Weapons Act sections place upon each individual the burden to affiliate against his will, to a private sport shooting federation, in order to lawfully engage in practice for firearm safety education and tactical self-defense training, which is taught by the Plaintiffs in this case. Said sections, and the above referenced section which imposes a tax on the Conceal Carry Permit applicant, for a judicial process in which Police does not participate,

constitute infringement upon each individual Second Amendment right, encroachment to plaintiff's right to freely associate, and the unlawful taxation of their Constitutionally guaranteed fundamental right to keep and bear arms.

32. The challenged Puerto Rico Weapons Act sections and its corresponding administrative regulation are unconstitutional to the extent that, they:

    a. Require an additional target-shooting permit to the Weapon License, to purchase and own more than two firearms and/or fifty rounds of ammunition per weapon, per year. Without said permit the licensee cannot exceed restrictions on his license.

    b. The target-shooting permit to the Weapon License, also requires the individual to maintain paid active membership with the sports Federation's affiliated gun-clubs. Without gun-club membership the licensee cannot obtain a target-shooting permit.

    c. The target-shooting permit holder, also must pay for a Federation Stamp fee as part of his/her Weapon License renewal process. Without purchase of the Federation Stamp, the licensee cannot renew his/her target-shooting permit with the license.

    d. Without the Federation's endorsement, non-sport related gun-clubs cannot exist.

    e. Without the purchase of a $250.00 Internal Revenue Stamp Tax, a licensee cannot lawfully apply and obtain Conceal Carry permit to carry a firearm for self-defense.

33. The challenged sections infringe plaintiffs' and each plaintiff association members' individual Second Amendment right of the United States Constitution, plaintiffs' right to freely associate for a lawful purpose and unlawfully tax a potential life-saving Constitutional right.

**HARM SUFFERED**

34. But for the above-referenced Commonwealth regulations prohibiting the lawful purchase and training exclusively for firearm safety and self-defense education, unconnected with athletic sports or the sports federation, plaintiffs would fully exercise their right to keep and bear arms guaranteed by the Second Amendment.

15

35. But for the above-referenced regulations prohibiting non-sport related gun-clubs, plaintiffs Phoenix and CAT would provide a firearm safety and self-defense training facility that is fully consistent with the right to keep and bear arms guaranteed by the Second Amendment.

36. The federation has rejected Kerkado's proposed training facility, and without the federation's endorsement, plaintiff cannot apply for required Sport's certification and the Police's license to operate his educational facility. This unlawful act by a federation has harmed plaintiffs Kerkado, Phoenix and CAT. The Supreme Court has essentially ruled that Police does not have a constitutional duty to protect someone from harm. *Castle Rock v. Gonzales* 545 U.S. 748 (2005). It is the duty of each individual to protect themselves. Self-defense is "the central component" of the Second Amendment. *District of Columbia v. Heller* 554 US 570 (2008). To educate self-defense in order to keep citizens form committing errors, they must have the opportunity, if they choose to do so, to train with tactical self-defense courses, which the PRSA will not allow. Courses taught by plaintiffs do not conform with PRSA's "sport-only" point of view. Courses taught by plaintiffs require extensive use of ammunition and multi-gun skills, which requires members to obtain a target practice permit for his/her weapon license. To obtain and renew a target practice permit, individual must pay inscription fee to PRSA and membership to its sporting gun-clubs. Commonwealth Sports & Recreation Department officials have already refused to certify Phoenix instructors, without the required PRSA affiliation certificate.

37. But for the above-referenced Commonwealth regulations imposing a Stamp Tax on each conceal carry permit applicant, plaintiff organization's members would also avail themselves of the Conceal Carry permit process. The $250.00 Tax Stamp constitutes abridgement of the right to self-defense with a firearm. The fundamental right to self-defense should not be conditioned upon payment of tax adversely affecting individual's Second Amendment right. Said tax conditions this fundamental right to his/her ability to pay the excessive tax of 323% on the filing

fee ($78) to commence the ex-parte petition process for a conceal carry permit with Puerto Rico State Courts.

38.     The individual right to self-defense is central component of the second amendment. As such, said amendment was not intended to secure the right of a few to practice Olympic sports for leisure, but to allow citizens to have the individual right to possess and carry a weapon for a lawful purpose, this includes the fundamental right to self-defense.[2] The Commonwealth has recognized the justifiable use of force by citizens by way of affirmative defense ("legítima defensa") from prosecution for the use of deadly force. As such, the Commonwealth has an obligation to accommodate the exercise of recognized legal rights in the least restrictive way possible, without imposing unwarranted hardship on the exercise by lawful citizens. An attempt to control unlawful use of firearms should not be tailored to impose a substantial burden (membership/stamp tax) on most of its citizens, who do abide by the law.

