IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ A. CRUZ-KERKADO, *ET AL*  <br><br>    Plaintiffs  <br><br>    v.  <br><br>COMMONWEALTH OF PUERTO RICO (BY WAY OF THE PUERTO RICO DEPARTMENT OF JUSTICE a/k/a DEPARTAMENTO DE JUSTICIA, *ET AL*  <br><br>    Defendants | CIVIL NO. 16-2748 (ADC) |

**DEFENDANT PRSA'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS**

**TO THE HONORABLE COURT:**

Defendant Puerto Rico Shooting Association ("PRSA") a/k/a Federación de Tiro de Armas Cortas y Rifles de Puerto Rico, by counsel, respectfully submits this Reply in support of its Motion to Dismiss under Fed. R. Civ. P. 12.

### I. Introduction.

Plaintiffs filed an Opposition to PRSA's Motion to Dismiss (Docket No. 20) that was struck by the Court on December 21, 2016 because it violated the Local Rules. Plaintiffs were given additional time to file "a proper opposition". (Docket No. 27). Plaintiffs eventually amended their complaint and requested leave to dismiss without prejudice three of the causes of action included in the Complaint, which had been duly addressed by PRSA in its Motion to Dismiss. (Docket No. 28). On January 4, 2016, Plaintiffs filed a new Opposition to PRSA's Motion to Dismiss ("Opposition"). (Docket No. 30).

In their new opposition brief, Plaintiffs still fail to offer any meaningful response to the various grounds for dismissal raised by PRSA. Plaintiffs seem to recognize that the facts in the complaint show that the State *is not* responsible for PRSA's conduct and attempt to salvage their claims against PRSA by raising new facts that are nowhere mentioned in the amended complaint. Plaintiffs then argue superficially that this case meets all three tests for determining whether private action can be deemed state action. They are plainly wrong.

First Circuit precedent undercuts Plaintiffs' contention that PRSA is a state actor. *See Ponce v. Basketball Feder. of Com. of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985) (finding that there was not a symbiotic relationship between the Puerto Rico Basketball Federation and the State despite the fact that the State provided office space, payment for utilities, maintenance, and equipment, indirect support from the Olympic Committee, and beneficial contracts allowing free or below-

1

market rate use of government stadiums).[1] Plaintiffs' opposition brief nevertheless fails to cure the deficiencies in the complaint. The end result is the same: Plaintiffs' § 1983 claim against PRSA cannot survive.

**II.      Argument**

### A. *Plaintiffs cannot raise new facts in their opposition brief*

As a threshold issue, Plaintiffs raise new allegations for the first time in the opposition brief,[2] despite the fact that the Court generously allowed Plaintiffs to amend their initial complaint. This Court has held that Plaintiffs cannot rely on allegations raised for the first time in an opposition to a motion to dismiss. *Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 366 (D.P.R. 2015); *see also Kolker v. Hurwitz*, No. CIV. 09-1895 JP, 2011 WL 292264, at *3 (D.P.R. Jan. 31, 2011) ("the Court will not consider any facts not found in the complaint."). Given Plaintiffs' failure to incorporate these allegations in the amended complaint, they should be disregarded by the Court. But even if they weren't, the complaint should still be dismissed, since the allegations fail show that the PRSA acted under color of state law.

---

[1] Plaintiffs baselessly argue that it is "foolish to compare guns with basketballs," clearly missing the point for which the precedent was cited. But, as in *Ponce*, the PRSA is a private actor in charge of the regulation of an amateur sport in Puerto Rico. PRSA thus does not carry out a function traditionally reserved for the State.

[2] Plaintiffs include the following facts, which are nowhere found in the Amended Complaint: "(1) At all relevant times Sports representatives made representations to Kerkado, that [the] decision maker and originator of [the] gun-cub license was the PRSA, whose endorsement was required by Sports prior to any attempt to certify his gun-club facility; (2) Sports representatives made representations to Kerkado that Sports had and would adopt exclusively PRSA standards; (3) that Sports inspector allowed the PRSA inspector to take over its own inspection and impose PRSA requirements; (4) Sports never got to complete its own inspection, as a result of PRSA inspectors adversarial intervention; and (5) Sports subsequent decision to cancel Phoenix instructor licenses with their proposed alternate 'tactical' federation, was in fact prompted by PRSA officials." Opposition, p. 3-4.

