### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jose A. Cruz-Kerkado, *et al.*<br>*Plaintiffs*<br>v.<br>Commonwealth of Puerto Rico, *et al.*<br>*Defendants* | CIVIL ACTION<br><br>Case No 3:16-cv-2748<br>Constitutional Rights |

## Motion for Declaratory Judgment for the Plaintiffs

**To the Honorable Court:**

**COMES NOW**, the plaintiffs represented by the undersigned counsel and pursuant to Rule 57 of the Federal Rules of Civil Procedure move the Court for Declaratory Judgment for plaintiffs.

Defendants filed a dispositive motion alleging Puerto Rico Shooting Federation is no State actor, yet produced no evidentiary support beyond that of theory and speculative assertions. PRSA restricts what kind (sport) and which (affiliated) shooting range facilities are used by individuals in the Commonwealth of Puerto Rico for firearm training.

Defense's smoke screen relies on *Ponce v. Basketball Feder. Of Com. Of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985).  Defendant attempt to mislead by restricting their analogies between characteristic the PRSA and the Basketball Federation share, yet failed to address those that clearly distinguish this case. PRSA characteristics, like Basketball Federation in *Ponce*, is a private entity with access to public funds and facilities, but that's where it ends. The Plaintiff in *Ponce¸* sought eligibility into a basketball team, but was suspended by Superior Basketball League from playing in a tournament due to non-compliance with its eligibility rules.

 Dissimilarities are abundantly clear: No law prohibits ownership of basketballs, restricts practice of basketball sport by citizens, nor punish unaffiliated basketball players with a permit cancellation. As opposed to Basketball Federation in *Ponce*, both firearm ownership and firearm safety education for self-defense are fundamental individual rights guaranteed by the Constitution of the United States. The rights asserted by the Plaintiffs in this case are distinguishable from those of *Ponce*. As oppose to *Ponce*, the PRSA-Commonwealth *tandem* relationship no only regulates a "sport" but *also* restricts the legitimate exercise of the fundamental right to self-defense guaranteed

by the Second Amendment. In essence, the PRSA has become an "arm" of the State to restrict who, where and what a person may do with his/her lawful firearms. PRSA role in accordance with Puerto Rico Weapons Act, as clearing-house between individuals and gun-club with the Commonwealth, constitutes conduct which should be attributed to the State because PRSA private actions certifying *bona fide* membership status for individuals and each gun-club can be deemed State action. The PRSA with its denial of affiliation (which is mandated by law) acted under color of State law.  PRSA membership is also part of an elaborate scheme governing individuals' weapon permits. Without membership, individual's ability to practice firearm safety for self-defense is drastically limited. This limits Commonwealth Citizens' Second Amendment right to maintain proficiency in firearm use via target practice at a non-sport/non-affiliated range. As opposed to *Ponce*, the regulated activity by the PRSA falls within the scope of the Second Amendment.

The Commonwealth also attempts to undermine plaintiffs' claims with its mislabel of a "denial of a business permits" which is false. The Commonwealth's permit regime prohibits non-sport/non-PRSA affiliated shooting ranges in Puerto Rico, and prohibits non-affiliated individual shooting permit holders. The Commonwealth failed to demonstrate how the regulatory means it has chosen: (1) mandatory gun-club/federation affiliation and (2) stamp-tax payment for conceal carry process; achieves any public benefit. Such restrictions are not reconcilable with the Second Amendment, which also protects the right to learn and practice firearm use in the controlled setting of a shooting range. Both codefendants have failed to recognized plaintiffs' right to practice with firearm for self-defense is protected by the Second Amendment, as the United States Court Appeals, for the Seventh Circuit's January 18, 2017, Opinion illustrates:

> "…in *Ezell I*, we rejected the City's argument that range training is categorically unprotected by the Second Amendment.  We held that the core individual right of armed defense - as recognized in *Heller* and incorporated against the states in *McDonald* - includes a corresponding right to acquire and maintain proficiency in firearm use through target practices at a range. 651 F.3d at 704…
> …we held that the City had failed to establish that target practice is wholly unprotected as a matter of history and legal tradition in the founding era or when the Fourteenth Amendment was ratified. Id. At 704-06" *Ezell v. City of Chicago* Nos. 14-3312-14-3322.  See **Exhibit I, pg. 7**

Said Opinion also illustrates:

> "[w]e held that banishing firing ranges from the city was a severe encroachment on the right of law abiding, responsible Chicagoans to acquire and maintain proficiency in firearm use, "an important corollary to the meaningful exercise of the core right to possess firearms for self-defense" Id. At 708" *Ezell v. City of Chicago* Nos. 14-3312-14-3322.  See **Exhibit I, pg. 8**

In the present case, the challenged law regulates activity protected by the Second Amendment and the Commonwealth of Puerto Rico must bear the burden of justifying to the Court its action, under a heightened standard of judicial review. No publicly accessible non-sport/non-PRSA affiliated shooting range yet exists in Puerto Rico.  The Court may find that the challenged regulation, though not on its face an outright prohibition on gun ranges, nonetheless severely restricts the right of citizens to train in firearm use at a range.  The Commonwealth has proffered no evidentiary support to justify restricting gun range to sport/PRSA affiliated facilities. PRSA reliance on *Ponce* is also misplaced, said case did not involve any claim about the Second Amendment right, nor addressed mandatory affiliation claims. No case referenced by PRSA has yet addressed a claim comparable where challenge sections of a law prohibits (without the corresponding shooting permit/category) the purchase, possession and carrying of firearms unrelated to a sport. Particularly because the Commonwealth's Police Department and the Sports and Recreation Department have yet to show how contested sections of the law and individual permit restrictions are adequately justified.

