IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ A. CRUZ KERKADO, et al.<br><br>Plaintiffs<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO, et al.<br><br>Defendants | CIVIL NO.: 16-2748 (ADC)<br><br>Declaratory and Injunctive Relief<br><br>Constitutional Rights |

## MOTION TO DISMISS PURSUANT TO FEDERAL CIVIL PROCEDURE RULE 12(b)(6)

TO THE HONORABLE COURT:

COMES NOW, Co-Defendants, the Commonwealth of Puerto Rico, the Puerto Rico Police Department and the Puerto Rico Department of Leisure and Sports, without submitting to this Honorable Court's jurisdiction or waiving any affirmative defense, including those that may not be specifically mentioned below, through the undersigned Attorneys, and respectfully STATE and PRAY as follows.

### I.       Introduction

On January 4, 2017, Plaintiffs brought filed the instant amended complaint. From a reading of the amended complaint, this Honorable Court can note that the instant Complaint is not actually a claim arising under the Second Amendment, but a state-matter claim originated from the denial of a business permit for a corporation with paramilitary objectives. From that point forward, Plaintiffs have devised and raised various '*colorable legal claims*' that misinterpret recent jurisprudence from the

Supreme Court, regarding the right to bear arms and to form a state-militia arising from the Second Amendment.

## II.   Standard of Review

Under the Federal Rules of Civil Procedure a defendant may, in response to an instant pleading, submit a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6). The Court must accept as true any well-pleaded allegations in the complaint and draw all reasonable inferences therefrom in plaintiff's favor. Correa Martínez v. Arrillaga Beléndez, 903 F. 2d 49, 51 (1st Cir. 1990). However, the Court need not accept conclusory allegations as truthful. Holden v. Hagopian, 978 F.2d 1115 (9th Cir. 1992).

The primary purpose of a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) is to challenge the legal theory, not the sufficiency of any evidence that might be adduced.   Advanced Cardiovascular v. Scimed Life, 988 F.2d 1157 (1993). To survive a motion to dismiss, a complaint must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory. See Berner v. Delahanty, 129 F. 3d 20 (1st Cir. 1997); Gooley v. Mobil Oil Corp., 851 F. 2d 513 (1st Cir. 1998). As stated before by this Honorable Court, in Escabi v. Puerto Rico, Civ. No. 02-1627 (PG), "Plaintiff, however, may not rest merely on unsupported conclusions or interpretations of law. Subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts will not defeat a motion to dismiss" (quoting Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993) and Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992)).

While the Court must comply with the standard of making all inferences in favor of Plaintiffs, it is not obligated to "swallow the plaintiff's invective hook, line and sinker, bald assertions,

unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir.  1996); <u>Doyle v. Hasbro, Inc.</u>, 103 F. 3d 186 (1st Cir. 1996); <u>Mass. School of Law at Andover v. American Bar</u>, 142 F. 3d 26 (1st Cir. 1998). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all well-pleaded allegations in the complaint are true, even if doubtful in fact. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955 (2007). "In general, it is improper for a court to consider hearsay statements when ruling on a motion to dismiss." <u>Beydoun v. Wataniya Rests. Holding, Q.S.C.</u>, 768 F.3d 499 (6th Cir. 2014).

Dismissal for failure to state a claim is warranted if it clearly appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S.Ct. 99 (1957).

Thus, Plaintiffs must, and are required to, present allegations that nudge their claims across the line from conceivable to plausible in order to comply with the requirements of Rule 8(a). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

On the other hand, it is well established that an affirmative defense may properly be raised in a motion to dismiss. <u>Blackstone Realty, LLC v. F.D.I.C.</u>, 244 F. 3d 193 (1st Cir. 2001).

### III.  Lack of Standing and Federal Question as to Corporate Co-Plaintiffs' Claims

The Constitution limits the judicial power of the federal courts to actual cases and controversies. <u>Katz v. Pershing, LLC</u>, 672 F.3d 64, 71 (1st Cir. 2012)(Selya, J.). An actual case or controversy exists only when the party asserting federal court jurisdiction establishes "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends."<u>Id.</u> (quoting <u>Baker v. Carr</u>, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 669 (1962)). The standing inquiry is claim specific: ä plaintiff must

have standing to bring each and every claim that she asserts."Id. (citing Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006)); P.R. Dairy Farmers Ass'n v. Pagan, 35 F. Supp. 3d 210, 215 (D.P.R. 2014).

