## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ A. CRUZ-KERKADO, PHOENIX MILITARY INSTITUTE, CORP., CENTRO DE ADIESTRAMIENTOS TACTICOS DE PUERTO RICO, CORP. | |
| Plaintiffs | |
| v. | CIVIL NO. 16-2748 (ADC) |
| COMMONWEALTH OF PUERTO RICO (BY WAY OF THE PUERTO RICO DEPARTMENT OF JUSTICE a/k/a DEPARTAMENTO DE JUSTICIA, PUERTO RICO POLICE DEPARTMENT a/k/a POLICIA DE PUERTO RICO, PUERTO RICO DEPARTMENT OF LEISURE AND SPORTS a/k/a DEPARTAMENTO DE RECREACIÓN Y DEPORTE, PUERTO RICO SHOOTING ASSOCIATION a/k/a FEDERACIÓN DE TIRO DE ARMAS CORTAS Y RIFLES DE PUERTO RICO | |
| Defendants | |

## DEFENDANT PRSA'S MOTION TO DISMISS

1

INTRODUCTION ................................................................................................................ 3

FACTUAL BACKGROUND................................................................................................. 4

STANDARD OF REVIEW .................................................................................................. 6

ARGUMENT......................................................................................................................... 7

    I.      Plaintiffs fail to state a claim under §1983 against the PRSA ............................ 7

        A.  Plaintiffs fail to allege conduct by the PRSA that is "attributable to the state".................................................................................................................... 7

                1.   Plaintiffs fail to meet the public function test since First Circuit precedent states that sports organizations, like the PRSA, do not perform a traditionally public function .............................................8

                2.   Plaintiffs fail to meet the nexus/joint action test..............................9

                3.   Plaintiffs fail to meet the state compulsion test .............................13

    II.    Plaintiffs fail to state a plausible claim under the freedom of association ...... 14

CONCLUSION .................................................................................................................. 17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ A. CRUZ-KERKADO, *ET AL* | |
| Plaintiffs | CIVIL NO. 16-2748 (ADC) |
| v. | |
| COMMONWEALTH OF PUERTO RICO, *ET AL* | |
| Defendants | |

## PRSA'S MOTION TO DISMISS UNDER RULE 12(B)(1) and 12(B)(6)

**TO THE HONORABLE COURT:**

Defendant the Puerto Rico Shooting Association ("PRSA") a/k/a Federación de Tiro de Armas Cortas y Rifles de Puerto Rico , by counsel, and without submitting to this Court's jurisdiction, respectfully requests that this Court dismiss Plaintiffs' claims against PRSA under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiffs' amended complaint fails to cure the fatal pleadings defects in the original complaint and ultimately fails to make out a plausible § 1983 claim against PRSA. Plaintiffs filed this suit under §1983 alleging that several provisions of Puerto Rico's Weapons Act are facially unconstitutional and that the PRSA violated their constitutional

rights by denying Plaintiffs' request to affiliate with the PRSA, which Plaintiffs need to legally operate a target shooting range in Puerto Rico.

Right out of the gate, Plaintiffs' §1983 claim against the PRSA lacks a basic and essential element under constitutional law: the alleged conduct of the defendant must be attributable to the state. Because the PRSA is but a private organization that regulates the sport of target shooting in Puerto Rico, Plaintiffs' §1983 claim against PRSA is doomed.

However, the deficiencies in Plaintiffs' amended complaint do not end there. Plaintiffs also challenge provisions of the Weapons Act under the First Amendment. These too fail. Plaintiffs' claims against the PRSA cannot survive.

## FACTUAL BACKGROUND

According to the complaint, Plaintiff José Kerkado ("Kerkado") is the owner of three different types of firearm permits governed by Puerto Rico's Weapons Act ("Weapons Act"), Law No. 404 of September 11, 2000, 25 L.P.R.A. §§ 455-460k: a weapons license under §456a; a conceal carry permit under §456d, which authorizes him to carry a weapon in public in a concealed manner; and a target shooting permit under §457c, which authorizes him to own more than two weapons and to use the target shooting ranges in the Commonwealth of Puerto Rico.

Among the requirements for owning a target shooting permit is that a person must maintain membership in a gun club duly recognized by the PRSA. 25 L.P.R.A. §457c. A

similar requirement applies to owners of a shooting club: to obtain a license to operate a shooting range, the gun club must be affiliated to the PRSA. 25 L.P.R.A. §457a.

