IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jose A. Cruz-Kerkado, *et al.* *Plaintiffs* v. Commonwealth of Puerto Rico, *et al.* *Defendants* | CIVIL ACTION Case No 3:16-cv-2748 Constitutional Rights |

# Plaintiffs' Opposition to PRSA's Motion to Dismiss (Dkt. #50)

**To the Honorable Court:**

**COMES NOW**, the plaintiffs represented by the undersigned counsel and submits this *Opposition* to the Puerto Rico Shooting Association's ("PRSA") motion to dismiss (Dkt. #50).

Defendant PRSA wants to deprive plaintiffs of a fact-finding discovery and in the process, beat plaintiffs' Second Amendment claim to a pulp. Yet the PRSA at this stage, has not proffered evidence to sustain mandatory affiliation of individuals has not infringed the Second Amendment, and a symbiotic relationship between PRSA and the Commonwealth doesn't exist. The PRSA has failed to demonstrate how its regulation of firearms practice should not fall within scope of a §1983 claim, other than its analogy with Basketball. Defense simply relies heavily on a single case concerning regulation of professional *basketball*, to draw its own analogy and self-serving factual conclusions that PRSA should be similarly considered by this Court.  We respectfully disagree.

Time to *differentiate* basketball (sport) from firearms (self-defense): (A) A Basketball Federation membership is not required by law to engaged in the sport, yet a Puerto Rico Shooting Association membership is mandated by a law to lawfully exercise an inherently dangerous, yet fundamentally protected *right;* (B) the Basketball Federation does not require every player to purchase a Federation Stamp to practice, but the Puerto Rico Shooting Association requires every individual to purchase its unique "Sello Federativo/Stamp", without the stamp, they cannot obtain a gun "permit"; (C) and Basketball Federation does not regulate every basketball courts, but the Puerto Rico Shooting Association regulates all Commonwealth's private target shooting ranges. Without the PRSA endorsement, financial contribution to and its endorsement, no private target shooting range facility can lawfully exist. This case does not question the Constitutionality of the

1

Commonwealth's entire gun license regime, but two specific requirements which also infringe other fundamental rights, that were not specifically asserted in the *Williams* case: (A) The taxation of the right to (conceal) "bear" arms, and (B) Right to disassociate from a state compelled entity.

When Commonwealth requires individuals to affiliate with a private group with whom they may not agree with, it places an unconstitutional burden on plaintiffs' rights. Encroachment of an individuals' right to express, promote, pursue or defend *other* ideas not related to that association. Therefore, if the Commonwealth requires you to affiliate to the PRSA and the PRSA denies your request which has legal consequences, said conduct can be attributed to the State. The PRSA *de facto* restricts the kind of shooting ("sport") individuals can engage and facilities (PRSA affiliated) available for individual firearm training. Plaintiffs will proffer evidence the PRSA has monopoly on regulation of gun-related target practice activities on the Island. PRSA assertion that it doesn't have a symbiotic relationship with Commonwealth presents a factual dispute in need of *discovery*.

### Plaintiffs have alleged PRSA conduct attributable to the state

This case is clearly distinguishable from *Ponce v. Basketball Feder. Of Com. Of Puerto Rico*, 760 F.2d 375, 377 (1st. Cir. 1985). In *Ponce* a plaintiff sought to be *included* into an elite group of players, whereas in here plaintiffs want to be *excluded* from mandatory membership. The PRSA membership in question is *mandated by law*, whereas basketball federation was not required and membership was strictly *voluntary*. Plaintiffs are required to support PRSA by purchasing a Federation Stamp and memberships into affiliated gun-clubs. In *Ponce*, the Basketball Federation players were not compelled to support a Federation. Whereas, target-shooting permit holders are required to support PRSA because the corresponding license and/or individual permit is *contingent* upon continuing club membership. Non-payment of PRSA Stamp has legal consequences which include revocation of a gun permit. To this day, the Commonwealth does not require a license or permit to play basketballs. In *Ponce* the right to play for an elite basketball group was *privileg*e, not the Constitutionally protected Second Amendment right of the plaintiffs. As opposed to *Ponce*, rights asserted are fundamental and subject to a licensing scheme. Respectfully, the Court should

conclude this case is distinguishable from *Ponce v. Basketball Feder. Of Com. Of Puerto Rico*, 760 F.2d 375, 377 (1st Cir. 1985). Defendant mislead by limiting its analogy with the Basketball Federation to the fact that they are private entities with access to public funds. But that is where similarities end: No law forbids ownership of basketballs without a permit or restricts practice by the people, nor punish unaffiliated players with permit cancellation. As opposed to *Ponce*, both firearm ownership and safety education for *self-defense* are rights guaranteed by the Constitution.

