IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jose A. Cruz-Kerkado, *et al.* <br> *Plaintiffs* <br> v. <br> Commonwealth of Puerto Rico, *et al.* <br> *Defendants* | CIVIL ACTION <br><br> Case No 3:16-cv-2748 <br> Constitutional Rights |

## Plaintiffs' Opposition to Commonwealth's Motion (Dkt. #48)

**To the Honorable Court:**

**COMES NOW**, the plaintiffs represented by the undersigned counsel and submits this *Opposition* to Commonwealth of Puerto Rico's ("Commonwealth") motion to dismiss (Dkt. #48).

This case questions the constitutionality of byzantine restrictions on law abiding citizens, by a not-so-trustworthy local government, that believes its elected officials are entitled to firearms for protection, while struggling families are being butchered by street thugs with illegal guns. Contrary to Commonwealth's unfounded assertions, one individual in the case and corporate co-plaintiffs are not-for-profit organizations. Defendant's allegations that they are a "corporation" with "paramilitary objectives" and a "business" is absurd, defamatory, and villainize the plaintiffs. Misguided ideas that villainize law abiding citizens, in the words of Thomas Jefferson, are "[t]he strongest reason for the people to retain the right to keep and bear arms is, as a last resort, to protect themselves against tyranny in government."

Without evidence defense falsely asserts co-plaintiffs have no standing to represent their own members. Yet association standing was fully alleged in the Amended Complaint:

4. "Damas de la Segunda Enmienda, Corp." a/k/a Ladies of the Second Amendment and Gun Rights and Safety Association of Puerto Rico, Inc. a/k/a Puerto Rico NRA State Association, are **organizations whose members are similarly situated to Cruz-Kerkado and whose interests fall within the zone of interests and the rights this Amended Complaint** seeks to protect. (Emphasis Given) Amended Complaint, pg. 2, ¶4.

13. Plaintiffs organizations have standing to sue on behalf of their members **because each would otherwise have standing to sue in their own right, the interests sought to protect are germane to the organization's purpose and**

1

- **neither the claim asserted, nor the relief requested, requires the participation** of each individual member. See *Hunt v. Washington State Apple Advertising Comm.* 432 U.S. 333, 343 (1977); *Warth v. Seldin*, 422 U.S. 490 (1975), pg. 342-343. (Emphasis Given) Amended Complaint, pg. 4, ¶13.

14. "…Damas de la Segunda Enmienda, Corp. and the Gun Rights and Safety Association of Puerto Rico, Inc. members, like Cruz-Kerkado and Phoenix students, **are also lawfully licensed to possess firearms by Puerto Rico Police. Plaintiffs, but for the regulation discusses below, would** fully exercise their **Second Amendment right to teach, train and practice firearm safety**…" (Emphasis Given) Amended Complaint, , pg. 4, ¶14.

No co-plaintiff association has asserted anything other than each of its members' individual rights and there is no claim of a "corporate right" to that effect, as the Commonwealth appears to imply. In *Heller*, the Supreme Court held that the Second Amendment protects an individual right to keep and bear arms for purpose of self-defense. 554 U.S. at 580. It's ironic for the Commonwealth to claim co-plaintiff have no standing to represent members who want to engage in self-defense training, while at the same time it has delegated authority to another private association (PRSA) to agglutinate and certify every gun-club member. If the Second Amendment is an individual right, shouldn't the Commonwealth ought to be prohibited from imposing any kind of "membership" or "affiliation" requirement upon law abiding citizens?

Supreme Court has recognized organizations have standing to sue when its members would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to their organization's purpose and neither the claim asserted, nor the relief requested, requires the participation of individual members. See *Hunt v. Washington State Apple Advertising Comm.* 432 U.S. 333, 343 (1977); *Warth v. Seldin*, 422 U.S. 490 (1975), pg. 342-343. Co-plaintiffs have representational capacity. The prerequisites to associational standing described in *Hunt* and *Warth* are present here: (1) Lawful gun owners are restricted without a target practice permit, required *by the law,* which involves mandatory affiliation to PRSA gun-club and pay for PRSA "Federation" stamp; (2) plaintiff organizations' attempt to remedy this situation is central to its purpose to training *self-defense* and firearm safety to citizens; and (3) neither plaintiff's constitutional claim nor the relief requested requires individualized proof.

