IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ A. CRUZ-KERKADO, *ET AL*<br><br>Plaintiffs<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO, *ET AL*<br><br>Defendants | CIVIL NO. 16-2748 (ADC) |

**PRSA'S ANSWER TO THE AMENDED COMPLAINT**

TO THE HONORABLE COURT:

Defendant the Puerto Rico Shooting Association ("PRSA") a/k/a Federación de Tiro de Armas Cortas y Rifles de Puerto Rico, by counsel, and without submitting to this Court's jurisdiction, respectfully answers the Amended Complaint:

**PARTIES**

1. PRSA is not familiar with plaintiff Cruz-Kerkado's personal circumstances or address, but has no reason to deny them. PRSA understands that plaintiff has a Puerto Rico weapons license, but lacks knowledge as to whether he teaches firearm safety and self-defense, and thus denies this allegation. PRSA affirmatively alleges that Plaintiff's request to affiliate with the PRSA was denied because Plaintiff did not meet PRSA safety standards for shooting ranges, among other reasons. PRSA denies that Plaintiffs state a plausible constitutional claim for violation of their Second Amendment and First

1

Amendment rights. PRSA denies that plaintiff's students are low-income and can't afford a conceal carry stamp tax. A person who can afford a hand gun, bullets, and classes can afford to pay the negligible duties imposed by the Commonwealth of Puerto Rico.

2. PRSA is not familiar with Plaintiff Phoenix Military Institutes' individual circumstances or address, but has no reason to deny them. Plaintiff Phoenix's request for affiliation was denied because it did not meet PRSA's safety standards regarding shooting ranges.

3. PRSA is not familiar with Centro de Adiestramientos Tácticos de Puerto Rico Corp's individual circumstances or address, but has no reason to deny them. PRSA admits that CAT's affiliation request was rejected by PRSA because, among other reasons, CAT's facilities did not comply with PRSA safety standards for shooting ranges. PRSA admits that without PRSA affiliation, CAT cannot obtain a permit from the Puerto Rico government to operate a target shooting range. PRSA affirmatively alleges that it conducts fire arm activities related to self-defense, but which are organized around the sport of target shooting.

4. PRSA is not familiar with Damas de la Segunda Enmienda Corp's or Guns Rights and Safety Association of Puerto Rico, Inc.'s individual circumstances. PRSA understands that these are not bona fide shooting organizations. PRSA denies that their members have interests protected by the Second Amendment.

5. PRSA admits that the Puerto Rico Justice Department of Puerto Rico administers Commonwealth law and provides legal representation to the Commonwealth of Puerto Rico. The rest is denied.

6. PRSA admits that the Puerto Rico Police Department ("PRPD") is initially responsible for approving and issuing Puerto Rico weapon licenses and gun-range licenses, pursuant to Puerto Rico law and local regulations, and that it receives revenues from conceal carry permit applicants. PRSA affirmatively alleges that the PRPD's activities are carried out without the PRSA's participation or intervention. The rest is denied.

7. PRSA admits that the Puerto Rico Department of Leisure and Sports ("PRLS") is responsible for certification of gun range facilities in the Commonwealth of Puerto Rico, for licensing purposes. PRLS also shares responsibility with the Police for enforcement of gun regulations. PRSA affirmatively avers that PRSA and PRLS act within different spheres, as PRSA is concerned with the development and coordination of the sport of target shooting in Puerto Rico. PRSA denies that PRLS denied Phoenix instructor's certifications at the "behest" of PRSA officials. Plaintiff Phoenix was denied affiliation with the PRSA because it failed to comply with PRSA's target shooting safety range standards. PRSA did not participate or was involved in PRLS's decision to deny certification. PRLS officials did not intervene in PRSA's decision, nor did PRSA intervene in the decision taken by PRLS.

8. PRSA admits that, under Puerto Rico law, PRSA affiliation is required for issuance of a permit to operate a gun-range facility in Puerto Rico. The PRSA

3

affirmatively avers that the PRSA is a nonprofit corporation organized under the laws of Puerto Rico to develop and oversee the Olympic sport of target shooting. PRSA assists its members and clubs in coordinating target shooting activities including the participation at various levels of international competition, including Olympic and Pan-American games. PRSA does not intervene in the State's decision to grant weapons licenses. Puerto Rico government officials do not intervene in PRSA's decision to grant or deny PRSA membership to a gun club.  PRSA and the Puerto Rico agencies act in different spheres.

