IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jose A. Cruz-Kerkado, Phoenix Military Institute, Corp., and Centro de Adiestramientos Tácticos de Puerto Rico Corp., Damas de la Segunda Enmienda, Corp. a/k/a Ladies of the Second Amendment and Gun Rights and Safety Association of Puerto Rico, Inc. a/k/a Puerto Rico NRA State Association<br>*Plaintiffs*<br>v.<br>Commonwealth of Puerto Rico (by way of the Puerto Rico Department of Justice a/k/a *Departamento de Justicia),* Puerto Rico Police Department a/k/a *Policia de Puerto Rico*, Puerto Rico Department of Leisure and Sports a/k/a *Depatamento de Recreación y Deporte*, and the Puerto Rico Shooting Association a/k/a *Federación de Tiro de Armas Cortas y Rifles de Puerto Rico*<br>*Defendants* | CIVIL ACTION<br><br>Case No **3:16-cv-2748**<br><br>**Declaratory**<br>**And Injunctive Relief**<br><br>Constitutional Rights |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs through the undersigned counsel and file this Memorandum in support of its Motion for Summary Judgment *for the plaintiffs*:

Plaintiffs move the Court to enter judgment in favor of *plaintiffs*, because this case involves an issue of law. Plaintiffs are law-abiding citizens within the scope of the Second Amendment. Their right to practice firearm safety for self-defense is ancillary to the core of the Second Amendment. The Commonwealth of Puerto Rico, however, enforces a **ban** on *non-sport* gun clubs target practice. The Commonwealth not just regulates, but also *prohibits* firearm education practice unrelated to a "sport".

Under Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought." The Court of Appeals for the First Circuit has stated that the role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually

1

required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). Thus, summary judgment shall be granted if the moving party "shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## Applicable Law

This action arises under the Second Amendment of the Constitution of the United States of America and requests a determination of the constitutional cogency of specific sections of the Puerto Rico Weapons Act, which encroach upon and infringe rights guaranteed by the Second Amendment. Sections not narrowly tailored that continue to cause undue burden upon law abiding citizens, such as plaintiffs, who choose to exercise their Second Amendment right. Although the right to keep and bear arms is not explicit in the Commonwealth of Puerto Rico Constitution, the Constitution of the United States' territorial clause gave Congress the power to "…make all needful Rules and Regulations respecting the Territory or Property belonging to the United States…." U.S. Const. Art. IV, sec. 3(2). The Puerto Rico Federal Relations Act mandates that "…statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States, except the internal-revenue laws…" P. Law 600, Sec. 9. In *Downes v. Bidwell* the Supreme Court recognized that federally guaranteed fundamental rights placed limitations on local government. 182 U.S. 244 (1901) and in 1985 the Circuit Court of Appeals in *U.S. v. Quiñones*, made clear that local law could not prevent the applicability of federal laws by virtue of the Supremacy Clause. 758 F. 2d. 40.

The Second Amendment of the United States Constitution provides that:

> "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amndt. II.

The Second Amendment guarantees an individual's right to possess a firearm unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such as self-defense within

the home. *District of Columbia v. Heller*, 554 U.S. 570 (2008). The Second Amendment right to keep and bear arms for self-defense in one's home is applicable to States through the Fourteen Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Puerto Rico's Weapons Act predates said interpretations because it was enacted on September 11, 2000, as Act No. 404. Although, it has been enforced for the sixteen (16) years, it has failed to substantially reduce crime and gun-related violence.

The First Amendment of the United States Constitution protects freedom of speech, among other fundamental rights. The amendment applies to people's freedom of association. See *National Association for the Advancement of Colored People v. Alabama*, 357 U.S. 449 (1958). The Highest Court found that freedom to associate with organizations dedicated to the advancement of beliefs and ideas is an inseparable part to due process clause of the Fourteenth Amendment and was also protected by the First Amendment because privacy of membership was an essential part of this freedom. In *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), the Supreme Court clarified that implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious and cultural ends. Topics like *gun-control* laws permeate headlines, national presidential debates and have fostered a wide range of conflicting opinions. Second Amendment organizations advocate *beliefs*. With respect to freedom of association, the Commonwealth of Puerto Rico's Constitution Bill of Rights recognized its citizens were allowed to join with each other and organize freely for any lawful purpose. *Constitution of the Commonwealth of Puerto* Rico, Article II, section 4 and section 6. Puerto Rico Supreme Court has addressed concerns regarding **mandatory affiliation** and funding in *Rivera Schatz v. Estado Libre Asociado de Puerto Rico*, 2014 TSPR 122, 191 D.P.R. __ (2014). With its ruling, Puerto Rico's highest Court ratified that a person ought to be free to **choose whether to belong to one, to all, or no organization**, based on free will.

