IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jose A. Cruz-Kerkado, Phoenix Military Institute, Corp., and Centro de Adiestramientos Tácticos de Puerto Rico Corp., Damas de la Segunda Enmienda, Corp. a/k/a Ladies of the Second Amendment and Gun Rights and Safety Association of Puerto Rico, Inc. a/k/a Puerto Rico NRA State Association<br>*Plaintiffs*<br>v.<br>Commonwealth of Puerto Rico (by way of the Puerto Rico Department of Justice a/k/a *Departamento de Justicia)*, Puerto Rico Police Department a/k/a *Policia de Puerto Rico*, Puerto Rico Department of Leisure and Sports a/k/a *Depatamento de Recreación y Deporte*, and the Puerto Rico Shooting Association a/k/a *Federación de Tiro de Armas Cortas y Rifles de Puerto Rico*<br>*Defendants* | CIVIL ACTION<br><br>Case No 3:16-cv-2748 |

## Plaintiff Jose A. Cruz-Kerkado's Statement

I, Jose A. Cruz-Kerkado, of legal age, single and resident of ____, Puerto Rico, under penalty of perjury, pursuant to 28 U.S.C. §1746, state and affirm:

1. My name and personal circumstances are as above stated.

2. On May 5, 2015 I called the Puerto Rico Shooting Federation ("Federacion de Tiro de Armas Cortas y Rifles de Puerto Rico") and requested information about how to initiate a gun club. The Federation representative indicated that I had to go to the Department of Recreation and Sports, and Federation was the last thing to do to open a Shooting Range. They agree to send me the Manual of Affiliation for Clubs, and they sent it via email on May 8, 2015.

3. During May 2015, I completed all requirements described below, went to the Recreation and Sports Department on 4 separate occasions for guidance of how obtain appropriate permits for the Shooting Rage. I was given instructions by Dialma Ortiz, who guided me

verbally through the requirements for the application, no official document was provided, no written list of requirements and no official application was filed. Dialma Ortiz told me that she could not provide any documents or file any forms until I brought her the listed documents, which included:

> Merchant Registration
> Affiliation to a shooting Federation
> Our training center manual of regulations
> Complete list of our organizations directorate.
> List of 25 member's
> Department of state incorporation
> Department of state good standing certificate
> Fire department certificate
> Insurance policy
> Municipal tax registration (patente municipal)
> Copy of Lease Agreement from the owner of the land where the facilities were going to be established

4. On June 11, 2015, I met with Dialma Ortiz and gave her the documents she requested; including a certificate from PRTSA, a Tactical and Defensive Shooting Association, then certified by the Department of Recreation and Sports. I requested a copy of the Sports Department Regulation that she use to conduct the process. Dialma indicated that she had to check with the Federation for the regulations and to see if *they* accepted this certificate; the remaining documents were in order. The next step was to go and inspect the facility, again I was asked the status, but she replied that she could not do that *until* she *checked with* the Shooting Federation and after she inspected the facility. Shortly after, Dialma Ortiz called to inform that she was holding the process *until* the Shooting Federation completed their procedure of certification since the Shooting Federation was *the one* in *charge* of those duties.

5. During the next two weeks I made arrangements with the Shooting Federation, so they could visit the facility and initiated the certification process.

6. On July 3, 2015, Hilberto Hernández, Vice President of the Shooting Federation came to my facility to conduct an initial inspection and to advise about Federation certification process. He manifested that did not like our facilty. At the end of the inspection he gave me documents with Federation requirements, in order to certify the facility.

7. As part of Federation requirements, I was asked to build an additional shooting rage with 15 positions with an automatic spin to enable the Federation Athlete's to train. This is different from the ones I had designed for self-training purposes. This was to enable the Federation Athlete's to train and have their competitions, at my facility.

8. I was required to sign a Federation application, with an oath of loyalty and pay a fee of $12.00 for every person in my membership list, as well as lending my facility for their Athlete's competitions, free of charge. I did not agree with these enormous requirements.

9. On July 7, 2015, I went to the Department of Recreation and Sports to ask clarification on all the discrepancies and requirements the Federation had imposed on me. Dialma Ortiz told me that the Shooting Federation was the *governing body* for these matters and they had the "last word" in the government's decision process. On my way out of Dialma's office I found Hilberto Hernandez in the hallway, and he told me he was there to write the *new* shooting policies *for the Department* of sports. I asked him to tell me, what was the status of my facility and he said that I had to comply with every request made by the Federation or I would not be allowed to have my self-defense Shooting Range.

10. On July 13, 2015, I delivered a letter to the Director of the Sports Department, explaining my disagreement with Federation's imposed procedure and requirements, and the lack of

documentation given to me by the Department. I asked for a meeting with him, but he never responded.

11. On August 21, 2015, after weekly visits and multiple phone calls to the Department of Recreation and Sports (40 days after delivering the first letter to the director of sports) I was able to find Dialma Ortiz, and we schedule a meeting for the August 25, 2015.

12. At the scheduled meeting, I met with Dialma Ortiz at the Department of Recreation and Sports, and asked *again* for a copy of Department's regulation concerning the approval of Shooting Ranges in Puerto Rico. At that time I was given an incomplete and non ratified pamphlet, with the "*new*" proposed regulation from the Department and we came to an agreement to Conduct the Department's official inspection on September 11, 2015.

13. On September 9, 2015, via phone I coordinated to meet with Dialma Ortiz at el Norte Shopping Center the date of the scheduled meeting, at 10:00 A.M. to then proceed to my facility in Hatillo to conduct the official Department inspection.

