**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JOSÉ A. CRUZ-KERKADO, *ET AL* | |
| Plaintiffs | CIVIL NO. 16-2748 (ADC) |
| v. | |
| COMMONWEALTH OF PUERTO RICO (BY WAY OF THE PUERTO RICO DEPARTMENT OF JUSTICE a/k/a DEPARTAMENTO DE JUSTICIA, *ET AL* | |
| Defendants | |

**DEFENDANT PRSA'S REPLY IN SUPPORT**
**OF ITS MOTION TO DISMISS**

**TO THE HONORABLE COURT:**

Defendant Puerto Rico Shooting Association ("PRSA") a/k/a Federación de Tiro de Armas Cortas y Rifles de Puerto Rico, by counsel, respectfully submits this Reply in support of its Motion to Dismiss.

## ARGUMENT

**A. Plaintiffs cannot, in their opposition brief, raise new allegations that were not included in the Amended Complaint**

Despite the fact that Plaintiffs were generously granted an opportunity to amend the complaint (after motions to dismiss were filed), despite repeated admonitions by this Honorable Court that Plaintiffs must comply with the Local Rules,[1] and despite this being the third opportunity to file a proper opposition brief to a motion to dismiss, *see* Docket Nos. 20, 30, Plaintiffs again seek to rely on allegations raised for the first time in their new opposition brief to PRSA's motion to dismiss.[2] *Opposition Brief* ("*Opposition*"), Docket No. 55, p. 3.

This Court has held that Plaintiffs cannot rely on allegations raised for the first time in an opposition to a motion to dismiss. *Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357,

---

[1] *See* Order of December 21, 2016 (Docket No. 27) (criticizing the complaint's "disorganization and verboseness" and admonishing plaintiffs that "they must abide by the Local Rules"); Order of January 3, 2017 (Docket No. 44) ("repeated attempts by Plaintiffs' counsel to skirt the Rules of this Court do not sit well with the Court and are unacceptable"). This Court has twice stricken motions filed by Plaintiffs for failure to comply with the rules.

[2] Plaintiffs raise the following allegations not found in the Amended Complaint: "(1) At all relevant times Sports representatives made representations to Kerkado, that the ultimate decision maker was the PRSA, whose endorsement was required by law; (2) Sports officials made representations to Kerkado that it would exclusively adopt PRSA standards . . . (4) Sports never completed its own inspection, as a result of PRSA adversarial intervention . . . ." *Opposition Brief*, p. 3-4.

366 (D.P.R. 2015); *Kolker v. Hurwitz*, No. CIV. 09-1895 JP, 2011 WL 292264, at *3 (D.P.R. Jan. 31, 2011) (stating that "the Court will not consider any facts not found in the complaint."); *see also Whiting–Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F.Supp.2d 321, 334 (D. Md. 2012) (stating that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). PRSA actually raised this argument prior to Plaintiffs filing an amended complaint, see Docket No. 24, and Plaintiffs still failed to include the allegations, even once the Court allowed them to amend the pleadings. Plaintiffs' procedural tactics should not be allowed. Plaintiffs' Opposition should thus be stricken. In the alternative, the new allegations in Plaintiffs' Opposition should be disregarded.

**B. Plaintiffs' argument that the PRSA's conduct is attributable to the State because PRSA affiliation is required by law is wrong and contrary to case law**

Plaintiffs' entire opposition brief relies heavily on a conclusory and faulty statement that is reiterated throughout: that because Puerto Rico law requires PRSA affiliation for certain permits (*e.g.*, target shooting permit, and license to operate a gun club), then the PRSA's conduct should be attributed to the State. *See, e.g., Opposition*, p. 2 ("if the Commonwealth requires you to affiliate to the PRSA and the PRSA denies your request which has legal consequences, said conduct can be attributed to the State"), p. 3 ("the PRSA does not operate with 'independence' because involuntary membership is exclusively compelled by law"), p. 4 ("[w]ith involuntary membership required by law, the PRSA acted under color of State law when it denied plaintiff's gun-club affiliation, as required by law"). This argument is plainly incorrect and unsupported by case law.

