# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**JOSÉ A. CRUZ-KERKADO, et al.,**
    **Plaintiffs,**

    v.

**COMMONWEALTH OF PUERTO RICO, et al.,**
    **Defendants.**

**Civil No. 16-2748 (ADC)**

## OPINION & ORDER

Several motions are pending before the Court. There are two pending motions to dismiss, one was filed by co-defendants Commonwealth of Puerto Rico ("the Commonwealth"), the Puerto Rico Department of Leisure and Sports (the "Department of Sports"), and the Puerto Rico Police Department ("PRPD") (collectively, the "Government Defendants"). **ECF No. 48**. A separate motion to dismiss was filed by defendant Puerto Rico Shooting Association ("PRSA"). **ECF No. 50.** Plaintiffs replied to each motion, **ECF Nos. 55, 56**, and on December 5, 2017, they were granted leave to file a supplemental opposition, which they failed to timely file, **ECF No. 66.** Also pending before the Court is plaintiffs' motion for summary judgment, **ECF No. 63**, PRSA's response in opposition and alternative motion to hold summary judgment in abeyance, **ECF No. 64**, and the Government Defendants' motion to join in PRSA's opposition and alternative motion, **ECF No. 65**.

For the following reasons, defendants' motions to dismiss at **ECF Nos. 48 & 50** are **GRANTED.** Plaintiffs' motion for summary judgment at **ECF No. 63** is **DENIED AS MOOT.**

Likewise, PRSA's motion in opposition to summary judgment and alternative motion to hold summary judgment in abeyance at **ECF No. 64** and the Government Defendants' motion to join therein at **ECF No. 65** are also **DENIED AS MOOT**. PRSA's January 11, 2018 motion at **ECF No. 70**, to withdraw certain arguments from its motion to dismiss is also **DENIED AS MOOT**.[1]

I. **Background**

Plaintiffs José A. Cruz-Kerkado ("Cruz-Kerkado"), Phoenix Military Institute, Corp. ("Phoenix"), Centro de Adiestramientos Tácticos de Puerto Rico Corp. ("CAT"), Damas de la Segunda Enmienda, Corp. a/k/a Ladies of the Second Amendment ("LSA"), and Gun Rights and Safety Association of Puerto Rico, Inc. a/k/a Puerto Rico NRA State Association ("NRA") filed this lawsuit alleging that certain sections of the Puerto Rico Weapons Act (the "Act"), P.R. Laws Ann. tit. 25, § 455 et seq., infringe upon their ability to "fully exercise their Second Amendment right to teach, train and practice firearm safety and self-defense unassociated with athletic sports." **ECF No. 29** at 5, 11.

A. **The Puerto Rico Weapons Act**[2]

The administration of the Puerto Rico Weapons Act is divided between the Secretary of the Department of Sports and the Superintendent of the PRPD. The Act establishes, among other

---

[1] Specifically, PRSA seeks to withdraw its argument appearing on pages 7 through 14 of its motion to dismiss in which it asserts that "Plaintiffs failed to plead that PRSA's conduct was attributable to the State (*i.e.*, the Commonwealth) and that Plaintiffs thus failed to state a § 1983 claim against PRSA." **ECF No. 70**.

[2] Plaintiffs cite the underlying legislative enactment, not the codification thereof. **ECF No. 29** at 11–14, 18–19. The Court cites the current version of the codified statute, not the underlying legislation. *See generally* P.R. Laws Ann. tit. 25, § 455 et seq. (enacted by H.B. 3447, 2000 Leg. (P.R. 2000) (Act No. 404)).

things, several types of weapons permits and licenses. Relevant to this decision, are the Act's provisions establishing weapons licenses, carry permits, and target shooting permits.[3]

A weapons license "empowers the licensee to be the owner of a maximum of two (2) firearms," subject to some exceptions. P.R. Laws Ann. tit. 25, § 456a(d) (listing exceptions such as weapons acquired "through inheritance, or when the licensee holds a target shooting or hunting permit"). The weapons license application requires, among other things, certification from an authorized gun club[4] attesting that the licensee has passed a course in gun safety. *Id.* § 456a(e). The weapons license does not permit a licensee to carry a weapon on their person. *Id.* § 456a(d)(2). An additional permit, a "carry permit," is required for that. *See id.*; *id.* § 456d(a). The application for a carry permit requires, among other things, payment of a $250 fee and a similar certification from an authorized gun club attesting that the applicant "has passed a course in the correct and safe use and handling of firearms."[5] *Id.* § 456d(a). Renewal of the carry permit requires recertification from an authorized gun club that the applicant is trained in gun safety and handling. *Id.* § 456d(c).