## BASIS FOR INJUNCTIVE RELIEF

39.     Plaintiffs are entitled to injunctive relief because defendant's regulation, as cited above, prohibits the possession and purchase of multiple firearms and ammunition for training and self-defense practice, unconnected with the sports federation.  Plaintiffs are entitled to injunctive relief because the cited regulation also prohibits target-shooting practice in gun-club facilities unconnected with the federation.  Plaintiff are also entitled to injunctive relief because the cited regulation does not allow for individual conceal carry permits without a prerequisite tax by Police. The cited regulation deprives the plaintiff of fully exercising their Second Amendment right and the cited restrictions constitutes irreparable harm.  Defendants are depriving the plaintiffs of their fundamental right to non-association with defendants' athletic federation and to avail themselves

---

[2] *"If the fundamental right of self-defense does not protect Caetano, then the safety of all Americans is left to the mercy of state authorities who may be more concerned about disarming the people than about keeping them safe."* - Supreme Court Justice Alito on *Caetano v Massachusetts* (2016).

of the use of non-federation gun-clubs in the Commonwealth, to engage in firearm safety education and self-defense training. The facility and education are both protected by the Second Amendment.

40.     The plaintiffs will be irreparably injured if the defendants are not enjoined from enforcing the above-referenced regulations. Without an injunction, the plaintiffs have suffered and, will continue to suffer adverse effects including unjustified restrictions of constitutional rights. The irreparable harm to plaintiffs outweighs the potential harm, if any, to defendants caused by granting the injunctive relief. Enjoining the defendants from enforcing the above-reference regulations restricting lawful firearm training for self-defense purposes serves the public interest because the regulation violates plaintiffs' other fundamental rights, including freedom to associate.

## DECLARATORY RELIEF

41.     Plaintiffs incorporate by referenced the allegations contained in the foregoing paragraphs of this Amended Complaint as if fully forth at length herein.

42.     A clear controversy exists between the plaintiffs and the defendants as to whether defendants' regulation restricting the individual lawful practice of non-sport firearm self-defense training and the existence of non-affiliated gun-clubs, are constitutionally lawful. A clear controversy also exists between the plaintiffs and the defendants as to whether defendant's regulation restricting the individual lawful purchase of multiple firearms and ammunition for non-sport firearm training without a gun-club membership, is lawful.  A controversy also exists as to whether defendants' regulation requiring the $250.00 Internal Revenue Stamp Tax on the Conceal Carry application permit process by Puerto Rico Police, is constitutionally lawful and/or justified.

43.     The controversy involves the rights or other legal relations of the plaintiffs and this is asserted against the entities who have an interest in contesting the claim. The controversies are between parties whose interests are real, adverse, and the issues are ripe for judicial determination.

44.      Plaintiffs seek a declaratory judgment that defendants' regulations which includes portions of Puerto Rico Weapons Act sections 1.02(m), 3.01(c), 3.02 (A), 3.03 (7), 3.04 (B), 3.04

(D), 3.06, 2.02 (D), 6.02, and 2.05 (A), as well as its corresponding Police and Sports regulation, infringe the Second Amendment, in as much as the required target shooting permit, federation gun-club membership and Tax Stamp are unlawful and unenforceable, because they infringe plaintiffs' Second Amendment right and other Fundamental Rights.

45. A declaratory judgment is necessary and proper to determine whether defendants' regulation forbidding lawful operation of gun-clubs and firearm training for non-sports is unlawful.

46. Attached to this Complaint the Court will find the following supporting documents:

**Exhibit I** ATF's Firearm Related State Laws (Includes P.R. pag. 430 (p. 412)).

**Exhibit II** Puerto Rico's Act 404 as recently published by PR's OGP.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

A. Grant a declaratory judgment that defendants' regulation which includes portions of Puerto Rico Weapons Act sections 1.02(m), 3.01(c), 3.02 (A), 3.03 (7), 3.04 (B), 3.04 (D), 3.06, 2.02 (D), 6.02, and 2.05 (A), as well as its corresponding Police and Sports regulation, infringe the Second Amendment;

B. Issue a Preliminary and Permanent Injunction enjoining and restraining defendants from enforcing their rules and regulations prohibiting non-sport gun-clubs and non-membership to gun-clubs and non-payment of the Conceal Carry Stamp Tax;

C. Award the plaintiffs relief as allowed by statute and common law;

D. Award the plaintiffs attorney's fees and costs pursuant to 42 U.S.C. §1988(b); and

E. Award such other and further relief as the Court deems just, proper and equitable, including costs, pre-judgment and post-judgment interest.

In San Juan, Puerto Rico, on this 4th. day of January of 2017.

Respectfully submitted,

/S/ Humberto Cobo-Estrella, Esq.
**USDC-PR230108**
Humberto Cobo-Estrella, Esq.
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 200-2715
Email: hcobo@hcounsel.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 4, 2017, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whim counsel has entered an operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

                                                        /S/ Humberto Cobo-Estrella, Esq.
                                                          *Attorney for the Plaintiffs*