### B. *Plaintiffs fail to establish that the PRSA's actions can be attributed to the State*

1. *Plaintiffs' allegation regarding an inspection in which the PRSA and the DLS were present is simply insufficient to show a symbiotic relationship between the State and the PRSA in the denial of Plaintiffs' affiliation request*

It is only in rare circumstances that a private entity can be deemed a state actor for purposes of § 1983. *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). In attempting to satisfy the nexus/joint action test, Plaintiffs point to a "joint inspection" in which representatives of both the PRSA and the Puerto Rico Department of Leisure and Sports ("DLS") were present. Plaintiffs make much ado about nothing.

First Circuit precedent states that the nexus/joint action test is satisfied when the "totality of the circumstances reveals that the State has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the challenged activity". *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2005). To pass this test, Plaintiffs must show that the PRSA's actions are "attributable to the State through a symbiotic relationship between the two." *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011). The Supreme Court has established that that the symbiotic relationship must involve the challenged conduct, *Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982) (finding State must be responsible for "*the specific conduct of which the plaintiff complains.*"); in this case, *PRSA's decision to deny Plaintiff's affiliation request*.[3] The crucial question is therefore, not whether the DLS and the PRSA participated in an inspection of Plaintiffs' premises at the same time, but whether there was a relationship of

---

[3] Plaintiffs' contention that "the challenged conduct is the mandatory membership requirement imposed by law to both individuals and proposed gun-clubs," Opposition, p.3, is both puzzling and nonsensical, seeing as the PRSA affiliation is required by law (to obtain a firearm), and not by the PRSA. Plaintiffs fail to cite any authority establishing that a private entity may be held liable for a legally mandated requirement. Plaintiffs' conclusion lacks any legal support and is meritless. In any case, the challenged conduct involving the PRSA and relevant to the state action tests discussed in this brief is the denial of Plaintiffs' affiliation request.

3

interdependence between the State and the PRSA in the PRSA's decision to deny affiliation. The answer is no.

Plaintiffs point to no facts showing that such a relationship exists. It is undisputed that affiliation to the PRSA is a prior requirement for the issuance of a license by State Officials. But the decision by PRSA to accept a new member in its organization is taken by PRSA officials alone, based on its rules, without any participation by the State. Nor does PRSA participate in the governmental decision to award or deny a license to an applicant. PRSA is primarily and fundamentally a sports organization which seeks to achieve uniformity between affiliated gun clubs, so that shooting competitions can be conducted with a shared system of rules. PRSA, the Puerto Rico Basketball Federation, and the Puerto Rico (and U.S.) Olympic Committee are all private organizations that do not represent the State.[4]

While Plaintiffs may complain that the Commonwealth of Puerto Rico requires them to be affiliated to the PRSA to obtain a license, this does not convert the PRSA into a State actor. The PRSA does not issue firearms licenses. The PRSA only grants PRSA affiliation to the gun clubs based on the criteria established in its own regulations. *See, e.g.*, *Pacheco v. Federacion Ecuestre De P.R.*, 34 F. Supp. 2d 101, 104 (D.P.R. 1999) ("The Centro Ecuestre and Federación Ecuestre are private entities, and their decisions with regard to allowing individuals to participate in their official events or facilities is a matter that in no reasonable manner can be characterized as coerced, encouraged by, or for the profit of, the Commonwealth of Puerto Rico.").

---

[4] Plaintiffs also point to an allegation that the "State derived economic benefit" from the grant of authority to the PRSA. Opposition, p. 3. But this is irrelevant. First Circuit precedent states that the crucial inquiry is whether "the state profited from the [challenged] activity." *Ponce*, 760 F.2d at 382. And Plaintiffs in their opposition, point to zero allegations showing that the State profited from the denial of Plaintiffs' request to become affiliated to the PRSA. So, Plaintiffs' argument fails.