**Plaintiffs' Constitutional Claims**

Plaintiffs aver PRSA actions violate their Second Amendment right. Specifically, Plaintiffs also alleged violation of their right to freedom of association.  A private entity may be subject to constitutional obligations under the Fourteenth Amendment if it satisfies one of three tests: "(1) the private entity assumes a traditional public function in undertaking the challenged conduct; (2) an elaborate financial or regulatory nexus ties the challenged conduct to the State; or (3) a symbiotic relationship exists between the private entity and the State." *Perkins*, 196 F.3d 13 at 18 (citations omitted).

To meet the public function, test a private party must be performing "a public function that has been `traditionally the exclusive prerogative of the State.'" *Estades-Negroni v. CPC Hospital*, 412 F.3d 1, 5 (1st Cir.2005) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). The nexus test examines "whether the government exercised coercive power or provided such significant encouragement that the complained-of misconduct ... must be deemed to be the conduct of the government." *Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico*, 84 F.3d 487, 493 (1st Cir. 1996). Under the symbiotic relationship test, a private party is fairly characterized as a state actor if the government "has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Rodriguez-Garcia v. Davila*, 904 F.2d 90, 98 (1st Cir.1990) (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (alterations omitted)). Satisfaction of any of these three tests may subject a private entity's actions to constitutional limitations. See *Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto*, 522 F.3d 1, 4 (1st Cir.2008).

A. Public Function Test

Regarding the public function test, Plaintiffs aver PRSA prerequisite affiliation for each individual and for each gun range demonstrates a governmental function of public importance to the State, sufficient to hold the government liable for PRSA's actions. The Supreme Court has found action to be governmental "when the challenged entity performs functions that have been `traditionally the exclusive prerogative' of the [state]." *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (quoting *Rendell-Baker*, 457 U.S. at 842, 102 S.Ct. 2764 (emphasis added by *Rendell-Baker Court*)). The Court should find that PRSA actions in tandem with the Commonwealth to certify affiliation of each individual for his/her shooting permit are traditionally the exclusive prerogative of the state.  The court should finds PRSA's activities are not akin to running a basketball league, and therefore, this case satisfy the public function test.

B. Nexus Test

Plaintiffs aver Commonwealth permit regime constitute sufficient connections to satisfy the nexus test. The nexus test examines "whether the government exercised coercive power or provided such significant encouragement that the complained-of misconduct ... must be deemed to be the conduct of the government." *Barrios-Velazquez*, 84 F.3d at 493. The First Circuit has followed the Supreme Court in describing this as a targeted inquiry that focuses on the connection between the state and the challenged conduct, not the broader relationship between the state and the private entity. See *Perkins*, 196 F.3d at 19-20. Plaintiff has sufficiently alleged how the state has encouraged (denial of mandated affiliation by law by PRSA with simultaneous denial by Sports and Recreation of Instructor's non-PRSA certification for alternate tactical federation) PRSA's alleged constitutional violations. Plaintiffs satisfy the nexus test. See *Rodriguez-Garcia*, 904 F.2d at 97 ("the challenged action ... may be fairly treated as that of the State itself ... only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.")

C. Symbiotic Relationship Test

The symbiotic relationship test evaluates whether government has become so intertwined with the private entity that it must be recognized as a joint participant in the challenged activity. *Perkins*, 196 F.3d at 21. In contrast to the nexus inquiry, the symbiotic relationship test focuses on the nature of the overall relationship between the state and the private entity and not just the state's roll in the challenged action. *Id*. When conducting this inquiry, presiding case law has focused on the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs; and whether the state benefits from a financial partnership with the private entity. *Id*. (citing *Evans v. Newton*, 382 U.S. 296, 301, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Barrios-Velazquez*, 84 F.3d at 494-95); *Rodriguez-Garcia*, 904 F.2d at 98 (citing *Rendell-Baker*, 457 U.S. at 843, 102 S.Ct. 2764). After reviewing the factual allegations, the Court should find there is a symbiotic relationship present between codefendants. Plaintiffs have averred governmental influence (joint

inspection with Sports and Recreation Officials, mandated PRSA affiliation and PRSA Stamp purchase for each individual's weapon license renewal) that hinders PRSA's independence in conducting its affairs. Furthermore, the Commonwealth benefits from its tandem exclusive association with PRSA (Olympic travel expense payment for public officials, shooting permit application fees, PRSA certified gun-club license application fees, etc.) Plaintiffs have demonstrated existence of a symbiotic relationship. PRSA operating revenue for its daily affairs is mostly generated through individual affiliation (required by law) fees, and the Commonwealth in turns profit from sale of a "shooting permit" to PRSA certified individuals).  See also *Bonilla v. Federacion de Ajedrez*, 832 F.Supp.2d 108 (2011) Plaintiffs have satisfied requirements of indirect state-action tests, demonstrating how PRSA's challenged actions are attributable to the state.

**WHEREFORE**, plaintiffs respectfully move the Court to deny defendants dispositive motions and pursuant to Rule 57 of Federal Rules of Civil Procedure, issue Declaratory Judgment.

In San Juan, Puerto Rico, on this 20th. Day of January 2017.

> /S/ Humberto Cobo-Estrella, Esq.
> **USDC-PR230108**
> PO Box 366451
> San Juan, Puerto Rico 00936-6451
> Tel. (787) 200-2715
> Email: *hcobo@hcounsel.com*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2017, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.  /S/ Humberto Cobo-Estrella, Esq., *Attorney for the Plaintiffs*