For most cases brought under federal question jurisdiction, the suit arises directly under a federal law that created such cause of action. Merrell Doe Pharms. V. Thompson, 478 U.S. 804 (1986). That is clearly not the case here.

A party has standing to file suit if it can demonstrate: (1) an 'injury in fact' –harm that is concrete and actual or imminent, not merely conjectural or hypothetical; (2) causation –a fairly traceable connection between the plaintiff's injury and the defendant's alleged conduct; and (3) redressability – the likelihood that the requested relief will remedy the alleged injury. See Summers v. Earth Island Inst., 555 U.S. 488 (2009); Sprint Comms. Co. v. APCC Servs., 554 U.S. 269 (2008); Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

Conjointly, as per longstanding judicial interpretations of Article III of the U.S. Constitution and Federal Civil Procedure Rule 12(b)(1), the presence or absence of a federal question is governed by the "well-pleaded-complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's complaint. Rivet v. Regions Bank, 522 U.S. 470 (1998); Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987). See also, Franchise Tax Bd. V. Construction Laborers Vacation Trust, 463 U.S. 1 (1983) (holding that the well-pleaded-complaint rule confines the search for federal question jurisdiction to the face of the complaint). Federal Courts have jurisdiction over a federal question claim when an action arises under the U.S. Constitution, federal law, or treaties of the United States. U.S. Const. Art. III, §2; Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677 (2006).

Still, a federal question jurisdiction may be based on a civil action alleging a violation of the U.S. Constitution. Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). Because this is what Plaintiffs are alleging in the case at hand – supposedly, a Second Amendment violation-, appearing Co-Defendants proceeds to analyze this requisite of federal question claims.

A case can yet arise under federal question jurisdiction if a well-pleaded-complaint establishes that plaintiff's right to relief necessarily depends on the resolution of a **substantial question of federal law**. McVeigh, *supra*; Singh v. Duane Morris LLP, 538 F.3d 334 (5th Cir. 2008) (emphasis ours). For this, the Court must consider the degree to which federal law is at the forefront of the case, and determine it is not collateral, peripheral or remote. Merrell Dow Pharm., *supra*; Howery v. Allstate Ins., 243 F.3d 912 (5th Cir. 2001). In other words, if a federal law does not provide a private cause of action, a state law cause of action based on its violation does not raise a federal question, just as it occurs in the instant Complaint. Merrell Dow Pharm., *supra*; Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148 (4th Cir. 1994). In fact, the mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction. See Franchise Tax Bd., *supra* (also holding that no substantial federal question was at hand when a federal issue was presented by a complaint for state declaratory judgment); and Singh, *supra* (holding there was no federal question jurisdiction in state court malpractice suit based on representation in previous trademark dispute because substantial question of law was state malpractice law and federal trademark law was only tangentially relevant).

To determine whether there is a federal question jurisdiction over a cause of action created by state law, the Court must decide: (1) if a federal right is an essential element of the state law claim; (2) interpretation of the federal right is necessary to resolve the case; (3) the question of federal law is substantial; and (4) the federal forum can entertain the case without disturbing any congressionally

approved balance of federal and state judicial responsibilities. <u>Grable & Sons Metal Prods. V. Darue Eng'g & Mfg.,</u> 545 U.S. 308 (2005). Here, Plaintiffs have failed to demonstrate these elements in their Complaint; even when analyzed under the well-pleaded-complaint rule requisites and the Supreme Court's interpretation of the Second Amendment in <u>District Court v. Heller</u>, 554 U.S. 570, 128 S.Ct. 2783 (2008) and <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 130 S.Ct. 3020 (2010).