Defendant PRSA is a private organization dedicated to developing the sport of target shooting in Puerto Rico. Among its faculties, the PRSA establishes the requisites and safety standards for the target shooting clubs in the Commonwealth and also trains and instructs citizens on the use of firearms. The Commonwealth has no say in the PRSA's decisions, which pertain to the sport of target shooting. The PRSA acts according to its own rules, which are adopted by the PRSA without State intervention.

Plaintiffs Centro de Adiestramiento Tácticos de Puerto Rico Corp. ("CAT") and Phoenix Military Institute Corp. ("Phoenix") are Puerto Rico corporations, for which Kerkado serves as resident agent. These corporations offer military tactical training to its clients.

Kerkado filed a request to affiliate Phoenix with the PRSA for the purpose of opening a shooting range in Puerto Rico and to provide training. On August 18, 2016, the PRSA sent a letter to Kerkado denying his request. The PRSA explained that the request and submitted documentation did not meet the PRSA requisites for affiliation.

Plaintiffs filed a complaint on September 29, 2016. After the defendants moved to dismiss the case, the Court urged Plaintiffs to amend the complaint in order to clarify the "basis of relief for each of its claims" and "to set forth more succinctly the claims themselves." (Docket No. 27).

On January 4, 2017, Plaintiffs filed an amended complaint under §1983 against the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Police Department ("PRPD"), the Puerto Rico Department of Leisure and Sports ("PRLS"), and the PRSA alleging that the PRSA's actions—*i.e.*, denying Plaintiff Phoenix's request for PRSA affiliation—violated the Second Amendment, since the lack of PRSA membership prevents Kerkado from operating a shooting range in Puerto Rico. They also allege that several provisions of the Weapons Act are facially unconstitutional under the Second Amendment and the First Amendment (Freedom of Association).[1]

## **STANDARD OF REVIEW**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 56 U.S. 662 (209). A complaint that presents "naked assertions devoid of further factual enhancement" or "a formulaic recitation of the elements of a cause of action" will not withstand dismissal. *Iqbal*, 56 U.S. at 678.

The First Circuit has established a two-pronged test to examine whether a complaint meets the plausibility requirement. First, the Court should separate a

---

[1] Plaintiffs also challenge all of the PRPD and PRLS regulations enforcing the requirements in the Weapons Act. For purposes of simplicity, this motion specifically references the provisions of the Weapons Act challenged by Plaintiffs. However, the legal arguments regarding these provisions equally apply to these regulations.

complaint's factual allegations from its legal conclusions. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 10 (1st Cir. 2011). The legal conclusions, unlike the factual allegations, "are not entitled to a presumption of truth" and should be disregarded. *Id*. The Court must treat as true the remaining factual allegations and "evaluate whether, taken as a whole, they state a facially plausible claim." *Id*.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider documents attached to or fairly incorporated into the complaint. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

## ARGUMENT

### I.     Plaintiffs fail to state a claim under §1983 against the PRSA

Section 1983 "creates a remedy for violations of federal rights committed by persons acting under color of state law." *Sánchez v. Pereira-Castillo*, 590 F.3d 31, 40 (1st Cir. 2009). To state a claim under §1983, plaintiffs must plausibly plead that: (1) they were deprived of a constitutional right; (2) that a causal connection exists between defendants' conduct and the constitutional deprivation; and (3) that the challenged conduct was attributable to the state. *Id.*

#### A.   Plaintiffs fail to allege conduct by the PRSA that is "attributable to the state"

Plaintiffs claim that the PRSA violated their constitutional rights under 42 U.S.C. §1983 by denying Plaintiff Phoenix's request for affiliation, without which Kerkado is

legally unable to request that the Commonwealth issue him a license to operate a shooting range.[2] However, it is blackletter law that section §1983 does not reach private actions. *Ponce v. Basketball Feder. of Com. of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985). And the PRSA is, as Plaintiffs admit, a private organization. *Amended Complaint*, ¶31, p. 14. Thus, in order to state a valid cause of action under §1983 against the PRSA, the PRSA's decision to deny Phoenix's affiliation requests must be "fairly attributable to the State." *Ponce*, 760 F.2d at 377. A private actor's conduct can be attributed to the State if the circumstances of the case meet one of three tests: the public function test, the state compulsion test, or the joint action/nexus test. *Alberto San, Inc. v. Consejo de Titulares del Condominio San Alberto*, 522 F.3d 1, 4 (1st Cir. 2008). Plaintiffs' allegations fail to plausibly meet any of these tests.