Distinguishable from *Ponce*, PRSA-Commonwealth *tandem* relationship doesn't regulate a "sport" but *also* restricts the legitimate exercise of the fundamental right to self-defense. PRSA has become an "arm" of the State to restrict who, where and what a person does with a gun. The PRSA president has admitted in a 2012 memorandum that it serves as a *clearing-house* between each individual, gun-clubs and the Commonwealth, because PRSA actions certifying *bona fide* membership status required by law for individual and gun-clubs, is a form of State action. As such, the PRSA membership is part of an elaborate scheme governing individuals' weapon permits. Without membership, individual's ability to practice self-defense is limited. The PRSA is a State Actor because: (1) Commonwealth compels membership and economic support; (2) its symbiotic relation with Sports officials; and (3) the public function it performs as gatekeeper to prevent non-affiliated gun-clubs and non-sports related education on the Island. The Court should find that PRSA is distinguishable because it does not regulate willing volunteers, but jointly restricts with the Commonwealth, what unwilling weapon license holders can do. Defendant falsely asserts it is free to decide which applicants comply with regulation, when it is part of the Commonwealth firearm license regulatory scheme. Contrary to PRSA self-serving assertions the PRSA does *not* operate with "independence" because *involuntary* membership is exclusively compelled by law.

This case is distinguishable from *Williams v. Commonwealth of Puerto Rico*, 910 F. Supp. 2d 386 (D.P.R. 2012) 12-1218 (FAB).  The rights asserted here challenge restrictions on purchase of firearms and ammunition, never challenged in *Williams*. Here plaintiffs challenge involuntary affiliation into PRSA and the $250.00 Stamp Tax is now challenged as *unlawful taxation*. Neither

issue was brought to the Court on these grounds, in *Williams*. Two more distinguishing facts: One of the plaintiffs is a proposed non-sport gun-club and others, instructors that teach safety and self-defense education whose content protected by the Second Amendment, neither one like *Williams*. Respectfully, the Court should conclude that this case is distinguishable.

### Plaintiffs have stated a plausible §1983 claim against the PRSA

Puerto Rico Commonwealth thru PRSA has banned non-sport gun clubs and target-practice permit holders. The Commonwealth prohibits any lawful attempt to engage in firearm education unrelated to PRSA sport. Without PRSA affiliation individuals cannot purchase and possess more than two firearms and 50 rounds of ammo per year for each one. PRSA actions are influenced and compelled by Commonwealth firearm regulation. Plaintiffs ask for a declaratory judgment that defendants' regulations which includes portions of Puerto Rico Weapons Act sections 1.02(m), 3.01(c), 3.02 (A), 3.03 (7), 3.04 (B), 3.04 (D), 3.06, 2.02 (D), 6.02, and 2.05 (A), as well as its corresponding Police and Sports regulation, infringe the Second Amendment, in as much as the target shooting permit, federation gun-club membership and Tax Stamp on the right to "bear" are unlawful requirements, because they infringe the Second Amendment right and other Rights.

With involuntary membership required by law, the PRSA acted under color of State law when it denied plaintiff's gun-club affiliation, as required by law. Plaintiffs §1983 claim survives. Plaintiffs have alleged a joint inspection took place (PRSA/Sport) and Phoenix members were denied renewal of their Sport's issued "instructor" license at behest of the PRSA. Plaintiffs have also alleged individuals are required by law to purchase a PRSA stamp to obtain and keep a valid target-practice permit, and PRSA unaffiliation constitutes grounds for cancellation of said permit.