So far, the Commonwealth has failed to demonstrate how regulatory means it has chosen: (1) mandatory gun-club/federation affiliation and (2) stamp-tax payment for conceal carry process; achieves any public benefit. Such restrictions are not reconcilable with the Second Amendment, which also protects the right to learn and practice firearm use in the controlled setting of a shooting range. Both codefendants have failed to recognized plaintiffs' right to practice with firearm for self-defense is protected by the Second Amendment, as the United States Court Appeals, for the Seventh Circuit's January 18, 2017, Opinion illustrates:

> "…in *Ezell I*, we rejected the City's argument that range training is categorically unprotected by the Second Amendment. We held that the core individual right of armed defense - as recognized in *Heller* and incorporated against the states in *McDonald* - includes a corresponding right to acquire and maintain proficiency in firearm use through target practices at a range. 651 F.3d at 704…
> …we held that the City had failed to establish that target practice is wholly unprotected as a matter of history and legal tradition in the founding era or when the Fourteenth Amendment was ratified. Id. At 704-06" *Ezell v. City of Chicago* Nos. 14-3312-14-3322.

Said Opinion also illustrates:

> "[w]e held that banishing firing ranges from the city was a severe encroachment on the right of law abiding, responsible Chicagoans to acquire and maintain proficiency in firearm use, "an important corollary to the meaningful exercise of the core right to possess firearms for self-defense" Id. At 708" *Ezell v. City of Chicago* Nos. 14-3312-14-3322.

In the present case, the challenged law regulates activity protected by the Second Amendment and the Commonwealth of Puerto Rico must bear the burden of justifying to the Court its action, under a heightened standard of judicial review. No publicly accessible non-sport/non-PRSA affiliated shooting range yet exists in Puerto Rico. The Court may find that the challenged regulation, though not on its face an outright prohibition on gun ranges, nonetheless severely restricts the right of citizens to train in firearm use at a range. Commonwealth has proffered no evidentiary support to justify restricting gun range to sport/PRSA affiliated facilities, noting related to public safety.

Whereas the use of a gun-range lies at the core of the Second Amendment. "[t]he Court has acknowledge that certain unarticulated rights are implicit in enumerated guarantees…

fundamental rights, even though not expressly guaranteed, have been recognized by the Court as indispensable to the enjoyment of rights explicitly defined." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 579-80 (1980). Plaintiffs right to use a gun-range is essential to the Second Amendment: '[t]he Constitution secures the right of the people to keep and bear arms. No doubt, a citizen who keeps a gun or pistol under judicious precautions, *practices in safe place the use of it, and in due time teaches his sons to do the same*, exercises his individual right." District of Columbia v. Heller, 128 S. Ct. at 2812 (citation omitted) (emphasis added). "[t]o bear arms implies something more than the mere keeping: it implies the learning to handle and use them in a way that makes those who keep them ready for their efficient use; in other words, it implies the right to meet for voluntary discipline in arms…" Heller, 128 Ct. at 2811-12 (citation omitted). A complete ban on non-sports gun-clubs and gun-ranges is doomed.

**The case does not question the Constitutionality of Commonwealth's gun license regime, but two specific requirements which infringe other fundamental rights, that were not similarly asserted in the *Williams* case:**
  **a. The taxation of the right to "bear" arms, and**
  **b. None association with a state compelled private entity.**

This case is distinguishable from *Williams v. Commonwealth of Puerto Rico*, 910 F. Supp. 2d 386 (D.P.R. 2012) 12-1218 (FAB). In *Williams*, the target-shooting permit was not challenged. In *Williams*, plaintiffs challenged the entire Weapon licensing scheme. Here plaintiffs challenge some restrictions on the purchase of firearms and ammunition, not challenged in *Williams*. Here plaintiffs also challenge sections of the Weapons Act that require mandatory PRSA membership. The $250.00 Internal Revenue Stamp Tax is now challenged as unlawful taxation of a fundamental right, and was not brought up in *Williams*, on that ground. Other distinguishing facts are that one of the plaintiffs is a proposed non-sport gun-club and the others instruct firearm safety and self-defense education whose content are protected by the Second Amendment. Respectfully, the Court should conclude that this case is distinguishable from the *Williams* case.