## JURISDICTION AND VENUE

9. The allegations in ¶ 9 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that they do, the allegations are denied.

10. The allegations in ¶ 10 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that they do, the allegations are denied. The Court has no jurisdiction over the claims against PRSA because PRSA is not a state actor, nor was it acting under color of state law.

11. The allegations in ¶ 11 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that they do, the allegations are denied. PRSA is not a state actor.  PRSA officials did not act under color of law, but under PRSA regulations which govern the sport of target shooting in Puerto Rico.

12. The allegations in ¶ 12 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that they do, the allegations are denied.

13. The allegations in ¶ 13 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that they do, the allegations are denied. Plaintiff organizations have no standing to sue on behalf their members, who, for the most part, have not requested PRSA affiliation to operate a gun-club facility. The interest of the Club and its members is not the same.

## BACKGROUND

14. PRSA lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding plaintiff Cruz-Kerkado's personal circumstances, but has no reason to deny them. PRSA understands that Plaintiff has a Puerto Rico weapons license, but lacks knowledge as to whether he teaches firearm safety and self-defense, and thus this allegation is denied. PRSA lacks knowledge or information sufficient to form a belief as to the truth of the allegation that plaintiff Cruz-Kerkado's students comply with firearms regulations in Puerto Rico. PRSA lacks knowledge or information sufficient to form a belief as to the truth of the allegation that the members of Damas de la Segunda Enmienda Corp. and Gun Rights and Safety Association of Puerto Rico, Inc. are lawfully licensed to own firearms in Puerto Rico, and denies this allegation. PRSA denies that Damas de la Segunda Enmienda Corp. and Gun Rights and Safety Association of Puerto Rico, Inc. are bona fide shooting organizations. PRSA denies that existing regulations affect any of Plaintiffs' rights under the Second Amendment.

15. PRSA lacks knowledge or information sufficient to form a belief as to the truth of the allegation regarding Plaintiff Phoenix's individual circumstances or background, but has no reason to deny them.

16. PRSA lacks knowledge or information sufficient to form a belief as to the truth of the allegation regarding the "self-defense education" taught by Plaintiff Cruz-Kerkado. The allegations connected with these activities are thus denied. Target shooting sport activities are the normal way in which guns are employed by PRSA members. These activities promote development of target shooting skills, including skills of self-defense, while maintaining uniform standards and ensuring safety for gun use. PRSA denies that these activities are contrary to the Second Amendment. PRSA regulates the sport of target shooting; it does not have the power or authority to regulate an individual's right to own a firearm under the Second Amendment. PRSA admits that Puerto Rico law requires PRSA affiliation to issue gun-range permits, which includes a financial payment. PRSA denies that this requirement infringes Plaintiffs' Second Amendment rights.

17. The PRSA admits that it sent a letter dated August 18, 2016 to Plaintiff Cruz-Kerkado denying Plaintiff Phoenix's PRSA affiliation request. PRSA affirmatively avers that the letter states that membership was denied because plaintiff did not fulfill the necessary requirements for affiliation. The PRSA's decision to deny membership to Plaintiff was taken by PRSA, without participation of the Commonwealth of Puerto Rico. PRSA lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Phoenix was registered with a Puerto Rico Tactical Shooting Association. PRSA denies that PRSA officials manifested "fierce resistance" or that they exerted pressure to cause Phoenix's certification to be eliminated. PRSA affirmatively alleges that it evaluated Phoenix's application and found that Plaintiffs did not comply with existing

PRSA safety regulations. Government officials did not intervene in PRSA's decision to deny Phoenix's application for affiliation.  PRSA did not intervene in the government official's decision to deny legal permits to Phoenix.  PRSA denies that PRLS officials acted "at the behest" of the PRSA.  PRSA is a sports-geared organization that believes that guns should be used in a safe way.  To promote the sport of target shooting, PRSA has to apply uniform standards.  This is necessary in order for Puerto Rico athletes to successfully compete with athletes from other jurisdictions.  The rest of the allegations are denied.

18. The allegations of ¶ 18 are denied as drafted. PRSA admits that it regulates the sport of target shooting and that the PRSA Constitution states that the PRSA is organized under rules of the Puerto Rico Olympic Committee. PRSA admits that its members and gun clubs pay membership fees. PRSA admits that affiliated clubs pay an annual fee of $25 and that individual members of the clubs pay a $12 fee every 3 years. PRSA collects fees to pay for its expenses and to promote sports activities at an international level. PRSA promotes competition under uniform rules.  This allows Puerto Rico athletes to compete in international venues. Puerto Rico law requires PRSA affiliation to obtain a gun-club and target practice permit.