The Constitution of the United States is the supreme law of the land. *Marbury v. Madison*, 5 U.S. 137. No state may convert a secured liberty into a *privilege*, and issue a *license* and *fee* for it. *Murdock v. Pennsylvania*, 319 U.S. 105. If the state converts your right into a privilege and issues a license and charge a fee for it, that *fee* is **unconstitutional**. *Shuttlesworth v. Birmingham, Alabama*, 373 U.S. 262. Back in 1982, Puerto Rico Highest Court ruled that the right to own and carry firearms was a "*privilege*" to be regulated by the State. *Pueblo de Puerto Rico v. Hector Gerardino del Rio*, 113 D.P.R. 684 (1982). As indicated above, subsequent U.S. Supreme Court decisions now recognize this to be each individual's fundamental right.

The Court may distinguish this case from *Williams v. Commonwealth of Puerto Rico*, 910 F. Supp. 2d 386 (D.P.R. 2012) 12-1218 (FAB), where plaintiffs argued Commonwealth could not license a fundamental right and Superior Court had uncontrolled discretion to issue or refuse to grant a permit to carry. *Williams*, Civil No. 12-1218 (Opinion and Order, pg. 2-3; pg. 15-16.) Here other requirements are challenged and there are some issues not asserted in *Williams*. Plaintiff challenges section 457 of the Weapons Act which requires a weapon license holder with a ***target shooting permit*** to maintain membership to Puerto Rico Shooting Association, and PRSA affiliated shooting-clubs. 25 L.P.R.A. §457. The only common issue is a challenge of the $250 Tax Stamp, but plaintiffs present a challenge here on different grounds, absent in *Williams*. Where it can be shown activities of a private party were compelled or influenced by government regulation, private action can be attributed to the State. *Rendell-Baker v. Kohn*, 457 U.S. at 841, 2771; *Gerena v. Puerto Rico Legal Services, Inc.* 697 F.2d at 450. PRSA membership is ***compelled*** by Commonwealth of Puerto Rico firearm regulation.

**UNLAWFUL REGULATION AT ISSUE**

Sections 1.02(m), 3.01(c), 3.02 (A), 3.03 (7), 3.04 (B), 3.04 (D), 3.06, 2.02 (D), 6.02, and 2.05 (A), of the Puerto Rico Weapons Act, as well as its corresponding Police and Sports regulation, infringe the Second Amendment.

Section 1.02 (m) of the Puerto Rico Weapons Act restricts shooting associations to those exclusively ascribed to the sport of Olympic target shooting. Section 1.02 of Act No. 404 does not define in any way what a "club de tiro" or a gun-club is.

Section 3.01(c) ascribed to the Sports Secretary authority to certify that a bona fide gun-club or target practice federation, in order for the Police Superintendent to issue the corresponding permit. Subsection (c) ascribes to the Police Superintendent an obligation to keep a registry with the names, age, and address of every person to whom a target practice permit has been issued, keeping information as well on the weapon's license number, and the Federation, including federation's seal number, to which the permit holder belongs, with the obligation to notify Sports which permits are cancelled for failure to renew Federation membership. 25 L.P.R.A. §45.

Section 3.02 regulates licenses for "target practice" clubs. Section 3.02 (A) bans non-sport gun-clubs by excluding self-defense practice unrelated to any sports, allowing gun-club licenses exclusively to target shooting sports clubs. Section A Grants Sports Secretary authority to approve the club's facility, amongst other requirements, subsection (7) requires the prospective gun-club/gun-range to certify its membership to the "Federacion de Tiro" a/k/a PRSA.

Section 3.03 (7) dictates that each gun-club must have a certificate of affiliation to the sports target shooting federation.

Section 3.04 regulates the process by which Police Superintendent issues individual target practice permits to weapons license holders. Section 3.04 (B) and 3.04 (D) restrict shooting activates to sports that are unrelated to individual self-defense. Section (B) requires individual membership to

both a sport shooting and the sport federation, and Section (D) requires said membership to keep the post-license target-shooting permit issued by Puerto Rico Police. Without said permit, law-abiding citizens including plaintiffs face restrictions on firearm purchase and ammunition, which restrict ability to train on firearm safety. Section (A) requires the prospective target practice permit applicant to show his/her Federation's stamp, with an application fee. Section (B) prohibits obtaining a target practice permit without proof of membership from a gun-club and "Federacion de Tiro" and section (D) requires target practice permit holder to keep and maintain active membership to a gun-club ascribed to the Federation, and certified by the Sport Secretary, in order retain a target practice permit.