14. On September 11, 2015, I was waiting at El Norte Shopping center when I received an unexpected call from Gilberto Hernández (Vice President of the Shooting Federation) stating that he was in front of our facilities in Hatillo waiting for us, to conduct the inspection.

15. When I arrived at the facility, Gilberto Hernández was there and inside his vehicle was also present Dialma Ortiz from the Department of Recreation and Sports. When we got to Shooting range I asked Gilberto Hernández why he was there, since this was to be a Department Inspection, and I had not asked for another Shooting Federation inspection. Hernández told me he was *the one* who was conducting that inspection. I refused and told Dialma Ortiz that she had to conduct the inspection since she was the Department of

Sports employee. Gilberto Hernández became furious and started to argue. I told him that I was not going to allow the Federation inspection that day, this made him furious his face turned red and he said that I better not do. I went over to Dialma Ortiz and asked her who did she work for the, Sports or the Federation, and also why she was permitting Mr. Hernández to dictate what she could do; hesitantly she started to perform the inspection, she initially did start the inspection but for every stage of the inspection Mr. Hernández kept telling her *what to do*. I asked Hernández not to interfere with the inspection or he would be asked to leave the premises, at that time Dialma Ortiz decided *not to* complete the inspection and did not want to give me a written copy of the inspection and said she had to talk with her supervisor because she did not know what to do.

16. On September 16, 2015, I met with the President of the Federation and agreed that what we had was sufficient to open the facility and we would not be required to implement things that other Federation facilities did not have. He indicated that he would send a letter to the Police Department and the Federation notifying this agreement.

17. On September 23, 2015, I met with Juan M. Cartagena Assistant Secretary of Sports for mediation and he promised to assign another person to perform Department's inspection.

18. On September 30, 2015, I sent a message to Cartagena asking for the status of inspection.

19. On October 6, 2015, I met with Cartagena and he informed me that he sent a Department representative to inspect my facility.

20. On October 13, 2015, a third letter was delivered to Secretary of Recreation and Sports requesting a meeting or clarification as to what the Department was doing.

21. On October 22, 2015, I met with Juan Cartagena and he stated he would call me to inform the date of the inspection. This was the fourth time that I went to the Department

of Sports and even though they promised to provide a date for the inspection, nothing was done. However, on October 23, 2015, some individuals unlawfully entered my facility and informed the gardener that they were from the Department of Recreation and Sports. When verified with Cartagena, he confirmed that the people were from his department. They did not obtain my prior consent, nor coordinate lawful to entry into the property. They gain unlawful access without my presence, nor allow me to be present at inspection.

22. On October 26, 2015, I spoke to Special Assistant of Secretary of Sports and he informed me that he would coordinate a meeting with the Legal Division of Sports and Recreation. He never called back to inform me when the meeting would take place.

23. On October 29, 2015, I spoke to Irrizarry, President of the Federation and we agreed on a meeting to be held on November 4, to discuss why the agreement reached on September 16th was broken. Additionally, I wanted to understand why we were being required to install things that other shooting gun clubs were not required. Mr. Irizarry indicated that if I made allegations of that, I would never be certified because the people who certify are owners of the other shooting gun clubs.

24. On November 2, 2015, I was notified via telephone that our meeting for the 4th was suspended. I then received an email with a new list of requirements that needed to be completed, if I wanted my gun club to be certified. The requirements now imposed were not found in any law or administrative regulation.

25. On that same day the letter was answered by email informing that we found it irregular that the President of a Federation that regulated the sport of shooting would not want to address our complaint of this type. It seems clear that the message of Mr. Irrizarry was that if I expressed disagreement with this, my gun club would not be certified. It seemed

almost unreal that a one person who is not a member of government held such control, as to dictate what the government agency would approve and who it regulates.

26. On November 4, 2015, Mr. Arroyo from Sports and Recreation called me to request a date for the facility inspection. I informed him that until we met with the legal section, we were not going to allow further inspections. I spoke again to Dialma Ortiz from the Department of Sports, and requested a letter certifying the papers and documents we had given them. This was in preparation for legal action.

27. I agreed with the Federation, that all of the council members and Directors meet at my gun club for a presentation to be given on Friday November 6, 2015. On November 5th the Federation cancelled the meeting, at 7:00pm. I spent a day preparing a presentation.

28. On February 2, 2016, I met with Attorney Nilda E. Díaz, legal advisor for the Department of Sports and Mr. Cartagena Director of Safety in the Department of Sports, to discuss any disagreements. They failed to provide to me any documentation or department regulation, as to why the Department was not giving me approval for the shooting club. They referred to the Federation Regulation as the law used for guidance for this.

29. On February 3, 2016, my shooting instructor Jose Rosado attempted to get his Shooting instructor's permit from Recreation and Sports, but it was denied by the Department.

30. On February 12, 2016, I asked for a meeting with the Federation, so that our attorney could meet with the Federation, to attempt to resolve the matter. Another inspection of the facility was scheduled.

31. During May 2016, representatives from the Federation went to the facility to conduct another inspection, and this time the facility passed their criteria.

32. During July 2016, when the annual Federation member (club owners) assembly was held, at which most of the nearby club owner attended to vote, they voted *against* my facility opening. The next day, I called Mr. Cartagena, Director of the Division of Sports to ask what the Department would do, and he responded that the Federation decision was "final" and that was the end of the process.

33. During August 2016, I initiate legal action against the Federation, the Department of Recreation and Sports, the Puerto Rico Police and the Commonwealth of Puerto Rico.

I declare under penalty perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Wherefore, I subscribe a statement in San Juan, P.R. on this __ day of October 2017.

_____
Jose A. Cruz-Kerkado