The requirement for PRSA affiliation in order to obtain a license to operate a target shooting range is established in the Weapons Act. 25 L.P.R.A. §457a. PRSA is a sports organization.  PRSA grants or denies affiliation to the applicants that wish to join its organization, based on its rules.  The fact that state law requires PRSA affiliation to obtain a firearms license does not transform the PRSA into a state actor. Nor is PRSA liable for complying with what Puerto Rico law mandates. *Diefenderfer v. Office of Recovery Servs. For State of Utah*, 185 F.3d 873 (10th Cir. 1999) (holding that private actors who merely comply with state law are not thereby acting under color of state law"); *Watson v. Mahaffey*, No. C–08–59, 2008 WL 1740090, at *6, n. 14 (S.D.Tex. Apr.11, 2008) ("Defendants in this case were private actors who were following the law, not acting under color of state law, and Plaintiffs cannot bring a Section 1983 claim under the facts as alleged in their Complaint").

In the same vein, Plaintiffs argue that the PRSA does not operate with independence from the State because membership is required by law. *Opposition*, p.  4. This is an illogical leap. PRSA admits that Puerto Rico law requires PRSA affiliation for certain permits. But this legal requirement does not speak to whether PRSA, a private entity, operates with independence from the State in deciding whether to grant affiliation to certain applicants.

PRSA and public officials operate in different spheres.  PRSA makes the decision to grant or deny affiliation to its sports federation, without any intervention from public officials and based on its own rules, which are geared toward the use of firearms in sports

competitions. On the other hand, State officials issue weapons permits, based on legal regulations, and without the intervention of PRSA.

At the end of the day, the amended complaint shows, as mentioned in PRSA's motion to dismiss, that the challenged conduct (involving PRSA) in this case is simply the denial of Plaintiffs' request for PRSA affiliation.[3]  This decision was taken solely by PRSA, based on its rules.  No facts plausibly prove the conclusory allegation that the decision to deny Plaintiffs' request for affiliation is attributable to the State.

**C. Plaintiffs do not point to facts *in the amended complaint* showing that the PRSA's denial of Plaintiffs' request for affiliation is attributable to the State**

    1. <u>Plaintiffs fail to point to facts that plausibly show a symbiotic relationship between the PRSA and State[4]</u>

As to the inspection where both Puerto Rico Department of Leisure and Sports ("PRLS") and PRSA representatives were present, Plaintiffs attempt to shift the focus away from the challenged conduct by the PRSA at issue. The inspection *is not the conduct that Plaintiffs allege deprived them of their constitutional right*—it was the denial of their affiliation request in the PRSA's letter. So, whether the State was present at an inspection

---

[3] To be clear, this is the conduct by the PRSA challenged by Plaintiffs and alleged to have deprived Plaintiffs of their constitutional rights. Because the mandatory PRSA affiliation is established by a Puerto Rico statute (and not the PRSA), then it does not constitute conduct by the PRSA. In other words, PRSA—a private entity—is not liable for a requirement established by law.

[4] As to PRSA's argument that the complaint fails to show that the PRSA has a symbiotic relationship with the Commonwealth, Plaintiffs posit that it "presents a factual dispute in need of discovery." *Opposition*, p. 3. This is false. There is no factual dispute at hand. Plaintiffs have, since the beginning, admitted there was an inspection in which members of PRLS and PRSA were present. The PRSA's argument is based on the lack of factual allegations (in the amended complaint) supporting the conclusory allegation that the Commonwealth and the PRSA had a symbiotic relationship affiliation. Because there are no allegations that plausibly show that the PRSA's conduct is attributable to the State—which is what Courts examine at this stage—Plaintiffs' complaint cannot survive a 12(b)(6) challenge.

(for a reason unrelated to the federation affiliation), is irrelevant. *Sybalski v. Indep. Grp. Home Living Program*, Inc., 546 F.3d 255, 257–58 (2d Cir. 2008) ("It is not enough, however, for a plaintiff to plead state involvement in 'some activity of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the activity that caused the injury' giving rise to the action.").

As explained before, PRLS and PRSA act in different spheres: PRSA attends the applicant's request for federation affiliation under its private rules and regulations, and PRLS must, under the Weapons Act, issue a legal certification. 25 L.P.R.A. § 457 (PRLS Secretary must certify that the entity is a certified *bona fide* shooting club). The fact that PRLS officials and PRSA representatives may conduct their inspections at the same time does not mean that the PRLS invades PRSA's prerogatives as a private entity or vice versa.  In short, both merely comply with the law in different aspects. *Diefenderfer,* 185 F.3d 873 (10th Cir. 1999) (holding that mere compliance with state law is not indicative of action under color of state law).