The Act also establishes a scheme by which individuals can obtain a target shooting permit and gun clubs can operate a target shooting facility or range. *See generally id.* §§ 457–457e.

---

[3] The Act also acknowledges a scheme for granting hunting licenses that is governed by the Wildlife Act. *See* P.R. Laws Ann. tit. 25, § 460.
[4] The Act directs the Secretary of the Department of Sports to "[c]ertify that an entity is a bona fide gun club or federation so that the [PRPD] Superintendent can consider issuing the corresponding permit." *Id.* § 457(1)(c).
[5] The fees collected under the Act are earmarked for the PRPD to fund Act-related programs and tasks, such as the PRPD's maintenance of an electronic registry of weapons licenses. *Id.* § 456b.

A target shooting permit authorizes the permit holder "to transport an unlimited number of firearms and ammunition, and to fire weapons in the target shooting facilities or ranges and participate in any championship . . . ." *Id.* § 457c(f). "Any person who holds a weapons license issued pursuant to" the Act, may apply to the PRPD Superintendent for a target shooting permit. *Id.* § 457c(a). The target shooting permit application must be accompanied by, among other things, "a stamp from a sports shooting federation." *Id.* The Act defines "Sports shooting federation" as "any federation attached to the Puerto Rico Olympic Committee that represents the Olympic target shooting sport." *Id.* § 455(n). The Act emphasizes the importance of this sport shooting federation stamp, stating, "No target shooting permit shall be issued to any person whosoever who is not a member of a gun club or organization and a shooting federation duly recognized by the Secretary [of the Department of Sports]," *id.* § 457c(b), and said affiliations "shall" be maintained "during the effective term of said [target shooting] permit," *id.* § 457c(d). Failure to maintain these affiliations will cause the target shooting permit to "be automatically revoked." *Id.* § 457c(d). Likewise, a gun club owner interested in operating a target shooting facility or range may apply to the Department of Sports with an application that includes, among other things, "a certification of affiliation to the Sports Shooting Federation." *Id.* § 457a(a)(7). Collectively, the Court will refer to these sports shooting federation affiliation and stamp requirements as the "affiliation requirements."

**B.     The Parties**

Cruz-Kerkado is a retired U.S. Army Veteran that teaches courses at Phoenix in firearm safety and self-defense to "low-income" civilian students and tactical self-defense for law enforcement students. **ECF No. 29** at 1–2, 4–5. It is unclear from the amended complaint if Cruz-Kerkado owns Phoenix and CAT, as he shares the same mailing address as each entity and is identified as each entities' registered agent. *Id.* at 1–2. Plaintiffs assert that Cruz-Kerkado and his students "are lawfully licensed to possess firearms" in Puerto Rico. *Id.* at 4. He possesses "a Puerto Rico Weapon's [sic] License," but "does not want to associate, financially support or affiliate with a paid membership to Puerto Rico Shooting Association's affiliated gun-clubs and the federation, as required by the Puerto Rico Weapon's [sic] Act target-shooting permitting scheme." *Id.* at 1–2. Cruz-Kerkado alleges that his Second Amendment rights are violated by the affiliation requirements. *Id.* at 2.