4

The reason why DLS was also present at an inspection with the PRSA is found in the Weapons Act. The DLS conducts *its own inspection* because the DLS is the party that issues the necessary certification to obtain a shooting range license. 25 L.P.R.A. § 457.  This is a separate role from the PRSA's, which solely admits members to its sports association.  In other words, the PRSA and DLS act in different spheres. The fact that both may have coincided at the inspection does not support the conclusion that they have a relationship of interdependence (other than convenience) and that the State is responsible for PRSA's decision to deny affiliation to the Plaintiffs.

Courts have held much more compelling factors, such as receipt of public funds by the private party and that the private party acted under a state statute, to be insufficient. *See Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994) ("[G]overnment regulation, even extensive regulation, and the receipt of [public] funds ... are insufficient to [satisfy the nexus/joint action test]."); *Spencer v. Lee*, 864 F.2d 1376, 1381 (7th Cir.1989) (finding that a private party is not transformed into a state actor merely because the private party acted pursuant to a state statute).

Plaintiffs newly added allegations likewise fail to establish a symbiotic relationship between the State and the PRSA,[5] especially since this relationship must exist in the challenged conduct, *i.e.*, the denial of the affiliation request. *See Ponce,* 760 F.2d at 377 (finding that there was no symbiotic relationship between the Puerto Rico Basketball Federation and the State, *despite the fact that the State provided office space, payment for utilities, maintenance, and equipment, indirect support*

---

[5] As argued above, *see* Footnote 2, those newly mentioned allegations should not be considered by the Court. But even if they were to be, they do not prove a symbiotic relationship between the State and PRSA. Rather, they show what has never been disputed by the parties: that the law, and not the PRSA, requires PRSA affiliation in order to obtain a license. These also show that the DLS officials acted accordingly with this legal mandate: they gave deference, as the law requires, to the PRSA decision as to whether the clubs meet the affiliation standards, since only the PRSA can grant PRSA affiliation. There is no symbiotic relationship.

5

*from the Olympic Committee, and beneficial contracts allowing free or below-market rate use of government stadiums*).

PRSA denied Plaintiffs' request for affiliation due to Plaintiffs' failure to meet requirements established by PRSA. Simply put, it was based on its private regulations — *and not on a government directive* — that the PRSA made its decision to deny the affiliation request. [6] *See Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1316 (11th Cir.2000) (finding that the nexus/joint action test was not met because nothing showed that the state had anything to do with the private entity's decision to deny the plaintiff's application). The allegations in the complaint fail to show that the State had anything to do with this decision. Plaintiffs fail to show that the nexus/joint action test is met.

Even if the State had approved or acquiesced the PRSA's decision to deny affiliation—which is not alleged in the complaint—the nexus test would still not be satisfied. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 355 (1974) (finding that the nexus/joint action test is not met if the State merely approves or acquiesces in the action of the private party).

C. *Plaintiffs fail to show that the PRSA performs functions exclusively reserved for the State as required by the public function test*

Plaintiffs fare no better under the public function test. *See Ponce v. Basketball Feder. of Com. of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985) (finding that regulation of amateur sports is not traditionally an exclusive function of the State). Nonetheless, we address their argument.

---

[6] For this reason, Plaintiffs' allegation that "Phoenix members were unlawfully denied the renewal of their [DLS] instructor license at the behest of the PRSA" is also unavailing. Opposition, p. 3. It is precisely because the DLS is in charge of certifying that an entity applying for a license to operate a shooting range is a bona fide gun club, *see* 25 L.P.R.A §457, that the PRSA has the obligation to notify the DLS whenever a gun club does not meet the affiliation requirements. This does not show that the PRSA and the State had a symbiotic relationship in the denial of Plaintiffs' affiliation request. Rather, it shows that each entity has a distinct function.

Plaintiffs argue that the public function test is met because the PRSA uses the facilities of Albergue Olímpico and Casa Olímpica for its office board meetings and because the PRSA letterhead bears the logo of the Puerto Rico Olympic Committee.[7] Opposition, p. 9. Yet this has nothing to do with the public function test's requirements; the test is met when the private actor exercises powers "traditionally exclusively reserved to the State." *Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir. 2011). Such requirement is not met here.