<u>None</u> of the Plaintiffs organizations have standing to represent third-parties not included in the Complaint. Plaintiffs organizations claim that they have standing to sue on behalf of their members because each would otherwise have standing to sue in their own right, the3interest sought to protect are germane to the organization's purpose and neither the claim asserted, nor the relief requested, require the participation of each individual member. Plaintiffs fail to show the Honorable Court that they, indeed, have standing to sue representing third parties, since they limit themselves to recite the requirements to have standing, failing to meet its burden of showing associational standing. Burden of establishing  elements of standing is on party invoking federal jurisdiction. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

As to the standing of association's entity members to raise the rights of their individual associates, there is yet another three-part test. In addition to showing that the third-party claim satisfies the three basic Article III requirements, the litigant asserting third-party standing must show the following: first, "that the litigant personally has suffered an injury in fact that gives rise to a sufficiently concrete interest in the adjudication of the third party's rights"; second, "that the litigant has a close relationship to the third party"; and third, "that some hindrance exists that prevents the third party from protecting its own interests." <u>Council of Ins. Agents & Brokers v. Juarbe-Jimenez</u>, 443 F.3d 103, 108 (1ˢᵗ Cir. 2006)(citing <u>Eulitt v. Me., Dep't of Educ.</u>, 386 F.3d 344, 351 (1ˢᵗ Cir. 2004). Being

that co-plaintiffs failed to establish compliance with these requisites in order to have associational standing, it is respectfully requested that the Honorable Court DISMISSES WITH PREJUDICE all claims as to the corporation co-plaintiffs.

Even if this Honorable Court would consider that corporation co-plaintiffs have associational standing to represent the non-appearing third parties, the appearing defendants respectfully contend that corporation co-plaintiffs still lack standing to appear on behalf of third parties, namely their "students", being that, as they have admitted in the amended complaint, they lack license to operate any teaching/training firearm safety and self-defense unassociated with athletic sports institution for the purposes that they claim they are representing these non-appearing third parties.[1]

Even more, the main focus of the allegation in the Complaint, from which stem all other claims therein, is the supposed violation of Plaintiffs protected rights under the Second Amendment. However, the Second Amendment is an **individual right**, not a collective or corporate right. See <u>Heller</u>, 554 U.S. at 580 ("Nowhere else in the Constitution does a 'right' attributed to 'the people' refer to anything other than an *individual right.*"); Heller, 554 U.S. at 581 ("We start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans"); and <u>McDonald</u>, *supra* (In *Heller*, "this Court held that the Second amendment protects an *individual right* to keep and bear arms for purpose of self-defense, striking down a District of Columbia ordinance that banned the possession of handguns in the home."). (emphasis ours). Furthermore, the aforementioned Co-Plaintiffs cannot demonstrate an injury in fact or causation, given that this is not a right attributable to corporations.

---

[1] <u>See</u>, Amended Complaint ¶¶14, 20 pages 4-5, 7.

Even in the hypothesis that this Honorable Court understands otherwise, given the conclusory facts alleged in the Complaint, said *injury* would still be a merely conjectural and hypothetical harm. That said, the case at hand, thus, presents a state matter issue devoid of any substantial federal question, so self-evident that it is almost palpable.

Moreover, this case can be resolved without necessarily having to interpret federal rights, but by just applying local-state law. For this Honorable Court to entertain Plaintiffs allegations, it would have to infringe on the federalism and comity that has been long recognized and promoted between state and federal courts as a bulwark of the federal system. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1969) (Comity entails "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."); and Marcal Paper Mills, Inc. v. Ewing, 790 F2.d 195 (1st Cir. 1986) (Comity counsels "respect for both enforcement of state laws and the ability of state courts to give proper attention to federal law defenses").

In conclusion, this is a case concerning a law that governs, among other things, the approval of permits for business that are related to firearms and want to operate within the Commonwealth's jurisdiction. Still, in the hypothesis that a federal question may exist, which the Defendant denies, it is remote, tangential, or peripheral to the actual substantial issue; that is, state law.

In conclusion, Corporate Co-Plaintiffs cannot satisfy the Article III justiceability requirements for lack of standing. (U.S. Const., Art. III). Hence, this Honorable court should DISMISS with prejudice the instant Complaint. Moreover, this Honorable Court should also DISMISS with prejudice the instant

Complaint, as to the Corporate Co-Plaintiffs, pursuant to Federal Civil Procedure Rule 12(b)(1) for lack of subject-matter jurisdiction.

### IV.  The Puerto Rico Weapons Act is Constitutional.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In interpreting this text, the Supreme Court was guided by the principle that "[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning." District of Columbia v. Heller, 554 U.S. 570, 576, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)(quoting United States v. Sprague, 282 U.S. 716, 731, 51 S.Ct. 220, 75 L.Ed. 640 (1931)); see also Gibbons v. Ogden, 22 U.S. 1, 9 Wheat. 1, 188, 6 L.Ed. 23 (1824).

The Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." This meaning is strongly confirmed by the historical background of the Second Amendment. Heller, 554 U.S. at 592. Like most rights, the right secured by the Second Amendment is not unlimited. Id., at 626. The Court further expressed, "[A]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id., at 626-27.

The Second Amendment... [l]ike the First, is the very product of an interest balancing by the people. ... And whatever else it leaves for future evaluation, it surely elevates above all other interests

the right of law-abiding, responsible citizens to use arms **in defense of hearth and home.** Id., at 635. [Emphasis added].

Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in Heller, the Court held that **individual self-defense** is "the central component" of the Second Amendment right. McDonald v. City of Chicago, 561 U.S. 742, 767, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010)(quoting Heller, 554 U.S., at 599); see also, Heller, 554 U.S., at 628 (stating that the inherent right of self-defense has been central to the Second Amendment right"). Heller also explains that "the need for defense of self, family, and property is most acute" in the home, *ibid*, the Court found that this right applies to handguns because they are "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family. McDonald, 561 U.S., at 767.

Lastly, the Court in McDonald stated that in Heller they held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense. Unless considerations of *stare decisis* counsel otherwise, a provision of the Bill of Rights that protects a right that is fundamental from an American perspective applies equally to the Federal Government and the States. 561 U.S., at 791. See also Duncan, 391 U.S., at 149, and n. 14, 88 S.Ct. 1444, 20 L.Ed.2d 491.

From a study of the above cited jurisprudence, it can be seen that when the Second Amendment talks about a right to "keep and bear arms", it is referring to the right of individuals to keep and bear arms for self-defense, in defense of the "hearth and home". There is no mention in the Supreme Court's interpretation of the Second Amendment right to bear arms to a right of any association "to teach, train and practice firearm safety and self-defense unassociated with athletic sports," as plaintiffs allege in the Amended Complaint.[2]

---

[2] *See*, Amended Complaint ¶14, pages 4-5.

Furthermore, Plaintiffs admits in the Amended Complaint Cruz Kerkado possess firearms and has a valid permit for it; a concealed carry permit, nonetheless.[3]

Therefore, being that plaintiff Cruz Kerkadó has not been infringed of his right to keep and bear arms, and that, pursuant to the above discussed jurisprudence, the right to keep and bear arms is an individual right, it is respectfully requested that the Honorable Court DISMISSES WITH PREJUDICE all claims filed by co-plaintiffs Damas de la Segunda Enmienda, Corp., Phoenix Military Institute, Corp., and Centro de Adiestramientos Tácticos de Puerto Rico, Corp.

Plaintiffs allege that several sections of the Puerto Rico Weapons Act infringe the Second Amendment since they requires each applicant for a conceal carry permit to purchase a $250.00 internal revenue stamp. They further claim that the "stamp tax" infringes and unjustly burdens plaintiffs and its members Constitutional right to keep and bear arms. They also claim that the "unjustified" charge has a chilling effect and only serves to discourage the exercise of a constitutional right. Lastly, plaintiffs claim that, without membership to the Federation, the individual cannot lawfully purchase and possess more than two firearms and 50 rounds of ammunition per year for each one. Plaintiffs claim that several other sections of said Act infringe of their Second Amendment rights.

The appearing defendants will address plaintiffs' last claim first. The Supreme Court in <u>Heller</u> was clear, "[A]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings,

---

[3] <u>See</u>, Amended Complaint ¶1, page 1.

or laws imposing conditions and qualifications on the commercial sale of arms." Heller, at 626-27. Clearly, the appearing defendants can impose conditions on the commercial sale of arms, and this is one of such conditions.

Plaintiffs' claims that the stamp for the conceal carry permit of $250.00 and that the requirement to the Federation in order to obtain said permit infringed their Second Amendment rights, said claims were also raised in Williams v. Puerto Rico.