### 1. Plaintiffs fail to meet the public function test since First Circuit precedent states that sports organizations, like the PRSA, do not perform a traditionally public function

The public function test applies when the private actor performs a public function that has been "traditionally the exclusive prerogative of the state." *Alberto*, 552 F.3d at 4. As the First Circuit held in *Ponce*, this is not the case for a private sports organization,

---

[2] According to the amended complaint, Plaintiff Kerkado was the only plaintiff that requested affiliation to the PRSA (for the entity Phoenix) for purposes of acquiring a shooting club license, meaning Plaintiff Phoenix and Kerkado were the only plaintiffs affected by the PRSA's decision. The remainder of the Plaintiffs have suffered no injury since there is no allegation that they applied for a shooting club license. Thus, the remainder of the plaintiffs have no standing on this claim. See *Pagan v. Calderón*, 448 F.3d 16, 27 (1st Cir. 2006) (plaintiffs must prove that they have a "personal stake in the outcome" which requires showing a "concrete and particularized" injury in fact).

such as the PRSA. 760 F.2d at 377. In *Ponce*, the plaintiff brought a §1983 claim against the Basketball Federation of Puerto Rico, arguing, among other things, that the Basketball Federation's actions were attributable to the State because it assumed a responsibility traditionally reserved for the State. *Ponce*, 760 F.2d at 377. The First Circuit rejected the argument and found that regulation of amateur sports is not an exclusive function of the state. *Id*.; *see also, Perkins v. Londonberry Basketball Club*, 196 F.3d 13, 19 (1st Cir. 1999) (finding that "the administration of an amateur sports program lacks the element of exclusivity and therefore is not a traditional public function"). The same goes here. The fact that the PRSA promotes the development of the sport of target shooting does not mean its actions are attributable to the state. Plaintiffs allege no facts showing that the PRSA performs a function exclusively reserved for the State.

### 2. Plaintiffs fail to meet the nexus/joint action test

According to First Circuit precedent, the nexus/joint action test is satisfied when the "totality of the circumstances reveals that the State has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the challenged activity". *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2005). To pass this test, Plaintiffs must show that the PRSA's actions are "attributable to the State through a symbiotic relationship between the two." *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011). The Supreme Court has established that that the symbiotic relationship must involve the specific challenged conduct, which in this case is the

PRSA's decision to deny Plaintiff Phoenix's affiliation request. *Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982) (finding State must be responsible for "the specific conduct of which the plaintiff complains.").

Plaintiffs allege that the PRSA participated in a joint inspection of Plaintiff CAT's facility with an official of the PRLS. This, however, does not allow the inference that there is a symbiotic relationship between the State and the PRSA. The PRSA conducts an inspection of the shooting range facilities of any applicant to verify compliance with its rules, which include the conditions for membership. The reason why the PRLS conducts its own inspection of a gun club's premises is found in the Weapons Act and has a public dimension wholly absent in the PRSA's activities: the PRLS is responsible for issuing the necessary certification to obtain a shooting range license (which is a legal document). 25 L.P.R.A. § 457. This is a separate role from the PRSA's, which solely admits members to its sports association.

In other words, the PRSA and PRLS act in different spheres. The fact that both conduct inspections does not show that they have a relationship of interdependence and that, more importantly, the State intervened, or was responsible for, PRSA's decision to deny affiliation to Plaintiff Phoenix. *Blum v. Yaretsky*, 457 U.S. at 1004 ("the challenged action of the regulated entity ... may be fairly treated as that of the State itself ... only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.").

In fact, courts have held more compelling factors, such as receipt of public funds by the private party and that the private party acted under a state statute, to be insufficient. *See Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994) ("[G]overnment regulation, even extensive regulation, and the receipt of [public] funds ... are insufficient to [satisfy the nexus/joint action test]."); *Spencer v. Lee*, 864 F.2d 1376, 1381 (7th Cir.1989) (finding that a private party is not transformed into a state actor merely because the private party acted pursuant to a state statute); *Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1, 9 (1st Cir. 2015) (finding that it is "insufficient simply to point to a state statute authorizing the actions of the private entity"). So, the allegation that the PRSA "has also received public funds in the past from the Commonwealth and [that] it has also sponsored Puerto Rico Official Olympic target-shooting contestants" is insufficient. *See e.g., Ponce,* 760 F.2d at 377 (finding that there was no symbiotic relationship between the Puerto Rico Basketball Federation and the State, despite the fact that the State provided office space, payment for utilities, maintenance, and equipment, indirect support from the Olympic Committee, and beneficial contracts allowing free or below-market rate use of government stadiums); *see also San Francisco Art & Athletics, Inc. v. United States Olympic Committee,* 483 U.S. 522 (1987) (finding that the U.S. Olympic Committee is not a state actor, despite enjoying a government charter sanctioning its activities and granting exclusive rights to the use of the term "Olympic").