Plaintiff will proffer evidence of a symbiotic relationship. Defendant attempts to downplay a joint inspection, but evidence will demonstrate: (1) At all relevant times Sports officials made representations to Kerkado, that the ultimate decision maker was the PRSA, whose endorsement was required by law; (2) Sport officials made representations to Kerkado that it would exclusively adopt PRSA standards; (3) that Sports inspector allowed PRSA inspector to take over inspection

4

and impose PRSA requirements; (4) Sports never completed its own inspection, as a result of PRSA adversarial intervention; and (5) Sports subsequent decision to cancel Phoenix instructor licenses was prompted by the PRSA. The Commonwealth also denied the existence of an alternate association equally certified by Sports, that can meet Weapons Act requirements. As such, both PRSA and Sports acted symbiotically to protect economic interests and its lavish contributions (Olympic travel expenses, etc.) to benefactor Sport officials. PRSA derives most of its income from State compelled fees imposed on every target-shooting permit and each sports gun-club, therefore the PRSA is dependent on the Commonwealth, because its own membership is not "voluntary" in nature, as opposed to other recognized Sport federations, such as Basketball.

The PRSA may be subject to constitutional obligations under the Fourteenth Amendment if it satisfies at least one of three tests: "(1) the private entity assumes a traditional public function in undertaking the challenged conduct; (2) an elaborate financial or regulatory nexus ties the challenged conduct to the State; or (3) a symbiotic relationship exists between the private entity and the State." *Perkins*, 196 F.3d 13 at 18 (citations omitted). To meet the public function, test a private party must be performing "a public function that has been `traditionally the exclusive prerogative of the State.'" *Estades-Negroni v. CPC Hospital*, 412 F.3d 1, 5 (1st Cir.2005) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). The nexus test examines "whether the government exercised coercive power or provided such significant encouragement that the complained-of misconduct ... must be deemed to be the conduct of the government." *Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico*, 84 F.3d 487, 493 (1st Cir. 1996). And under the symbiotic relationship test, a private party is fairly characterized as a state actor if the government "has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Rodriguez-Garcia v. Davila*, 904 F.2d 90, 98 (1st Cir.1990) (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (alterations omitted)). Satisfaction of any of these three tests may subject a private entity's actions

to constitutional limitations. See *Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto*, 522 F.3d 1, 4 (1st Cir.2008).  The PRSA can be found to be *state actor* under these tests.

### Plaintiffs' claim meet the Public Function test

Plaintiffs aver PRSA affiliation for individuals demonstrates a governmental function of public importance to the State, sufficient to hold the government liable for PRSA's actions. The Supreme Court has found action to be governmental "when the challenged entity performs functions that have been `traditionally the exclusive prerogative' of the [state]." *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (quoting *Rendell-Baker*, 457 U.S. at 842, 102 S.Ct. 2764 (emphasis added by *Rendell-Baker Court*)).

The Court should find that PRSA action in tandem with Commonwealth to certify affiliation of an individual for issued target-shooting permits is a prerogative of the State. PRSA's activity is not akin to running a basketball league. The First Circuit's expressed the public function analysis is designed to flush out a State's attempt to evade its responsibilities by delegating them to private entities. See *Barrios-Velazquez*, 84 F.3d at 494. To prevail on such a theory, a plaintiff must show more than the mere performance of a public function by a private entity; must show that the function is one exclusively reserved to the State. See *Id*. at 493-94. See also *Perkins*, 196 F.3d at 18-19. The First Circuit explains the goal of the nexus/joint action test:

> The nexus/joint action test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]." (alterations in original). *Estades-Negroni*, 412 F.3d at 5 (citing *Bass v. Parkwood Hosp*., 180 F.3d 234, 242 (5th Cir.1999); and *Perkins*, 196 F.3d at 21). "The requisite nexus is premised on a showing of mutual interdependence." *Santiago*, 655 F.3d at 71 (citing *Burton*, 365 U.S. at 723–25; and *Ponce*, 760 F.2d at 381).