Puerto Rico Weapon's Act specifically restricts the number of firearms a weapon license holder can possess, up to a maximum of two (2), unless he/she has a target shooting permit. (Art. 2.02 (D)) 25 L.P.R.A. §456a. Puerto Rico Weapon's Act specifically restricts the amount of ammunition each individual can possess to a maximum of fifty (50) rounds per weapon, per year, unless he/she has a target shooting permit. (Art. 6.03) 25 L.P.R.A. §459a. The simple possession of ammunition in excess, without the corresponding target shooting permit, constitutes a misdemeanor punished with up to six months of reclusion in jail and/or a fine up to $5,000.00. Restrictions are not just placed on the number of firearms and ammunition a weapon license holder can lawfully possess, but restrictions also limit his/her ability to transport said weapons because the law dictates he/she can only transport *one* firearm at a time, without a target practice permit. (Art. 2.02 (D)4) 25 L.P.R.A. §456a.

The $250.00 Police Department Stamp required by law for lawfully *licensed* individuals to proceed to apply to the State Court for a concealed carry permit amounts to an *excise tax* on said lawful *activity*. Said excise tax has no empirical support, does nothing to further public safety, nor keep unlawful firearms away from unlicensed criminals, that justify infringement of individuals constitutionally protected right to exercise his/her Second Amendment right. 25 L.P.R.A.§456d. The Supreme Court has ruled that the purchase of a license to exercise a fundamental right amount to an *unconstitutional tax*. See *Murdock v. Pennsylvania*, 319 US. 105 (1943). See also *Follett v. Town of McCormick,* 321 US 573 (1944). While interpreting First Amendment rights, the Supreme Court ruled that a law which subjects a right to the *prior restraint* of a license, without narrow, objective and definite standards is *unconstitutional*, and the individual faced with such a law may ignore it and exercise his rights. *Shuttlesworth v. City of Birmingham*, 394 US 147 (1969), pg. 394 US 150-151. In this case, the excise tax on the conceal carry application process is meant to serve as prior restraint and dissuade law-abiding citizens from conceal carry for self-defense, and has no significant impact whatsoever on prohibiting the unlawful possessions of illegal firearms by felons.

During 2014 Act No. 78, amended Article 2.03 of the Weapons Act to move a substantial portion of funds obtained from the tax stamp to attend to the Commonwealth's government financial crisis. Thus, effectively using this for cash-flow purposes, unrelated to fighting crime. During 2013-2014 $6,000,000 dollars were transferred out, between 2014-2015 $1,000,000 was taken and during 2015-2016, $1,418,754 was used to cover other governmental needs. 25 L.P.R.A. §456b. Earlier in 2013 a similar situation had occurred when Act. No. 43, amended Act No. 404 to move funds to help the government cover its budget/fiscal crisis needs for 2013-2014.

In this case at least one plaintiff, Cruz-Kerkado, can demonstrate how his individual Second Amendment right is infringed by having to continue to pay for a mandatory membership into a sports gun-clubs and the PRSA sport federation Stamp to renew his weapon license. Without the target-shooting permit, plaintiff can't lawfully possess multiple firearms for training. Plaintiffs associations have demonstrated how their individual members are harmed by having to pay an Internal Revenue Stamp Tax to the Police which amounts to a staggering 323% tax on the Conceal carry permit application with State Court, in which the Police does not participate at all. Plaintiffs' harm is not conjectural nor hypothetical, and plaintiffs satisfy standing requirements because they represent members, and remedy sought does not require individualized involvement in the case.

Plaintiffs ask for a declaratory judgment that defendants' regulations which includes portions of Puerto Rico Weapons Act sections 1.02(m), 3.01(c), 3.02 (A), 3.03 (7), 3.04 (B), 3.04 (D), 3.06, 2.02 (D), 6.02, and 2.05 (A), as well as its corresponding Police and Sports regulation, infringe the Second Amendment, in as much as the target shooting permit, federation gun-club membership and Tax Stamp are unlawful requirements and unenforceable, because they infringe plaintiffs' Second Amendment right and other Fundamental Rights.