19. The allegations of ¶ 19 are denied.  There is nothing that prevents Plaintiffs from complying with PRSA shooting range standards. Plaintiff Phoenix was denied affiliation because it did not meet shooting range safety standards.

20. The allegations of ¶ 20 are denied.  PRSA regulations do not restrict anything other than the sport of target shooting.  Plaintiffs' allegations refer to Puerto

Rico law and regulations. As a private entity, PRSA has no responsibility for the content of these laws. PRSA is not a state actor.

21. The allegations of ¶ 21 are denied. PRSA requires affiliation to participate in the sport of target shooting. The PRSA does not issue legal permits to use guns, which is a matter assigned (by Puerto Rico law) to the Commonwealth's agencies. It is Puerto Rico law—and not the PRSA—that requires PRSA affiliation for target shooting permits and for licenses to operate a shooting range. The PRSA admits that it conducted an inspection of CAT's facilities, as part of the process of considering Plaintiff Phoenix's request for PRSA affiliation. PRSA affirmatively alleges that its inspection of the facilities was based solely on its internal rules and requirements. PRSA admits that PRLS officials were present at an inspection of Plaintiff's facilities. PRSA affirmatively alleges that PRLS officials in no way influence or compel PRSA's decision regarding PRSA affiliation. The reason why the PRLS conducts its own inspection of a gun club's premises is found in the Weapons Act and has a public dimension wholly absent in the PRSA's activities: the PRLS is responsible for issuing the necessary certification to obtain a shooting range license (which is a legal document). 25 L.P.R.A. § 457. This is a separate role from the PRSA's, which solely admits members to its sports association. PRSA affirmatively alleges that it did not participate in the State's decision to deny any legal permits. PRSA and State officials act in different spheres and are governed by separate systems of rules. PRSA rules are adopted by PRSA and aim to establish uniform standards for the sport of target shooting. PRSA is not a state actor, but seeks to regulate the sport of shooting in Puerto Rico. PRSA admits it has sponsored Olympic target shooting athletes and that it

has occasionally received some public assistance for its sports activities. PRSA admits that it has participated in lobbying activities related to regulation which affects the sport of target shooting and its athletes. PRSA charges fees to its members in the same way that other Olympic Committee affiliated sports do.

22. The allegations of ¶ 22 are denied.

### APPLICABLE LAW

23. The allegations in ¶ 23 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied.

24. The allegations in ¶ 24 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied.

25. The allegations in ¶ 25 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied.

26. The allegations in ¶ 26 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied.

27. The allegations in ¶ 27 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied. PRSA affirmatively avers that the Puerto Rico Supreme Court case of <u>Rivera Schatz v. Estado Libre Asociado de Puerto Rico</u>, 191 D.P.R. 791 (2014), was not decided on First Amendment (freedom of association) grounds, but on the Supreme Court of Puerto Rico's power to oversee the legal profession. No other mandatory association (and there are many under Puerto Rico law, *see, e.g.*, 20 L.P.R.A.) has been ruled unconstitutional by the Puerto Rico Supreme

Court. In any case, the Puerto Rico Supreme Court's interpretation of the United States Constitution is not binding on this Court.

28. The allegations in ¶ 28 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied.

29. The allegations in ¶ 29 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied. Contrary to its allegations, the present case is very similar to Williams v. Commonwealth of Puerto Rico, 910 F.Supp. 2d 386 (D.P.R. 2012), where this Court rejected a similar Second Amendment challenge.

30. The allegations in the first sentence of ¶ 30 are statements and/or conclusions of law which do not require a responsive pleading. The allegations in the second sentence of ¶ 30 are denied. The PRSA affirmatively avers that the Commonwealth of Puerto Rico has no influence (nor does it compel) the PRSA's decisions to grant or deny PRSA affiliation. The PRSA's decision is based on its own constitution and regulations.

**UNLAWFUL REGULATION AT ISSUE**

31. The allegations in ¶ 31 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied, as PRSA disagrees with Plaintiffs' characterization of the challenged sections of law and/or plaintiff's claims.

32. The allegations in ¶ 32 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied.

33. The allegations in ¶ 33 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied.

## HARM SUFFERED

34. The allegations in ¶ 34 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied.

35. The allegations in ¶ 35 are statements and/or conclusions of law which do not require a responsive pleading. Alternatively, they are denied.

36. The allegations in the first sentence of ¶ 36 are denied. The PRSA admits that it rejected Plaintiff Kerkado's request for PRSA affiliation for Plaintiff Phoenix. The reason for this rejection is that Phoenix did not comply with PRSA standards. The remainder of the allegations in ¶ 36 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that a response is required, the allegations are denied.