Article 3.06 authorizes the Police Superintendent to cancel any target practice permit, for failure to renew and/or pay the Federation stamp/seal. 25 L.P.R.A. §457e. Article 8, section 5 of Police Regulation No. 7311, also requires the individual target practice permit applicant to submit copy of the Federation's stamp (subsection c) and a certificate of membership into a gun-club (subsection d).

Section 2.02 (D) restricts the number of firearms the licensee can purchase to two (2) without a post-license target shooting permit, and Section 6.02 restricts the number of rounds of ammunition that an individual can purchased, to 50 per weapon for each year.

Such bizarre restrictions of the Puerto Rico Weapons Act unreasonably infringe upon each individual's Second Amendment right and encroaches individual's right to Freely Associate, because it requires a post-license "target-shooting permit" with mandatory membership into the Puerto Rico Shooting Association (PRSA) and its affiliated gun-clubs. Each individual weapon license holder is also required to pay a PRSA Stamp fee to keep said permit.  Each must pay gun-club membership dues for the life of said permit and the PRSA stamp for its renewal. Unfortunately, mandatory affiliation for the individual and gun-clubs to an organization that promotes a sport, is a prerequisite

6

for the permit or license, which constitutes infringement of the right to freely associate for lawful non-sport related training.

*Section 2.05 of the Puerto Rico Weapons Act also infringe the Second Amendment:*

Section 2.05's requirement number two (2) of the Puerto Rico Weapons Act requires each applicant for a Conceal Carry Permit to purchase a $250.00 Internal Revenue Stamp Tax which is to be given to the Police. The Police takes no part in the Conceal Carry permit ex-parte judicial process at the State Court. The required Stamp Tax infringes and unjustly burdens plaintiffs and its members Constitutional right to Keep and Bear arms. Said unjustified charge has a chilling effect and only serves to discourage the exercise of a constitutional right. The Puerto Rico Weapons Act, as amended, requires weapon licensee to pay a tax completely unrelated to the cost associated with the Conceal Carry Permit petition process mandated by law, thru Puerto Rico State Courts. Section 2.05 (A) requires the weapons licensee to pay a $250.00 tax before he/she submits his petition to State Court for a conceal carry permit, 25 L.P.R.A. §456(d). Section 2.05 (A) unreasonably interferes with lawful exercise of plaintiff members' constitutional rights, in as much as it places a "*tax*" on each citizen's right to "bear" arms for self-defense. 25 L.P.R.A. §456d.

As indicated, Section 3.04 of the Puerto Rico Weapons Act requires each target shooting permit holder with a weapons license to affiliate to a *sport* shooting Federation, in this case the Puerto Rico Shooting Association. If a permit holder does not affiliate to the Federation, the individual **cannot** lawfully engage in target practice or belong to unaffiliated gun-clubs, which are not allowed. Further, without membership affiliation to the Federation, the individual cannot lawfully purchase and possess more than two firearms and 50 rounds of ammunition per year for each. The above referenced sections place upon each individual the burden to affiliate *against* his will, to a *private* sport shooting Federation, in order to lawfully engage in practice for firearm safety and self-defense training, which is taught by the Plaintiffs in this case. Said sections, and the above referenced section

7

which imposes a tax on the Conceal Carry Permit applicant, for a *judicial process* in which Police doesn't participate, constitute infringement upon each individual's Second Amendment right, encroachment to plaintiff's right to freely associate, and the unlawful taxation of their Constitutionally guaranteed fundamental right to keep and bear arms.

**WHEREFORE**, Plaintiffs respectfully requests that the Honorable Court *grant* its Motion for Summary Judgment *for the plaintiffs*.

Respectfully submitted, in San Juan, Puerto Rico, this 27th day of October 2017.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to parties by operation of the Court's electronic filing system. Parties may access the filing through Court's system.

Respectfully submitted,

/S/ Humberto Cobo-Estrella, Esq.
**Humberto Cobo-Estrella, Esq.**
**USDC-PR230108**
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 529-7140
Email: hcobo@hcounsel.com