Plaintiffs, in addition, fail to address other factors relevant to the nexus inquiry. The most important factor in the joint action/nexus test is whether the private entity is independent in the conduct of its day-to-day affairs. *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011). Plaintiffs have pointed to no facts showing that the PRSA is dependent on the State. Actually, the opposite is true by Plaintiffs' own allegations: according to Plaintiffs, the State "delegates" to the PRSA the authority to regulate the sport of target

shooting and, with that, the duty to regulate the safety standards required for target shooting ranges, *Opposition*, p. 8.

Plaintiffs also cite *Santiago*, which explains that the other factors to be considered in this test are whether the private party uses public facilities and whether the state shares in the profits generated from the private party's rights-depriving conduct. *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011). However, Plaintiffs point to no allegations in the amended complaint showing that the PRSA uses public facilities. They fail, moreover, to mention any allegations or facts that would support the conclusory allegation that the State benefited from PRSA's decision to deny federation affiliation to the Plaintiffs in this case. *Pacheco v. Federacion Ecuestre De P.R.*, 34 F. Supp. 2d 101, 104 (D.P.R. 1999) ("Plaintiffs have provided no evidence to demonstrate that the Commonwealth of Puerto Rico has benefitted out of [Plaintiff's] exclusion from the facilities of the Centro Ecuestre.").

The allegations, in the end, do not show a "symbiotic relationship" or a relationship of interdependence between the two regarding the PRSA's denial of Plaintiffs' request for affiliation. *Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982) (finding State must be responsible for "the specific conduct of which the plaintiff complains."). Thus the joint action/nexus test is not met.

2. <u>Plaintiffs fail to show how the PRSA, a private entity that associates target shooting enthusiasts and regulates the sport of target shooting, conducts functions exclusively reserved for the State</u>

Plaintiffs argue that "PRSA affiliation for individuals demonstrates a governmental function of public importance to the State, sufficient to hold the

government liable for PRSA's actions." *Opposition*, p. 6. This, however, is not what First Circuit precedent requires to satisfy the public function test; Plaintiffs must show that the private entity carries out a function exclusively reserved for the state. *Ponce v. Basketball Fed'n of Com. of Puerto Rico*, 760 F.2d 375, 381 (1st Cir. 1985). So, whether PRSA performs a "function of public importance to the State", as Plaintiffs argue, is actually irrelevant. *Cf.*, *Barrios-Velázquez v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico*, 84 F.3d 487, 494 (1st Cir. 1996) ([F]or a private actor to be deemed to have acted under color of state law, it is not enough to show that the private actor performed a public function). The element of exclusivity is key in this analysis.

Plaintiffs provide no real explanation or supporting case law as to why the PRSA — which regulates a sports association and grants affiliation to applicants that show that they comply with their safety standards — performs functions traditionally and exclusively reserved for the State. As evident from the Weapons Act, PRSA does not grant licenses; that is done solely by the State.

As to *Ponce*, Plaintiffs attempt to make a distinction between the sport of basketball and the sport of target shooting, but miss the point for which the precedent was cited. The holding in *Ponce*, as well as other First Circuit cases — that regulation of sports is not an exclusive role of the State — is binding in this case. *See, e.g.*, *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 19 (1st Cir. 1999) ("The case law makes pellucid that the administration of an amateur sports program lacks the element of exclusivity and therefore is not a traditional public function."). While Plaintiffs attempt to distinguish the

sport of basketball from the sport of target shooting, they do not attempt to offer case law (or any developed argumentation, for that matter) in support of their theory that the PRSA's functions are exclusively reserved for the State. The public function test is simply not met.