"Phoenix is a veteran-owned educational not-for-profit institution" that offers "specialized teaching on all aspects of tactical self-defense and non-sport related firearms defensive training." *Id.* at 5. "For approximately fifteen years, Phoenix has taught municipal and state police officers, security guards, business owners and law-abiding civilians, the skills necessary and the handling of tools to be able to properly defend themselves, prevent and try to survive dangerous situations." *Id.* Plaintiffs allege that on August 18, 2016, PRSA rejected Phoenix's proposed training facility, rendering Phoenix unable to obtain a permit from the

Commonwealth to operate its proposed facility. *Id.* Plaintiffs also allege that "[a] previous attempt by Phoenix" to "register[]" with PRSA "was initially 'certified'" in 2015, and Phoenix's instructors were licensed by the Department of Sports, but the instructors' licenses were "unlawfully denied" by the Department in 2016. *Id.* at 5–6.

CAT is also a non-profit organization in Puerto Rico. *Id.* at 2. Plaintiffs allege that "CAT's proposed training facility was rejected by the Puerto Rico Shooting Association," which similarly rendered CAT unable to obtain the necessary permits to operate on the Island. *Id.* Plaintiffs do not identify when CAT's rejection occurred. The amended complaint also appears to refer interchangeably to CAT and Phoenix as if they were the same entity. *Id.* at 7.

LSA and NRA are membership organizations aimed at promoting "the interest of lawful gun-owners in the Commonwealth." *Id.* "Firearm safety and self-defense are paramount for gun owners that voluntarily affiliate to each association." *Id.* The amended complaint alleges that LSA and NRA members are "lawfully licensed to possess firearms" in Puerto Rico and are "similarly situated to Cruz-Kerkado," "whose interests fall within the zone of interests and the rights this Amended Complaint seeks to protect." *Id.* at 2, 4. Neither organization "is ascribed to Puerto Rico's Olympic Committee, however, either one could also potentially certify voluntary affiliation by individuals and gun-clubs, to comply with membership." *Id.* at 7.

Defendant Commonwealth of Puerto Rico administers the Commonwealth's laws, including the Act. Defendant PRPD "is responsible for approving and issuing Puerto Rico

Weapon Licenses and Gun-range license[s] pursuant to Puerto Rico's Weapons Act, and its administrative regulation[s]." *Id.* at 3. PRPD shares responsibility for enforcement of the Act with the Department of Sports and "receives the $250.00 Internal Revenue Stamp Tax paid by Conceal Carry permit applicants." *Id.*

The Department of Sports is a governmental entity within the Commonwealth of Puerto Rico that, among other things, "is responsible for certification of gun-range facilities on the Island" under the Act. *Id.* The Department of Sports allegedly "refused to renew [Phoenix's] instructor[s'] [Department of] Sports certifications, at the behest of [PRSA] officials." *Id.*

PRSA is a non-profit organization focused on developing and overseeing "the Olympic sport of target shooting." **ECF No. 57** at 4. The allegations suggest that PRSA is currently the only entity certified under the Act as a "Sports Shooting Federation," rendering affiliation with PRSA an application requirement for both gun clubs and individuals seeking a target shooting permit. *Id.* at 2–3. PRSA allegedly "excluded Phoenix and CAT['s requests for affiliation] because they deviate from [PRSA's] athletics target-practice standards." **ECF No. 29** at 3.

**C. The Claims**

Plaintiffs' amended complaint is lengthy, scattered, and difficult to follow. The amended complaint purports to raise a claim for deprivation of Second Amendment rights by state actors under 42 U.S.C. § 1983.[6] **ECF No. 29** at 4. It is unclear if the complaint alleges a facial challenge,

---

[6] The amended complaint also suggests that the affiliation requirements infringe upon plaintiffs' First Amendment right of free association, but is devoid of any definitive First Amendment claim or basis for relief. Instead, the

an as-applied challenge, or both, to the constitutionality of the affiliation requirements and the $250 fee. The challenge is "'as applied' in the sense that it does not seek to strike the [Puerto Rico Weapons Act] in all its applications," and is "'facial' in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all" carry permit and target shooting applications. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). Nonetheless, "[t]he label is not what matters." *Id.* "The important point is that [the] claim and the relief that would follow . . . reach[es] beyond the particular circumstances of these plaintiffs." *Id.* Here, plaintiffs request injunctive and declaratory relief. **ECF No. 29** at 17–19. They seek a declaration of unconstitutionality as to the affiliation requirements and $250 fee provision and a preliminary and permanent injunction enjoining defendants from enforcing the challenged provisions against any and all permit applicants. *Id.* at 19.