At the outset, Plaintiffs' brief lacks any meaningful argument as to how PRSA's powers are exclusively reserved to the State. According to First Circuit precedent, exclusivity is an important qualifier in this test, which "limits the range of eligible activities." *Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir. 2011). In fact, "that a private entity performs a function which serves the public does not make its acts state action." *Rendell–Baker v. Kohn*, 457 U.S. 830, 842 (1982). PRSA does not conduct a "licensing inspection", as Plaintiffs call it. Rather, PRSA grants affiliation to applying clubs (if the clubs comply with the safety and infrastructure requirements set forth in its regulation) and to do so, as explained before, it visits the premises of the shooting range for purposes of affiliation, *not licensing*. Only the State has the power (through the Superintendent of the PRPD) to issue a license to operate a shooting range. *See* 25 L.P.R.A. §457.

Contrary to Plaintiffs' contention, *Ponce* is applicable here. *Ponce v. Basketball Feder. of Com. of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985). Since both the Basketball Federation and the PRSA regulate sports, there is no basis for distinguishing between target shooting and basketball. If the Basketball Federation of Puerto Rico is not a state actor, then the PRSA is not one either, because

---

[7] This argument actually hurts Plaintiffs' case, seeing as the Olympic Committee of Puerto Rico is also a private entity under Puerto Rico Law, 3 L.P.R.A. § 444p (Olympic Committee is an autonomous entity); s*ee Federación De Balonmano De Puerto Rico, Inc. v. Comité Olímpico De Puerto Rico, Inc.*, No. KLAN201000634, 2010 WL 4628092, at *9 (P.R. Cir. Aug. 5, 2010) (stating that "the Olympic Committee of Puerto Rico is a private entity separate from the State, even when it receives some type of economic subsidy from the State") (our translation); *see also, San Francisco Art & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 542-547 (1987) (finding that the U.S. Olympic Committee is not a state actor).

7

the PRSA's activities, *i.e.*, the regulation of a sport, are no different from those of the Basketball Federation. *See NCAA v Tarkanian*, 488 U.S. 179 (1988); *see also San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 545 (1987) ("Neither the conduct nor the coordination of amateur sports has been a traditional government function"). It is only when there is a massive presence of state members, that an association such as the PRSA can be deemed to be a state actor. *Compare*, *Brentwood Academy v. Tenn. Secondary School Atlethic Assoc.*, 531 U.S. 288 (2001) (84% of the athletic association's members were state schools). Plaintiffs fail to show that the PRSA performs a function exclusively reserved for the State.

*3. Plaintiffs' argument regarding the state compulsion test is flatly wrong*

Plaintiffs allege that the state compulsion test is met because "the involuntary affiliation process by law compels or encourages involuntary affiliation into PRSA." Opposition, p. 9. Plaintiffs miss the point. The question under the state compulsion test is whether the State has used coercive power or encouraged the challenged conduct—that is, the *denial* of Plaintiffs' affiliation request by the PRSA.[8] *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 12 (1st Cir. 2015), cert. denied, 136 S. Ct. 2020, 195 L. Ed. 2d 217 (2016). This did not occur here, and Plaintiffs simply present no facts that plausibly support such a conclusion. The PRSA is indeed free to decide which applicants comply with its regulation.

4. *Plaintiffs fail to state plausible First Amendment claim*

Plaintiffs allege that the Puerto Rico rule that requires affiliation to a *bona fide* gun-club admitted by the PRSA for the issuance of a gun license violates the right of free association under

---

[8] As explained above, the challenged conduct at issue is not, contrary to Plaintiffs' argument, "the involuntary affiliation into PRSA", but the denial of the affiliation request by PRSA. It is undisputed that the law requires PRSA affiliation to obtain a firearm. But the PRSA, a private entity, is not liable for this requirement *mandated by law*. *Diefenderfer v. Office of Recovery Servs. For State of Utah*, 185 F.3d 873 (10th Cir. 1999) (holding that "private actors who merely comply with state law are not thereby acting under color of state law").