The Honorable Court, in Williams v. Puerto Rico, 910 F.Supp.2d 386, 392-93 (D.P.R. 2012), stated as to the Constitutionality of the Puerto Rico Weapons Act: "A statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation on the record." Heller v. Doe, 509 U.S. 312, 320-21, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)(internal quotations and citations omitted). A facial challenge to a legislative act, moreover, is considered 'the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the act would be valid.' Salerno, 481 U.S. at 745. To prevail on a facial challenge, plaintiffs must therefore establish that 'no set of circumstances exist under which [the Puerto Rico Weapons Act sections 456a and 456d] would be valid.' McGuire v. Reilly, 386 F.3d 45, 57 (1st Cir. 2004)(quoting United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). '[T]his standard imposes a very heavy burden on a party who mounts a facial challenge to a state statute.' McCullen v. Coakley, 571 F.3d 167, 174 (1st Cir. 2009)."

Just as the plaintiff in Williams, the plaintiffs in this case fall short in meeting the burden of the facial challenge of the Puerto Rico Weapons Act's sections 1.02(m), 3.01(c), 3.03(7), 3.04(B), 3.04(D), 3.06, 2.02(D), 6.02, and 2.05(A), as well as its corresponding "Police and Sports

regulation". In this case, just as with the requirements of associational standing, Plaintiffs merely recite the sections that they understand violate the Second Amendment, followed by the rehashing of their allegations in the complaint as to each of the sections. Moreover, Plaintiffs claim the violation of the Second Amendment by sections already found in <u>Williams</u> to be constitutional.

Furthermore, this Honorable Court in <u>Williams</u>, n. 3, stated: "The Supreme Court has explained that facial challenges are inherently disfavored because they 'rest on speculation,' 'raise the risk of premature interpretation of statutes on the basis of factually barebones records,' 'run contrary to the fundamental principle of judicial restraint,' and 'threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.' <u>Hightower</u>, 693 F.3d at 76-77 (citing <u>Sabri v. United States</u>, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004); <u>Ashwander v. TVA</u>, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed.2d 688 (1936); <u>Ayotte v. Planned Parenthood of Northern New Eng.</u>, 546 U.S. 320, 329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006))."

The Honorable Court, in <u>Williams</u>, found all of Plaintiff's claims of the unconstitutionality of the Puerto Rico Weapons Act unavailing. 910 F.Supp.2d at 395. As to plaintiff's claims of sections 456a and 456d posing an undue burden on them, which contain plaintiff's allegation of the $250 stamp to obtain the conceal weapon permit and the membership to the Federation, this Honorable Court in <u>Williams</u>, stated:

"The fate of Plaintiffs' third argument depends on the level of scrutiny required to analyze their claim... Intermediate scrutiny is the appropriate standard under which to evaluate plaintiffs' Second Amendment claims... Sections 456a and 456d pose a less severe burden on the Second Amendment right to bear arms, regulating only the manner in which a person may exercise that

right and not altogether prohibiting the exercise of such a right; thus, strict scrutiny does not apply, and intermediate scrutiny is the more appropriate standard of review.[4] See Colon-Quiles, 859 F. Supp. 2d at 235.

Sections 456a and 456d of the P.R. Weapons Act pass constitutional muster. Under an intermediate scrutiny analysis, the Court must determine the following: whether the asserted governmental purpose is significant, substantial, or important; whether the connection between the challenged regulation and that governmental purpose is reasonable; and whether the challenged regulation burdens the fundamental right at issue more than is reasonably necessary. Id. (citing Marzzarella, 614 F.3d at 98 (articulating the requirements of intermediate scrutiny under First Amendment case law.)

First, the Puerto Rico legislature enacted the Puerto Rico Weapons Act "to achieve a more peaceful and reassuring environment with greater public safety for [Puerto Rico] citizens . . . [and] to achieve an effective solution to the problem of controlling firearms in the hands of delinquents in Puerto Rico . . . ." Statement of Motives, Law No. 404, H.B. 3447 (Sept. 11, 2000). The Supreme Court has consistently recognized that the governmental interest in protecting public safety is important or even compelling. See Schenck v. Pro-Choice Network, 519 U.S. 357, 376, 117 S. Ct. 855, 137 L. Ed. 2d 1 (1997); United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987); Schall v. Martin, 467 U.S. 253, 264, 104 S. Ct. 2403, 81 L. Ed. 2d 207 (1984); Terry v. Ohio, 392 U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The interests enumerated by the

---

[4] As numerous other courts and legal commentators recognize, the application of intermediate scrutiny is consistent with the text and structure of the Supreme Court's reasoning in Heller. See, e.g., United States v. Marzzarella, 614 F.3d 85, 91 (3rd Cir. 2010) ("By equating the list of presumptively lawful regulations with restrictions on dangerous and unusual weapons, we believe the Court intended to treat them equivalently—as exceptions to the Second Amendment guarantee."); Joseph Blocher, Categoricalism and Balancing in First and Second Amendment Analysis, 84 N.Y.U. L.Rev. 375, 413 (2009) ("Heller categorically excludes certain types of 'people' and 'Arms' from Second Amendment **coverage**, denying them any constitutional protection whatsoever."). Accordingly, strict scrutiny does not apply.