PRSA is primarily and fundamentally a sports organization which seeks to achieve uniformity between affiliated gun clubs, so that shooting competitions can be conducted with a shared system of rules.   The decision by PRSA to accept a new member in its organization is taken by PRSA officials alone, based on its rules and regulations. [3] *See, e.g.,* *Pacheco v. Federación Ecuestre De P.R.*, 34 F. Supp. 2d 101, 104 (D.P.R. 1999) ("The Centro Ecuestre and Federación Ecuestre are private entities, and their decisions with regard to allowing individuals to participate in their official events or facilities is a matter that in no reasonable manner can be characterized as coerced, encouraged by, or for the profit of, the Commonwealth of Puerto Rico."). The amended complaint is bereft of allegations showing that the State had anything to do with the denial of Plaintiff Phoenix's request for PRSA affiliation. *See Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1316 (11th Cir.2000) (finding that the nexus/joint action test was not met because nothing showed that the state had anything to do with the private entity's decision to deny the plaintiff's application).

Finally, even if the State had expressed approval or acquiescence to the PRSA's decision to deny affiliation—which is not alleged in the amended complaint—the nexus test would still not be satisfied. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 355 (1974)

---

[3] The allegation that the PRLS "refused to renew Phoenix instructor's Sports certification, at the behest of PRSA officials", Amended *Complaint*, ¶7, is irrelevant. Plaintiffs lack standing to bring a claim on behalf of these (unidentified) individuals.

(finding that the nexus/joint action test is not met if the State merely approves or acquiesces in the action of the private party).

### 3. Plaintiffs fail to meet the state compulsion test

The state compulsion test applies when the "state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the challenged conduct must in law be deemed to be that of the State." *Alberto*, 552 F.3d at 4 (quoting *Estades–Negroni*, 412 F.3d at 5). To establish state action under that test, a plaintiff must demonstrate a particularly close tie between the state and the private party's conduct, such that the conduct may be fairly regarded as state action. *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011). Even the rights-depriving conduct of an extensively regulated private party does not amount to action under color of state law, unless the conduct itself is compelled (or, at least, heavily influenced) by a state regulation. *Id*. Here, the amended complaint lacks any allegations showing that the Commonwealth has control over the PRSA (or its officers) or that the decision by the PRSA to deny Plaintiffs' request for affiliation was induced or compelled by the Commonwealth.

Plaintiffs merely allege that the "PRSA's actions were both influenced and compelled by the Commonwealth of Puerto Rico firearm regulation**.**" (*Amended Complaint*, p. 11). In other words, as the First Circuit stated in *Alberto*, "all plaintiff[s] can point to is the existence of a statute, but that alone is not enough." *Alberto*, 522 F.3d at 4. The Weapons Act indeed requires PRSA membership for the issuance of a target shooting

permit. But the PRSA is not liable for this legally mandated requirement. *Diefenderfer v. Office of Recovery Servs. For State of Utah*, 185 F.3d 873 (10th Cir. 1999) (holding that "private actors who merely comply with state law are not thereby acting under color of state law"). The state compulsion test is thus not satisfied in Plaintiffs' complaint.

In sum, because PRSA's actions are not fairly attributable to the State, the §1983 claims against the PRSA cannot survive.

## II.     Plaintiffs fail to state a plausible claim under the freedom of association

Plaintiffs argue that certain provisions of the Weapons Act violate their right to freedom of association because they (1) require membership in a PRSA-endorsed gun club as a condition for acquiring a target shooting permit, and (2) require affiliation to the PRSA by a gun club in order to obtain a shooting club license and lawfully operate a shooting range. 25 L.P.R.A. §§457c (d), 457a (a)(7).