A well-respected treatise on the subject matter masterfully classifies the case law regarding this test into three general categories: (1) "cases where the *private actor is subjected to extensive regulation by the government*," (2) "cases involving a wide range of *physical and economic contacts* between the actor and government," and (3) "cases where the *government has provided*

6

*some sort of direct aid or subsidy to the private actor.*" 2 R. *Rotunda & J. Nowak*, Treatise on Const. L. § 16.4. In conducting the required "totality of the circumstances" assessment, there are several factors that the First Circuit has previously identified as significant. First, *"[t]he 'most salient' factor in this determination 'is the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs.'" Santiago*, 655 F.3d at 71 (citing *Perkins*, 196 F.3d at 21). Second, *"[a] private party's use of public facilities may weigh in the balance."* *Id*. (citing *Burton*, 365 U.S. at 723). Third, "*the state's sharing of profits generated from the private party's rights-depriving conduct"* may also weigh in the balance. *Id*. (citing *Barrios–Velázquez*, 84 F.3d at 494). *Perkins*, 196 F.3d at 21. Of course, "*the lack of a financial partnership is not necessarily dispositive.*" *Barrios-Velazquez*, 84 F.3d at 494 (citing *Rodríguez-García*, 904 F.2d at 98–99). This is because *"[t]he test is one of interdependence and joint participation, rather than one of financial enrichment."* *Rodriguez-Garcia*, 904 F.2d at 98. See also *Gonzalez-Trapaga v. Mayaguez Medical Center*, 15-1342 (DRD) (3/30/2016) The PRSA profits when each individual applies for target-shooting permit, thru sale of a stamp, and State compelled gun-club membership.

**Plaintiffs' claim meet the nexus/joint action test**

Plaintiffs aver Commonwealth permit regime suffice a connection to satisfy the nexus test. A nexus test examines "whether the government exercised coercive power or provided such significant encouragement that the complained-of misconduct ... must be deemed to be the conduct of the government." *Barrios-Velazquez*, 84 F.3d at 493. The First Circuit has followed the Supreme Court in describing this as a targeted inquiry that focuses on the connection between the state and the challenged conduct, not the broader relationship between the state and the private entity. See *Perkins*, 196 F.3d at 19-20. Plaintiff has sufficiently alleged how Sports officials team up with PRSA when choosing to conduct a *joint inspection* of plaintiff's facility, allowed PRSA to take over said inspection and set standards, Sports proposed regulation has also adopted PRSA standard and officials later refused to recertify non-PRSA instructors. Plaintiffs satisfied the nexus test. See *Rodriguez-Garcia*, 904 F.2d at 97 ("the challenged action ... may be fairly treated as that of the

State itself ... only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.")  Defendant PRSA acted in concert with the Sports to inspect plaintiff's proposed gun-club. On September 11, 2015, a *joint inspection* was conducted by PRSA vice-president Gilberto Hernandez (uninvited) and Recreation Department's Dialma Ortiz (invited). This presents factual disputes that, at the very least, requires a proper discovery.

### Plaintiffs' claim has met the state compulsion test

Involuntary affiliation into the PRSA also satisfy the requirement of state action because defendant memberships depends on a process of *involuntary* affiliation (by law) of each individual target shooting permit holder. The case meets all three tests for determining whether private action can be deemed state action: the state compulsion test, the nexus/joint action test, and the public function test. In *Estades-Negroni*, 412 F.3d at 5. the First Circuit summarized the tests as follows:

> Under the state compulsion test, a private party is fairly characterized as a state actor when the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The nexus/joint action test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999) (internal quotation marks omitted) (first alteration in original); see *Perkins* [*v. Londonderry Basketball Club*], 196 F.3d [13] at 21 [(1st Cir. 1999)]. And, in accordance with the public function test, a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been "traditionally the exclusive prerogative of the State." *Blum*, 457 U.S. at 1005 (internal quotation marks omitted). See also Ahearn v. Inland Hospital 1:16-cv-00457 (9/23/2016)

The Court should find state compulsion test is satisfied because affiliation process *by law* compels or encourages involuntary affiliation into PRSA, the Commonwealth delegates exclusive authority to PRSA to regulate; and the law prohibits *non-affiliated* (non-PRSA) gun-clubs. PRSA operating revenue is mostly generated through individual affiliation (required by law) fees, and the Commonwealth profit from sale of a "shooting permit" to PRSA certified individuals. See *Bonilla v. Federacion de Ajedrez*, 832 F.Supp.2d 108 (2011) Plaintiffs have satisfied requirements of indirect state-action tests, demonstrating PRSA's challenged actions are attributable to the state.