## Standard of Review

While FRCP 12 (b) (6) provides a vehicle for defendants to request the dismissal of a case or claims for failure to state a claim upon which relief may be granted. To adjudicate a motion to dismiss, the court must accept as true all the factual allegations contained in the complaint.

*Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 2007) (citations omitted). These allegations are viewed through the prism of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a) (2). Rule 8 exists to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To comply with Rule 8, a complaint need not include "detailed factual allegations" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) citing *Twombly*, 550 U.S. at 555) (additional citation omitted).  The factual allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted).  Complaints that offer "labels," "conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" fail to rise above the speculative level. *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must allege factual matter that states a "claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  Thus, in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b) (6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face". See *Ashcroft v. Iqbal*, *supra*.

## Conclusion

The Constitution imposes constrains on the Commonwealth's power to regulate the lawful possession of firearms for *self-defense* by law abiding citizens, and prohibits unlawful delegation of authority to PRSA thru a regulatory scheme that infringe the Second Amendment right. Defendant seeks to dodge Second Amendment's "shall not be infringed" restriction on its power.

Membership *into* PRSA affiliated gun-clubs (only kind in existence) is mandated *by law*, and the PRSA "Federation" Stamp is required *by law* for each individual to purchase and practice with more than two firearms and 50 rounds of ammunition per weapon/per year. Said restrictions *infringe* upon the lawful conduct and *contradicts* public policy, which favor firearm safety. Such

bizarre restrictions limit a persons' ability to further proficiency on self-defense skills, while giving PRSA power to regulate that which should be regulated *exclusively* by *two* government agencies. No other sport in the Commonwealth requires every participant to affiliate to its federation, pay dues and restrict its exercise exclusively to federation's endorsed facilities (clubs) and regulation.

Kerkado has alleged the infringement of his right guaranteed by the Second Amendment, which provides that "the right of the people to keep and bear arms shall not be infringed." In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court established the Second Amendment protects the right to keep and bear arms for *self-defense*, and soon thereafter made clear that this guarantee to bear arms is fully applicable to the States. *McDonald v. City of Chicago*, 561 U.S. 742, 749-50 (2010). The US Supreme Court recognized the Second Amendment right to self-defense allows for the protection from both public and private violence. See *Heller*, 554 U.S. at 594 (stating that, by the time of the founding, the right to have arms was "fundamental" and "understood to be an individual right protecting against both public and private violence."). In *Heller*, the Court also recognized that hunting and militia membership were the primary objective of the right to keep and bear arms. See *Id*. at 598.

To restrict such fundamental right by affiliation to a sport association unduly burden the Second Amendment. Although some will argue to overregulates target shooting for the sake of the *safety* of the public, by law it's a duty of the Police Superintendent to cancel the target shooting permit of any competitor who demonstrate negligence or misconduct, during shooting competition, tournament or event. (Art. 3.06) 25 L.P.R.A. §457e. Police Department Regulation No. 6201, which per Puerto Rico Department of State is "*active*" gives Police *exclusive* authority to certify those who give firearm safety training. The Police have acknowledged PRSA affiliation is a matter of the "sports" and not an issue of public safety. Therefore, the Court should conclude that the Commonwealth unconstitutionally delegated its authority to regulate individuals to the PRSA, as commonwealth's target-shooting permit requirements, corresponding restrictions and mandated membership should be unconstitutional.

For the foregoing reasons, the Court should deny Justice Department motion (Dkt. #48).

**WHEREFORE**, plaintiffs respectfully move the Court to *deny* motion to dismiss (Dkt.48).

In San Juan, Puerto Rico, on this 29th. Day of March 2017.

        /S/ Humberto Cobo-Estrella, Esq.
        **USDC-PR230108**
        PO Box 366451
        San Juan, Puerto Rico 00936-6451
        Tel. (787) 200-2715
        Email: *hcobo@hcounsel.com*

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 29, 2017, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

                                                /S/ Humberto Cobo-Estrella, Esq.
                                                Attorney for the Plaintiffs