37. The allegations in ¶ 37 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that a response is required, the allegations are denied.

38. The allegations in ¶ 38 are statements and/or conclusions of law which do not require a responsive pleading. To the extent a response is required, the allegations are denied.

## BASIS FOR INJUNCTIVE RELIEF

39. The allegations in ¶ 39 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that they do, the allegations are denied.

40. The allegations in ¶ 40 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that they do, the allegations are denied.

## DECLARATORY RELIEF

41. The PRSA incorporates by reference its responses in the preceding paragraphs.

42. The allegations in ¶ 42 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that a response is required, the allegations are denied.

43. The allegations in ¶ 43 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that a response is required, the allegations are denied.

44. The allegations in ¶ 44 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that a response is required, the allegations are denied.

45. The allegations in ¶ 45 are statements and/or conclusions of law which do not require a responsive pleading. To the extent that a response is required, the allegations are denied.

46. The allegations in ¶ 46 do not require a responsive pleading. To the extent that a response is required, the allegations are denied.

## PRAYER FOR RELIEF

This paragraph consists of a prayer of relief which does not require a responsive pleading. To the extent that it does, it is denied.

ALL ALLEGATIONS NOT SPECIFICALLY ADMITTED ABOVE ARE DENIED.

**AFFIRMATIVE DEFENSES**

1. The PRSA adopts and incorporates by reference, as if fully stated here, the affirmative allegations contained in the preceding paragraphs.

2. The Court lacks subject-matter jurisdiction over Plaintiffs' claims.

3. The Amended Complaint fails to state a claim upon which relief can be granted.

4. Plaintiffs fail to plead the essential elements of a § 1983 claim against the PRSA.

5. Plaintiffs fail to allege conduct by the PRSA that is "fairly attributable to the State."

6. Plaintiffs lack standing to assert their claims, to seek the requested relief, or both.

7. Plaintiffs' claims are barred because they have suffered no legally cognizable injury.

8. Some or all of Plaintiffs' causes of action are time barred by the applicable statute of limitations.

9. There is no proximate cause between the PRSA's alleged conduct and Plaintiffs' alleged damages.

10. The PRSA has at all relevant times acted in compliance with the law.

11. The PRSA cannot be held liable for the acts or omissions of third parties.

12. Plaintiffs' claims are barred by the doctrine of laches.

13. Plaintiffs' claims are barred by the doctrine of unclean hands.

14. Plaintiffs' claims are barred by res judicata, claim preclusion and issue preclusion.

15. Plaintiffs are not entitled to a claim under the doctrines of waiver and estoppel.

16. Plaintiffs have not suffered any legally cognizable injury or damage.

17. Plaintiffs have failed to mitigate their alleged damages. To the extent they have mitigated damages, the effect of such mitigation must be deducted from any monetary award to which Plaintiffs might be entitled.

18. Plaintiffs' amended complaint is frivolous, and the PRSA is thus entitled to recover costs and attorneys' fees.

19. If Plaintiffs have suffered any damages, they were not caused by any act or omission by the PRSA.

20. If Plaintiffs have suffered any damages, it has been solely through their own fault or negligence or those of third parties.

21. Plaintiffs' alleged damages are excessive and unwarranted, nonexistent or grossly exaggerated.

22. Plaintiffs' claims are barred because their damages are too speculative or uncertain.

23. The PRSA denies the allegations in the prayer for relief.

24. The PRSA adopts and incorporates by reference, as if fully stated here, the affirmative defenses raised by co-defendants, inasmuch as they are not inconsistent with the PRSA's position.

25. The PRSA reserves the right to raise any other affirmative defense which may arise as a result of discovery.

WHEREFORE, the PRSA respectfully requests that the Court dismiss the Amended Complaint *with prejudice*.

I HEREBY CERTIFY that on this date I filed an exact copy of this document with the Clerk of the Court using the CM/ECF System, which will send notice electronically to all counsel of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 30th day of March, 2017.

*Attorneys for Defendant PRSA*
**MORELL BAUZÁ CARTAGENA & DAPENA, LLC**
PO BOX 13399
SAN JUAN, PUERTO RICO 00908
TEL. 787-723-1233
FAX. 787-723-8763

S/Ramón Dapena
USDC No. 125005
ramon.dapena@mbcdlaw.com

S/Iván J. Lladó
USDC No. 302002
ivan.llado@mbcdlaw.com

S/German Brau
USDC No. 20285
german.brau@mbcdlaw.com