3. <u>Plaintiffs' argument that the Weapons Act requires PRSA affiliation is not enough to meet the state compulsion test, according to First Circuit precedent</u>

Plaintiffs argue that the state compulsion test is met because the law "compels or encourages involuntary affiliation into PRSA." *Opposition*, p. 8. This is incorrect. As argued in PRSA's motion to dismiss, the relevant inquiry is whether the State compelled or encouraged the challenged conduct—that is, the PRSA's denial of Plaintiffs' request for affiliation. *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 12 (1st Cir. 2015), cert. denied, 136 S. Ct. 2020, 195 L. Ed. 2d 217 (2016). Merely pointing to a statute—as Plaintiffs continue to do here in spite of the precedent cited—is not enough. S*ee Alberto San, Inc. v. Consejo de Titulares del Condominio San Alberto*, 522 F.3d 1, 4 (1st Cir. 2008)

Plaintiffs point to no facts that plausibly support the conclusion that the denial of Plaintiff Phoenix's affiliation request was compelled by the State. The PRSA is indeed free to decide which applicants should be granted affiliation.  Plaintiffs fail to meet the state compulsion test.

**D. Plaintiffs fail to respond to the arguments in PRSA's motion to dismiss regarding the First Amendment claim and have thus waived any argument**

PRSA raised several arguments in its motion to dismiss concerning Plaintiffs' failure to state a plausible freedom of association claim. (*See* PRSA's Motion to Dismiss,

p. 14-16). Plaintiffs' Opposition fails to respond to any of these arguments. Rather, Plaintiffs cite several cases addressing the freedom of association and then omit any explanation as to how those cases are material to PRSA's arguments. And this Court has recognized that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Mega Media Holdings, Inc. v. Aerco Broad. Corp.*, 852 F. Supp. 2d 189, 197 (D.P.R. 2012) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990)) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones"); *see also Negron Jimenez v. Rodrguez-Adorno*, No. CIV.06-1055(ADC), 2009 WL 605365, at *16 (D.P.R. Mar. 9, 2009); *United States v. Mata-Peña*, No. CR 16-423 (ADC), 2017 WL 543349, at *6 (D.P.R. Feb. 10, 2017) (finding that "the Government . . . waived [the] argument for lack of legal and factual development"). Plaintiffs' argument regarding this claim should thus be deemed waived.

To be sure, Plaintiffs cite the Puerto Rico Supreme Court decision in *Rivera Schatz v. E.L.A.*, 191 D.P.R. 791 (2014), which, according to First Circuit precedent, is not binding on this Court. Cf., *Romero v. Colegio de Abogados de Puerto Rico*, 204 F. 3d 291, 296-297 (1st Cir. 2000) (stating that "conditioning the practice of law on membership in a state bar association does not itself violate the First Amendment"). In any event, Plaintiffs' reliance on *Rivera Schatz* is misplaced.

In *Rivera Schatz*, the Supreme Court of Puerto Rico ruled that a law requiring compulsory membership in the local Bar Association to obtain a license to practice law in

Puerto Rico is contrary to the Puerto Rico Constitution because it interferes with the exclusive powers of the Supreme Court of Puerto Rico to regulate the legal profession in the Puerto Rico. 191 D.P.R. at 821.  The Puerto Rico Supreme Court's holding did not rest on First Amendment grounds.  Moreover, *Rivera Shatz* has not been extended by the Supreme Court of Puerto Rico to hold invalid similar compulsory membership requirements that exist for other professions in Puerto Rico. *See* 20 L.P.R.A. §§ 72 *et seq.*

In sum, Plaintiffs' amended complaint fails to cure any of the fatal defects in the original complaint. Thus, Plaintiffs' claims against PRSA must be dismissed.

## CONCLUSION

**WHEREFORE,** Defendant PRSA respectfully requests that this Honorable Court dismiss *with prejudice* Plaintiffs' complaint against PRSA.

**RESPECTFULLY SUBMITTED**.

**CERTIFICATE OF SERVICE**

It is hereby certified that today I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

In San Juan, Puerto Rico, this 5th day of December, 2017.

**MORELL, BAUZÁ,
CARTAGENA & DAPENA**
PO Box 13399
San Juan, PR 00908
Tel.  787-723-1233
Fax. 787-723-8763

***/s/ German J. Brau***

10

German J. Brau
USDC PR No. 202805
Email: german.brau@mbcdlaw.com

***/s/ Ramón E. Dapena***
Ramón E. Dapena
USDC PR No. 125005
Email: ramon.dapena@mbcdlaw.com

***/s/ Iván J. Lladó***
Iván J. Llado
USDC PR No. 302002
Email: ivan.llado@mbcdlaw.com

*Counsel for Defendant Puerto Rico Shooting Association a/k/a Federación de Tiro de Armas Cortas y Rifles de Puerto Rico*