Thus, it appears plaintiffs have raised only a facial challenge under section 1983, contesting the constitutionality of the Act's $250 application fee for a carry permit, *see* P.R. Laws Ann. tit. 25, § 456d(a), and the affiliation requirements under the target shooting provisions, *see id*. §§ 457a, 457c. This conclusion is also supported by plaintiffs' summary judgment motion, seeking relief after filing a complaint and before the benefit of any discovery, on the basis that they have presented a purely legal challenge. **ECF No. 63**. Their claim "'must therefore satisfy

---

amended complaint contains a few cursory citations to the First Amendment and freedom of association cases and concludes that the Act infringes on plaintiffs' rights. **ECF No. 29** at 2, 9–10. Accordingly, the Court does not consider any claims based on the First Amendment, to the extent plaintiffs intended to bring such, to be sufficiently pleaded to withstand a motion to dismiss. *See* **ECF No. 50** at 14–16.

our standards for a facial challenge.'" *Showtime Enter., LLC. v. Town of Mendon*, 769 F.3d 61, 70 (1st Cir. 2014) (quoting *Reed*, 561 U.S. at 194).

## II. Legal Standard

PRSA and the Government Defendants filed separate motions to dismiss, each similarly arguing that Phoenix, CAT, LSA, and NRA ("the organization plaintiffs") lacked standing and the amended complaint failed to state a claim upon which relief can be granted. **ECF Nos. 48**, **50.** *See* Fed. R. Civ. P. 12(b).

In reviewing a motion to dismiss for failure to state a claim upon which relief must be granted, the Court accepts "as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (citation and internal quotation marks omitted). "[A] complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 53 (quoting Fed. R. Civ. P. 8(a)(2)). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action" and "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (additional citations and internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). To ascertain plausibility, "the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact

(which must be credited)." *Id.* Then, "the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." *Id.* (noting that a complaint need not "establish a prima facie case" to defeat a rule 12(b)(6) motion to dismiss). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

## III. Analysis

### A. Constitutional Standing

Standing is a prerequisite for Article III jurisdiction, and thus must be determined before establishing the merits of a case. *See Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009). "The party invoking federal jurisdiction bears the burden of establishing" jurisdiction for each claim asserted. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Katz v. Pershing, LLC*, 672 F.3d 64, 71–72 (1st Cir. 2012). "'To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling.'" *Ramírez-Lebrón v. Int'l Shipping Agency, Inc.*, 593 F.3d 124, 130 (1st Cir. 2010) (quoting *Horne v. Flores*, 557 U.S. 433, 445 (2009)).

Cruz-Kerkado asserts that he has a Puerto Rico weapons license, but that his Second Amendment rights are violated by the affiliation requirement that he "associate, financially support or affiliate with a paid membership to [PRSA] affiliated gun-clubs and the [PRSA]

federation," in order to "fully exercise" his Second Amendment rights. **ECF No. 29** at 1, 5, 15. Cruz-Kerkado does not allege that he personally applied for or was denied a permit, affiliation, or license by any of the defendants. And it is unclear if he possesses a carry permit or is deterred from acquiring one due to the $250 application fee. *See Hightower v. City of Boston*, 693 F.3d 61, 70–71 (1st Cir. 2012) (rejecting plaintiff's standing to challenge a gun licensing scheme under which she never applied); *Morin v. Leahy*, 862 F.3d 123, 128 (1st Cir. 2017) (same).

Nonetheless, in construing the allegations in the complaint in the light most favorable to plaintiffs, the Court draws the reasonable inference that Cruz-Kerkado does have a carry permit, given his stated occupation (firearms safety and self-defense instructor), and can establish injury as to the challenged application fee by presumably having paid it before. Likewise, the Court also considers Cruz-Kerkado to have standing to challenge PRSA's affiliation rejections of Phoenix. Based on the pleadings, it appears that Cruz-Kerkado likely filed the PRSA affiliation request on behalf of Phoenix because, as PRSA stated in its answer, PRSA directed its August 18, 2016 letter denying Phoenix's request to Cruz-Kerkado. **ECF No. 57** at 1, 6, 11. PRSA's motion to dismiss also notes that Cruz-Kerkado requested PRSA affiliation for Phoenix. **ECF No. 50** at 8 n.2. Additionally, the amended complaint and PRSA's answer suggest that CAT and Phoenix are related entities. PRSA's answer describes conducting "an inspection of CAT's facilities, as part of the process of considering Plaintiff Phoenix's request for PRSA affiliation." **ECF No. 57** at 8. And the amended complaint refers interchangeably to Phoenix and CAT in reference to the