8

the First Amendment. Plaintiffs rely on the Puerto Rico Supreme Court decision in *Rivera Schatz v. E.L.A.*, 191 D.P.R. 791 (2014). This decision, according to First Circuit precedent, is not binding on this Court. Cf., *Romero v. Colegio de Abogados de Puerto Rico*, 204 F. 3d 291, 296-297 (1st Cir. 2000) (stating that "conditioning the practice of law on membership in a state bar association does not itself violate the First Amendment"). In any event, Plaintiffs' reliance on *Rivera Schatz* is misplaced.

In *Rivera Schatz*, the Supreme Court of Puerto Rico ruled that a law requiring compulsory membership in the local Bar Association to obtain a license to practice law in Puerto Rico is contrary to the Puerto Rico Constitution because it interferes with the exclusive powers enjoyed by the Supreme Court of Puerto Rico to regulate the legal profession in the Island. 191 D.P.R. at 821. Importantly, the Puerto Rico Supreme Court's ruling did not rest on First Amendment grounds. Nor has it been extended by the Supreme Court of Puerto Rico to hold invalid similar compulsory membership requirements that exist for other professions in Puerto Rico. *See* 20 L.P.R.A. §§ 72 *et seq*.

The Supreme Court of the United States has made clear that, in order to invoke the right of free association, a group must engage in an expressive activity. *Boys Scouts of America v. James Dale*, 530 U.S. 640, 648 (2000). And "[n]o court has recognized target shooting as a constitutionally protected form of expression." *Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198, 211 (1st Cir. 2002). Plaintiffs thus fail to meet this test.

In *Gun Owners*, the First Circuit rejected a First Amendment challenge to a Massachusetts law that required gun clubs that desired to obtain a license for use and storage of large capacity (*i.e.*, semiautomatic and automatic) weapons to have at least one shareholder that individually qualified for such a license. 284 F.3d at 215. The Court held:

9

> [R]equiring a club to obtain a license in order to enjoy a narrow range of privileges relating to large capacity weapons does not "implicate any constitutionally protected right of association because it does not involve ... protected associative activity." Like an ordinance restricting attendance at certain dance halls to persons of a certain age, this regulation simply does not implicate the First Amendment. See *City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989) (holding that the dancing regulated by the municipal ordinance "simply [does] not involve the sort of expressive association that the First Amendment has been held to protect"). The *plaintiffs are not being forced to join any association that espouses a political viewpoint,* and are not required to permit persons whose viewpoints they find objectionable to join their own association. Therefore, their First Amendment challenge… is meritless.

284 F.3d at 215-216.

In the present case, the PRSA is a sports organization and does not espouse any political viewpoint. No allegations plausibly show otherwise. Requiring clubs to secure PRSA membership thus does not violate any First Amendment principles. At best, Plaintiffs could request that use of their dues be limited to activities that are germane to the PRSA's function. *Keller v. State Bar*, 496 U.S. 1, 13 (1990); *Abood v. Detroit Bd. Of Education*, 431 U.S. 209, 235-236 (1977). Plaintiffs' First Amendment claim against the PRSA fails.

### III.    Conclusion

WHEREFORE**,** Defendant PRSA respectfully requests that this Honorable Court dismiss *with prejudice* Plaintiffs' complaint against PRSA.

RESPECTFULLY SUBMITTED.

**I hereby certify** that today I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.
In San Juan, Puerto Rico, this 18th day of January, 2017.

**MORELL, BAUZÁ,
CARTAGENA & DAPENA**
PO Box 13399
San Juan, PR 00908
Tel.  787-723-1233
Fax. 787-723-8763

*/s/ German J. Brau*

10

German J. Brau
USDC PR No. 202805
Email: german.brau@mbcdlaw.com

***/s/ Ramón E. Dapena***
Ramón E. Dapena
USDC PR No. 125005
Email: ramon.dapena@mbcdlaw.com

***/s/ Iván J. Lladó***
Iván J. Llado
USDC PR No. 302002
Email: ivan.llado@mbcdlaw.com

*Counsel for Defendant Puerto Rico Shooting Association a/k/a Federación de Tiro de Armas Cortas y Rifles de Puerto Rico*