Puerto Rico legislature, therefore, fall under the substantial and significant government interest in ensuring the safety of all of its citizens.

Second, _section 456a_'s licensing requirements and _section 456d_'s permit qualifications are substantially related to that interest and do not pose an unreasonable burden. In making such a determination, "substantial deference to the predictive judgments of [the legislature]" is warranted.[5] Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180, 195, 117 S. Ct. 1174, 137 L. Ed. 2d 369 (1997); McCullen v. Coakley, 571 F.3d 167, 177 (1st Cir. 2009). The Court's role is therefore to determine whether the legislature "has drawn reasonable inferences based on substantial evidence." Turner Broad., 512 U.S. at 666, 114 S. Ct. 2445, 129 L. Ed. 2d 497, and it concludes in this case that the Puerto Rico legislature has done so. The P.R. Weapons Act is no political whim, because the Puerto Rico legislature has long appreciated the dangers inherent in the possession and carrying of firearms. Originally enacted in 1951,[6] the P.R. Weapons Act has endured throughout the past half century "as a means to control crime." Statement of Motives, Law No. 404, H.B. 3447 (Sept. 11, 2000). Recognizing a statistical link between rising criminal activity in controlled substance trafficking and the proliferation of illegal firearm use, the Puerto Rico legislature acknowledged in 2000 that a major overhaul of the P.R.

---

[5] The Supreme Court has long granted deference to legislative findings regarding matters that are beyond the competence of courts. See Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2727, 177 L. Ed. 2d 355 (2010); Turner Broad. Sys., Inc., 520 U.S. at 195-96; Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 330-31 n.12, 105 S. Ct. 3180, 87 L. Ed. 2d 220 (1985). "In the context of firearm regulation, the legislature is 'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." Kachalsky v. County of Westchester, 701 F.3d 81, 2012 U.S. App. LEXIS 24363 at *42-43 (citing Turner Broad., 512 U.S. at 665).

[6] Even before 1951, the Puerto Rico government approved laws regulating weapons. (See P.R. Camara de Representantes, Informe—P. De la C. 3447, pp. 1-7 (June 15, 2000)). Puerto Rico became subject to the Criminal Code of 1902 with the change of sovereignty in the early twentieth century. Id. at 3. Criminalizing the possession or carrying of firearms and other dangerous instruments except when established by law, the Criminal Code of 1902 influenced future weapons legislation in Puerto Rico. Id. For more than a century, the Puerto Rico legislature has consistently regulated the possession and carrying of firearms, and the 1951 enactment of the P.R. Weapons Act demonstrates the legislature's enduring conclusion that restricting the possession and carrying of firearms leads to public safety.

Weapons Act was needed.[7] It then promulgated "innovative provisions . . . whose implementation will allow the law enforcement agencies to be more effective in the fight against crime . . . [and] to promote greater safety and the public welfare of the People of Puerto Rico." Id.

Based on decades of review, the Puerto Rico legislature made the reasonable inference that given the dangerous nature of firearms, requiring a petitioner to submit payment and documentation revealing his background, health, and character—like third party affidavits as to the good reputation and non-violent character of the petitioner, certification of petitioner's physical and mental abilities, confirmation of a successful gun club course completion, and verification of state tax and child support payments—serves the Commonwealth's interests in public safety. The Court reminds plaintiffs that in order to survive constitutional scrutiny, those provisions need only be substantially related to the Commonwealth's important public safety interest; a perfect fit between the means and the governmental objective is not required. Accordingly, the Court finds that _sections 456a_ and _456d_ are not facially invalid as an unconstitutional burden because there is a reasonable fit between the licensing and permit regulations and the government's compelling interest in public safety."