Plaintiffs' facial attack under the First Amendment fails because they have not, and cannot, established that there are "no set of circumstances under which" the challenged provisions would be valid or that the statute lacks any "plainly legitimate sweep." *See United States v. Stevens*, 559 U.S. 460, 472 (2010). Nonetheless, we further analyze their allegations, which fail to plausibly plead a First Amendment claim.

The freedom of association is protected by the First Amendment. *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). This right is correlative to an individual's right "to speak, to worship, and to petition the government for the redress of grievances." *Roberts*

*v. United States Jaycees*, 468 U.S. 609, 622 (1984). As a result, the Supreme Court has also acknowledged the right of non-association. *Woodley v. Maynard*, 430 U.S. 705, 714 (1977).

Plaintiffs allege that the Weapons Act's provisions violate their First Amendment rights because they require membership with a gun club sanctioned by the PRSA or, in the case of gun club owners, affiliation to the PRSA. The amended complaint, however, does not show that these gun clubs, or the PRSA, are political or permeated with beliefs which would be offensive to those wishing to obtain a target permit or a shooting club permit. In other words, Plaintiffs here are not forced to foster "religious, political or ideological causes" by affiliating. *Coal. of New Jersey Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 688 (D.N.J. 1999), aff'd, 263 F.3d 157 (3d Cir. 2001).

The Supreme Court of the United States has made clear that, in order to invoke the right of free association, a group must engage in an expressive activity. *Boys Scouts of America v. James Dale*, 530 U.S.  640, 648 (2000).  And "[n]o court has recognized target shooting as a constitutionally protected form of expression." *Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198, 211 (1st Cir. 2002). Plaintiffs thus fail to meet this test.

To be clear, there are over 20 gun clubs to choose from all over the Commonwealth. And nothing in the amended complaint suggests that these clubs, as well as the PRSA, advance ideological beliefs. Plaintiffs' First Amendment rights are therefore not burdened by §457a and §457c.  *See e.g.*, *Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198, 215–16 (1st Cir. 2002) (finding First Amendment claims were meritless because, *inter*

*alia*, "plaintiffs are not being forced to join any association that espouses a political viewpoint"); *see Besig v. Dolphin Boating and Swimming Club*, 683 F.2d 1271 (9th Cir. 1982) (requirement of membership in groups of "apolitical nature" which "advocate no special view or philosophy that appellants have identified as offensive" in order to receive favorable access to public land not in violation of First Amendment).

Based on the above, the appropriate scrutiny is rational basis. *See Whitman*, 44 F. Supp. 2d at 690 (finding that rational basis review was warranted because no fundamental right was burdened by the government's mandatory membership in a gun club in order to possess assault rifles). As to §456a, requiring membership in a gun club legally recognized by the PRSA to obtain a target shooting permit and to use the shooting ranges of the gun clubs is rational, since among the PRSA's objectives is to train and instruct citizens on the use of firearms. The same goes for §457c. It is rational to require affiliation to the PRSA—the organization in charge of establishing the requisites and safety standards of the shooting ranges—in order to obtain a license to operate a shooting range in the Commonwealth. These regulations are related to the compelling government interest in public safety and ensure that the facilities of all of the gun clubs in Puerto Rico meet certain safety standards.

Plaintiffs thus fail to plead a plausible First Amendment claim.

## CONCLUSION

**WHEREFORE,** Defendant PRSA respectfully requests that this Honorable Court dismiss *with prejudice* Plaintiffs' complaint against PRSA.

**RESPECTFULLY SUBMITTED**.

## CERTIFICATE OF SERVICE

It is hereby certified that today I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

In San Juan, Puerto Rico, this 15th day of March, 2017.

**MORELL, BAUZÁ,**
**CARTAGENA & DAPENA**
PO Box 13399
San Juan, PR 00908
Tel.  787-723-1233
Fax. 787-723-8763

*/s/ German J. Brau*
German J. Brau
USDC PR No. 202805
Email: german.brau@mbcdlaw.com

*/s/ Ramón E. Dapena*
Ramón E. Dapena
USDC PR No. 125005
Email: ramon.dapena@mbcdlaw.com

*/s/ Iván J. Lladó*
Iván J. Llado
USDC PR No. 302002
Email: ivan.llado@mbcdlaw.com

*Counsel for Defendant Federación de Tiro de Armas Cortas y Rifles de Puerto Rico a/k/a the Puerto Rico Shooting Association*