**Plaintiffs have a plausible claim under their right to freely associate**

In *Roberts v. United States Jaycees*, 468 U.S. 609, 622, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the Supreme Court noted that "implicit in the right to engage in activities protected by the First Amendment" is "*a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends*." This right is crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas. See *ibid*. (stating that protection of the right to expressive association is "*especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority*"). The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints. *New York State Club Assn., Inc. v. City of New York*, 487 U.S. 1, 13, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988).

Associations do not have to associate for the "purpose" of disseminating a certain message to be entitled to the protections of the First Amendment. An association must merely engage in expressive activity that could be impaired to be entitled to protection. *Boy Scouts of America v. James Dale* 530 U.S. 640 (2000). In *NAACP v. State of Alabama*, 357 U.S. 449, 462, 78 S.Ct. 1163, 1172, the U.S. Supreme Court protected the 'freedom to associate and privacy in one's associations,' noting that freedom of association was a peripheral First Amendment right. The Court has protected forms of 'association' that are not political in the customary sense but pertain to the social, legal, and economic benefit of the members. *NAACP v. Button*, 371 U.S. 415, 430—431, 83 S.Ct. 328, 336—337.

The Puerto Rico Supreme Court addressed the situation in *Rivera Shatz v. ELA*, 191 DPR 791 (2014), by interpreting Puerto Rico's Constitutional protection of citizen's *fundamental* right to freely associate. PR Const. Art. II, Sec. 6. Puerto Rico Supreme Court held that any restriction on the right not to associate, would only survive constitutional scrutiny when the State can show compelling interest.

## Conclusion

Plaintiffs have pled sufficient facts to establish a plausible claim under 42 U.S.C. §1983 against the PRSA. *Unique* circumstances have allowed the PRSA to become a firearm regulatory scheme. "It is '[o]nly in rare circumstances" that private parties can be viewed as state actors.'" *Id*. (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)). The three tests used: *state compulsion* test, *nexus/joint action* test, and the *public fun*ction test, are met. Here a private party preferred by law, can be held to be a state actor upon examination of totality of the circumstances.

Allegations and plausible inference from the Complaint show Commonwealth "coercion" or "encouragement" actions taken by PRSA. The Weapon's Act define "shooting federation" as a federation ascribed to the Puerto Rico Olympic Committee which represents the *sport* of Olympic target shooting. (Art. 1.02 (n)) 25 L.P.R.A. §455 Said definition *excludes* existence of non-sport shooting federations. A plausible finding of direct state action can be made, because the PRSA conducted inspection in *conjunction* with Commonwealth officials, dictates what requirements are set by Sports, pressured Sports to cancel instructor's certifications, and the PRSH affiliation is mandated by the law as prerequisite for each individual to keep a valid target-practice permit.

The Court may conclude that the Commonwealth unconstitutionally delegated its authority to regulate individuals and gun club facilities, to the PRSA, as commonwealth's target-shooting permit requirements, corresponding restrictions and mandated membership are *unconstitutional*. Therefore, defendant's motion should be denied because plaintiff stated a plausible §1983 claim against PRSA and Sports.

For the foregoing reasons, the Court should deny PRSA's dispositive motion (Dkt. #50).

**WHEREFORE**, plaintiffs respectfully move the Court to *deny* PRSA motion to dismiss.

In San Juan, Puerto Rico, on this 29th. Day of March 2017.

/S/ Humberto Cobo-Estrella, Esq.
**USDC-PR230108**
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 200-2715
Email: *hcobo@hcounsel.com*

## CERTIFICATE OF SERVICE

  I hereby certify that on March 29, 2017, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

            /S/ Humberto Cobo-Estrella, Esq.
            Attorney for the Plaintiffs