inspection, stating, "in the case of Phoenix, [PRSA] has also engaged in a joint inspection of plaintiff CAT's facility." **ECF No. 29** at 7. The amendment complaint also identifies Cruz-Kerkado as the registered agent for both Phoenix and CAT and all three parties share an address. *Id.* at 1–2. In light of these inferences and the favorable standard to plaintiffs on a motion to dismiss, the Court considers Cruz-Kerkado to have asserted injuries causally connected to the defendants' conduct that may be redressed by the requested relief. Similarly, Phoenix and CAT, as entities, have standing based on the adverse affiliation and permitting decisions allegedly rendered against them.

Plaintiffs, however, specifically assert that the organization plaintiffs are suing purely on behalf on their members. **ECF No. 56** at 2. For an organization suing on behalf of its members to establish standing, the organization must demonstrate that "(1) at least one of its members would have standing to sue as an individual, (2) 'the interests at stake are germane to the organization's purpose,' and (3) individual members' participation is not necessary to either the claim asserted or the relief requested." *Animal Welfare Inst. v. Martin*, 623 F.3d 19, 25 (1st Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

The organization plaintiffs fall short of demonstrating standing to sue on behalf of their members. None of these organizations have identified a *single* member who intends to obtain, sought to obtain but was denied, or had revoked any of the permits at issue or affiliations. Likewise, the organizations fail to identify a single member seeking, enrolled in, or even

generally interested in the specific brand of tactical training proposed in Phoenix's rejected affiliation application.[7] Rather, the amended complaint alleges in a conclusory fashion that the organizations' "members are similarly situated to Cruz-Kerkado and whose interests fall within the zone of interests and the rights this Amended Complaint seeks to protect." **ECF No. 29** at 2. The amended complaint goes on to simply quote the standard for organizational standing. *Id.* at 4. Thus, even viewing the facts in the light most favorable to the organization plaintiffs, each have failed to establish that "at least one of [their] members would have standing to sue as an individual." *See Animal Welfare*, 623 F.3d at 25. Accordingly, the Court grants defendants' motions to dismiss the claims brought by Phoenix, CAT, LSA, and NRA on behalf of their members for lack of standing.

### B. The Section 1983 Claims

"Section 1983 'creates a remedy for violations of federal rights committed by persons acting under color of state law.'" *Sánchez v. Pereira-Castillo*, 590 F.3d 31, 40–41 (1st Cir. 2009) (quoting *Haywood v. Drown*, 556 U.S. 729, 731 (2009)). "A claim under § 1983 has two 'essential elements': the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008) (citation omitted).

---

[7] It is not clear from the complaint if CAT even has members.

The Government Defendants seek dismissal of the amended complaint, arguing that the complaint fails to state a claim upon which relief may be granted. **ECF No. 48** at 3, 5. PRSA's motion to dismiss is based on the argument that PRSA is not a state actor and, accordingly, it is not subject to suit under section 1983. **ECF No. 50.** Plaintiffs' section 1983 claim challenges the constitutionality of the affiliation requirements and the $250 carry permit application fee under the Second Amendment.

The Second Amendment states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. The Supreme Court interpreted the Second Amendment to protect the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *D.C. v. Heller*, 554 U.S. 570, 635 (2008)). The *Heller* Court also noted that the phrase, "well-regulated Militia," suggests the amendment's protections may extend to training activities. *Id.* at 597 ("[T]he adjective 'well-regulated' implies nothing more than the imposition of proper discipline and training."). Nonetheless, the *Heller* Court also recognized that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. For instance, the Second Amendment does not "protect the right of citizens to carry arms for *any sort* of confrontation." *Id.* at 595. The *Heller* Court also indicated that its decision should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the

carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 626–27.