Based on the above cited jurisprudence and the expressions in Williams, in which claims similar to the claims in the instant amended complaint were raised, it is to be concluded that the sections of the Puerto Rico Weapons Act are constitutional. Therefore, it is respectfully requested that the instant amended complaint be DISMISSED WITH PREJUDICE.

---

[7] It stated, "Today, [September 11, 2000,] after four decades of its approval, and although it has been extensively amended, it is evident that the Weapons Law of Puerto Rico is not the most effective juridical instrument to deal with the different situations related to the handling of firearms on the Island." Statement of Motives, Law No. 404, H.B. 3447 (Sept. 11, 2000).

### V.  Longstanding Law

Even though they mention in their Complaint the Supreme Court's most recent interpretations of the Second Amendment, which are also an extensive historical analysis of said Amendment, in Heller, 554 U.S. 570, and McDonald, 561 U.S. 742, Plaintiffs omit to argue two of said jurisprudences main legal pillars. That is, both cases are adamant in stating that the Second Amendment is not an unlimited right and that neither case law should be taken to cast doubt on longstanding laws imposing regulations, conditions and qualifications on the possession of firearms. McDonald ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, **or laws imposing conditions and qualifications on the commercial sale of arms**.' We repeat those assurances here.") (emphasis ours). See also United States v. Rene E., 583 F.3d 8 (2009).

Hence, long standing regulations are presumptively lawful. That is, they are presumed not to burden conduct within the scope of the Second Amendment. "This is a reasonable presumption because a regulation that is 'longstanding,' which necessarily means it has long been accepted by the public, is not likely to burden a constitutional right; concomitantly the activities covered by a longstanding regulation are presumptively not protected from regulation by the Second Amendment." Heller v. District of Columbia, 670 F.3d 1244 (2011). However, "[a] plaintiff may rebut this presumption by showing the regulation does have **more than a de minimis effect** upon his right." *Id.* (emphasis added).

Since 1951, the Commonwealth of Puerto Rico has had legal dispositions limiting and regulating firearms possession, distribution and importation. Before the enactment of the here

challenged Act. No. 404[8], the Commonwealth of Puerto Rico regulated the possession, distribution and importation of firearms by means of its "Puerto Rico Weapons Act" Num. 17 of January 19, 1951, as amended, and the "Puerto Rico target Practice Act" Num. 75 of June 13, 1953, as amended, precursors to the current Weapons Act. Both laws had similar dispositions as to the challenged sections of the current law. See Williams v. Puerto Rico, 12-1218 (FAB) (where this Honorable court took judicial knowledge of the longstanding history of the here challenged weapons Act).

The Amended Complaint fails to argue the longstanding history of the challenged Puerto Rico Weapons Act. On the contrary, they try to challenge its constitutional validity, in a disorganized manner, by alleging the same circumstances solved before by this Honorable Court in Williams, id, which in the end are trifle matters, compared with its compelling interests and objectives.

Pursuant to the above, this Honorable Court should DISMISS the instant Complaint with prejudice.

## VI.  CONCLUSION

For the foregoing authority, arguments and reasons, the Defendants respectfully pray that this Honorable Court DISMISSES WITH PREJUDICE the Amended Complaint, and grant any other and further relief as the Court deems just and proper.

**WHEREFORE**, Defendant respectfully requests from this Honorable Court the **DISMISSAL WITH PREJUDICE** of the instant Amended Complaint, in its entirety, for failure to state a claim upon which relief can be granted.

---

[8] Local Weapons Act No. 404 of 2000, in force today, as amended.

I HEREBY CERTIFY that on this same date, I have electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all attorneys of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 15th day of March, 2017.


WANDA VÁZQUEZ GARCED
Secretary of Justice

WANDYMAR BURGOS VARGAS
Acting Deputy Secretary
In Charge of Litigation

SUSANA PEÑAGARICANO BROWN
Director
Federal Litigation Division
Department of Justice
spenagaricano@justicia.pr.gov

*S/Idza Díaz Rivera*
IDZA DÍAZ RIVERA
U.S.D.C. No.: 223404
Attorney for Defendants
Department of Justice
Federal Litigation and Bankruptcy Division
P.O. Box 9020192
San Juan, P.R., 00902-0192
Tel. (787) 721-2900, ext. 2647
Fax (787) 723-9188
idiaz@justicia.pr.gov