A facial challenge to a legislative act is "the most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *accord McGuire v. Reilly*, 386 F.3d 45, 57 (1st Cir. 2004). "Facial challenges are disfavored for several reasons." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008).

> Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that [a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.

*Id.* at 450–51 (citations and internal quotation marks omitted) (alteration in original).

For plaintiffs' "facial attack to succeed, [they] 'would have to establish . . . that the statute lacks any plainly legitimate sweep.'" *Hightower*, 693 F.3d at 77–78 (omission in original) (additional internal quotation marks omitted) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)). In trying to satisfy that lofty standard, plaintiffs will be remiss to rely on the First Amendment doctrines of prior restraint or overbreadth. "[T]hese First Amendment doctrines [are] a poor analogy for purposes of facial challenges under the Second Amendment." *Id*. at 80.

Plaintiffs have altogether ignored the weighty pleading requirements to sustain a facial attack against the Act. The complaint makes several "but for" causation statements: (i) "Plaintiffs, but for the [challenged provisions], would fully exercise their Second Amendment right to teach, train and practice firearm safety and self-defense unassociated with athletic sports," **ECF No. 29** at 5; (ii) "But for [the affiliation requirements], the plaintiffs would fully exercise their right to practice firearm safety and self-defense unconnected with athletic target-shooting standards," *id*. at 6; (iii) "But for the [challenged provisions of the Act] prohibiting the lawful purchase and training exclusively for firearm safety and self-defense education, unconnected with athletic sports or the sports federation, plaintiffs would fully exercise their right to keep and bear arms guaranteed by the Second Amendment," *id.* at 15; (iv) "But for the above-referenced regulations prohibiting non-sport related gun-clubs, plaintiffs Phoenix and CAT would provide a firearm safety and self-defense training facility that is fully consistent with the right to keep and bear arms guaranteed by the Second Amendment," *id.* at 16; and (v) "But for the above-referenced Commonwealth regulations imposing a [$250 application fee] on each conceal carry permit applicant, plaintiff organization's [sic] members would also avail themselves of the Conceal Carry permit process," *id.*

The amended complaint alleges that training activities "are ancillary to the core of the Second Amendment," and that the Act "prohibits any lawful attempt to engage in firearm education and self-defense practice unrelated to any sport." *Id*. at 9. Plaintiffs also allege that in

our modern-day society, when "active mall/workplace shooters, and home invasions are a very real possibility," individuals need to be able to competently defend themselves with firearms against these threats, particularly because the "Supreme Court has essentially ruled that Police does [sic] not have a constitutional duty to protect someone from harm." **ECF No. 29** at 5, 16. For support, plaintiffs cite *Town of Castle Rock v. Gonzáles*, 545 U.S. 748 (2005), and one statement from *Caetano v. Massachusetts*, 136 S.Ct. 1027, 1033 (2016) (per curiam) (Alito, J., concurring), "If the fundamental right of self-defense does not protect Caetano, then the safety of all Americans is left to the mercy of state authorities who may be more concerned about disarming people than about keeping them safe." **ECF No. 29** at 16, 17 n.2. Moreover, according to plaintiffs, the proper training to prepare a person for these scenarios is embodied in the tactical training envisioned by Phoenix and CAT, which requires access to the amount of firearms and ammunition that the Act restricts to those with target shooting permits. *Id.* at 12, 16.

These pronouncements are untethered from binding legal authority, including the actual language of the challenged statute, and they fail to offer lip service to, much less meet, the necessary standard to allege a facial challenge. Plaintiffs simply assume, without supporting facts, argument, or authority, that individuals have an absolute right to a particular style of tactical firearm training under the Second Amendment. The amended complaint baldly asserts that the challenged provisions of the Act have not served the Act's overall purpose of

"reduc[ing] crime"[8] and instead "prohibit[s] any lawful attempt to engage in firearm education and self-defense practice unrelated to any sport." *Id.* at 7–9. The plain language of the Act, however, identifies firearm training and education as a stated requirement for applicants seeking a weapons license and carry permit. *See* P.R. Laws Ann. tit. 25, §§ 456a; 456d. And the amended complaint alleges that Cruz-Kerkado and Phoenix already provide training in firearm safety, self-defense, and tactical self-defense unrelated to "sports" standards. **ECF No. 29** at 1–2. Likewise, plaintiffs' reliance on *Gonzáles* and *Caetano* is severely misplaced. *Gonzáles* addresses whether police "enforcement of restraining orders [is] mandatory" under Colorado law. *Gonzáles*, 545 U.S. at 758–61 (emphasis omitted). *Caetano* strikes as contradictory to the Second Amendment a Massachusetts Supreme Judicial Court decision upholding a statute prohibiting the possession of stun guns. *Caetano*, 136 S.Ct. at 1027–28.

Ultimately, plaintiffs have ignored the myriad circumstances under which the Act's provisions may withstand constitutional muster. *See Heller v. Doe*, 509 U.S. 312, 320–21 (1993) ("A statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the

---

[8] This is a broad simplification of the several pages of text constituting the "Statement of Motives" contained in the Act's underlying legislation. *See* H.B. 3447, 2000 Leg. (P.R. 2000) (Act No. 404) (codified at P.R. Laws Ann. tit. 25, § 455 et seq.). The Court also notes that a statute's preamble, although helpful in identifying legislative intent and a statute's purpose, is "necessarily self-serving." *See Thayer v. City of Worcester*, 979 F.Supp.2d 143, 156–57 (D. Mass. 2013) (collecting cases). *See also McCullen v. Coakley*, 571 F.3d 167, 178 (1st Cir. 2009) ("[A] state official's interpretation of a statute, even if generally authoritative, cannot render an otherwise constitutional statute vulnerable to a facial challenge."), *overruled on other grounds McCullen v. Coakley*, 134 S. Ct. 2518 (2014).

basis has a foundation in the record." (citations and internal quotation marks omitted)). The affiliation requirements and $250 carry permit application fee are not unconstitutional simply because they regulate the possession and carrying of firearms, which appears to be the sole basis of plaintiffs' facial challenge. *See Heller*, 554 U.S. at 626–27 (recognizing that the rights secured by the Second Amendment are "not unlimited"). Indeed, this Court in *Williams v. Puerto Rico*, 910 F.Supp.2d. 386 (D.P.R. 2012) (FAB) recognized the constitutionality of the $250 application fee for carry permits against a facial challenge. The amended complaint cursorily distinguishes *Williams* from the present case by noting that the present case also contains other claims. **ECF No. 29** at 10–11. Accordingly, plaintiffs have failed to adequately plead a facial challenge to the affiliation requirements and $250 carry permit fee. The facial challenges under section 1983 are dismissed.[9] *See* Fed. R. Civ. P. 12(b)(6).

## IV. Conclusion

Plaintiffs lack standing to assert claims on behalf of their members and the amended complaint otherwise fails to adequately plead a facial challenge under the Second Amendment to the affiliation requirements and $250 carry permit fee. The amended complaint's cursory citations to First Amendment jurisprudence are insufficient to constitute a free association claim. Having pleaded no other claims, the amended complaint must therefore be dismissed as failing to state a claim upon which relief can be granted.

---

[9] Given this conclusion, the Court need not address PRSA's separate grounds for dismissal based on its argument that it is not a state actor under section 1983.

Accordingly, defendants' motions to dismiss at **ECF Nos. 48 & 50** are **GRANTED**. Plaintiffs' motion for summary judgment at **ECF No. 63** is **DENIED AS MOOT.** Likewise, PRSA's motion in opposition to summary judgment and alternative motion to hold summary judgment in abeyance at **ECF No. 64** and the Government Defendants' motion to join therein at **ECF No. 65** are also **DENIED AS MOOT**. PRSA's January 11, 2018 motion at **ECF No. 70**, to withdraw certain arguments from its motion to dismiss is also **DENIED AS MOOT**. The case is hereby dismissed without prejudice. Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March, 2018.

**S/AIDA M. DELGADO-COLÓN**
**Chief United States District Judge**